**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| DURA AUTOMOTIVE SYSTEMS, LLC, *et al.*,[1] | ) | Case No. 19-12378 (KBO) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## JOINT CHAPTER 11 PLAN OF DURA AUTOMOTIVE SYSTEMS, LLC AND ITS DEBTOR AFFILIATES

---

**NOTHING CONTAINED HEREIN SHALL CONSTITUTE AN OFFER, ACCEPTANCE, COMMITMENT, OR LEGALLY BINDING OBLIGATION OF THE DEBTORS OR ANY OTHER PARTY IN INTEREST, AND THIS PLAN IS SUBJECT TO APPROVAL BY THE BANKRUPTCY COURT AND OTHER CUSTOMARY CONDITIONS.  THIS PLAN IS NOT AN OFFER WITH RESPECT TO ANY SECURITIES.**

---

James H.M. Sprayregen, P.C.
Ryan Blaine Bennett, P.C. (admitted *pro hac vice*)
Gregory F. Pesce (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:     (312) 862-2200
E-mail:     james.sprayregen@kirkland.com
                 ryan.bennett@kirkland.com
                 gregory.pesce@kirkland.com

- and -

Christopher Marcus, P.C. (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900
E-mail:     christopher.marcus@kirkland.com

*Co-Counsel to the Debtors and Debtors in Possession*

Justin R. Alberto (No. 5126)
Erin R. Fay (No. 5268)
Daniel N. Brogan (No. 5723)
600 N. King Street, Suite 400
**BAYARD, P.A.**
Wilmington, Delaware 19801
Telephone: (302) 655-5000
Facsimile: (302) 658-6395
E-mail:   jalberto@bayard.com
               efay@bayardlaw.com
               dbrogan@bayardlaw.com

*Co-Counsel to the Debtors and Debtors in Possession*

---

[1] The debtor entities in these chapter 11 cases, along with the last four digits of each Debtor entity's federal tax identification number, are:  Dura Automotive Systems Cable Operations, LLC (7052); Dura Automotive Systems, LLC (8111); Dura Fremont L.L.C. (1252); Dura G.P. (8092); Dura Mexico Holdings, LLC (4188); Dura Operating, LLC (2304); and NAMP, LLC (3693).  Dura Automotive Systems, LLC's service address is:  1780 Pond Run, Auburn Hills, Michigan 48326.

**TABLE OF CONTENTS**

**CONTENTS**

INTRODUCTION ................................................................................................................4

**ARTICLE I DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, AND GOVERNING LAW**................................................................................................4
A.  Defined Terms..................................................................................................................4
B.  Rules of Interpretation.....................................................................................................15
C.  Computation of Time. ......................................................................................................15
D.  Governing Law.................................................................................................................15
E.  Reference to Monetary Figures. .......................................................................................15
F.  Controlling Document. .....................................................................................................16

**ARTICLE II ADMINISTRATIVE CLAIMS, PROFESSIONAL FEE CLAIMS, DIP FACILITY CLAIMS, AND PRIORITY TAX CLAIMS** ..........................................................16
A.  Administrative Claims. .....................................................................................................16
B.  Professional Compensation. .............................................................................................16
C.  Priority Tax Claims. .........................................................................................................17
D.  DIP Facility Claims. .........................................................................................................18
E.  U.S. Trustee......................................................................................................................18
F.  Costs and Expenses of the Prepetition Secured Parties. ...................................................18

**ARTICLE III CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS**............................18
A.  Summary of Classification. ..............................................................................................18
B.  Treatment of Claims and Interests....................................................................................19
C.  Special Provision Governing Unimpaired Claims. ...........................................................23
D.  Elimination of Vacant Classes. ........................................................................................23
E.  Voting Classes; Presumed Acceptance by Non-Voting Classes. ......................................23
F.  Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code...............................23
G.  Subordinated Claims. .......................................................................................................24

**ARTICLE IV MEANS FOR IMPLEMENTATION OF THE PLAN** .............................................24
A.  General Settlement of Claims...........................................................................................24
B.  Sources of Plan Consideration. ........................................................................................24
C.  Sale Transaction. .............................................................................................................24
D.  Vesting of Assets..............................................................................................................26
E.  Employee Incentive Plan ..................................................................................................26
F.  Wind-Down Amount. .......................................................................................................26
G.  Wind-Down. .....................................................................................................................26
H.  Liquidating Trustee. .........................................................................................................27
I.  The General Unsecured Claims Amount...........................................................................27
J.  Cancellation of Notes, Instruments, Certificates, and Other Documents. .........................27
K.  Corporate Action. .............................................................................................................28
L.  Dissolution of the Boards of the Debtors. ........................................................................28
M.  Release of Liens. ..............................................................................................................28
N.  Effectuating Documents; Further Transactions.................................................................29
O.  Exemption from Certain Taxes and Fees. .........................................................................29
P.  Causes of Action. .............................................................................................................29
Q.  The Liquidating Trust.......................................................................................................29
R.  Closing the Chapter 11 Cases...........................................................................................30

**ARTICLE V TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES** .......................30
A.  Assumption and Rejection of Executory Contracts and Unexpired Leases. ......................30

B.      Claims Based on Rejection of Executory Contracts or Unexpired Leases. ................................31
C.      Cure of Defaults for Assumed Executory Contracts and Unexpired Leases. ............................31
D.      D&O Policies. ........................................................................................................................31
E.      Modifications, Amendments, Supplements, Restatements, or Other Agreements. ...................32
F.      Reservation of Rights. ............................................................................................................32
G.      Nonoccurence of Effective Date. ...........................................................................................32

**ARTICLE VI PROVISIONS GOVERNING DISTRIBUTIONS** ....................................................................**33**
A.      Timing and Calculation of Amounts to Be Distributed. ...........................................................33
B.      Rights and Powers of the Liquidating Trustee. .......................................................................33
C.      Delivery of Distributions and Undeliverable or Unclaimed Distributions. ..............................33
D.      Compliance with Tax Requirements/Allocations. ....................................................................35
E.      Allocation of Plan Distributions Between Principal and Interest. ............................................35
F.      Setoffs and Recoupment. ........................................................................................................35
G.      Claims Paid or Payable by Third Parties. ................................................................................36
H.      Indefeasible Distributions. ......................................................................................................36

**ARTICLE VII THE LIQUIDATING TRUSTEE** ..............................................................................................**36**
A.      The Liquidating Trustee. .........................................................................................................36
B.      Wind-Down. ...........................................................................................................................37
C.      Exculpation; Indemnification; Insurance; Liability Limitation. ...............................................38
D.      Tax Returns. ...........................................................................................................................38

**ARTICLE VIII PROCEDURES FOR RESOLVING CONTINGENT,  UNLIQUIDATED, AND
        DISPUTED CLAIMS** ...........................................................................................................**38**
A.      Allowance of Claims and Interests. .........................................................................................38
B.      Claims and Interests Administration Responsibilities. .............................................................38
C.      Estimation of Claims and Interests. .........................................................................................39
D.      Adjustment to Claims or Interests without Objection. ..............................................................39
E.      Disallowance of Claims. .........................................................................................................39
F.      Amendments to Claims. ..........................................................................................................39
G.      No Distributions Pending Allowance. .....................................................................................40
H.      Distributions After Allowance. ...............................................................................................40
I.      Undeliverable Distribution Reserve. .......................................................................................40
J.      Single Satisfaction of Claims. .................................................................................................41

**ARTICLE IX SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS** ........................**41**
A.      Settlement, Compromise, and Release of Claims and Interests. ...............................................41
B.      Discharge of Claims and Termination of Interests. ..................................................................41
C.      Release of Liens. ....................................................................................................................41
D.      Releases by the Debtors. .........................................................................................................42
E.      Releases by Holders of Claims and Interests. ..........................................................................42
F.      Exculpation. ...........................................................................................................................43
G.      Injunction. ..............................................................................................................................44
H.      Recoupment. ..........................................................................................................................44
I.      Subordination Rights. .............................................................................................................44
J.      Reimbursement or Contribution. .............................................................................................44
K.      Reservation of Rights of the United States. .............................................................................45

**ARTICLE X EFFECT OF CONFIRMATION OF THE PLAN** .......................................................................**45**
A.      Jurisdiction and Venue. ..........................................................................................................45
B.      Order Approving the Disclosure Statement. .............................................................................46
C.      Voting Report. ........................................................................................................................46
D.      Judicial Notice. ......................................................................................................................46
E.      Transmittal and Mailing of Materials; Notice ..........................................................................46
F.      Solicitation ............................................................................................................................46

G.      Burden of Proof...................................................................................................................47
H.      Bankruptcy Rule 3016(a) Compliance ................................................................................47
I.       Compliance with the Requirements of Section 1129 of the Bankruptcy Code ..............47
J.       Securities Under the Plan ....................................................................................................52
K.      Releases and Discharges ......................................................................................................52
L.       Release and Retention of Causes of Action.........................................................................52
M.     Approval of Sale Transaction Documentation and Other Documents and Agreements........53
N.      Confirmation Hearing Exhibits ...........................................................................................53
O.      Objections to Confirmation of the Plan ...............................................................................53
P.       Exemption from Transfer Taxes with Respect to the Sale Transaction...............................53
Q.      Good Faith Purchaser Status ...............................................................................................53
R.      Sale Free and Clear .............................................................................................................53
S.       Retention of Jurisdiction .....................................................................................................53
T.       Plan Supplement..................................................................................................................53

**ARTICLE XI CONDITIONS PRECEDENT TO CONFIRMATION AND THE EFFECTIVE DATE...........54**
A.      Conditions Precedent to Confirmation. ...............................................................................54
B.      Conditions Precedent to the Effective Date.........................................................................54
C.      Waiver of Conditions. .........................................................................................................54
D.      Substantial Consummation..................................................................................................55
E.       Effect of Non-Occurrence of Conditions to the Effective Date...........................................55

**ARTICLE XII MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN...........................55**
A.      Modification and Amendments. ...........................................................................................55
B.      Effect of Confirmation on Modifications. ............................................................................55
C.      Revocation or Withdrawal of the Plan. ...............................................................................55

**ARTICLE XIII RETENTION OF JURISDICTION ...............................................................................56**

**ARTICLE XIV MISCELLANEOUS PROVISIONS ...............................................................................57**
A.      Immediate Binding Effect. ...................................................................................................57
B.      Additional Documents. ........................................................................................................58
C.      Payment of Statutory Fees...................................................................................................58
D.      Dissolution of Statutory Committees. ..................................................................................58
E.       Reservation of Rights. .........................................................................................................58
F.       Successors and Assigns. .......................................................................................................58
G.      Service of Documents. .........................................................................................................58
H.      Enforcement of Confirmation Order. ...................................................................................60
I.       Term of Injunctions or Stays. ..............................................................................................60
J.       Compensation and Benefits Programs..................................................................................60
K.      Entire Agreement. ...............................................................................................................60
L.       Exhibits. ..............................................................................................................................60
M.     Nonseverability of Plan Provisions. ....................................................................................60
N.      Votes Solicited in Good Faith. .............................................................................................61
O.      Waiver. ................................................................................................................................61

**INTRODUCTION**

Capitalized terms used in this chapter 11 plan shall have the meanings set forth in Article I.A.  Although proposed jointly for administrative purposes, the Plan constitutes a separate Plan for each Debtor for the resolution of outstanding Claims and Interests pursuant to the Bankruptcy Code.  Each Debtor is a proponent of the Plan within the meaning of section 1129 of the Bankruptcy Code.  The classifications of Claims and Interests set forth in Article III of the Plan shall be deemed to apply separately with respect to each Debtor, as applicable.  The Plan does not contemplate substantive consolidation of any of the Debtors.  Reference is made to the Disclosure Statement for a discussion of the Debtors' history, business, properties and operations, projections, risk factors, a summary and analysis of the Plan, the Restructuring Transactions, and certain related matters.

**ARTICLE I**
**DEFINED TERMS, RULES OF INTERPRETATION,**
**COMPUTATION OF TIME, AND GOVERNING LAW**

A.    **Defined Terms.**

As used in this Plan, capitalized terms have the meanings and effect as set forth below.

1.    "*Administrative Claim*" means a Claim against any of the Debtors for costs and expenses of administration of the Chapter 11 Cases pursuant to sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including:  (a) the actual and necessary costs and expenses incurred on or after the Petition Date until and including the Effective Date of preserving the Estates; (b) Professional Fee Claims; (c) DIP Facility Claims; and (d) all fees and charges assessed against the Estates pursuant to section 1930 of chapter 123 of title 28 of the United States Code.

2.    "*Administrative Claims Bar Date*" means the date that is 30 days after the Effective Date, which is the deadline by which all requests for Administrative Claims (other than Professional Fee Claims) must be Filed and served on the Debtors.

3.    "*Affiliate*" has the meaning set forth in section 101(2) of the Bankruptcy Code.  With respect to any Person that is not a Debtor, the term "Affiliate" shall apply to such Person as if the Person were a Debtor.

4.    "*Affiliate Claim*" means a Claim held by an Affiliate of a Debtor (other than another Debtor) against a Debtor.

5.    "*Allowed*" means, with respect to any Claim against any of the Debtors, except as otherwise provided herein: (a) a Claim that is evidenced by a Proof of Claim Filed by the Claims Bar Date (or such other date as agreed by the Debtors pursuant to the Bar Date Order) or a request for payment of an Administrative Claim Filed by the Administrative Claims Bar Date (or for which Claim a Proof of Claim or request for payment of Administrative Claim is not or shall not be required to be Filed under the Plan, the Bankruptcy Code, the Bar Date Order, or pursuant to a Final Order); (b) a Claim that is listed in the Schedules as not contingent, not unliquidated, and not Disputed, and for which no contrary or superseding Proof of Claim, as applicable, has been timely Filed; or (c) a Claim allowed pursuant to the Plan or a Final Order; *provided* that with respect to a Claim described in clauses (a) and (b) above, such Claim shall be considered Allowed only if and to the extent that, with respect to such Claim, no objection to the allowance thereof is interposed within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court or such an objection is so interposed and the Claim has been Allowed by a Final Order.  Notwithstanding anything to the contrary herein, no Claim of any Entity from which property is recoverable under sections 542, 543, 550, or 553 of the Bankruptcy Code or that is a transferee of a transfer avoidable under sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code shall be deemed Allowed, unless and until such Entity or transferee has paid the amount, or turned over any such property, for which such Entity or transferee is liable under sections 522(i), 542, 543, 550, or 553 of the Bankruptcy Code.  For the avoidance of doubt, a Proof of Claim Filed after the Claims Bar Date or a request for payment of an Administrative Claim Filed after the Administrative Claims Bar Date shall not be Allowed for any

purposes whatsoever absent entry of a Final Order allowing such late-Filed Claim.  "*Allow*" and "*Allowing*" shall have correlative meanings.

6.      "*Assigned Contracts and Leases*" means those Executory Contracts and Unexpired Leases that are to be assumed and assigned by the Debtors to the Purchaser pursuant to the Plan, as set forth in the Plan Supplement.

7.      "*Assumed Contracts and Leases List*" means the list of those Executory Contracts and Unexpired Leases to be assumed by the Debtors or assumed and assigned by the Debtors to the Purchaser (*i.e.*, the Assigned Contracts and Leases) pursuant to the Plan, as set forth in the Plan Supplement.

8.      "*Assumed Liabilities*" has the meaning set forth in the Sale Transaction Documentation, and shall include, (a) the Defined Benefit Pension Plan, and (b) the Purchaser Assumed Claims.

9.      "*Auction*" has the meaning set forth in the Bidding Procedures Order.

10.     "*Avoidance Actions*" means any and all causes of action to avoid a transfer of property or an obligation incurred by any of the Debtors arising under sections 542, 544, 545, and 547 through and including 553 of the Bankruptcy Code or other similar or related state or federal statutes and common Law.

11.     "*Ballot*" means the form of ballot approved by the Bankruptcy Court and distributed to Holders of Impaired Claims entitled to vote on the Plan on which is to be indicated the acceptance or rejection of the Plan.

12.     "*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. §§ 101–1532.

13.     "*Bankruptcy Court*" means, prior to the transfer of the Chapter 11 Cases on November 8, 2019 at 12:01 a.m., the United States Bankruptcy Court for the Middle District of Tennessee, and following such transfer, the United States Bankruptcy Court for the District of Delaware, or such other court having jurisdiction over the Chapter 11 Cases, including to the extent of the withdrawal of reference under 28 U.S.C. § 157, the United States District Court for the District of Delaware.

14.     "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, as applicable to the Chapter 11 Cases, and the general, local, and chambers rules of the Bankruptcy Court.

15.     "*Bar Date Order*" means the *Order (I) Setting Bar Dates for Filing Proofs of Claim, Including Requests for Payment under Section 503(B)(9), (II) Setting a Bar Date for the Filing of Proofs of Claim by Governmental Units, (III) Establishing Amended Schedules Bar Date and Rejection Damages Bar Date, (IV) Approving the Form and Manner for Filing Proofs of Claim, and (V) Approving Notice of the Bar Dates* [Docket No. 387] (as amended, modified or supplemented from time to time in accordance with the terms thereof).

16.     "*Bidding Procedures*" means the bidding procedures attached as Exhibit 2 to the Bidding Procedures Order, as such bidding procedures may be amended from time to time in accordance with their terms.

17.     "*Bidding Procedures Order*" means the *Order (I) Approving Bidding Procedures with Respect to Substantially All Assets, (II) Approving Contract Assumption and Assignment Procedures, (III) Scheduling Bid Deadlines, an Auction, and the Hearings and Objection Deadlines Related Thereto, and (IV) Approving the Form and Manner of Notice Thereof* [Docket No. 339] (as amended, modified or supplemented from time to time in accordance with the terms thereof).

18.     "*Business Day*" means any day, other than a Saturday, Sunday, or a "legal holiday," as defined in Bankruptcy Rule 9006(a).

19.     "*Cash*" means the legal tender of the United States of America or the equivalent thereof, including bank deposits and checks.

20. "*Causes of Action*" means any and all actions, claims, causes of action, controversies, demands, rights, actions, Liens, indemnities, interests, guaranties, suits, obligations, liabilities, damages, judgments, accounts, defenses, offsets, powers, privileges, licenses, and franchises of any kind or character whatsoever, whether known, unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, Disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law. For the avoidance of doubt, "*Causes of Action*" includes: (a) any rights of setoff, counterclaims, or recoupments and any claims for breach of contract or for breach of duties imposed by law or in equity; (b) any and all claims based on or relating to, or in any manner arising from, in whole or in part, tort, breach of contract, breach of fiduciary duty, violation of state or federal Law or breach of any duty imposed by law or in equity, including securities laws, negligence, and gross negligence; (c) any and all rights to dispute, object to, compromise, or seek to recharacterize, reclassify, subordinate or disallow Claims or Interests; (d) any and all Claims pursuant to section 362 or chapter 5 of the Bankruptcy Code; (e) any and all claims or defenses including fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code; and (f) any and all state or foreign Law fraudulent transfer or similar claims.

21. "*Chapter 11 Cases*" means the procedurally consolidated chapter 11 cases pending for the Debtors in the Bankruptcy Court pursuant to the *Order Directing Joint Administration of Chapter 11 Cases* [Docket No. 120] (as amended, modified or supplemented from time to time in accordance with the terms thereof).

22. "*Claim*" has the meaning set forth in section 101(5) of the Bankruptcy Code.

23. "*Claims Bar Date*" means the applicable bar date by which Proofs of Claim must be Filed, as established by: (a) the Bar Date Order; (b) a Final Order of the Bankruptcy Court; or (c) the Plan; *provided* that if there is a conflict relating to the bar date for a particular Claim, the Plan shall control.

24. "*Claims Register*" means the official register of Claims against the Debtors maintained by the clerk of the Bankruptcy Court or the Notice and Claims Agent.

25. "*Class*" means a category of holders of Claims or Interests under section 1122(a) of the Bankruptcy Code.

26. "*Collateral*" means any property or interest in property of the Estate of any Debtor subject to a Lien, charge, or other encumbrance to secure the payment or performance of a Claim, which Lien, charge, or other encumbrance is not subject to a Final Order ordering the remedy of avoidance of any such Lien, charge, or other encumbrance under the Bankruptcy Code.

27. "*Committee*" means the official committee of unsecured creditors appointed in the Chapter 11 Cases pursuant to the *Appointment and Notice of Appointment of the Official Unsecured Creditors Committee* [Docket No. 213], as may be reconstituted from time to time.

28. "*Confirmation*" means entry of the Confirmation Order on the docket of the Chapter 11 Cases.

29. "*Confirmation Date*" means the date on which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases within the meaning of Bankruptcy Rules 5003 and 9021.

30. "*Confirmation Hearing*" means the hearing(s) before the Bankruptcy Court under section 1128 of the Bankruptcy Code at which the Debtors shall seek entry of the Confirmation Order.

31. "*Confirmation Objection Deadline*" has the meaning set forth in the Disclosure Statement Order.

32. "*Confirmation Order*" means the order of the Bankruptcy Court confirming the Plan under section 1129 of the Bankruptcy Code; *provided*, *however*, that if the Sale Transaction is a Term Loan Credit Bid Transaction, then the Confirmation Order shall be in form and substance acceptable to the Term Loan Lenders (such consent not to be unreasonably withheld).

33.　　"*Consummation*" means the occurrence of the Effective Date.

34.　　"*Cure Costs*" means the amount necessary to cure all monetary defaults under the Assigned Contracts and Leases pursuant to section 365(b) of the Bankruptcy Code.

35.　　"*Cure Notice*" has the meaning set forth in the Bidding Procedures Order.

36.　　"*D&O Policies*" means all insurance policies (including any "tail policy" or run-off endorsement) that have been issued at any time to any of the Debtors as a first named insured providing directors', members', trustees', officers', or managers' liability coverage.

37.　　"*Debtors*" means, collectively: Dura Automotive Systems, LLC; Dura Automotive Systems Cable Operations, LLC; Dura Fremont L.L.C., Dura G.P.; Dura Mexico Holdings, LLC; Dura Operating, LLC; and NAMP, LLC.

38.　　"*Defined Benefit Pension Plan*" means the Dura Combined Pension Plan.

39.　　"*Description of Transaction Steps*" means the description of the steps to be carried out to effectuate the Restructuring Transactions in accordance with the Plan and as set forth in the Plan Supplement.

40.　　"*DIP Agent*" means Cortland Capital Market Services LLC, or any successor thereto, in its capacities as administrative and collateral agent under the DIP Facility.

41.　　"*DIP Facility*" has the meaning set forth in the Final DIP Order.

42.　　"*DIP Facility Claims*" means any Claim against any of the Debtors arising under the DIP Facility or the Final DIP Order, including Claims for all principal amounts outstanding, interest, fees, expenses, costs, and other charges and obligations.

43.　　"*DIP Lenders*" means the lenders from time to time party to the DIP Facility.

44.　　"*Disclosure Statement*" means the *Disclosure Statement to the Joint Chapter 11 Plan of Dura Automotive Systems, LLC and Its Debtor Affiliates* [Docket No. [●]], (as amended, modified or supplemented from time to time, including all exhibits and schedules thereto and references therein that relate to the Plan, that is prepared and distributed in accordance with the Bankruptcy Code, the Bankruptcy Rules, and any other applicable Law).

45.　　"*Disclosure Statement Order*" means the order of the Bankruptcy Court approving the adequacy of the Disclosure Statement pursuant to section 1125 of the Bankruptcy Code and solicitation procedures with respect to the Plan [Docket No. [●]] (as amended, modified or supplemented from time to time in accordance with the terms thereof).

46.　　"*Disputed*" means a Claim or an Interest or any portion thereof, in each case against any of the Debtors:  (a) that is not Allowed; (b) that is not disallowed under the Plan, the Bankruptcy Code, or a Final Order, as applicable; and (c) with respect to which a party in interest has Filed a Proof of Claim or otherwise made a written request to a Debtor for payment, without any further notice to or action, order, or approval of the Bankruptcy Court.

47.　　"*Distribution Record Date*" means the record date for purposes of determining which Holders of Allowed Claims against or Allowed Interests in the Debtors are eligible to receive distributions under the Plan, which date shall be the Confirmation Date, or such other date as is agreed to by the Debtors after consulting with the Term Loan Lenders, or designated in a Final Order.

48.　　"*Dura*" means Debtor Dura Automotive Systems, LLC.

49.　　"*Dura Interests*" means the Interests in Dura.

50.    "*Effective Date*" means, with respect to the Plan and any applicable Debtors, the date that is the first Business Day after the Confirmation Date on which all conditions precedent to the occurrence of the Effective Date set forth in <u>Article XI.B</u> of the Plan have been satisfied or waived in accordance with <u>Article XI.C</u> of the Plan.

51.    "*EIP Pool*" means stock of the Purchaser in an amount determined by the Debtors and the Purchaser, determined on a fully diluted and fully distributed basis, which shall be reserved for distribution to certain participating employees of the Purchaser pursuant to the Employee Incentive Plan.

52.    "*Employee Incentive Plan*" means an incentive plan for certain participating employees of the Purchaser to be established and implemented by the initial board of directors of the Purchaser following the Effective Date.

53.    "*Entity*" has the meaning set forth in section 101(15) of the Bankruptcy Code.

54.    "*Estate*" means, as to each Debtor, the estate created for such Debtor pursuant to sections 301 and 541 of the Bankruptcy Code upon the commencement of the applicable Debtor's Chapter 11 Case.

55.    "*Exculpated Party*" means, collectively: (a) the Debtors; and (b) the Debtors' current and former subsidiaries, officers, directors, managers, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, each in their respective capacities as such; *provided*, however, that notwithstanding the foregoing, no Non-Released Party shall be an Exculpated Party with respect to any capacity of such party as set forth on the Schedule of Non-Released Parties.

56.    "*Executory Contract*" means a contract to which one or more of the Debtors is a party that is subject to assumption, assumption and assignment, or rejection under section 365 or 1123 of the Bankruptcy Code.

57.    "*File*," "*Filed*," or "*Filing*" means file, filed, or filing in the Chapter 11 Cases with the Bankruptcy Court or, with respect to the filing of a Proof of Claim, the Notice and Claims Agent or the Bankruptcy Court.

58.    "*Final DIP Order*" means the *Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Status, (IV) Granting Adequate Protection to the Prepetition Lenders, and (V) Modifying the Automatic Stay* [Docket No. 340] (as amended, modified or supplemented from time to time in accordance with the terms thereof).

59.    "*Final Order*" means an order of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter that has not been reversed, modified or amended, that is not stayed, and as to which the time to appeal or seek certiorari has expired and no appeal or petition for certiorari has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be Filed has been resolved by the highest court to which the order could be appealed or from which certiorari could be sought or the new trial, reargument or rehearing shall have been denied, resulted in no modification of such order or has otherwise been dismissed with prejudice.

60.    "*General Unsecured Claim*" means any unsecured Claim against any of the Debtors that is not: (a) paid in full prior to the Effective Date pursuant to an order of the Bankruptcy Court; (b) an Administrative Claim; (c) an Intercompany Claim; (d) an Other Priority Claim; (e) a Priority Tax Claim; (f) a Professional Fee Claim; (g) an Affiliate Claim; or (h) a Section 510(b) Claim.

61.    "*General Unsecured Claims Amount*" means an amount of Cash that is the greater of (a) any net Sale Transaction Proceeds that remain following the satisfaction in full of all DIP Facility Claims, Term Loan Claims, Secured Tax Claims, Other Secured Claims, Administrative Claims, Priority Tax Claims, and Other Priority Claims, and (b) an amount of Cash to be determined prior to the Voting Deadline by the Debtors; *provided*, *however*

that if the Sale Transaction is a Term Loan Credit Bid Transaction, then the General Unsecured Claims Amount shall also be subject to the consent of the Term Loan Lenders (such consent not to be unreasonably withheld).

62.    "*Governmental Unit*" has the meaning set forth in section 101(27) of the Bankruptcy Code.

63.    "*Holder*" means an Entity holding a Claim against or Interest in a Debtor, as applicable.

64.    "*Impaired*" means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is impaired within the meaning of section 1124 of the Bankruptcy Code.

65.    "*Initial Distribution Date*" means the date on which the Debtors or the Liquidating Trustee, as applicable, make initial distributions to Holders of Allowed Claims pursuant to the Plan.

66.    "*Intercompany Claim*" means any Claim against a Debtor held by another Debtor, and for the avoidance of doubt, does not include any Affiliate Claim.

67.    "*Intercompany Interest*" means any Interest in one Debtor held by another Debtor.

68.    "*Interest*" means the common stock, preferred stock, limited liability company interests, and any other equity, ownership, or profits interests of any Debtor, and options, warrants, rights, or other securities or agreements to acquire the common stock, preferred stock, limited liability company interests, or other equity, ownership, or profits interests of any Debtor (whether or not arising under or in connection with any employment agreement).

69.    "*Interim Compensation Order*" means the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals* [Docket No. 389] (as amended, modified or supplemented from time to time in accordance with the terms thereof).

70.    "*Key Employee Retention Program Order*" means the *Order Authorizing and Approving the Debtors' Proposed Valued Employee Program* [Docket No. 395].

71.    "*Law*" means any federal, state, local, or foreign law (including common law), statute, code, ordinance, rule, regulation, order, ruling, or judgment, in each case, that is validly adopted, promulgated, issued, or entered by a governmental authority of competent jurisdiction (including the Bankruptcy Court).

72.    "*Lien*" has the meaning set forth in section 101(37) of the Bankruptcy Code.

73.    "*Liquidating Trustee*" means an individual that shall be the representative of the Debtors on and after the Effective Date and shall have the rights, powers, and duties set forth in this Plan and the Liquidating Trust Agreement.  The Liquidating Trustee shall be selected by (a) the Debtors, and (b) if the Committee does not object to the Plan, the Committee; *provided* that if the Sale Transaction is a Term Loan Credit Bid Transaction, then the identity of the Liquidating Trustee shall also be subject to the consent of the Term Loan Lenders (such consent not to be unreasonably withheld).

74.    "*Liquidating Trust*" means that certain trust to be created on the Effective Date, as described in Article IV.Q.

75.    "*Liquidating Trust Agreement*" means the agreement to be executed as of the Effective Date, establishing the Liquidating Trust pursuant to this Plan, substantially in the form Filed with the Plan Supplement. The trustee of the Liquidating Trust shall be the Liquidating Trustee.

76.    "*Liquidating Trust Assets*" means all remaining Retained Assets as of the Effective Date, and all other assets of the Debtors that have not been sold or transferred prior to the Effective Date.

77.　　"*Local Rules*" means the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware.

78.　　"*Non-Released Party*" means any party identified as a Non-Released Party on the Schedule of Non-Released Parties, in the capacities set forth on the Schedule of Non-Released Parties.

79.　　"*Notice and Claims Agent*" means Prime Clerk LLC, solely in its capacity as the notice, claims, and solicitation agent for the Debtors in the Chapter 11 Cases.

80.　　"*Ordinary Course Professional*" means an Entity (other than a Professional) retained and compensated by the Debtors in accordance with the Ordinary Course Professionals Order.

81.　　"*Ordinary Course Professionals Order*" means the *Order Authorizing the Retention and Compensation of Certain Professionals Utilized in the Ordinary Course of Business* [Docket No. 388] (as amended, modified or supplemented from time to time in accordance with the terms thereof).

82.　　"*Other Priority Claim*" means any Claim against any of the Debtors other than an Administrative Claim or a Priority Tax Claim entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

83.　　"*Other Secured Claim*" means any Secured Claim (including Secured Tax Claims) against any of the Debtors, other than a DIP Facility Claim or a Term Loan Claim.

84.　　"*Patriarch Parties*" means Lynn Tilton, the Prepetition ABL Secured Parties, Patriarch Partners, LLC, Patriarch Partners Agency Services, LLC, and Patriarch Management Group, LLC.

85.　　"*Person*" has the meaning set forth in section 101(41) of the Bankruptcy Code.

86.　　"*Petition Date*" means October 17, 2019, the date on which the Chapter 11 Cases were commenced.

87.　　"*Plan*" means this chapter 11 plan, including all exhibits, supplements (including the Plan Supplement), appendices, and schedules (as amended, modified or supplemented from time to time in accordance with the terms hereof).

88.　　"*Plan Supplement*" means the compilation of documents and forms of documents, schedules, and exhibits to the Plan, as amended, supplemented, or otherwise modified from time to time in accordance with the terms hereof, each of which shall be in form and substance reasonably acceptable to the Purchaser, substantially final forms of which shall be Filed at least 3 days prior to the Voting Deadline or such later date as may be approved by the Bankruptcy Court, including:  (a) the Assumed Contracts and Leases List; (b) the identity of the Liquidating Trustee and the compensation of the Liquidating Trustee; (c) the amount of the General Unsecured Claims Amount; (d) the Description of Transaction Steps; (e) the Sale Transaction Documentation; (f) the Liquidating Trust Agreement; and (g) the Schedule of Non-Released Parties; *provided* that, through the Effective Date, the Plan Supplement, and the exhibits thereto may be amended or modified in accordance with this Plan.

89.　　"*Prepetition ABL Secured Parties*" has the meaning set forth in the Final DIP Order.

90.　　"*Priority Claims*" means, collectively, Administrative Claims, Priority Tax Claims, and Other Priority Claims.

91.　　"*Priority Tax Claim*" means any Claim against the Debtors of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

92.　　"*Pro Rata*" means the proportion that an Allowed Claim or an Allowed Interest in a particular Class bears to the aggregate amount of Allowed Claims or Interests in that Class.

93.    "*Professional*" means an Entity: (a) employed, or proposed to be employed prior to the Confirmation Date, in the Chapter 11 Cases pursuant to a Final Order in accordance with sections 327 and 1103 of the Bankruptcy Code and to be compensated for services rendered prior to or on the Confirmation Date pursuant to sections 327, 328, 329, 330, and 331 of the Bankruptcy Code; or (b) for which compensation and reimbursement has been Allowed by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

94.    "*Professional Fee Claim*" means any Administrative Claim for the compensation of Professionals and the reimbursement of expenses incurred by such Professionals through and including the Confirmation Date to the extent such fees and expenses have not been paid pursuant to an order of the Bankruptcy Court.  To the extent the Bankruptcy Court denies or reduces by a Final Order any amount of a Professional's requested fees and expenses, then the amount by which such fees or expenses are reduced or denied shall reduce the applicable Professional Fee Claim.

95.    "*Professional Fee Escrow Account*" means an account funded by the Debtors with Cash as soon as possible after Confirmation and not later than the Effective Date in an amount equal to the Professional Fee Escrow Amount.

96.    "*Professional Fee Escrow Amount*" means the reasonable estimate of the aggregate amount of Professional Fee Claims and other unpaid fees and expenses the Professionals have incurred or will incur in rendering services to the Debtors prior to and as of the Confirmation Date, which estimates Professionals shall, deliver to the Debtors as set forth in Article II.B of the Plan; and to the extent the Sale Transaction is a Term Loan Credit Bid Transaction, the Debtors or the Liquidating Trustee, as applicable, shall consult with the Term Loan Lenders prior to determining the amount of the Professional Fee Escrow Amount.

97.    "*Proof of Claim*" means a proof of Claim Filed against any of the Debtors in the Chapter 11 Cases.

98.    "*Purchased Assets*" means all of the assets of the Debtors that are purchased by the Purchaser pursuant to the Sale Transaction Documentation.

99.    "*Purchaser*" means the Entity whose bid for substantially all of the Assets is selected by the Debtors and approved by the Bankruptcy Court as the highest and otherwise best bid pursuant to the Bidding Procedures, and to the extent the Sale Transaction is a Term Loan Credit Bid Transaction, the Purchaser may be a newly-formed entity created by the Term Loan Agent or its designee to purchase the Assets.

100.    "*Purchaser Assumed Claims*" means those Claims against the Debtors that are Assumed Liabilities under the Sale Transaction Documentation, which shall include substantially all Claims by the Debtors' customers and trade vendors that are expected to continue to do business with the Purchaser in the ordinary course of business following the Effective Date; *provided* that Purchaser Assumed Claims shall not include any claims resulting from the rejection of an Executory Contract or Unexpired Lease.

101.    "*Reinstate*," "*Reinstated*," or "*Reinstatement*" means with respect to Claims and Interests, that the Claim or Interest shall be rendered unimpaired in accordance with section 1124 of the Bankruptcy Code.

102.    "*Released Parties*"[2] means, collectively, and in each case, in their respective capacities as such: (a) the Term Loan Lenders, solely in their capacities as such; (b) the DIP Lenders, solely in their capacities as such; (c) the Term Loan Agent, solely in its capacity as such; (d) the DIP Agent, solely in its capacity as such; (e) the Prepetition ABL Secured Parties, solely in their capacities as such; (f) all Releasing Parties; (g) with respect to each Entity in clause (a) through (f), and each Debtor, each such Debtor's and each such Entity's current and former subsidiaries, officers, directors, managers, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other

---

[2]    To the extent the Sale Transaction is consummated under the Plan, the Purchaser may be a Releasing Party and Released Party, subject to reaching definitive documentation with the Purchaser with respect to the Sale Transaction.

professionals, each in their capacity as such (unless any such Entity or related party has opted out of being a Releasing Party, in which case such Entity or related party, as applicable, shall not be a Released Party); *provided* that notwithstanding the foregoing, no Non-Released Party shall be a Released Party with respect to any capacity of such party as set forth on the Non-Released Party List.

103.    "*Releasing Parties*" means, collectively, and in each case, in their respective capacities as such: (a) the Term Loan Lenders, solely in their capacities as such; (b) the DIP Lenders, solely in their capacities as such; (c) the Term Loan Agent, solely in its capacity as such; (d) the DIP Agent, solely in its capacity as such; (e) all Holders of Claims or Interests, solely in their capacities as such, that are presumed to accept the Plan *and* who do not opt out of the releases in the Plan; (f) all Holders of Claims or Interests, solely in their capacities as such, who vote to accept the Plan; (g) all Holders of Claims or Interests, solely in their capacities as such, that (x) abstain from voting on the Plan *and* who do not opt out of the releases in the Plan, (y) vote to reject the Plan *and* who do not opt out of the releases in the Plan, or (z) are deemed to reject the Plan *and* who do not opt out of the releases in the Plan; (h) with respect to each Entity in clause (a) through (g), and each Debtor, each such Debtor's and each such Entity's current and former  subsidiaries, officers, directors, managers, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, each in their capacity as such (unless any such Entity or related party has opted out of being a Releasing Party, in which case such Entity or related party, as applicable, shall not be a Releasing Party); *provided* that notwithstanding the foregoing, the Term Loan Lenders shall not be Releasing Parties with respect to any of the Patriarch Parties.

104.    "*Restructuring Transactions*" means the transactions described in <u>Article IV.C.</u>

105.    "*Retained Assets*" means: (a) any Sale Transaction Proceeds not distributed on the Effective Date, (b) the General Unsecured Claims Amount, (c) the Wind-Down Amount, (d) the D&O Policies, (e) the Retained Causes of Action, and (f) the Excluded Assets (as defined in the Sale Transaction Documentation).  For the avoidance of doubt, the Retained Assets shall not include: (x) the Transferred Assets; (y) any Causes of Action waived, released or transferred pursuant to the Plan; or (z) the Professional Fee Escrow Account.

106.    "*Retained Causes of Action*" means those Causes of Action that shall vest in the Debtors on the Effective Date and for the avoidance of doubt, Retained Causes of Action shall not include any of the Transferred Causes of Action, or any Causes of Action that are settled, released, or exculpated under the Plan.

107.    "*Sale Transaction*" means the transfer of the Transferred Assets to the Purchaser and the assumption by the Purchaser of the Assumed Liabilities free and clear of all Liens, Claims, charges, and other encumbrances (other than the Assumed Liabilities) pursuant to section 1123 of the Bankruptcy Code on the terms and conditions set forth in the Sale Transaction Documentation.

108.    "*Sale Transaction Documentation*" means one or more asset purchase agreements or purchase and sale agreements and related documents, pursuant to which the Debtors will effectuate the Sale Transaction; *provided*, *however* that if the Sale Transaction is a Term Loan Credit Bid Transaction, the Sale Transaction Documentation shall be in form and substance acceptable to the Term Loan Lenders (such consent not to be unreasonably withheld).

109.    "*Sale Transaction Proceed*s" means any Cash or Cash equivalents that are proceeds from the Sale Transaction.

110.    "*Schedules*" means, collectively, the schedules of assets and liabilities, schedules of Executory Contracts and Unexpired Leases, and statements of financial affairs to be Filed by the Debtors pursuant to section 521 of the Bankruptcy Code.

111.    "*Schedule of Non-Released Parties*" means the schedule of Non-Released Parties (and the capacities in which such parties are to be Non-Released Parties), to be determined by the independent managers of Dura and filed with the Plan Supplement.

112.    "*Section 510(b) Claim*" means any Claim against any of the Debtors that is subordinated under section 510(b) of the Bankruptcy Code.

113.    "*Secured*" or "*Secured Claim*" means, when referring to a Claim, a Claim that is:  (a) secured by a Lien on collateral to the extent of the value of such collateral, as determined in accordance with section 506(a) of the Bankruptcy Code; or (b) subject to a valid right of setoff pursuant to section 553 of the Bankruptcy Code to the extent of the value of such right of setoff.

114.    "*Secured Tax Claim*" means any Secured Claim against any of the Debtors that, absent its secured status, would be entitled to priority in right of payment under section 507(a)(8) of the Bankruptcy Code (determined irrespective of time limitations), including any related Secured Claim for penalties.

115.    "*Securities Act*" means the U.S. Securities Act of 1933.

116.    "*Security*" has the meaning set forth in section 2(a)(1) of the Securities Act.

117.    "*Subsequent Distribution Date*" means a date following the Initial Distribution Date on which the Liquidating Trustee in its reasonable discretion, elects to make distributions to Holders of certain Allowed Claims pursuant to the Plan.

118.    "*Term Loan Adequate Protection Claim*" means any Claim arising from the Prepetition Term Loan Adequate Protection Obligations (as defined in the Final DIP Order) on the terms of the Final DIP Order, solely to the extent of any diminution in value from and after the Petition Date as set forth in the Final DIP Order.

119.    "*Term Loan Agent*" means Ankura Trust Company, LLC (as successor in interest to Patriarch Partners Agency Services, LLC), in its capacities as administrative and collateral agent under the Term Loan Credit Agreement, or any of its predecessors or successors.

120.    "*Term Loan Claim*" means any Claim against any of the Debtors on account of the Term Loan Credit Agreement, including Claims for all principal amounts outstanding, interest, fees, expenses, costs, and other charges and obligations, but for the avoidance of doubt does not include any Term Loan Adequate Protection Claim.

121.    "*Term Loan Credit Agreement*" means that certain Term Loan Credit Agreement, dated as of January 10, 2010, by and among Dura, as borrower, the guarantors party thereto, the Term Loan Agent, and the other lender parties thereto, as may be amended, restated, or otherwise supplemented from time to time.

122.    "*Term Loan Credit Bid Transaction*" means a Sale Transaction to the Term Loan Agent or its designee on account of a credit bid of some or all of the Term Loan Claims, which credit bid is selected by the Debtors as the highest and best bid for the Purchased Assets as set forth in the Bidding Procedures Order.

123.    "*Term Loan Lenders*" means the Holders of Term Loan Claims, in their capacities as such.

124.    "*Transferred Assets*" means the Purchased Assets, the Transferred Causes of Action, and the Interests of any Debtors that are transferred to Purchaser as part of the Sale Transactions.

125.    "*Transferred Causes of Action*" means any and all Causes of Action held by the Debtors as of the Effective Date that are not expressly released or retained by the Debtors pursuant to this Plan; *provided* that Transferred Causes of Action shall not include (i) Avoidance Actions not related to the Transferred Assets; (ii) certain Causes of Action to be mutually agreed upon by the Debtors and the Purchaser; (iii) Causes of Action held by the Debtors related to the D&O Policies; or (iv) Causes of Action that are settled, released, or exculpated under the Plan.

126.    "*U.S. Person*" has the meaning given to such term in rule 902 promulgated under the Securities Act.

127.    "*U.S. Trustee*" means the Office of the United States Trustee for the District of Delaware.

128.    "*U.S. Trustee Fees*" means fees arising under 28 U.S.C. § 1930(a)(6) and, to the extent applicable, accrued interest thereon arising under 31 U.S.C. § 3717.

129.    "*Undeliverable Distribution*" means any distribution under the Plan on account of an Allowed Claim or Allowed Interest to a Holder that has not:  (a) accepted a particular distribution or, in the case of distributions made by check, negotiated such check; (b) given notice to the Debtors of an intent to accept a particular distribution; (c) responded to the Debtors' requests for information necessary to facilitate a particular distribution; or (d) taken any other action necessary to facilitate such distribution.

130.    "*Undeliverable Distribution Reserv*e" means a segregated account established by the Liquidating Trustee established in accordance with <u>Article VIII.I</u>.

131.    "*Unexpired Lease*" means a lease of nonresidential real property to which one or more of the Debtors is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

132.    "*Unimpaired*" means a Class of Claims or Interests that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

133.    "*Utility Order*" means the *Order (I) Prohibiting Utility Providers from Altering, Refusing, or Discontinuing Utility Services, (II) Determining Adequate Assurance of Payment for Future Utility Services, and (III) Establishing Procedures for Resolving Requests for Additional Adequate Assurance of Payment* [Docket No. 336] (as amended, modified or supplemented from time to time in accordance with the terms thereof).

134.    "*Voting Deadline*" has the meaning set forth in the Disclosure Statement Order.

135.    "*Voting Report*" means the report certifying the methodology for the tabulation of votes and results of voting under the Plan, prepared and filed by the Notice and Claims Agent.

136.    "*Wages Order*" means the *Final Order Authorizing the Debtors to (I) Pay Prepetition Wages, Salaries, Other Compensation, and Reimbursable Expenses, and (II) Continue Employee Benefits Programs* [Docket No. 334] (as amended, modified or supplemented from time to time in accordance with the terms thereof).

137.    "*Wind Down*" means the wind down and dissolution of the Debtors' Estates as set forth in <u>Article VII.B</u>.

138.    "*Wind-Down Amount*" means Cash in an amount, to be determined by the Debtors, which amount shall be retained by the Debtors in accordance with the terms of the Sale Transaction Documentation and used by the Liquidating Trustee to fund the Wind Down; *provided, however* that if the Sale Transaction is a Term Loan Credit Bid Transaction, then the amount of the Wind-Down Amount shall be subject to the consent of the Term Loan Lenders (such consent not to be unreasonably withheld).

139.    "*Zohar Chapter 11 Cases*" means the chapter 11 cases being jointly administered under the caption *In re Zohar III, Corp.*, case number 18-10512 (KBO) (Bankr. D. Del.).

140.    "*Zohar Debtors*" means, collectively, the debtors in the Zohar Chapter 11 Cases.

141.    "*Zohar Monetization Process*" means the monetization process contemplated by the Zohar Settlement Agreement and related pleadings filed in the Zohar Chapter 11 cases, as the same may be amended or modified, including pursuant to the *Debtors' Motion for Entry of an Order, in Aid of Implementation of the Settlement Agreement and the Settlement Order, Establishing Certain Deadlines, Milestones and Other Parameters in Furtherance of the Monetization Process for the Group A Portfolio Companies* [Docket No. 1168], the *Motion of Lynn Tilton for Approval of Timeline and Guidelines Regarding Monetization of the Group A Portfolio Companies* [Docket No. 1182], and any related orders.

142.    "*Zohar Portfolio Companies*" means, collectively, the companies defined in the Zohar Settlement Agreement as Group A Portfolio Companies and Group B Portfolio Companies.

143.    "*Zohar Settlement Agreement*" means the settlement agreement filed in the Zohar Chapter 11 Cases and approved by the bankruptcy court pursuant to the *Order Approving and Authorizing the Settlement Agreement by and between the Debtors, Lynn Tilton, the Patriarch Stakeholders, MBIA Insurance Corp., and the Zohar III Controlling Class* [Docket No. 266].

**B.    Rules of Interpretation.**

For purposes of the Plan:  (1) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (2) unless otherwise specified, any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (3) unless otherwise specified, any reference herein to an existing document, schedule, or exhibit, shall mean such document, schedule, or exhibit, as it may have been or may be amended, modified, or supplemented; (4) unless otherwise specified, all references herein to "Articles" and "Sections" are references to Articles and Sections, respectively, hereof or hereto; (5) the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to any particular portion of the Plan; (6) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (7) unless otherwise specified herein, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (8) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to such term in the Bankruptcy Code or the Bankruptcy Rules, as applicable; (9) references to docket numbers of documents Filed in the Chapter 11 Cases are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (10) all references to statutes, regulations, orders, rules of courts, and the like shall mean as amended from time to time, and as applicable to the Chapter 11 Cases, unless otherwise stated; (11) any effectuating provisions may be interpreted by the Debtors or the Liquidating Trustee in such a manner that is consistent with the overall purpose and intent of the Plan all without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity, and such interpretation shall control; *provided* that no effectuating provision shall be immaterial or deemed immaterial if it has any substantive legal or economic effect on any party; and (12) on and after the Effective Date, all references to the Debtors in this Plan shall be deemed references to the Debtors or the Liquidating Trust, as applicable.

**C.    Computation of Time.**

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein.  If the date on which a transaction may occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day.  Any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable after the Effective Date.

**D.    Governing Law.**

Except to the extent the Bankruptcy Code or Bankruptcy Rules apply, and subject to the provisions of any contract, lease, instrument, release, indenture, or other agreement or document entered into expressly in connection herewith, the rights and obligations arising hereunder shall be governed by, and construed and enforced in accordance with the Laws of the State of New York, without giving effect to conflict of laws principles.

**E.    Reference to Monetary Figures.**

All references in the Plan to monetary figures shall refer to the legal tender of the United States, unless otherwise expressly provided.

F.      **Controlling Document.**

        In the event of an inconsistency between the Plan, the Disclosure Statement, and the Plan Supplement, the terms of the Plan shall control in all respects.  In the event of an inconsistency between the Plan, the Disclosure Statement, the Plan Supplement, and the Sale Transaction Documentation, the Sale Transaction Documentation shall control.  In the event of any inconsistency between the Plan, the Sale Transaction Documentation, and the Confirmation Order, the Confirmation Order shall control.

**ARTICLE II**
**ADMINISTRATIVE CLAIMS, PROFESSIONAL FEE**
**CLAIMS, DIP FACILITY CLAIMS, AND PRIORITY TAX CLAIMS**

        In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Professional Fee Claims, Priority Tax Claims, and DIP Facility Claims have not been classified and thus are excluded from the Classes of Claims set forth in <u>Article III</u> of the Plan.

A.      **Administrative Claims.**

        Except with respect to Professional Fee Claims, Term Loan Adequate Protection Claims, DIP Facility Claims, or as otherwise set forth herein, subject to the provisions of sections 327, 330(a), and 331 of the Bankruptcy Code, and except to the extent that a Holder of an Allowed Administrative Claim and, as applicable, the Debtors or the Liquidating Trustee, agree to less favorable treatment or such Holder has been paid by any applicable Debtor prior to the Effective Date, the Debtors or the Liquidating Trustee shall pay each Holder of an Allowed Administrative Claim the full unpaid amount of such Allowed Administrative Claim in Cash, which payment shall be made (x) in the ordinary course of business; or (y) on the later of (i) the Effective Date and (ii) the date on which such Administrative Claim becomes an Allowed Claim or as soon as reasonably practicable thereafter (or, if not then due, when such Allowed Administrative Claim is due or as soon as reasonably practicable thereafter) with a Cash distribution; *provided* that any Allowed Administrative Claim that has been expressly assumed by the Purchaser under the Sale Transaction Documentation shall not be an obligation of the Debtors as of or after the Effective Date.

        Except as otherwise provided by <u>Article II.A</u> or by a Final Order entered by the Bankruptcy Court (including the Bar Date Order) on or prior to the Administrative Claims Bar Date, as applicable, unless previously Filed, requests for payment of Administrative Claims (other than requests for payment of Professional Fee Claims) must be Filed and served on the Debtors by the Administrative Claims Bar Date.  For the avoidance of doubt, solely to the extent Cure Costs are not paid on the Effective Date, the counterparty to such Executory Contract and Unexpired Lease must file its Administrative Claim on or prior to the Administrative Claims Bar Date, and such Administrative Claim shall be asserted only with respect to and in the amount of such unpaid Cure Costs.  With respect to Professional Fee Claims, the deadline for all requests for payment of such claims shall be 45 days after the Effective Date.

        Holders of Administrative Claims that are required to File and serve a request for payment of such Administrative Claims that do not File and serve such a request by the Administrative Claims Bar Date, shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtors, their Estates, the Purchaser, or the Liquidating Trustee, and such Administrative Claims shall be deemed compromised, settled, and released as of the Effective Date.  For the avoidance of doubt, Holders of DIP Facility Claims shall not be required to File or serve any request for payment of such DIP Facility Claims.

B.      **Professional Compensation.**

        1.      **Final Fee Applications and Payment of Professional Fee Claims.**

        All final requests for payment of Professional Fee Claims incurred during the period from the Petition Date through the Confirmation Date shall be Filed no later than 45 days after the Effective Date.  All such final requests will be subject to approval by the Bankruptcy Court after notice and a hearing in accordance with the procedures

established by the Bankruptcy Code, Bankruptcy Rules, and prior orders of the Bankruptcy Court, including the Interim Compensation Order, and once approved by the Bankruptcy Court, shall be promptly paid from the Professional Fee Escrow Account up to the full Allowed amount.  To the extent that funds held in the Professional Fee Escrow Account are insufficient to satisfy the amount of Professional Fee Claims owing to the Professionals, such Professionals shall have an Allowed Administrative Claim for any such deficiency, which shall be satisfied in accordance with Article II.A of the Plan.

### 2.    Professional Fee Escrow Amount.

As soon as possible after Confirmation and not later than the Effective Date, the Debtors shall establish and fund the Professional Fee Escrow Account with Cash equal to the Professional Fee Escrow Amount.  The Professional Fee Escrow Account shall be maintained in trust for the Professionals.  Such funds shall not be considered property of the Debtors' Estates.  The amount of Professional Fee Claims owing to the Professionals shall be paid in Cash to such Professionals from funds held in the Professional Fee Escrow Account as soon as reasonably practicable after such Claims are Allowed by a Final Order.  When all such Allowed amounts owing to Professionals have been paid in full, any remaining amount in the Professional Fee Escrow Account shall promptly be transferred to the Liquidating Trust.

### 3.    Allocation and Estimation of Professional Fees and Expenses.

Professionals shall reasonably estimate their unpaid Professional Fee Claims and other unpaid fees and expenses incurred before and as of the Confirmation Date, and shall deliver such estimate to the Debtors by the earlier of (a) five Business Days after the Confirmation Date and (b) two Business Days prior to the Effective Date; provided that such estimate shall not be considered an admission with respect to the fees and expenses of such Professional and such Professionals are not bound to any extent by the estimates.  If a Professional does not provide an estimate, the Debtors may estimate the unbilled fees and expenses of such Professional.

### 4.    Post-Confirmation Date Fees and Expenses.

Except as otherwise specifically provided in the Plan, from and after the Confirmation Date, the Debtors will, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable and documented legal, professional, or other fees and expenses incurred by the Debtors or the Liquidating Trustee.  Upon the Confirmation Date, any requirement that Professionals and Ordinary Course Professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code, the Interim Compensation Order, or the Ordinary Course Professionals Order, in seeking retention or compensation for services rendered after such date shall terminate, and the Debtors and the Liquidating Trustee may employ and pay any Professional or Ordinary Course Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

### 5.    Substantial Contribution.

Except as otherwise specifically provided in the Plan, any Entity that requests compensation or expense reimbursement for making a substantial contribution in the Chapter 11 Cases pursuant to sections 503(b)(3), (4), or (5) of the Bankruptcy Code must File an application and serve such application on counsel for the Debtors, the Committee, the DIP Agent, and the Term Loan Agent, and as otherwise required by the Bankruptcy Court, the Bankruptcy Code, and the Bankruptcy Rules, on or before the Voting Deadline.

## C.    Priority Tax Claims.

Except to the extent that a Holder of an Allowed Priority Tax Claim and, as applicable, the Debtors or the Liquidating Trustee, agree to a less favorable treatment, in full and final satisfaction, settlement, and release of and in exchange for each Allowed Priority Tax Claim, pursuant to section 1129(a)(9)(C) of the Bankruptcy Code, each Holder of such Allowed Priority Tax Claim shall receive, at the option of the Debtors or the Liquidating Trustee, as applicable, either (a) the full unpaid amount of such Allowed Priority Tax Claim in Cash on the later of the Effective Date and the date on which such Priority Tax Claim becomes an Allowed Claim or as soon as reasonably practicable

thereafter (or, if not then due, when such Allowed Priority Tax Claim is due or as soon as reasonably practicable thereafter), or (b) equal annual installment payments in Cash, of a total value equal to the Allowed amount of such Priority Tax Claim, over a period ending not later than five (5) years after the Petition Date; *provided* that any Allowed Priority Tax Claim that has been expressly assumed by the Purchaser under the Sale Transaction Documentation shall not be an obligation of the Debtors. In the event an Allowed Priority Tax Claim is also a Secured Tax Claim, such Claim shall, to the extent it is Allowed, be treated as an Other Secured Claim if such Claim is not otherwise paid in full. On the Effective Date, any Liens securing any Allowed Priority Tax Claims shall be deemed released, terminated, and extinguished, in each case without further notice to or order of the Bankruptcy Court, act, or action under applicable law, regulation, order or rule, or the vote, consent, authorization, or approval of any Person.

**D.      DIP Facility Claims.**

All DIP Facility Claims shall be deemed Allowed as of the Effective Date in an amount equal to (i) the principal amount outstanding under the DIP Facility on such date, (ii) all interest accrued and unpaid thereon, and (iii) all accrued and unpaid fees, expenses and noncontingent indemnification obligations payable under the DIP Facility and the Final DIP Order. In full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed DIP Facility Claim, each DIP Facility Claim shall be paid in Cash, except to the extent such DIP Facility Claims are credit bid pursuant to the terms of the Sale Transaction Documentation. All Liens and security interests granted by the Debtors to secure the obligations under the DIP Facility shall be of no further force or effect.

**E.      U.S. Trustee.**

The Debtors or the Liquidating Trustee, as applicable, shall timely pay all U.S. Trustee Fees for each quarter under 28 U.S.C. § 1930(a)(6), plus interest due and payable under 31 U.S.C. § 3717 on all disbursements, including Plan payments and disbursements in and outside the ordinary course of the Debtors' businesses, until the entry of a Final Order dismissing or closing the Chapter 11 Cases, or converting the Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code. Following Confirmation, the Debtors shall file with the Bankruptcy Court quarterly operating reports in a form reasonably acceptable to the U.S. Trustee.

**F.      Costs and Expenses of the Prepetition Secured Parties.**

Notwithstanding anything to the contrary contained herein, any unpaid Claim payable to the Prepetition Secured Parties (as defined in the Final DIP Order) shall constitute Allowed Administrative Claims and shall be paid on a current basis in full in Cash on the Effective Date, or to the extent accrued after the Effective Date, on a current basis in full in Cash as invoiced; *provided* that upon the payment of all fees and expenses due to the Prepetition Secured Parties as adequate protection under the Final DIP Order, all other Claims for diminution of value under the Final DIP Order shall be irrevocably released, waived and discharged on the Effective Date unless the Term Loan Claims are not paid in full under the Plan. Nothing herein shall require the Prepetition Secured Parties or their respective professionals to file applications, a Proof of Claim or otherwise seek approval of the Bankruptcy Court as a condition to the payment of such Allowed Administrative Claims.

**ARTICLE III**
**CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS**

**A.      Summary of Classification.**

This Plan constitutes a separate chapter 11 plan for each Debtor. Except for the Claims addressed in Article II (or as otherwise set forth herein), all Claims against and Interests in a particular Debtor are placed in Classes for each of the Debtors. In accordance with section 1123(a)(1) of the Bankruptcy Code, the Debtors have not classified Administrative Claims, Priority Tax Claims, DIP Facility Claims, and Professional Fee Claims as described in Article II.

The categories of Claims and Interests listed below classify Claims and Interests for all purposes, including voting, Confirmation, and distribution pursuant hereto and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.  The Plan deems a Claim or Interest to be classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Interest qualifies within the description of such different Class.  A Claim or an Interest is in a particular Class only to the extent that any such Claim or Interest is Allowed in that Class and has not been paid or otherwise settled prior to the Effective Date.

| Class | Claims and Interests | Status | Voting Rights |
|-------|---------------------|--------|---------------|
| Class 1 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| Class 2 | Other Secured Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| Class 3 | Term Loan Claims | Impaired | Entitled to Vote |
| Class 4 | General Unsecured Claims | Impaired | Entitled to Vote |
| Class 5 | Affiliate Claims | Impaired | Entitled to Vote |
| Class 6 | Intercompany Claims | Impaired / Unimpaired | Not Entitled to Vote (Presumed to Accept or Deemed to Reject) |
| Class 7 | Intercompany Interests | Impaired / Unimpaired | Not Entitled to Vote (Presumed to Accept or Deemed to Reject) |
| Class 8 | Section 510(b) Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |
| Class 9 | Dura Interests | Impaired | Entitled to Vote |

**B.      Treatment of Claims and Interests.**

Except to the extent that the Debtors or the Liquidating Trustee, as applicable, and a Holder of an Allowed Claim or Interest, as applicable, agrees to a less favorable treatment, such Holder shall receive under the Plan the treatment described below in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for such Holder's Allowed Claim or Interest.  Unless otherwise indicated, each Holder of an Allowed Claim or Interest, as applicable, shall receive such treatment on the later of (i) the Effective Date (or, if payment is not then due, in accordance with its terms in the ordinary course) or as soon as reasonably practicable thereafter, and (ii) the date on which such Holder's Claim or Interest becomes allowed.

     **1.      Class 1—Other Priority Claims.**

       (a)    *Classification*:  Class 1 consists of all Other Priority Claims.

       (b)    *Treatment*:  Except to the extent that a Holder of an Allowed Priority Claim agrees to less favorable treatment, in full and final satisfaction, compromise, settlement, and release of and in exchange for each Allowed Other Priority Claim, each Holder of an Allowed Other Priority Claim shall receive payment in full in Cash or other treatment rendering such Claim Unimpaired.

       (c)    *Voting*:  Class 1 is Unimpaired under the Plan.  Each Holder of a Class 1 Other Priority Claim is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, each Holder of a Class 1 Other Priority Claim is not entitled to vote to accept or reject the Plan.

2.    **Class 2—Other Secured Claims.**

   (a)    *Classification*:  Class 2 consists of all Other Secured Claims.

   (b)    *Treatment*:  Except to the extent that a Holder of an Allowed Other Secured Claim agrees to less favorable treatment, in full and final satisfaction, compromise, settlement, and release of and in exchange for each Allowed Other Secured Claim, each Holder of an Allowed Other Secured Claim shall receive, at the election of the Debtors:

   (i)    payment in full in Cash of such Allowed Other Secured Claim;

   (ii)    the Collateral securing such Allowed Other Secured Claim;

   (iii)    Reinstatement of such Allowed Other Secured Claim, notwithstanding any contractual provision or applicable non-bankruptcy Law that entitles the holder of such claim to demand or to receive payment prior to the stated maturity of such Allowed Other Secured Claim from and after the occurrence of default; or

   (iv)    such other treatment rendering such Allowed Other Secured Claim Unimpaired.

   (c)    *Voting*:  Class 2 is Unimpaired under the Plan.  Each Holder of a Class 2 Other Secured Claim is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, each Holder of a Class 2 Other Secured Claim is not entitled to vote to accept or reject the Plan.

3.    **Class 3—Term Loan Claims.**

   (a)    *Classification*:  Class 3 consists of all Term Loan Claims.

   (b)    *Allowance:*  Term Loan Claims shall be Allowed in the aggregate amount of [$●].

   (c)    *Treatment*:  Except to the extent that a Holder of an Allowed Term Loan Claim agrees to less favorable treatment, in full and final satisfaction, compromise, settlement, and release of and in exchange for each Allowed Term Loan Claim, each Holder of an Allowed Term Loan Claim will receive either:

   (i)    in the event the Sale Transaction is a Term Loan Credit Bid Transaction, its Pro Rata share of either (w) equity in the Purchaser entity that purchases the Assets, or (x) the Assets, in each case pursuant to the Sale Transaction Documentation; or

   (ii)    in the event the Sale Transaction is not a Term Loan Credit Bid Transaction, payment in full in Cash on the Effective Date.

   (d)    *Voting*:  Class 3 is Impaired under the Plan.  Each Holder of a Class 3 Term Loan Claim is entitled to vote to accept or reject the Plan.

4.    **Class 4—General Unsecured Claims.**

   (a)    *Classification*:  Class 4 consists of all General Unsecured Claims.

   (b)    *Treatment*:  Except to the extent that a Holder of an Allowed General Unsecured Claim agrees to less favorable treatment, in full and final satisfaction, compromise, settlement, and release of and in exchange for each Allowed General Unsecured Claim, each Holder of an Allowed General Unsecured Claim that is not assumed by the Purchaser pursuant to

the Sale Transaction Documentation will receive its Pro Rata share (calculated as its Pro Rata portion of all Allowed General Unsecured Claims and all Allowed Affiliate Claims) of the General Unsecured Claims Amount, with such distributions made by the Debtors for any distributions to Holders of Allowed General Unsecured Claims on the Effective Date, and made by the Liquidating Trust for any distributions made after the Effective Date.

For the avoidance of doubt, all General Unsecured Claims that are assumed by the Purchaser pursuant to the Sale Transaction Documentation shall be satisfied by the Purchaser in full in Cash following the Effective Date in the ordinary course of business; *provided* that any Allowed General Unsecured Claim that has been expressly assumed by the Purchaser under the Sale Transaction shall not be an obligation of the Debtors as of or after the Effective Date.

(c)     *Voting*:  Class 4 is Impaired.  Each Holder of a Class 4 General Unsecured Claim is entitled to vote to accept or reject the Plan.

**5.    Class 5—Affiliate Claims.**

(d)     *Classification*:  Class 5 consists of all Affiliate Claims.

(e)     *Treatment*:  Except to the extent that a Holder of an Allowed Affiliate Claim agrees to less favorable treatment, in full and final satisfaction, compromise, settlement, and release of and in exchange for each Allowed Affiliate Claim, each Holder of an Allowed Affiliate Claim that is not assumed by the Purchaser pursuant to the Sale Transaction Documentation will receive its Pro Rata share (calculated as its Pro Rata portion of all Allowed General Unsecured Claims and all Allowed Affiliate Claims) of the General Unsecured Claims Amount, with such distributions made by the Debtors for any distributions to Holders of Allowed Affiliate Claims on the Effective Date, and made by the Liquidating Trust for any distributions made after the Effective Date.

For the avoidance of doubt, all Affiliate Claims that are assumed by the Purchaser pursuant to the Sale Transaction Documentation shall be satisfied by the Purchaser in full in Cash following the Effective Date in the ordinary course of business; *provided* that any Allowed Affiliate Claim that has been expressly assumed by the Purchaser under the Sale Transaction shall not be an obligation of the Debtors as of or after the Effective Date.

(f)     *Voting*:  Class 5 is Impaired.  Each Holder of a Class 5 Affiliate Claim is entitled to vote to accept or reject the Plan.

**6.    Class 6—Intercompany Claims.**

(a)     *Classification*:  Class 6 consists of all purported Intercompany Claims.

(b)     *Treatment*:  Each Intercompany Claim will, at the election of the Debtors, be (i) Reinstated, (ii) canceled, released, and extinguished as of the Effective Date, and will be of no further force or effect, or (iii) recharacterized as Intercompany Interests.

     (c)     *Voting*:  Class 6 is either:

          (i)     Unimpaired, in which case the Holders of Allowed Intercompany Claims in Class 6 are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code; or

          (ii)     Impaired, and not receiving any distribution under the Plan, in which case the Holders of Allowed Intercompany Claims in Class 6 are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.

     Therefore, each Holder of a Class 6 Intercompany Claim will not be entitled to vote to accept or reject the Plan.

**7.    Class 7—Intercompany Interests.**

     (a)     *Classification*:  Class 7 consists of all Intercompany Interests.

     (b)     *Treatment*:  Intercompany Interests will, at the election of the Debtors, be:

          (i)     Reinstated; or

          (ii)     canceled, released, and extinguished as of the Effective Date, and will be of no further force or effect.

     (c)     *Voting*:  Class 7 is either:

          (i)     Unimpaired, in which case the Holders of Allowed Intercompany Interests in Class 7 are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code; or

          (ii)     Impaired, and not receiving any distribution under the Plan, in which case the Holders of Allowed Intercompany Interests in Class 7 are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.

     Therefore, each Holder of a Class 7 Intercompany Interest will not be entitled to vote to accept or reject the Plan.

**8.    Class 8—Section 510(b) Claims.**

     (a)     *Classification:*  Class 8 consists of all Section 510(b) Claims.

     (b)     *Treatment*:  Section 510(b) Claims will be canceled, released, and extinguished as of the Effective Date, and will be of no further force or effect, and each Holder of a Section 510(b) Claim will not receive any distribution on account of such Section 510(b) Claim.

     (c)     *Voting:*  Class 8 is Impaired and not receiving any distribution under the Plan.  Each Holder of a Section 510(b) Claim is deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code and is not entitled to vote to accept or reject the Plan.

9.   **Class 9—Dura Interests.**

(a)   *Classification:* Class 9 consists of all Dura Interests.

(b)   *Treatment*:

(i)   If the Sale Transaction Proceeds are sufficient to pay all Allowed General Unsecured Claims and Affiliate Claims in full, then (a) Holders of Dura Interests shall receive any remaining proceeds of the Sale Transaction Proceeds after all Allowed General Unsecured Claims and Affiliate Claims are paid in full from the Liquidating Trust, and (b) the Dura Interests will be canceled, released, and extinguished, and will be of no further force or effect; *provided* that the Dura Interests shall not be canceled until the entry of a Final Order in these Chapter 11 Cases or the Zohar Chapter 11 Cases directing such cancellation. No holder of Dura Interests shall receive any proceeds from the Debtors or the Liquidating Trust until a Final Order is entered in these Chapter 11 Cases or the Zohar Chapter 11 Cases directing a distribution to the Holders of Dura Interests.

(ii)   If the Sale Transaction Proceeds are **not** sufficient to pay all Allowed General Unsecured Claims and Affiliate Claims in full, then the Dura Interests will be canceled, released, and extinguished, and will be of no further force or effect, and each Holder of a Dura Interest will not receive any distribution on account of such Dura Interest; *provided* that the Dura Interests shall not be canceled until the entry of a Final Order in these Chapter 11 Cases or the Zohar Chapter 11 Cases directing such cancellation.

(c)   *Voting:* Class 9 is Impaired. Each Holder of a Class 9 Dura Interest is entitled to vote to accept or reject the Plan.

**C.   Special Provision Governing Unimpaired Claims.**

Except as otherwise provided in the Plan, nothing under the Plan shall affect, diminish, or impair the rights of the Debtors or the Purchaser, as applicable, with respect to any Unimpaired Claims, including all rights in respect of legal and equitable defenses to or setoffs or recoupments against any such Unimpaired Claims.

**D.   Elimination of Vacant Classes.**

Any Class of Claims or Interests that does not have a Holder of an Allowed Claim or Allowed Interest or a Claim or Interest temporarily Allowed by the Bankruptcy Court as of the date of the Confirmation Hearing shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

**E.   Voting Classes; Presumed Acceptance by Non-Voting Classes.**

If a Class contains Claims eligible to vote and no Holder of Claims eligible to vote in such Class votes to accept or reject the Plan, the Plan shall be presumed accepted by the Holders of such Claims in such Class.

**F.   Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code.**

Acceptance of the Plan by either Class 3 or 4 will satisfy section 1129(a)(10) of the Bankruptcy Code. The Debtors shall seek Confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Interests. The Debtors reserve the right to modify the Plan in accordance with Article XII to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification, including by modifying the treatment applicable to a Class of Claims or Interests to render such Class of Claims or Interests Unimpaired to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules.

G.      **Subordinated Claims.**

The allowance, classification, and treatment of all Allowed Claims and Allowed Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise.  Pursuant to section 510 of the Bankruptcy Code, the Debtors reserve the right to re-classify any Allowed Claim (except for any Term Loan Claims or DIP Facility Claims) or Allowed Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

**ARTICLE IV**
**MEANS FOR IMPLEMENTATION OF THE PLAN**

A.      **General Settlement of Claims.**

Except as otherwise expressly provided herein, pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good-faith compromise and settlement of all Claims, Interests, Causes of Action, and controversies released, settled, compromised, discharged, or otherwise resolved pursuant to the Plan.  The Plan shall be deemed a motion, proposed by the Debtors to approve the good-faith compromise and settlement of all such Claims, Interests, Causes of Action, and controversies pursuant to Bankruptcy Rule 9019, and the entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of such compromise and settlement under section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, as well as a finding by the Bankruptcy Court that such settlement and compromise is fair, equitable, reasonable, and in the best interests of the Debtors and their Estates.  Distributions made to Holders of Allowed Claims in any Class are intended to be final.

B.      **Sources of Plan Consideration.**

Cash on hand, the Sale Transaction Proceeds (if any), the General Unsecured Claims Amount, the Wind-Down Amount, the Debtors' rights under the Sale Transaction Documentation, payments made directly by the Purchaser on account of any Assumed Liabilities under the Sale Transaction Documentation, payments of Cure Costs made by the Purchaser pursuant to sections 365 or 1123 of the Bankruptcy Code, the return of any utility deposits as set forth in the Utility Order, and all Causes of Action not previously settled, released, or exculpated under the Plan, if any, shall be used to fund the distributions to Holders of Allowed Claims against the Debtors in accordance with the treatment of such Claims and subject to the terms provided herein.  Unless otherwise agreed in writing by the Debtors and the Purchaser, distributions required by this Plan on account of Allowed Claims that are Assumed Liabilities shall be the sole responsibility of the Purchaser to the extent such Claim is Allowed against the Debtors.

C.      **Sale Transaction.**

1.      **Sale Transactions.**

(a)      **The Transferred Assets**.

Following the Confirmation Date, the Debtors shall be authorized to consummate the Sale Transaction to the Purchaser pursuant to the terms of the Sale Transaction Documentation, the Plan, and the Confirmation Order.

Subject to the terms of the Sale Transaction Documentation, on the Effective Date, the Debtors shall consummate the Sale Transaction by, among other things, transferring the Transferred Assets to the Purchaser free and clear of all Liens, Claims, Interests, charges, and other encumbrances (other than the Assumed Liabilities) pursuant to sections 363, 365, and/or 1123 of the Bankruptcy Code, this Plan and the Confirmation Order.  Upon entry of the Confirmation Order by the Bankruptcy Court, all matters provided for under the Sale Transaction Documentation and the Plan, and any documents in connection herewith and therewith, shall be deemed authorized

and approved without any requirement of further act or action by the Debtors, the Debtors' shareholders or boards of directors, or any other Entity or Person.  The Debtors are authorized to execute and deliver, and to consummate the transactions contemplated by, the Sale Transaction Documentation and this Plan, as well as to execute, deliver, file, record, and issue any note, documents, or agreements in connection therewith, without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization, or approval of any Entity.  The Debtors' independent managers are authorized and empowered to execute on behalf of the Debtors the Sale Transaction Documentation and any other document contemplated by the Sale Transaction Documentation or this Plan.

The transactions contemplated by the Sale Transaction Documentation and this Plan are undertaken by the Debtors and the Purchaser without collusion and in good faith, as that term is defined in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided therein to consummate the transactions contemplated thereunder and hereunder shall not affect the validity of such transactions (including the assumption, assignment and/or transfer of any Executory Contract or Unexpired Lease to the Purchaser).  The Purchaser is a good faith purchaser within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to the full protections of section 363(m) of the Bankruptcy Code.

If the Term Loan Agent is the Purchaser, the Sale Transaction may be structured either as a taxable transaction or a reorganization under section 368(a)(1)(G) (a "G Reorganization") of the Internal Revenue Code, as set forth in the Description of Transaction Steps.

(b)        **The Purchaser Assumed Claims.**

The Sale Transaction Documentation shall provide that on the Effective Date, the Purchaser shall assume substantially all obligations owed by the Debtors to their customers and trade vendors that are expected to continue to do business with the Purchaser in the ordinary course of business following the Effective Date.  Following such assumption by the Purchaser, the Purchaser shall satisfy such obligations in cash following the Effective Date, and for the avoidance of doubt, any obligations that are assumed by the Purchaser shall cease to be Claims against the Debtors following such assumption.

2.    **Restructuring Transactions.**

Upon the entry of the Confirmation Order, the Debtors, the Liquidating Trustee, and the Purchaser are authorized, without further order of the Bankruptcy Court, to take all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Restructuring Transactions and the Sale Transaction under or in connection with the Plan, including:  (1) the execution and delivery of all appropriate agreements or other documents of merger, consolidation, sale, restructuring, conversion, disposition, transfer, dissolution, or liquidation containing terms that are consistent with the terms of the Plan, and that satisfy the requirements of applicable law; (2) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan; (3) rejection, assumption, or assumption and assignment, as applicable, of Executory Contracts and Unexpired Leases; (4) the filing of appropriate certificates or articles of incorporation, reincorporation, merger, consolidation, conversion, or dissolution pursuant to applicable state Law; (5) the Purchaser's establishment of the EIP Pool; (6) any transaction described in the Description of Transaction Steps; and (7) subject to the occurrence of the Effective Date, the consummation of the transactions contemplated by the Sale Transaction Documentation.

The Confirmation Order shall and shall be deemed to, pursuant to sections 363 and 1123 of the Bankruptcy Code, authorize, among other things, all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan, including the Restructuring Transactions.

**3.    Payment of Cure Costs and Other Amounts.**

On the Effective Date, the Purchaser shall pay all Cure Costs that are required to be paid (if any) pursuant to and in accordance with sections 365 or 1123 of the Bankruptcy Code with respect to any Executory Contracts or Unexpired Leases that are assumed by the Debtors and assigned to the Purchaser pursuant to the Sale Transaction Documentation and this Plan.   The Debtors (a) shall not have any obligation to make any payment or other distribution on account of any Cure Costs, and (b) shall have the obligation to pay the Purchaser for any amounts that are accrued as of the closing under the Sale Transaction Documentation prorated per diem as of such closing not yet due and payable with respect to any Executory Contracts or Unexpired Leases that are assumed by the Debtors and assigned to the Purchaser pursuant to the Sale Transaction Documentation and this Plan.

**D.    Vesting of Assets.**

Except as otherwise provided in the Plan, the Sale Transaction Documentation, or any agreement, instrument, or other document incorporated herein or therein, on the Effective Date:  (a) the Transferred Assets shall be preserved and shall vest in the Purchaser, free and clear of all Liens, Claims, charges, and other encumbrances (other than the Assumed Liabilities); and (b) the Retained Assets shall vest in the Liquidating Trust for the purpose of liquidating the Estates, free and clear of all Liens, Claims, charges, and other encumbrances.  For the avoidance of doubt, all Transferred Causes of Action shall be transferred to the Purchaser on the Effective Date, and the Retained Causes of Action shall vest in the Liquidating Trust on the Effective Date for prosecution, settlement, or other action as determined by the Liquidating Trustee.

On and after the Effective Date, except as otherwise provided in the Plan and subject in all respects to the Sale Transaction Documentation and the Plan, the Liquidating Trustee may operate the Debtors' businesses and use, acquire, or dispose of property and, as applicable, compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.  For the avoidance of doubt, following the Effective Date, the Purchaser may operate its businesses and use, acquire, or dispose of property, including the Transferred Assets, without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

**E.    Employee Incentive Plan**

Solely if the Sale Transaction is a Term Loan Credit Bid Transaction, following the Effective Date, the initial board of directors of the Purchaser shall, in its sole discretion, adopt and implement the Employee Incentive Plan, which shall provide for the terms and conditions under which the EIP Pool may be allocated and distributed to certain participating employees of the Purchaser.

**F.    Wind-Down Amount.**

On or prior to the Effective Date, the Debtors shall retain the Wind-Down Amount in accordance with the terms of the Sale Transaction Documentation.

**G.    Wind-Down.**

On and after the Effective Date, the Debtors shall: (1) continue in existence for purposes of (a) winding down the Debtors' businesses and affairs as expeditiously as reasonably possible, (b) resolving Disputed Claims as provided hereunder, (c) paying Allowed Claims not assumed by the Purchaser as provided hereunder, (d) filing appropriate tax returns, (e) complying with their continuing obligations under the Sale Transaction Documentation, and (f) administering the Plan in an efficacious manner; and (2) thereafter liquidate as set forth in the Plan.

**H.**     **Liquidating Trustee**.

**1.**     **General**

On and after the Effective Date, the Liquidating Trustee shall act for the Debtors in the same fiduciary capacity as applicable to a board of managers, directors, and officers, subject to the provisions hereof (and all certificates of formation, membership agreements, and related documents are deemed amended by the Plan to permit and authorize the same).  On the Effective Date, the authority, power, and incumbency of the persons acting as managers and officers of the Debtors shall be deemed to have resigned, and a representative of the Liquidating Trustee shall be appointed as the sole manager and sole officer of the Debtors, and shall succeed to the powers of the Debtors' managers, directors, and officers.  From and after the Effective Date, the Liquidating Trustee shall be the sole representative of, and shall act for, the Debtors as further described in <u>Article VII</u>.

**2.**     **Claims Reconciliation**

Following the Effective Date, in addition to the responsibilities set forth in <u>Article IV.H.1</u>, the Liquidating Trustee shall administer the Debtors' Estates for the purpose of effectuating the Claims reconciliation and settlement process of all Claims, and making distributions to the Holders of such Claims in accordance with the terms of the Liquidating Trust Agreement.

**I.**     **The General Unsecured Claims Amount.**

The General Unsecured Claims Amount shall be used to make distributions on account of Allowed General Unsecured Claims and Affiliate Claims on a Pro Rata basis as set forth in <u>Article III.B.4-5</u>.  Distributions to Holders of Allowed General Unsecured Claims and Affiliate Claims that are made on the Effective Date shall be made by the Debtors, and the remaining proceeds of the General Unsecured Claims Amount shall be placed in the Liquidating Trust for the benefit of (a) Holders of Allowed General Unsecured Claims and Affiliate Claims and (b) solely if such proceeds are sufficient to pay in full all Allowed General Unsecured Claims and Affiliate Claims, Holders of Dura Interests, in each case as set forth in greater detail in the Liquidating Trust Agreement.  No distributions shall be made to Holders of Dura Interests by the Debtors or the Liquidating Trust until a Final Order is entered in these Chapter 11 Cases or the Zohar Chapter 11 Cases directing a distribution to the Holders of Dura Interests.

**J.**     **Cancellation of Notes, Instruments, Certificates, and Other Documents.**

On the Effective Date, except as otherwise specifically provided for in the Plan: (1) the obligations of any Debtor under any certificate, share, note, bond, indenture, purchase right, or other instrument or document, directly or indirectly evidencing or creating any indebtedness or obligation of giving rise to any Claim shall be cancelled and deemed surrendered as to the Debtors and shall not have any continuing obligations thereunder; and (2) the obligations of the Debtors pursuant, relating, or pertaining to any agreements, indentures, certificates of designation, bylaws, or certificates or articles of incorporation or similar documents governing the shares, certificates, notes, bonds, indenture, purchase rights, options, warrants, or other instruments or documents evidencing or creating any indebtedness or obligation of the Debtors shall be fully released, settled, and compromised; *provided*, *however*, that notwithstanding anything to the contrary contained herein, any indenture or agreement that governs the rights of the DIP Agent and the Term Loan Agent shall continue in effect to allow each of them, as applicable, to (A) enforce its rights, Claims, and interests (and those of any predecessor or successor thereto) vis-à-vis any parties other than the Debtors, (B) receive distributions under the Plan and to distribute them to Holders of Allowed DIP Facility Claims and Term Loan Claims, as applicable, in accordance with the terms of such agreements, (C) enforce its rights to payment of fees, expenses, and indemnification obligations as against any money or property distributable to Holders of Allowed DIP Facility Claims and Term Loan Claims, as applicable, including any rights to priority of payment and/or to exercise charging liens, and (D) appear and be heard in the Chapter 11 Cases or in any proceeding in the Bankruptcy Court, including to enforce any obligation owed to the DIP Agent, the Term Loan Agent, or Holders of DIP Facility Claims and Term Loan Claims under the Plan, as applicable; *provided*, *further*, that notwithstanding anything to the contrary, no Interests in the Debtors shall be cancelled pending a further Final Order entered in these Chapter 11 Cases or the Zohar Chapter 11 Cases directing such cancellation.

**K.**      **Corporate Action.**

Upon the Effective Date, by virtue of the solicitation of votes in favor of the Plan and entry of the Confirmation Order, all actions contemplated by the Plan and the Sale Transaction Documentation (including any action to be undertaken by the Debtors or the Liquidating Trustee, as applicable) shall be deemed authorized, approved, and, to the extent taken prior to the Effective Date, ratified without any requirement for further action by Holders of Claims or Interests, the Debtors, the Liquidating Trustee, or any other Entity or Person.  All matters provided for in the Plan involving the corporate structure of the Debtors, including the creation of the Purchaser, the consummation of the Sale Transaction, and any corporate action required by the Debtors in connection therewith, shall be deemed to have occurred and shall be in effect, without any requirement of further action by the Debtors or the Debtors' Estates; *provided, however,* that for the avoidance of doubt, the Purchaser may be formed by a person or entity other than the Debtors, as set forth in the Description of Transaction Steps.

Upon the Effective Date or as soon as reasonably practicable thereafter, after making all distributions provided for under the Plan, the Debtors shall be deemed to have been dissolved and terminated, except as necessary to satisfy their obligations under the Sale Transaction Documentation.  The directors, managers, and officers of the Debtors and the Liquidating Trustee, as applicable, shall be authorized to execute, deliver, File, or record such contracts, instruments, and other agreements or documents and take such other actions as they may deem necessary or appropriate to implement the provisions of this Article IV.K.

The authorizations and approvals contemplated by this Article IV.K shall be effective notwithstanding any requirements under applicable nonbankruptcy Law.

**L.**      **Dissolution of the Boards of the Debtors.**

As of the Effective Date, the existing boards of directors or managers, as applicable, of the Debtors shall be dissolved without any further action required on the part of the Debtors or the Debtors' officers, directors, managers, shareholders, or members, and any remaining officers, directors, managers, or managing members of any Debtor shall be dismissed without any further action required on the part of any such Debtor, the equity holders of the Debtors, the officers, directors, or managers, as applicable, of the Debtors, or the members of any Debtor.

As of the Effective Date, the Liquidating Trustee shall act as the sole officer, director, and manager, as applicable, of the Debtors with respect to their affairs other than matters substantially related to the transactions described in Article IV.C.1-2 of the Plan.  Subject in all respects to the terms of this Plan, the Liquidating Trustee shall have the power and authority to take any action necessary to wind down and dissolve any of the Debtors, and shall:  (a) file a certificate of dissolution for any of the Debtors, together with all other necessary corporate and company documents, to effect the dissolution of the Debtors under the applicable Laws of the applicable state(s) of formation; and (b) complete and file all final or otherwise required federal, state, and local tax returns and shall pay taxes required to be paid for any of the Debtors, and pursuant to section 505(b) of the Bankruptcy Code, request an expedited determination of any unpaid tax liability of any of the Debtors or their Estates for any tax incurred during the administration of such Debtor's Chapter 11 Case, as determined under applicable tax laws.

The filing by the Liquidating Trustee of any of the Debtors' certificates of dissolution shall be authorized and approved in all respects without further action under applicable law, regulation, order, or rule, including any action by the stockholders, members, board of directors, or board of managers of any of the Debtors or any of their affiliates.

**M.**      **Release of Liens.**

Except as otherwise expressly provided herein, on the Effective Date, all Liens on any property of any Debtors shall automatically terminate, all property subject to such Liens shall be automatically released, and all guarantees of any Debtors shall automatically be discharged and released.

N.    **Effectuating Documents; Further Transactions.**

The Debtors and the officers and members thereof are authorized to and may issue, execute, deliver, file, or record such contracts, securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan, without the need for any approvals, authorizations, notice, or consents, except for those expressly required pursuant to the Plan.

O.    **Exemption from Certain Taxes and Fees.**

To the maximum extent provided by section 1146(a) of the Bankruptcy Code, any post-Confirmation transfer from any Entity pursuant to, in contemplation of, or in connection with the Plan, the Sale Transaction or the Sale Transaction Documentation or pursuant to: (1) the issuance, distribution, transfer, or exchange of any debt, equity security, or other interest in the Debtors; or (2) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instruments of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment, in each case to the extent permitted by applicable bankruptcy law, and the appropriate state or local government officials or agents shall forego collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

P.    **Causes of Action.**

As of the Effective Date, the Debtors shall assign and transfer to the Purchaser all of the Transferred Causes of Action pursuant to the Sale Transaction Documentation on the Effective Date.

No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any such Cause of Action against them as any indication that the Purchaser or the Debtors will not pursue any and all available Causes of Actions against them.  No preclusion doctrine, including the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation.

Q.    **The Liquidating Trust.**

On the Effective Date, the Liquidating Trust will be formed to implement the Wind Down, including the liquidation of the Liquidating Trust Assets.  The Liquidating Trustee shall be the trustee of the Liquidating Trust and shall have the rights, powers, and obligations set forth in the Liquidating Trust Agreement with respect to such trustee.  The Liquidating Trust will have no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Liquidating Trust. Upon the transfer of the Liquidating Trust Assets as more fully set forth in the Liquidating Trust Agreement, the Debtors will have no reversionary or further interest in or with respect to the Liquidating Trust Assets.  For all federal income tax purposes, the beneficiaries of the Liquidating Trust will be treated as grantors and owners thereof and it is intended that the Liquidating Trust be classified as a liquidating trust under Section 301.7701-4 of the Treasury Regulations.  Accordingly, for federal income tax purposes, it is intended that the beneficiaries of the Liquidating Trust be treated as if they had received an interest in the Liquidating Trust's assets and then contributed such interests to the Liquidating Trust.  The beneficiaries of the Liquidating Trust shall be the Holders of Allowed General Unsecured Claims and Affiliate Claims and, if all Allowed General Unsecured Claims and Affiliate Claims are paid in full, Holders of Allowed Dura Interests; *provided* that no distributions shall be made to Holders of Dura Interests until a Final Order is entered in these Chapter 11 Cases or the Zohar Chapter 11 Cases directing such distribution.  The Liquidating Trust will, in an expeditious but orderly manner, liquidate and convert to Cash the Liquidating Trust Assets, make timely distributions to the beneficiaries of the Liquidating Trust pursuant to the Plan and the Confirmation Order, and not unduly prolong its duration.  The Liquidating Trust will not be deemed a successor in interest to the Debtors.  Upon the termination of the Liquidating Trust, any excess funds shall be paid to Holders of Allowed General Unsecured Claims and Affiliate Claims (unless Holders of Allowed General Unsecured

Claims and Affiliate Claims have already been paid in full, in which case any excess funds shall be distributed to the Holders of Allowed Dura Interests until a Final Order is entered in these Chapter 11 Cases or the Zohar Chapter 11 Cases directing such distribution) on a Pro Rata basis as set forth in the Liquidating Trust Agreement.

The Liquidating Trustee shall be the trustee of the Liquidating Trust and shall continue to have all of the rights and powers granted to the Debtors and the Liquidating Trustee as set forth in this Plan and applicable non-bankruptcy law, and the Liquidating Trustee shall also have the rights, powers, and obligations set forth in the Liquidating Trust Agreement.

**R.      Closing the Chapter 11 Cases**.

For the avoidance of doubt, upon the occurrence of the Effective Date, the Liquidating Trustee shall be permitted to close all of the Chapter 11 Cases of the Debtors except for the Chapter 11 Case of Dura and any other Debtor identified in the Description of Transaction Steps as having its Chapter 11 Case remain open until following the Effective Date, and all contested matters relating to each of the Debtors, including objections to Claims, shall be administered and heard in the Chapter 11 Case of Dura, irrespective of whether such Claim(s) were filed against a Debtor whose Chapter 11 Case was closed.

When all Disputed Claims have become Allowed or disallowed and all remaining Cash has been distributed in accordance with the Plan, the Liquidating Trustee shall seek authority from the Bankruptcy Court to close any remaining Chapter 11 Cases of the Debtors in accordance with the Bankruptcy Code and the Bankruptcy Rules.

## ARTICLE V
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**A.      Assumption and Rejection of Executory Contracts and Unexpired Leases.**

On the Effective Date, the Debtors shall assume and assign to Purchaser, as part of the Sale Transaction, the Executory Contracts and Unexpired Leases that are required to be assigned to the Purchaser pursuant to the Sale Transaction Documentation.  Except as otherwise provided herein, each Executory Contract and Unexpired Lease (other than any Executory Contract or Unexpired Lease previously rejected, assumed, or assumed and assigned), any employee benefit plans, severance plans, and other Executory Contracts under which employee obligations arise, shall be deemed automatically rejected on the Effective Date pursuant to sections 365 and 1123 of the Bankruptcy Code, unless such Executory Contract or Unexpired Lease:  (1) is specifically described in the Plan as to be assumed in connection with Confirmation of the Plan, or is specifically scheduled to be assumed or assumed and assigned pursuant to the Plan or the Plan Supplement; (2) is subject to a pending motion to assume such Unexpired Lease or Executory Contract as of the Effective Date; (3) is to be assumed by the Debtors or assumed by the Debtors and assigned to the Purchaser or another third party, as applicable, in connection with the Sale Transaction; (4) is a contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan; (5) is a D&O Policy; (6) is the Sale Transaction Documentation; or (7) is a purchase order or related contract with a Holder of a Purchaser Assumed Claim.

Entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of such assumptions, assignments, and rejections, including the assumption and assignment of the Executory Contracts or Unexpired Leases as provided in the Sale Transaction Documentation and the Plan Supplement, pursuant to sections 365(a) and 1123 of the Bankruptcy Code. Unless otherwise indicated, assumptions or rejections of Executory Contracts and Unexpired Leases pursuant to the Plan or Sale Transaction Documentation are effective as of the Effective Date. Any motions to assume Executory Contracts or Unexpired Leases pending on the Effective Date shall be subject to approval by a Final Order of the Bankruptcy Court on or after the Effective Date.

If certain, but not all, of a contract counterparty's Executory Contracts and Unexpired Leases are assumed pursuant to the Plan, the Confirmation Order will be a determination that such counterparty's Executory Contracts and Unexpired Leases that are being rejected pursuant to the Plan are severable agreements that are not integrated with those Executory Contracts and Unexpired Leases that are being assumed pursuant to the Plan.  Parties seeking to contest this finding with respect to their Executory Contracts and/or Unexpired Leases must file a timely

objection by the Confirmation Objection Deadline on the grounds that their agreements are integrated and not severable.

**B.    Claims Based on Rejection of Executory Contracts or Unexpired Leases.**

Unless otherwise provided by a Final Order of the Bankruptcy Court, any Proof of Claim based on the rejection of the Debtors' Executory Contracts or Unexpired Leases pursuant to the Plan or otherwise, must be Filed with the Bankruptcy Court and served on the Debtors or, after the Effective Date, the Liquidating Trustee, as applicable, no later than 30 days after the effective date of the rejection of such Executory Contract or Unexpired Lease.  In addition, any objection to the rejection of an Executory Contract or Unexpired Lease must be Filed with the Bankruptcy Court and served on the Debtors or, after the Effective Date, the Liquidating Trustee, as applicable, no later than 14 days after service of the Debtors' proposed rejection of such Executory Contract or Unexpired Lease.

**Any Holders of Claims arising from the rejection of an Executory Contract or Unexpired Lease for which Proofs of Claim were required to be but were not timely Filed shall not (1) be treated as a creditor with respect to such Claim, (2) be permitted to vote to accept or reject the Plan on account of any Claim arising from such rejection, or (3) participate in any distribution in the Chapter 11 Cases on account of such Claim. Claims arising from the rejection of an Executory Contract or Unexpired Lease not Filed with the Bankruptcy Court within such time will be automatically disallowed, forever barred from assertion, and shall not be enforceable against the Debtors, the Debtors' Estates, or the property for any of the foregoing without the need for any objection by the Debtors or further notice to, or action, order, or approval of the Bankruptcy Court or any other Entity, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully compromised, settled, and released, notwithstanding anything in the Schedules or a Proof of Claim to the contrary.** All Allowed Claims arising from the rejection of the Debtors' prepetition Executory Contracts or prepetition Unexpired Leases shall be classified as General Unsecured Claims against the appropriate Debtor, except as otherwise provided by order of the Bankruptcy Court.

**C.    Cure of Defaults for Assumed Executory Contracts and Unexpired Leases.**

Any monetary defaults under an Executory Contract or Unexpired Lease to be assumed by the Debtors as set forth in Article V.A, as reflected on the Cure Notice shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of such Cure Costs in Cash on or about the Effective Date, subject to the limitations described below and set forth in the Sale Transaction Documentation and Article IV.C herein, or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree.  In the event of a dispute regarding (1) the Cure Costs, (2) the ability of the Purchaser or any assignee, to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed, or (3) any other matter pertaining to assumption, the cure payments required by section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order or orders resolving the dispute and approving the assumption.

Assumption (or assumption and assignment) of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed (or assumed and assigned) Executory Contract or Unexpired Lease at any time before the date that the Debtors assume such Executory Contract or Unexpired Lease. **All liabilities reflected in the Schedules and any Proof of Claim Filed with respect to an Executory Contract or Unexpired Lease that has been assumed shall be deemed disallowed and expunged, without further notice to or action, order, or approval of the Bankruptcy Court**.

**D.    D&O Policies.**

The D&O Policies shall be assumed by the Debtors on behalf of the applicable Debtor effective as of the Effective Date, pursuant to sections 365 and 1123 of the Bankruptcy Code, and nothing shall alter, modify, or amend, affect or impair the terms and conditions of (or the coverage provided by) any of the D&O Policies

including the coverage for defense and indemnity under any of the D&O Policies which shall remain available to all individuals within the definition of "Insured" in any of the D&O Policies.

**E.      Modifications, Amendments, Supplements, Restatements, or Other Agreements.**

Unless otherwise provided in the Plan, each Executory Contract or Unexpired Lease that is assumed shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and Executory Contracts and Unexpired Leases related thereto, if any, including easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under the Plan.

Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith, absent a Final Order of the Bankruptcy Court to the contrary.

**F.      Reservation of Rights.**

Neither the exclusion nor inclusion of any Executory Contract or Unexpired Lease on the Assumed Contracts and Leases List, nor anything contained in the Plan or Sale Transaction Documentation, shall constitute an admission by the Debtors or any other Entity, as applicable, that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that either any Debtor or any other Entity, as applicable, has any liability thereunder. In the event of a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors or the Liquidating Trustee, as applicable, shall have 30 days following entry of a Final Order resolving such dispute to alter the treatment of such contract or lease as otherwise provided in the Plan.

**G.      Nonoccurrence of Effective Date.**

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code.

## ARTICLE VI
## PROVISIONS GOVERNING DISTRIBUTIONS

**A.      Timing and Calculation of Amounts to Be Distributed.**

Unless otherwise provided in the Plan, on the Effective Date or as soon as reasonably practicable thereafter (or, if a Claim is not an Allowed Claim on the Effective Date, on the date that such Claim becomes Allowed or as soon as reasonably practicable thereafter), each Holder of an Allowed Claim against the Debtors shall receive the full amount of the distributions that the Plan provides for Allowed Claims in the applicable Class from the Debtors or the Liquidating Trustee on behalf of the Debtors, as applicable.  In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, in which case such payment shall be deemed to have occurred when due.  If and to the extent that there are Disputed Claims, distributions on account of any such Disputed Claims shall be made pursuant to the provisions set forth in Article VIII. Notwithstanding anything to the contrary in the Plan, no Holder of an Allowed Claim shall, on account of such Allowed Claim, receive a distribution in excess of the Allowed amount of such Claim plus any interest accruing on such Claim that is actually payable in accordance with the Plan.

**B.      Rights and Powers of the Liquidating Trustee.**

**1.      Powers of the Debtors and the Liquidating Trustee.**

Except as otherwise set forth herein, all distributions under the Plan shall be made on the Effective Date or as soon as reasonably practicable thereafter by the Debtors or the Liquidating Trustee (or its designee(s)), the timing of which shall be subject to the reasonable discretion of the Debtors or the Liquidating Trustee, as applicable.

On and after the Effective Date, the Liquidating Trustee and its designees or representatives shall have the right to object to, Allow, or otherwise resolve any General Unsecured Claim, Priority Claim, or Other Secured Claim, subject to the terms hereof.

The Debtors and the Liquidating Trustee, as applicable, shall not be required to give any bond or surety or other security for the performance of their duties unless otherwise ordered by the Bankruptcy Court.  However, in the event that the Liquidating Trustee is so ordered after the Effective Date, all costs and expenses of procuring any such bond or surety shall be paid for with Cash by the Debtors.

**2.      Fees of Liquidating Trustee and Expenses Incurred On or After the Effective Date.**

Except as otherwise ordered by the Bankruptcy Court, the fees and expenses incurred by the Liquidating Trustee on or after the Effective Date (including taxes) and any reasonable compensation and expense reimbursement Claims (including attorney fees and expenses) made by the Liquidating Trustee in connection with such person's duties shall be paid without any further notice to or action, order, or approval of the Bankruptcy Court in Cash by the Debtors if such amounts relate to any actions taken hereunder.

**C.      Delivery of Distributions and Undeliverable or Unclaimed Distributions.**

**1.      Record Date for Distribution.**

Except as provided herein, on the Distribution Record Date, the Claims Register shall be closed and the Debtors and the Liquidating Trustee, or any other party responsible for making distributions shall instead be authorized and entitled to recognize only those record Holders listed on the Claims Register as of the close of business on the Distribution Record Date.

2.    **Delivery of Distributions on DIP Facility Claims.**

Notwithstanding any provision of the Plan to the contrary, to the extent the DIP Agent is not the Purchaser, all distributions on account of Allowed DIP Facility Claims shall be governed by the documents governing the DIP Facility and such distribution shall be deemed completed when made to the DIP Agent, which shall be deemed the Holder of their respective portion of the Allowed DIP Facility Claims for purposes of distributions to be made hereunder.  The DIP Agent shall hold or direct such distributions for the benefit of their respective Holders of Allowed DIP Facility Claims.  As soon as practicable following compliance with the requirements set forth in this Article VI, the DIP Agent shall arrange to deliver or direct the delivery of such distributions to or on behalf of their respective Holders of DIP Facility Claims.

3.    **Delivery of Distributions on Term Loan Claims.**

Notwithstanding any provision of the Plan to the contrary, all distributions on account of Allowed Term Loan Claims shall be governed by the Term Loan Credit Agreement and shall be deemed completed when made to the Term Loan Agent, which shall be deemed the Holder of their respective portion of the Allowed Term Loan Claims for purposes of distributions to be made hereunder.  The Term Loan Agent shall hold or direct such distributions for the benefit of their respective Holders of Allowed Term Loan Claims.  As soon as practicable following compliance with the requirements set forth in this Article VI, the Term Loan Agent shall arrange to deliver or direct the delivery of such distributions to or on behalf of their respective Holders of Term Loan Claims.

4.    **Delivery of Distributions in General.**

(a)    Payments and Distributions on Disputed Claims.

Distributions made after the Effective Date to Holders of Disputed Claims that are not Allowed Claims as of the Effective Date but which later become Allowed Claims shall, in the reasonable discretion of the Liquidating Trustee, be deemed to have been made on the Effective Date unless the Liquidating Trustee and the Holder of such Claim agree otherwise.

(b)    Special Rules for Distributions to Holders of Disputed Claims.

Notwithstanding any provision otherwise in the Plan and except as may be agreed to by, as applicable, the Debtors or the Liquidating Trustee, as applicable, on the one hand, and the Holder of a Disputed Claim, on the other hand, no partial payments and no partial distributions shall be made with respect to any Disputed Claim, other than with respect to Professional Fee Claims, until all Disputed Claims held by the Holder of such Disputed Claim have become Allowed Claims or have otherwise been resolved by settlement or Final Order.

(c)    Distributions.

On and after the Effective Date, the Debtors shall make the distributions required to be made on account of Allowed Claims under the Plan.  Any distribution that is not made on the Initial Distribution Date or on any other date specified in the Plan because the Claim that would have been entitled to receive that distribution is not an Allowed Claim on such date, shall be held by the Debtors or the Liquidating Trust in reserve in accordance with the Plan, as applicable, and distributed on the next Subsequent Distribution Date that occurs after such Claim is Allowed.  Subject to Article VI.E, no interest shall accrue or be paid on the unpaid amount of any distribution paid pursuant to the Plan.

5.    **Minimum; *De Minimis* Distributions.**

No Cash payment of less than $500, in the reasonable discretion of the Liquidating Trustee, shall be made to a Holder of an Allowed Claim or Allowed Interest on account of such Allowed Claim or Allowed Interest.

**6.   Undeliverable Distributions and Unclaimed Property.**

In the event that any distribution to any Holder is returned as undeliverable, no distribution to such Holder shall be made unless and until the Liquidating Trustee, as applicable, has determined the then current address of such Holder, at which time such distribution shall be made to such Holder without interest; *provided* that such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of six months from the date the distribution is made.  After such date, all unclaimed property or interests in property shall revert (notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property Laws to the contrary) to the Debtors or the Liquidating Trust, as applicable, automatically and without need for a further order by the Bankruptcy Court and the Claim of any holder to such property or interest in property shall be released, settled, compromised, and forever barred.

**7.   Manner of Payment Pursuant to the Plan.**

Any payment in Cash to be made pursuant to the Plan shall be made at the election of the Liquidating Trustee, by check or by wire transfer, at the sole and exclusive discretion of the Liquidating Trustee.

**D.   Compliance with Tax Requirements/Allocations.**

In connection with the Plan, to the extent applicable, the Liquidating Trustee shall request distributees to provide appropriate documentation that may be required for an exemption from withholding or reporting, and shall comply with all tax withholding and reporting requirements imposed on it by any Governmental Unit, and all distributions pursuant hereto shall be subject to such withholding and reporting requirements unless an exception applies.  Notwithstanding any provision in the Plan to the contrary, the Liquidating Trustee shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms it believes is reasonable and appropriate.  The Liquidating Trustee reserves the right to allocate all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support, and other spousal awards, liens, and encumbrances.  All Persons holding Claims shall be required to provide any information necessary to effect information reporting and the withholding of such taxes. Notwithstanding any other provision of the Plan to the contrary, each Holder of an Allowed Claim shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any Governmental Unit, including income, withholding, and other tax obligations, on account of such distribution.

**E.   Allocation of Plan Distributions Between Principal and Interest.**

Distributions in respect of Allowed Claims shall be allocated first to the principal amount of such Claims (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claims, to any portion of such Claims for accrued but unpaid interest as Allowed therein.

**F.   Setoffs and Recoupment.**

Except as otherwise expressly provided herein, the Debtors may, but shall not be required to, setoff against or recoup from any Claims of any nature whatsoever that the Debtors may have against the claimant, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors of any such Claim it may have against the Holder of such Claim.  Notwithstanding anything to the contrary in the Plan, nothing in the Plan or the Plan Supplement shall discharge, release, impair, or otherwise preclude any valid right of setoff or recoupment of the Debtors' customers under applicable Law or an applicable contract that is assigned to the Purchaser, which valid right of setoff or recoupment shall continue against the Purchaser following the Effective Date.

**G.**     **Claims Paid or Payable by Third Parties.**

**1.**     **Claims Paid by Third Parties.**

The Debtors shall reduce in full a Claim, and such Claim shall be disallowed without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment in full on account of such Claim from a party that is not a Debtor.  Subject to the last sentence of this paragraph, to the extent a Holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not a Debtor on account of such Claim, such Holder shall, within 14 days of receipt thereof, repay or return the distribution to the Debtors to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan.  The failure of such Holder to timely repay or return such distribution shall result in the Holder owing the Debtors annualized interest at the Federal Judgment Rate on such amount owed for each Business Day after the 14-day grace period specified above until the amount is repaid.

**2.**     **Claims Payable by Insurance, Third Parties.**

No distributions under the Plan shall be made on account of a Claim that is payable pursuant to one of the Debtors' insurance policies, other non-Debtor payment agreements, or collateral held by a third party, until the Holder of such Claim has exhausted all remedies with respect to such insurance policy, other non-Debtor payment agreement, or collateral, as applicable.  To the extent that one or more of the Debtors' insurers, or non-Debtor-payors pays or satisfies in full or in part a Claim (if and to the extent finally adjudicated by a court of competent jurisdiction or otherwise settled), or such collateral or proceeds from such collateral is used to satisfy such Claim, then immediately upon such payment, the applicable portion of such Claim shall be expunged without a Claim objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

**3.**     **Applicability of Insurance Policies.**

Notwithstanding anything to the contrary in the Plan or Confirmation Order, Confirmation and Consummation of the Plan shall not limit or affect the rights of any third-party beneficiary or other covered party of any of the Debtor's insurance policies with respect to such policies (including the D&O Policies), nor shall anything contained herein (a) constitute or be deemed a waiver by such insurers of any rights or defenses, including coverage defenses, held by such insurers under any insurance policy, applicable law, equity, or otherwise, or (b) establish, determine, or otherwise imply any liability or obligation, including any coverage obligation, of any insurer.

**H.**     **Indefeasible Distributions.**

Any and all distributions made under the Plan shall be indefeasible and not subject to clawback.

**ARTICLE VII**
**THE LIQUIDATING TRUSTEE**

**A.**     **The Liquidating Trustee.**

Except as set forth elsewhere in the Plan, the powers of the Liquidating Trustee shall include any and all powers and authority to implement the Plan and to administer and distribute the Wind-Down Amount and wind down the businesses and affairs of the Debtors, including:  (1) liquidating, receiving, holding, and investing, supervising, and protecting the Retained Assets; (2) taking all steps to execute all instruments and documents necessary to effectuate the distributions to be made under the Plan from the Wind-Down Amount; (3) making distributions from the Wind-Down Amount as contemplated under the Plan; (4) establishing and maintaining bank accounts in the name of the Debtors; (5) subject to the terms set forth herein, employing, retaining, terminating, or replacing professionals to represent it with respect to its responsibilities or otherwise effectuating the Plan to the extent necessary; (6) paying reasonable fees, expenses, debts, charges, and liabilities of the Debtors on and after the Effective Date; (7) administering and paying taxes of the Debtors on and after the Effective Date, including filing

tax returns; (8) representing the interests of the Debtors or the Estates before any taxing authority in all matters, including any action, suit, proceeding or audit; and (9) exercising such other powers as may be vested in it pursuant to order of the Bankruptcy Court or pursuant to the Plan, or as it reasonably deems to be necessary and proper to carry out the provisions of the Plan.  Furthermore, the Patriarch Parties shall cooperate with the Debtors or the Liquidating Trustee, as appropriate, with respect to tax matters, including providing any necessary information to the Debtors or the Liquidating Trustee with respect to such tax matters.

The Liquidating Trustee may resign at any time upon 30 days' written notice delivered to the Bankruptcy Court; *provided* that such resignation shall only become effective upon the appointment of a permanent or interim successor Liquidating Trustee in accordance with the Liquidating Trust Agreement.  Upon its appointment, the successor Liquidating Trustee, without any further act, shall become fully vested with all of the rights, powers, duties, and obligations of its predecessor (as set forth in the Liquidating Trust Agreement) and all responsibilities of the predecessor Liquidating Trustee relating to the Debtors in the Liquidating Trust Agreement shall be terminated.

### 1.    Liquidating Trustee Rights and Powers.

The Liquidating Trustee shall retain and have all the rights, powers, and duties necessary to carry out his or her responsibilities under this Plan, and as otherwise provided in the Confirmation Order.  The Liquidating Trustee shall be the exclusive trustee of the Retained Assets for the purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3), as well as the representative of the Estates appointed pursuant to section 1123(b)(3)(B) of the Bankruptcy Code.

### 2.    Retention of Professionals.

The Liquidating Trustee shall have the right to retain the services of attorneys, accountants, and other professionals that, in the discretion of the Liquidating Trustee, are necessary to assist the Liquidating Trustee in the performance of his or her duties.  The reasonable fees and expenses of such professionals shall be paid by the Debtors upon the monthly submission of statements to the Liquidating Trustee.  The payment of the reasonable fees and expenses of the Liquidating Trustee's retained professionals shall be made in the ordinary course of business by the Debtors and shall not be subject to the approval of the Bankruptcy Court.

### 3.    Compensation of the Liquidating Trustee.

The Liquidating Trustee's post-Effective Date compensation will be set forth in the Plan Supplement and paid by the Liquidating Trust.

### 4.    Liquidating Trustee Expenses.

All costs, expenses and obligations incurred by the Liquidating Trustee in administering this Plan, the Debtors on or after the Effective Date, or in any manner connected, incidental or related thereto, in effecting distributions from the Debtors thereunder (including the reimbursement of reasonable expenses) shall be paid by the Liquidating Trust as they are incurred without the need for Bankruptcy Court approval.

### B.    Wind-Down.

On and after the Effective Date, the Liquidating Trustee will be authorized to implement the Plan and any applicable orders of the Bankruptcy Court, and the Liquidating Trustee shall have the power and authority to take any action necessary to wind down and dissolve the Debtors' Estates; *provided* that the Liquidating Trustee shall not dissolve the Debtors until a Final Order directing the cancellation of Interests in the Debtors has been entered in these Chapter 11 Cases or the Zohar Chapter 11 Cases.

As soon as practicable after the Effective Date, the Liquidating Trustee shall:  (1) cause the Debtors to comply with, and abide by, the terms of the Sale Transaction Documentation and any other documents contemplated thereby; (2) take any actions necessary to wind down the Debtors' Estates; and (3) take such other actions as the Liquidating Trustee may determine to be necessary or desirable to carry out the purposes of the Plan.  From and after the Effective Date, except as set forth herein, the Debtors (x) for all purposes shall be deemed to have

withdrawn their business operations from any state in which the Debtors were previously conducting, or are registered or licensed to conduct, their business operations, and shall not be required to file any document, pay any sum, or take any other action in order to effectuate such withdrawal, and (y) shall not be liable in any manner to any taxing authority for franchise, business, license, or similar taxes accruing on or after the Effective Date.

The filing of the final monthly operating report (for the month in which the Effective Date occurs) and all subsequent quarterly operating reports shall be the responsibility of the Liquidating Trustee.

**C.      Exculpation; Indemnification; Insurance; Liability Limitation.**

The Liquidating Trustee and all professionals retained by the Liquidating Trustee, each in their capacities as such, shall be deemed exculpated and indemnified, except for fraud, willful misconduct, or gross negligence, in all respects by the Debtors.  The Liquidating Trustee may obtain, at the expense of the Debtors, commercially reasonable liability or other appropriate insurance with respect to the indemnification obligations of the Debtors. The Liquidating Trustee may rely upon written information previously generated by the Debtors.

For the avoidance of doubt, notwithstanding anything to the contrary contained herein, the Liquidating Trustee in its capacity as such, shall have no liability whatsoever to any party for the liabilities and/or obligations, however created, whether direct or indirect, in tort, contract, or otherwise, of the Debtors.

**D.      Tax Returns.**

After the Effective Date, the Liquidating Trustee shall complete and file all final or otherwise required federal, state, and local tax returns for each of the Debtors, and, pursuant to section 505(b) of the Bankruptcy Code, may request an expedited determination of any unpaid tax liability of such Debtor or its Estate for any tax incurred during the administration of such Debtor's Chapter 11 Case, as determined under applicable tax laws.

**ARTICLE VIII**
**PROCEDURES FOR RESOLVING CONTINGENT,**
**UNLIQUIDATED, AND DISPUTED CLAIMS**

**A.      Allowance of Claims and Interests.**

On and after the Effective Date, the Debtors shall have and shall retain any and all rights and defenses that the Debtors had with respect to any Claim or Interest immediately before the Effective Date, and, with respect to any Claims or Interests that constitute Assumed Liabilities, the Purchaser shall have and retain any and all rights, defenses, and other Transferred Causes of Action that the Debtors had with respect to such Claims or Interests immediately before the Effective Date.  Except as expressly provided in the Plan or in any order entered in the Chapter 11 Cases before the Effective Date (including the Confirmation Order), no Claim shall become an Allowed Claim unless and until such Claim is deemed Allowed under the Plan or the Bankruptcy Code or the Bankruptcy Court has entered a Final Order, including the Confirmation Order (when it becomes a Final Order), in the Chapter 11 Cases allowing such Claim.

Any Claim that has been or is hereafter listed in the Schedules as contingent, unliquidated, or disputed, and for which no Proof of Claim is or has been timely Filed, or that is not or has not been Allowed by a Final Order, is not considered Allowed and shall be expunged without further action by the Debtors and without further notice to any party or action, approval, or order of the Bankruptcy Court.

**B.      Claims and Interests Administration Responsibilities.**

Except as otherwise specifically provided in the Plan and notwithstanding any requirements that may be imposed pursuant to Bankruptcy Rule 9019, on and after the Effective Date, the Debtors, by order of the Bankruptcy Court, shall have the sole authority with regard to all Claims: (1) to File, withdraw, or litigate to judgment objections to Claims; (2) to settle or compromise any Disputed Claim without any further notice to or action, order, or approval

by the Bankruptcy Court; and (3) to administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court.

## C.    Estimation of Claims and Interests.

As of the Effective Date, the Debtors or the Liquidating Trustee, as applicable, may (but are not required to), at any time, request that the Bankruptcy Court estimate any Claim or Interest pursuant to applicable law, including pursuant to section 502(c) of the Bankruptcy Code and/or Bankruptcy Rule 3012, for any reason, regardless of whether any party previously has objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any such Claim, including during the litigation of any objection to any Claim or during the pendency of any appeal relating to such objection. Notwithstanding any provision otherwise in the Plan, a Claim that has been expunged from the Claims Register, but that either is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court.  In the event that the Bankruptcy Court estimates any Claim, that estimated amount shall constitute a maximum limitation on such Claim for all purposes under the Plan (including for purposes of distributions) and may be used as evidence in any supplemental proceedings, and the Liquidating Trustee may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim.  Notwithstanding section 502(j) of the Bankruptcy Code, in no event shall any Holder of a Claim that has been estimated pursuant to section 502(c) of the Bankruptcy Code or otherwise be entitled to seek reconsideration of such estimation unless such Holder has Filed a motion requesting the right to seek such reconsideration on or before seven (7) days after the date on which such Claim is estimated.  Each of the foregoing Claims and objection, estimation, and resolution procedures are cumulative and not exclusive of one another.  Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

## D.    Adjustment to Claims or Interests without Objection.

Any Claim or Interest that has been paid or satisfied, or any Claim or Interest that has been amended or superseded, may be adjusted or expunged on the Claims Register by the Liquidating Trustee, without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court. The Liquidating Trustee shall provide any Holder of such a Claim or Interest with 14 days' notice prior to the Claim or Interest being adjusted or expunged from the Claims Register as the result as the result of a Claim or Interest being paid, satisfied, amended or superseded.

## E.    Disallowance of Claims.

Other than with respect to Claims Allowed under the Plan, no Claim of any Entity from which property is recoverable under sections 542, 543, 550, or 553 of the Bankruptcy Code or that is a transferee of a transfer avoidable under sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code shall be deemed Allowed, unless and until such entity or transferee has paid the amount, or turned over any such property, for which such entity or transferee is liable under sections 522(i), 542, 543, 550, or 553 of the Bankruptcy Code, and Holders of such Claims may not receive any distributions on account of such Claims until such time as such Causes of Action against that Entity have been settled or a Bankruptcy Court order with respect thereto has been entered and all sums due, if any, to the Debtors by that Entity have been turned over or paid to the Debtors or the Liquidating Trustee.  All Proofs of Claim Filed on account of an indemnification obligation to a director, officer, or employee shall automatically be deemed satisfied and expunged from the Claims Register as of the Effective Date to the extent such indemnification obligation is assumed (or honored or reaffirmed, as the case may be) pursuant to the Plan, without any further notice to or action, order, or approval of the Bankruptcy Court.

## F.    Amendments to Claims.

On or after the Effective Date, except as provided in the Plan or the Confirmation Order, a Claim or Interest may not be Filed or amended without the prior authorization of the Debtors or the Liquidating Trustee, as applicable, and any such new or amended Claim or Interest Filed shall automatically be deemed disallowed in full and expunged without any further action; *provided that* a Claim may be Filed after the Effective Date if the Bankruptcy Court enters an order permitting such late filing.

**G.      No Distributions Pending Allowance.**

If an objection to a Claim or Interest or portion thereof is Filed as set forth in Article VIII of the Plan, or if such Claim or Interest is scheduled as Disputed, no payment or distribution provided under the Plan shall be made on account of such Claim or Interest or portion thereof unless and until such Disputed Claim or Disputed Interest becomes an Allowed Claim or Allowed Interest.

**H.      Distributions After Allowance.**

To the extent that a Disputed Claim or Disputed Interest ultimately becomes an Allowed Claim or Allowed Interest, distributions (if any) shall be made to the Holder of such Allowed Claim or Allowed Interest in accordance with the provisions of the Plan.  As soon as practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim or Disputed Interest becomes a Final Order, the Liquidating Trustee shall provide to the Holder of such Claim or Interest the distribution (if any) to which such Holder is entitled under the Plan as of the Effective Date, less any previous distribution (if any) that was made on account of the undisputed portion of such Claim or Interest, without any interest, dividends, or accruals to be paid on account of such Claim or Interest unless required under applicable bankruptcy Law or as otherwise provided in Article III.B of the Plan.

**I.      Undeliverable Distribution Reserve.**

**1.      Deposits.**

If a distribution under the Plan to any Holder of an Allowed Claim is returned to the Liquidating Trustee as undeliverable or is otherwise unclaimed or is an Undeliverable Distribution, such distribution shall be deposited in a segregated, interest-bearing account, designated as an "Undeliverable Distribution Reserve," for the benefit of such Holder until such time as such distribution becomes deliverable, is claimed or is deemed to have been forfeited in accordance with Article VI.C.6.

**2.      Disclaimer.**

The Liquidating Trustee and his or her respective agents and attorneys are under no duty to take any action to either (i) attempt to locate any Holder of a Claim, or (ii) obtain an executed Internal Revenue Service Form W-9 from any Holder of a Claim; *provided* that in his or her sole discretion, the Liquidating Trustee may periodically publish notices of unclaimed distributions.

**3.      Distribution from Reserve.**

Within fifteen (15) Business Days after the Holder of an Allowed Claim satisfies the requirements of this Plan, such that the distribution(s) attributable to its Claim is no longer an unclaimed or Undeliverable Distribution (*provided* that satisfaction occurs within the time limits set forth in Article VI.C.6), the Liquidating Trustee shall distribute out of the Undeliverable Distribution Reserve the amount of the unclaimed or Undeliverable Distribution attributable to such Claim, including the interest that has accrued on such unclaimed or Undeliverable Distribution while in the Undeliverable Distribution Reserve, to such Holder.

For the avoidance of doubt, in accordance with Article VI.C.6 of the Plan, in the event that any distribution to any Holder is returned as undeliverable, no distribution to such Holder shall be made unless and until the Liquidating Trustee has determined the then current address of such Holder, at which time such distribution shall be made to such Holder without interest; *provided* that such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of six months from the date the distribution is made.  After such date, all unclaimed property or interests in property shall revert (notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property Laws to the contrary) to the Debtors or the Liquidating Trust, as applicable, automatically and without need for a further order by the Bankruptcy Court and the Claim of any holder to such property or interest in property shall be released, settled, compromised, and forever barred.

**J.**      **Single Satisfaction of Claims.**

Holders of Allowed Claims may assert such Claims against the Debtors obligated with respect to such Claims, and such Claims shall be entitled to share in the recovery provided for the applicable Class of Claims against the Debtors based upon the full Allowed amount of such Claims.  Notwithstanding the foregoing, in no case shall the aggregate value of all property received or retained under the Plan on account of any Allowed Claim exceed 100 percent of the underlying Allowed Claim plus applicable interest, if any.

## ARTICLE IX
## SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS[3]

**A.**      **Settlement, Compromise, and Release of Claims and Interests.**

Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good-faith compromise and settlement of all Claims, Interests, and controversies relating to the contractual, legal, and subordination rights that a Holder of a Claim or Interest may have with respect to any Allowed Claim or Interest, or any distribution to be made on account of such Allowed Claim or Interest.  The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests, and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtors, their Estates, and Holders of Claims and Interests and is fair, equitable, and reasonable.  In accordance with the provisions of the Plan, pursuant to Bankruptcy Rule 9019, without any further notice to or action, order, or approval of the Bankruptcy Court, after the Effective Date, the Liquidating Trustee may compromise and settle Claims against, and Interests in, the Debtors and their Estates and Causes of Action against other Entities.

**B.**      **Discharge of Claims and Termination of Interests.**

Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan or in a contract, instrument, or other agreement or document executed pursuant to the Plan, the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims (including any Intercompany Claims resolved or compromised after the Effective Date by the Liquidating Trustee), Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not: (1) a Proof of Claim based upon such debt or right is filed or deemed filed pursuant to section 501 of the Bankruptcy Code; (2) a Claim or Interest based upon such debt, right, or Interest is allowed pursuant to section 502 of the Bankruptcy Code; or (3) the Holder of such a Claim or Interest has voted to accept the Plan.  Any default or "event of default" by the Debtors or their Affiliates with respect to any Claim or Interest that existed immediately before or on account of the filing of the Chapter 11 Cases shall be deemed cured (and no longer continuing) as of the Effective Date with respect to a Claim that is Unimpaired by the Plan.  The Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the Effective Date occurring.

**C.**      **Release of Liens.**

**Except as otherwise specifically provided in the Plan, the Sale Transaction Documentation or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and the Sale Transaction**

---

3      [NTD:  Scope of third-party release subject to discussion].

Documentation, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released, settled, compromised, and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert either (i) to the Debtors and their successors and assigns or (ii) the Purchaser, in each case, without any further approval or order of the Bankruptcy Court and without any action or Filing being required to be made by the Debtors.  In addition, the Term Loan Agent and the DIP Agent shall execute and deliver all documents reasonably requested by the Debtors or the Liquidating Trustee to evidence the release of such mortgages, deeds of trust, Liens, pledges, and other security interests and shall authorize the Debtors to file UCC-3 termination statements (to the extent applicable) with respect thereto.

D.     **Releases by the Debtors.**

Pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, on and after the Effective Date, each Released Party is deemed released and discharged by the Debtors and their Estates from any and all Causes of Action, including any derivative claims asserted on behalf of the Debtors, that the Debtors or their Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim against, or Interest in, a Debtor or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Debtors' capital structure, the assertion or enforcement of rights and remedies against the Debtors, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions between or among a Debtor and another Debtor, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of the Disclosure Statement, the Plan, the Sale Transaction, or any Restructuring Transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement, or the Plan, the Sale Transaction, the selection or appointment of the Debtors' independent managers, the filing of the Chapter 11 Cases (including the selection of venue in the Middle District of Tennessee), the transfer of venue from the Middle District of Tennessee to the District of Delaware, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, except for any claims related to any act or omission that is determined in a Final Order to have constituted actual fraud, willful misconduct or gross negligence. Notwithstanding the inclusion of any Released Parties as a potential party to any Transferred Causes of Action or Retained Causes of Action, such parties shall remain Released Parties.

Notwithstanding anything to the contrary in the foregoing or any other provision of the Plan, the releases contained in the Plan do not (1) release any post-Effective Date obligations of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, (2) affect the rights of Holders of Allowed Claims and Interests to receive distributions under the Plan, or (3) release any Claims or Causes of Action against any Non-Released Party.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases herein, which includes by reference each of the related provisions and definitions contained herein, *and further*, shall constitute the Bankruptcy Court's finding that the releases herein are:  (1) in exchange for the good and valuable consideration provided by the Released Parties; (2) a good faith settlement and compromise of the claims released by the releases herein; (3) in the best interests of the Debtors and all Holders of Claims and Interests; (4) fair, equitable and reasonable; (5) given and made after reasonable investigation by the Debtors and after notice and opportunity for hearing; and (6) a bar to any of the Debtors asserting any claim released by the releases herein against any of the Released Parties.

E.     **Releases by Holders of Claims and Interests.**

As of the Effective Date, except as otherwise provided herein, each Releasing Party is deemed to have released and discharged each Debtor and Released Party from any and all Causes of Action, whether known

or unknown, including any derivative claims asserted on behalf of the Debtors, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions between or among a Debtor and another Debtor, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of the Disclosure Statement, the Plan, the Sale Transaction, or any Restructuring Transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement, or the Plan, the Sale Transaction, the selection or appointment of the Debtors' independent managers, the filing of the Chapter 11 Cases (including the selection of venue in the Middle District of Tennessee), the transfer of venue from the Middle District of Tennessee to the District of Delaware, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, except for any claims related to any act or omission that is determined in a Final Order to have constituted actual fraud, willful misconduct or gross negligence.

Notwithstanding anything to the contrary in the foregoing or any other provision of the Plan, the releases contained in the Plan do not (1) release any post-Effective Date obligations of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, (2) affect the rights of Holders of Allowed Claims and Interests to receive distributions under the Plan, or (3) release any Claims or Causes of Action against any Non-Released Party.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases of Holders of Claims and Interests, which includes by reference each of the related provisions and definitions contained herein, and further, shall constitute the Bankruptcy Court's finding that the release herein is:  (1) in exchange for the good and valuable consideration provided by the Released Parties; (2) a good faith settlement and compromise of the claims released by the Releasing Parties; (3) in the best interests of the Debtors and all Holders of Claims and Interests; (4) fair, equitable and reasonable; (5) given and made after notice and opportunity for hearing; and (6) a bar to any of the Releasing Parties asserting any Claim released by the release herein against any of the Released Parties.

F.      **Exculpation.**

Except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur, and each Exculpated Party is released and exculpated from any Cause of Action for any claim related to any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, preparation, dissemination, or filing of the Disclosure Statement, the Plan, the Sale Transaction, or any Restructuring Transaction, contract, instrument, release or other agreement or document created or entered into in connection with the Disclosure Statement or the Plan, the Sale Transaction, the selection or appointment of the Debtors' independent managers, the filing of the Chapter 11 Cases (including the selection of venue in the Middle District of Tennessee), the transfer of venue from the Middle District of Tennessee to the District of Delaware, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, except for claims related to any act or omission that is determined in a Final Order to have constituted actual fraud or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan. The Exculpated Parties have, and upon completion of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable Laws with regard to the solicitation of votes and distribution of consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.

Notwithstanding anything herein to the contrary, nothing in the foregoing "Exculpation" shall

exculpate any Person or Entity (a) from any liability resulting from any act or omission constituting fraud, willful misconduct, gross negligence, criminal conduct, malpractice, misuse of commercially sensitive confidential information for competitive purposes that causes damages, or ultra vires acts as determined by a Final Order, or (b) with respect to any disputes involving the Zohar Debtors that are unrelated to Dura or the other Debtors, including any disputes involving the Zohar Portfolio Companies or the ownership thereof (including the ownership of Dura's parent entity, Dura Buyer, LLC), the Zohar Settlement Agreement, the Zohar Monetization Process, or related matters (in each case, other than any disputes relating to the Debtors).

## G.    Injunction.

Except as otherwise expressly provided in the Plan or for distributions required to be paid or delivered pursuant to the Plan or the Confirmation Order, all Entities that have held, hold, or may hold Claims or Interests that have been released pursuant to the Plan shall be discharged pursuant to the Plan, or are subject to Exculpation pursuant to the Plan, are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Released Parties, or the Exculpated Parties (to the extent of the Exculpation provided pursuant to the Plan with respect to the Exculpated Parties): (i) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (ii) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims or Interests; (iii) creating, perfecting, or enforcing any Lien or encumbrance of any kind against such Entities or the property or the Estates of such Entities on account of or in connection with or with respect to any such Claims or Interests; (iv) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims or Interests unless such Entity has timely asserted such setoff right in a document Filed with the Bankruptcy Court explicitly preserving such setoff, and notwithstanding an indication of a Claim or Interest or otherwise that such Entity asserts, has, or intends to preserve any right of setoff pursuant to applicable Law or otherwise; and (v) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released or settled pursuant to the Plan.

## H.    Recoupment.

In no event shall any Holder of Claims or Interests be entitled to recoup any Claim against any claim, right, or Cause of Action of the Debtors, unless such Holder actually has performed such recoupment and provided notice thereof in writing to the Debtors on or before the Confirmation Date, notwithstanding any indication in any Proof of Claim or otherwise that such Holder asserts, has, or intends to preserve any right of recoupment.

## I.    Subordination Rights.

Any distributions under the Plan to Holders shall be received and retained free from any obligations to hold or transfer the same to any other Holder and shall not be subject to levy, garnishment, attachment, or other legal process by any Holder by reason of claimed contractual subordination rights. Any such subordination rights shall be waived, and the Confirmation Order shall constitute an injunction enjoining any Entity from enforcing or attempting to enforce any contractual, legal, or equitable subordination rights to property distributed under the Plan, in each case other than as provided in the Plan.

## J.    Reimbursement or Contribution.

If the Bankruptcy Court disallows a Claim for reimbursement or contribution of an Entity pursuant to section 502(e)(1)(B) of the Bankruptcy Code, then to the extent that such Claim is contingent as of the time of allowance or disallowance, such Claim shall be forever disallowed and expunged notwithstanding section 502(j) of the Bankruptcy Code, unless before the Confirmation Date:  (1) such Claim has been adjudicated as non-contingent; or (2) the relevant Holder of a Claim has Filed a non-contingent Proof of Claim on account of such Claim and a

Final Order has been entered before the Confirmation Date determining such Claim as no longer contingent.

**K.      Reservation of Rights of the United States**

As to the United States of America, its agencies, departments, or agents (collectively, the "United States"), nothing in the Plan, the Plan Supplement, or the Confirmation Order shall expand the scope of discharge, release, or injunction to which the Debtors are entitled under the Bankruptcy Code, if any.  The discharge, release, and injunction provisions contained in the Plan, the Plan Supplement, and the Confirmation Order are not intended and shall not be construed to bar the United States from, subsequent to the Confirmation Order, pursuing any actions, including but not limited to any police or regulatory action, against anyone.

Notwithstanding anything contained in the Plan or the Plan Supplement to the contrary, nothing in the Plan or the Plan Supplement shall discharge, release, impair, or otherwise preclude: (a) any liability to the United States that is not a "claim" within the meaning of section 101(5) of the Bankruptcy Code; (b) any valid right of setoff or recoupment of the United States against any of the Debtors; or (c) the exercise of the United States' police and regulatory powers against the Debtors or any non-Debtor.  Nor shall anything in the Confirmation Order, the Plan, or the Plan Supplement: (a) enjoin or otherwise bar the United States and/or any Governmental Unit from asserting or enforcing, outside the Bankruptcy Court, any liability described in this paragraph, (b) divest any court, commission, or tribunal of jurisdiction from resolving any matters relating to the liabilities and/or claims set forth in this paragraph, or (c) confer in the Bankruptcy Court jurisdiction over any matter as to which it would not have jurisdiction under the Bankruptcy Code.

Moreover, nothing in the Confirmation Order, the Plan, or the Plan Supplement shall release or exculpate any non-Debtor, including any Released Parties and/or Exculpated Parties, from any liability to the United States, including but not limited to any liabilities arising under the Internal Revenue Code, the environmental Laws, or the criminal Laws against the Released Parties and/or Exculpated Parties, nor shall anything in the Confirmation Order, the Plan, or the Plan Supplement enjoin the United States from bringing any claim, suit, action, or other proceeding against the Released Parties and/or Exculpated Parties for any liability whatsoever; *provided that* nothing in this paragraph shall affect in any way any release by the Debtors, the Reorganized Debtors, their Estates, any person exercising the rights of the Estates, or any successor to the Estates of the Released Parties provided for in Article IX.B of the Plan.

Nothing contained in the Plan, the Plan Supplement, or the Confirmation Order shall be deemed to determine the tax liability of any person or entity, including the Debtors, nor shall the Plan, the Plan Supplement, or the Confirmation Order be deemed to have determined the federal tax treatment of any item, distribution, or entity, including the federal tax consequences of the Plan, nor shall anything in the Plan, the Plan Supplement, or the Confirmation Order be deemed to have conferred jurisdiction upon the Bankruptcy Court to make determinations as to federal tax liability and federal tax treatment except as provided under 11 U.S.C. § 505.

**ARTICLE X**
**EFFECT OF CONFIRMATION OF THE PLAN**

Upon entry of the Confirmation Order, the Bankruptcy Court shall be deemed to have made and issued on the Confirmation Date, pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014, the following findings of fact and conclusions of law as though made after due deliberation and upon the record at the Confirmation Hearing.  Upon entry of the Confirmation Order, any and all findings of fact in the Plan shall constitute findings of fact even if they are stated as conclusions of law, and any and all conclusions of law in the Plan shall constitute conclusions of law even if they are stated as findings of fact.

**A.      Jurisdiction and Venue**

On the Petition Date, the Debtors commenced the Chapter 11 Cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  The Debtors were and are qualified to be debtors under section 109 of the Bankruptcy Code.  Venue in the District of Middle District of Tennessee was proper as of the Petition Date, transfer of the Chapter 11 Cases to the District of Delaware was proper, and venue of these Chapter 11 Cases in the District

of Delaware continues to be proper.  Confirmation of the Plan is a core proceeding under 28 U.S.C. § 157(b)(2).  The Bankruptcy Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the Bankruptcy Court has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed.

**B.    Order Approving the Disclosure Statement**

On [●], 2020, the Bankruptcy Court entered the Disclosure Statement Order which, among other things, (a) approved the Disclosure Statement as containing adequate information within the meaning of section 1125 of the Bankruptcy Code and Bankruptcy Rule 3017 and (b) approved certain procedures and documents for soliciting and tabulating votes with respect to the Plan.

**C.    Voting Report**

Prior to the Confirmation Hearing, the Notice and Claims Agent Filed the Voting Report.  All procedures used to distribute solicitation materials to the applicable Holders of Claims and Interests and to tabulate the Ballots were fair and conducted in accordance with the Disclosure Statement Order, the Bankruptcy Code, the Bankruptcy Rules, and all other applicable rules, Laws, and regulations.  Pursuant to sections 1124 and 1126 of the Bankruptcy Code, at least one Impaired Class entitled to vote on the Plan has voted to accept the Plan.

**D.    Judicial Notice**

The Bankruptcy Court takes judicial notice of the docket of the Chapter 11 Cases maintained by the clerk of the Bankruptcy Court and/or its duly appointed agent, including, without limitation, all pleadings and other documents Filed, all orders entered, and all evidence and arguments made, proffered, or adduced at the hearings held before the Bankruptcy Court during the pendency of the Chapter 11 Cases (including the Confirmation Hearing).  Resolutions of any objections to Confirmation explained on the record at the Confirmation Hearing are hereby incorporated by reference.  All entries on the docket of the Chapter 11 Cases shall constitute the record before the Bankruptcy Court for purposes of the Confirmation Hearing.

**E.    Transmittal and Mailing of Materials; Notice**

Due, adequate, and sufficient notice of the Disclosure Statement, the Plan, the Plan Supplement, the Confirmation Hearing, and the release and exculpation provisions set forth in <u>Article IX</u> of the Plan, along with all deadlines for voting on or objecting to the Plan, has been given to (1) all known Holders of Claims and Interests; (2) parties that requested notice in accordance with Bankruptcy Rule 2002; (3) all parties to Unexpired Leases and Executory Contracts, and (4) all taxing authorities listed on the Schedules or in the Claims Register, in compliance with Bankruptcy Rules 2002(b), 3017, 3019, and 3020(b), the Disclosure Statement Order and the Bidding Procedures Order, and such transmittal and service were appropriate, adequate, and sufficient.  Adequate and sufficient notice of the Confirmation Hearing and other dates, deadlines, and hearings described in the Disclosure Statement Order and the Bidding Procedures Order was given in compliance with the Bankruptcy Rules and such order, and no other or further notice is or shall be required.

**F.    Solicitation**

Votes for acceptance and rejection of the Plan were solicited in good faith and complied with sections 1125 and 1126 of the Bankruptcy Code, Bankruptcy Rules 3017, 3018, and 3019, the Disclosure Statement Order, all other applicable provisions of the Bankruptcy Code and all other applicable rules, Laws, and regulations.  The Debtors and their respective directors, managers, officers, employees, agents, affiliates, representatives, attorneys, and advisors, as applicable, have solicited votes on the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code and the Disclosure Statement Order and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and the exculpation provisions set forth in <u>Article IX</u> of the Plan.  The Debtors and the Released Parties solicited acceptance of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code and, pursuant to section 1125(e) of the Bankruptcy Code, no Released

Party is or shall be liable on account of such solicitation or participation for violation of any applicable law, rule, or regulation governing solicitation of acceptance of a chapter 11 plan.

**G.      Burden of Proof**

The Debtors, as proponents of the Plan, have satisfied their burden of proving the elements of sections 1129(a) and 1129(b) of the Bankruptcy Code by a preponderance of the evidence, which is the applicable evidentiary standard.    The Bankruptcy Court also finds that the Debtors have satisfied the elements of section 1129(a) and 1129(b) of the Bankruptcy Code by clear and convincing evidence.

**H.      Bankruptcy Rule 3016(a) Compliance**

The Plan is dated and identifies the proponents thereof, thereby satisfying Bankruptcy Rule 3016(a).

**I.      Compliance with the Requirements of Section 1129 of the Bankruptcy Code**

The Plan complies with all requirements of section 1129 of the Bankruptcy Code as follows:

**1.      Section 1129(a)(1)–Compliance of the Plan with Applicable Provisions of the Bankruptcy Code**

The Plan complies with all applicable provisions of the Bankruptcy Code as required by section 1129(a)(1) of the Bankruptcy Code, including, without limitation, sections 1121, 1122, 1123, and 1125 of the Bankruptcy Code.

(a)      Standing

Each of the Debtors has standing to file a plan and the Debtors, therefore, have satisfied section 1121 of the Bankruptcy Code.

(b)      Proper Classification

Pursuant to sections 1122(a) and 1123(a)(1) of the Bankruptcy Code, Article III of the Plan designates Classes of Claims and Interests, other than Administrative Claims, Professional Fee Claims, DIP Facility Claims, and Priority Tax Claims, which are not required to be classified.  As required by section 1122(a) of the Bankruptcy Code, each Class of Claims and Interests contains only Claims or Interests that are substantially similar to the other Claims or Interests within that Class.

(c)      Specification of Unimpaired Classes

Pursuant to section 1123(a)(2) of the Bankruptcy Code, Article III of the Plan specifies all Classes of Claims and Interests that are not Impaired.

(d)      Specification of Treatment of Impaired Classes

Pursuant to section 1123(a)(3) of the Bankruptcy Code, Article III of the Plan specifies the treatment of all Classes of Claims and Interests that are Impaired.

(e)      No Discrimination

Pursuant to section 1123(a)(4) of the Bankruptcy Code, Article III of the Plan provides the same treatment for each Claim or Interest within a particular Class, as the case may be, unless the Holder of a particular Claim or Interest has agreed to less favorable treatment with respect to such Claim or Interest, as applicable.

        (f)        Plan Implementation

Pursuant to section 1123(a)(5) of the Bankruptcy Code, the Plan provides adequate and proper means for the Plan's implementation.  Immediately upon the Effective Date, sufficient Cash and other consideration provided under the Plan will be available to make all payments required to be made on the Effective Date pursuant to the terms of the Plan.  Moreover, <u>Article IV</u> and various other provisions of the Plan specifically provide adequate means for the Plan's implementation.

        (g)        Voting Power of Equity Securities; Selection of Officer, Director, or Trustee under the Plan

The Plan complies with sections 1123(a)(6) and 1123(a)(7) of the Bankruptcy Code.

        (h)        Impairment/Unimpairment of Classes of Claims and Equity Interests

Pursuant to section 1123(b)(1) of the Bankruptcy Code, (i) Class 1 (Other Priority Claims) and Class 2 (Other Secured Claims) are Unimpaired under the Plan, (ii) Class 3 (Term Loan Claims), Class 4 (General Unsecured Claims), Class 5 (Affiliate Claims), Class 8 (Section 510(b) Claims) and Class 9 (Dura Interests) are Impaired under the Plan, and (iii) Class 6 (Intercompany Claims) and Class 7 (Intercompany Interests) are either Unimpaired or Impaired under the Plan at the election of the Debtors or the Liquidating Trustee.

        (i)        Assumption and Rejection of Executory Contracts and Unexpired Leases

In accordance with section 1123(b)(2) of the Bankruptcy Code, pursuant to <u>Article V.A</u> of the Plan, as of the Effective Date, all Executory Contracts and Unexpired Leases listed on the Assumed Contracts and Leases List will be deemed:  (A) assumed by the applicable Debtor in accordance with, and subject to the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code; and (B) if so indicated on the Assumed Contracts and Leases List, assigned to the other party identified as the assignee for each assumed Executory Contract and Unexpired Lease.  Pursuant to <u>Article V.A</u> of the Plan, each Debtor shall be deemed to have rejected each Executory Contract and Unexpired Lease to which it is a party, unless such Executory Contract or Unexpired Lease:  (1) is specifically described in the Plan as to be assumed in connection with Confirmation of the Plan, or is specifically scheduled to be assumed or assumed and assigned pursuant to the Plan or the Plan Supplement; (2) is subject to a pending motion to assume such Unexpired Lease or Executory Contract as of the Effective Date; (3) is to be assumed by the Debtors or assumed by the Debtors and assigned to the Purchaser or another third party, as applicable, in connection with the Sale Transaction; (4) is a contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan; (5) is a D&O Policy; or (6) is the Sale Transaction Documentation.  The Debtors' assumption and assignment of the Executory Contracts and Unexpired Leases listed on the Assumed Contracts and Leases List pursuant to <u>Article V</u> of the Plan governing assumption and rejection of executory contracts and unexpired leases satisfies the requirements of section 365(b) of the Bankruptcy Code and, accordingly, the requirements of section 1123(b)(2) of the Bankruptcy Code.

The Debtors have exercised reasonable business judgment in determining whether to reject, assume, or assume and assign each of their Executory Contracts and Unexpired Leases under the terms of the Plan.  Each pre- or post-Confirmation rejection, assumption, or assumption and assignment of an Executory Contract or Unexpired Lease pursuant to <u>Article V</u> of the Plan will be legal, valid and binding upon the applicable Debtor and all other parties to such Executory Contract or Unexpired Lease, as applicable, all to the same extent as if such rejection, assumption, or assumption and assignment had been effectuated pursuant to an appropriate order of the Court entered before the Confirmation Date under section 365 of the Bankruptcy Code.  Each of the Executory Contracts and Unexpired Leases to be rejected, assumed, or assumed and assigned is deemed to be an executory contract or an unexpired lease, as applicable.

        (j)       Settlement of Claims and Causes of Action

All of the settlements and compromises pursuant to and in connection with the Plan or incorporated by reference into the Plan comply with the requirements of section 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019.

Pursuant to Bankruptcy Rule 9019 and section 363 of the Bankruptcy Code and in consideration for the distributions and other benefits provided under the Plan, any and all compromise and settlement provisions of the Plan constitute good-faith compromises, are in the best interests of the Debtors, the Estates, and all Holders of Claims and Interests, and are fair, equitable, and reasonable.

In reaching an ultimate decision on substantive fairness, the Court considered the following factors:  (a) the balance between the litigation's possibility of success and the settlement's future benefits; (b) the likelihood of complex and protracted litigation and risk and difficulty of collecting on the judgment; (c) the proportion of creditors and parties in interest that support the settlement; (d) the competency of counsel reviewing the settlement; (e) the nature and breadth of releases to be obtained by officers and directors; and (f) the extent to which the settlement is the product of arm's-length bargaining.

        (k)       Cure of Defaults

Article V of the Plan provides for the satisfaction of default claims associated with each Executory Contract and Unexpired Lease to be assumed in accordance with section 365(b)(1) of the Bankruptcy Code.  The Cure Costs identified in the Assumed Contracts and Leases List and any amendments thereto, as applicable, represent the amount, if any, that the Debtors or the Purchaser, as applicable, propose to pay in full and complete satisfaction of such default claims.  Any disputed cure amounts will be determined in accordance with the procedures set forth in Article V of the Plan, and applicable bankruptcy and nonbankruptcy Law.  As such, the Plan provides that the Debtors or the Purchaser, as applicable, will cure, or provide adequate assurance that the Debtors or the Purchaser, as applicable, will promptly cure, defaults with Executory Contracts and Unexpired Leases in compliance with section 365(b)(1) of the Bankruptcy Code.  Thus, the Plan complies with section 1123(d) of the Bankruptcy Code.

        (l)       Other Appropriate Provisions

The Plan's other provisions are appropriate and consistent with the applicable provisions of the Bankruptcy Code, including without limitation, provisions for (i) distributions to holders of Claims and Interests, (ii) objections to Claims, (iii) procedures for resolving disputed, contingent, and unliquidated claims, (iv) cure amounts, (v) procedures governing cure disputes, and (vi) indemnification obligations.

**2.    Section 1129(a)(2)–Compliance of Plan Proponents with Applicable Provisions of the Bankruptcy Code**

The Debtors, as proponents of the Plan, have complied with all applicable provisions of the Bankruptcy Code as required by section 1129(a)(2) of the Bankruptcy Code, including, without limitation, sections 1125 and 1126 of the Bankruptcy Code and Bankruptcy Rules 3017, 3018, and 3019.  In particular, the Debtors are proper debtors under section 109 of the Bankruptcy Code and proper proponents of the Plan under section 1121(a) of the Bankruptcy Code.  Furthermore, the solicitation of acceptances or rejections of the Plan was (i) pursuant to the Disclosure Statement Order; (ii) in compliance with all applicable laws, rules, and regulations governing the adequacy of disclosure in connection with such solicitation; and (iii) solicited after disclosure to Holders of Claims or Interests of adequate information as defined in section 1125(a) of the Bankruptcy Code.  Accordingly, the Debtors and their respective directors, officers, employees, agents, affiliates, and Professionals have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code.

### 3. Section 1129(a)(3)–Proposal of Plan in Good Faith

The Debtors have proposed the Plan in good faith and not by any means forbidden by law. In determining that the Plan has been proposed in good faith, the Court has examined the totality of the circumstances surrounding the filing of the Chapter 11 Cases, the Plan itself, and the process leading to its formulation. The Chapter 11 Cases were filed, and the Plan was proposed, with the legitimate purpose of allowing the Debtors to reorganize.

### 4. Section 1129(a)(4)–Bankruptcy Court Approval of Certain Payments as Reasonable

Pursuant to section 1129(a)(4) of the Bankruptcy Code, the payments to be made for services or for costs in connection with the Chapter 11 Cases or the Plan are approved. The fees and expenses incurred by Professionals retained by the Debtors or the Committee shall be payable according to the orders approving such Professionals' retentions, the Interim Compensation Order, other applicable Bankruptcy Court orders, or as otherwise provided in the Plan. In addition, the fees of the Prepetition Secured Parties and the DIP Agent shall be paid as provided for in the Plan and the Final DIP Order.

### 5. Section 1129(a)(5)–Disclosure of Identity of Proposed Management, Compensation of Insiders, and Consistency of Management Proposals with the Interests of Creditors and Public Policy

Pursuant to section 1129(a)(5) of the Bankruptcy Code, information concerning the person proposed to serve as the Liquidating Trustee and such individual's compensation upon Consummation has been fully disclosed (in the Plan Supplement) to the extent available, and the appointment to, or continuance in, such office of such person is consistent with the interests of Holders of Claims and Interests and with public policy.

### 6. Section 1129(a)(6)–Approval of Rate Changes

Section 1129(a)(6) of the Bankruptcy Code is not applicable because the Plan does not provide for rate changes by any of the Debtors.

### 7. Section 1129(a)(7)–Best Interests of Creditors and Interest Holders

The liquidation analysis included in the Disclosure Statement, and the other evidence related thereto that was proffered or adduced at or prior to, or in affidavits in connection with, the Confirmation Hearing, is reasonable. The methodology used and assumptions made in such liquidation analysis, as supplemented by the evidence proffered or adduced at or prior to, or in affidavits filed in connection with, the Confirmation Hearing, are reasonable. With respect to each Impaired Class, each Holder of an Allowed Claim or Interest in such Class has accepted the Plan or will receive under the Plan on account of such Claim or Interest property of a value, as of the Effective Date, that is not less than the amount such Holder would receive if the Debtors were liquidated under chapter 7 of the Bankruptcy Code.

### 8. Section 1129(a)(8)–Conclusive Presumption of Acceptance by Unimpaired Classes; Acceptance of the Plan by Each Impaired Class

Certain Classes of Claims and Interests are Unimpaired and are deemed conclusively to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. In addition, at least one Impaired Class that was entitled to vote has voted to accept the Plan. Because the Plan provides that the certain Classes of Claims and Interests will be Impaired and because no distributions shall be made to Holders in such Classes, such Holders are deemed conclusively to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code and, therefore, are not entitled to vote to accept or reject the Plan.

**9.  Section 1129(a)(9)–Treatment of Claims Entitled to Priority Pursuant to Section 507(a) of the Bankruptcy Code**

The treatment of Administrative Claims, Professional Fee Claims, DIP Facility Claims, Other Priority Claims, and Priority Tax Claims under Article II of the Plan satisfies the requirements of section 1129(a)(9) of the Bankruptcy Code.

**10.  Section 1129(a)(10)–Acceptance by at Least One Impaired Class**

At least one Impaired Class has voted to accept the Plan.  Accordingly, section 1129(a)(10) of the Bankruptcy Code is satisfied.

**11.  Section 1129(a)(11)–Feasibility of the Plan**

The Plan satisfies section 1129(a)(11) of the Bankruptcy Code.  Based upon the evidence proffered or adduced at, or prior to, or in affidavits filed in connection with, the Confirmation Hearing, the Plan is feasible and Confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtors or any successor to the Debtors under the Plan, except as such liquidation is proposed in the Plan.  Furthermore, the Debtors will have adequate assets to satisfy their respective obligations under the Plan. Entry of the Confirmation Order shall be a judicial finding that based on the information available to date, the Debtors do not believe there are Administrative Claims from any party that are materially inconsistent with the Funded Liability Cap.

**12.  Section 1129(a)(12)–Payment of Bankruptcy Fees**

Article XIV.C of the Plan provides for the payment of all fees payable under 28 U.S.C. § 1930(a) in accordance with section 1129(a)(12) of the Bankruptcy Code.

**13.  Section 1129(a)(13)–Retiree Benefits**

The Plan provides for the treatment of all retiree benefits in accordance with section 1129(a)(13) of the Bankruptcy Code.

**14.  Section 1129(a)(14)–Domestic Support Obligations**

The Debtors are not required by a judicial or administrative order, or by statute, to pay any domestic support obligations, and therefore, section 1129(a)(14) of the Bankruptcy Code is inapplicable in these Chapter 11 Cases.

**15.  Section 1129(a)(15)–The Debtors Are Not Individuals**

The Debtors are not individuals, and therefore, section 1129(a)(15) of the Bankruptcy Code is inapplicable in these Chapter 11 Cases.

**16.  Section 1129(a)(16)–No Applicable Nonbankruptcy Law Regarding Transfers**

Each of the Debtors that is a corporation is a moneyed, business, or commercial corporation or trust, and therefore, section 1129(a)(16) of the Bankruptcy Code is inapplicable in these Chapter 11 Cases.

**17.  Section 1129(b)–Confirmation of Plan Over Rejection of Impaired Classes**

The Plan satisfies the requirements of section 1129(b) of the Bankruptcy Code with respect to the Classes presumed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code or that have actually rejected the Plan (if any).  To determine whether a plan is "fair and equitable" with respect to a class of claims, section 1129(b)(2)(B)(ii) of the Bankruptcy Code provides in pertinent part that "the holder of any claim or interest

that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or interest any property." To determine whether a plan is "fair and equitable" with respect to a class of interests, section 1129(b)(2)(C)(ii) of the Bankruptcy Code provides that "the holder of any interest that is junior to the interests of such class will not receive or retain under the plan on account of such junior interest any property." There are no classes junior to the deemed (or actual) rejecting classes of claims or interests that will receive any distribution under the Plan. The Plan, therefore, satisfies the requirements of section 1129(b) of the Bankruptcy Code.

### 18. Section 1129(c)–Confirmation of Only One Plan With Respect to the Debtors

The Plan is the only plan that has been filed in these Chapter 11 Cases with respect to the Debtors. Accordingly, the Plan satisfies the requirements of section 1129(c) of the Bankruptcy Code.

### 19. Section 1129(d)–Principal Purpose Not Avoidance of Taxes

The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act. Accordingly, the Plan satisfies the requirements of section 1129(d) of the Bankruptcy Code.

### 20. Section 1129(e)–Small Business Case

Section 1129(e) is inapplicable because these Chapter 11 Cases do not qualify as small business cases thereunder.

### J.     Securities Under the Plan

There are no Securities to be issued under the Plan.

### K.     Releases and Discharges

The releases and discharges of Claims and Causes of Action described in the Plan, including releases by the Debtors and by Holders of Claims and Interests, constitute good faith compromises and settlements of the matters covered thereby. Such compromises and settlements are made in exchange for consideration and are in the best interest of Holders of Claims and Interests, are fair, equitable, reasonable, and are integral elements of the resolution of the Chapter 11 Cases in accordance with the Plan. Each of the discharge, release, indemnification, and exculpation provisions set forth in the Plan: (a) is within the jurisdiction of the Court under 28 U.S.C. §§ 1334(a), 1334(b), and 1334(d); (b) is an essential means of implementing the Plan pursuant to section 1123(a)(6) of the Bankruptcy Code; (c) is an integral element of the transactions incorporated into the Plan; (d) confers material benefit on, and is in the best interests of, the Debtors, their Estates, and their creditors; (e) is important to the overall objectives of the Plan to finally resolve all Claims among or against the parties in interest in the Chapter 11 Cases with respect to the Debtors; (f) is consistent with sections 105, 1123, 1129, and all other applicable provisions of the Bankruptcy Code; (g) given and made after due notice and opportunity for hearing; and (h), without limiting the foregoing, with respect to the releases and injunctions in Article IX of the Plan, are (i) essential elements of the Sale Transaction and Plan, (ii) terms and conditions without which the Purchaser would not have entered into the Sale Transaction Documentation, (iii) narrowly tailored, and (iv) in consideration of the substantial financial contribution of the Purchaser under the Plan. Furthermore, the injunction set forth in Article IX.G is an essential component of the Plan, the fruit of long-term negotiations and achieved by the exchange of good and valuable consideration that will enable unsecured creditors to realize distributions in the Chapter 11 Cases.

### L.     Release and Retention of Causes of Action

It is in the best interests of Holders of Claims and Interests that the provisions in Article IV.P of the Plan be approved.

**M.**      **Approval of Sale Transaction Documentation and Other Documents and Agreements**

All documents and agreements necessary to implement the Plan, including the Sale Transaction Documentation, are essential elements of the Plan, are necessary to consummate the Plan and the Sale Transaction, and entry into and consummation of the transactions contemplated by each such document and agreement is in the best interests of the Debtors, the Estates, and Holders of Claims and Interests.  The Debtors have exercised reasonable business judgment in determining which agreements to enter into and have provided sufficient and adequate notice of such documents and agreements.  The terms and conditions of such documents and agreements have been negotiated in good faith, at arm's-length, are fair and reasonable, and are hereby reaffirmed and approved, and subject to the occurrence of the Effective Date and execution and delivery in accordance with their respective terms, shall be in full force and effect and valid, binding, and enforceable in accordance with their respective terms, without the need for any further notice to or action, order, or approval of the Bankruptcy Court, or other action under applicable law, regulation, or rule.

**N.**      **Confirmation Hearing Exhibits**

All of the exhibits presented at the Confirmation Hearing have been properly received into evidence and are a part of the record before the Bankruptcy Court.

**O.**      **Objections to Confirmation of the Plan**

Any and all objections to Confirmation have been withdrawn, settled, overruled, or otherwise resolved.

**P.**      **Exemption from Transfer Taxes with Respect to the Sale Transaction**

The Sale Transaction constitutes a sale or transfer under a plan confirmed under section 1129 of the Bankruptcy Code and, accordingly, the Sale Transaction shall not be subject to any tax under any Law imposing a stamp tax or similar tax, including any real or personal property transfer tax, pursuant to section 1146(a) of the Bankruptcy Code.

**Q.**      **Good Faith Purchaser Status**

The Purchaser is a good faith purchaser for the purposes of section 363(m) of the Bankruptcy Code and entitled to the benefits thereof in relation to the Sale Transaction.

**R.**      **Sale Free and Clear**

All assets and rights sold by the Debtors under the Sale Transaction Documentation are transferred, conveyed, and assigned to the Purchaser free and clear of all Liens, Claims, encumbrances, and interests pursuant to sections 363(f), 1123(a)(5), and 1141(c) of the Bankruptcy Code.

**S.**      **Retention of Jurisdiction**

The Bankruptcy Court may properly retain jurisdiction over the matters set forth in Article XIII of the Plan and section 1142 of the Bankruptcy Code.

**T.**      **Plan Supplement**

The Debtors Filed the Plan Supplement, and all documents included therein comply with the terms of the Plan, and the filing and notice of such documents was adequate, proper and in accordance with the Disclosure Statement Order, the Bankruptcy Code, the Bankruptcy Rules and the Local Rules.

**ARTICLE XI**
**CONDITIONS PRECEDENT TO CONFIRMATION AND THE EFFECTIVE DATE**

**A.**     **Conditions Precedent to Confirmation.**

It shall be a condition to Confirmation of the Plan that the following conditions shall have been satisfied or waived pursuant to the provisions of the Plan:  (1) the Bankruptcy Court shall have entered the Disclosure Statement Order and the Confirmation Order and (2) the Sale Transaction Documentation shall not have been terminated in accordance with its terms.

**B.**     **Conditions Precedent to the Effective Date.**

It shall be a condition to Consummation that the following conditions shall have been satisfied or waived pursuant to the provisions of the Plan:

1.     the Bankruptcy Court shall have entered the Confirmation Order; *provided* that in accordance with Bankruptcy Rules 3020(e), 6004(h), and 6006(d) (and notwithstanding any other provision of the Bankruptcy Code or the Bankruptcy Rules), the Confirmation Order shall not be stayed and shall be effective immediately upon its entry;

2.     the occurrence of the Closing (as such term is defined and described in the Sale Transaction Documentation);

3.     the General Unsecured Claims Amount shall have been funded;

4.     the Disclosure Statement Order and the Confirmation Order shall have been entered and shall not have been stayed, modified, or vacated on appeal;

5.     the Debtors have obtained all authorizations, consents, regulatory approvals, rulings, or documents that are necessary to implement and effectuate the Plan and each of the other transactions contemplated by the Restructuring Transactions;

6.     the establishment of a Professional Fee Escrow Account funded in the amount of estimated accrued but unpaid Professional fees incurred by the legal counsel and other advisors to the Debtors and any statutory committees during the Chapter 11 Cases;

7.     the Purchaser (or an Affiliate thereof) has paid the Wind-Down Amount to the Debtors in accordance with, and as limited by, the terms of the Sale Transaction Documentation;

8.     all fees and expenses of the Term Loan Agent and the DIP Agent payable pursuant to the Final DIP Order shall have been paid in full; and

9.     any and all requisite governmental, regulatory and third-party approvals and consents shall have been obtained.

On the Effective Date, the Plan shall be deemed substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

**C.**     **Waiver of Conditions.**

The conditions to Consummation set forth in <u>Article XI.B</u> may be waived by the Debtors.

**D.      Substantial Consummation.**

"Substantial Consummation" of the Plan, as defined in 11 U.S.C. § 1101(2), shall be deemed to occur on the Effective Date.

**E.      Effect of Non-Occurrence of Conditions to the Effective Date.**

If the Effective Date does not occur, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall:  (1) constitute a waiver or release of any Claims by or Claims against or Interests in the Debtors; (2) prejudice in any manner the rights of the Debtors, the Debtors' Estates, any Holders, or any other Entity; or (3) constitute an admission, acknowledgment, offer, or undertaking by the Debtors, the Debtors' Estates, any Holders, or any other Entity in any respect.

## ARTICLE XII
### MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

**A.      Modification and Amendments.**

Subject to the limitations contained in the Plan, and the Sale Transaction Documentation, the Debtors, with the consent (not to be unreasonably withheld) of the Purchaser, reserve the right to modify the Plan as to material terms and seek Confirmation consistent with the Bankruptcy Code and, as appropriate, not resolicit votes on such modified Plan.  Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in the Plan, and the Sale Transaction Documentation, the Debtors, with the consent (not to be unreasonably withheld) of the Purchaser, expressly reserve their rights to alter, amend, or modify materially the Plan with respect to the Debtors, one or more times, after Confirmation, and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan.  Any such modification or supplement shall be considered a modification of the Plan and shall be made in accordance with <u>Article XII</u>.

**B.      Effect of Confirmation on Modifications.**

Entry of the Confirmation Order shall mean that all modifications or amendments to the Plan occurring after the solicitation thereof and before the Confirmation Date are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

**C.      Revocation or Withdrawal of the Plan.**

Subject to the terms of the Sale Transaction Documentation, the Debtors reserve the right to revoke or withdraw the Plan, including the right to revoke or withdraw the Plan for any Debtor or all Debtors, prior to the Confirmation Date.  If the Debtors revoke or withdraw the Plan with respect to any Debtor, or if Confirmation or Consummation does not occur with respect to any Debtor, then:  (1) the Plan with respect to such Debtor shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan with respect to such Debtor (including the fixing or limiting to an amount certain of any Claim or Interest or Class of Claims or Interests), assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan with respect to such Debtor, and any document or agreement executed pursuant to the Plan with respect to such Debtor, shall be deemed null and void; and (3) nothing contained in the Plan with respect to such Debtor shall:  (a) constitute a waiver or release of any Claims or Interests; (b) prejudice in any manner the rights of the Debtors, the Debtors' Estates, or any other Entity; or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtors, the Debtors' Estates, or any other Entity.

## ARTICLE XIII
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over the Chapter 11 Cases and all matters, arising out of, or related to, the Chapter 11 Cases and the Plan, including jurisdiction to:

1.      Allow, disallow, determine, liquidate, classify, estimate, or establish the priority, Secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the Secured or unsecured status, priority, amount, or allowance of Claims or Interests;

1.      Decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

2.      Resolve any matters related to:  (a) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease to which a Debtor is party or with respect to which a Debtor may be liable in any manner and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom, including Claims related to the rejection of an Executory Contract or Unexpired Lease, Cure Costs pursuant to section 365 of the Bankruptcy Code, or any other matter related to such Executory Contract or Unexpired Lease; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed and/or assigned; (c) the Debtors amending, modifying, or supplementing, after the Effective Date, pursuant to Article V of the Plan, any Executory Contracts or Unexpired Leases to the Assumed Contracts and Leases List or otherwise; and (d) any dispute regarding whether a contract or lease is or was executory or expired;

3.      Ensure that distributions to Holders of Allowed Claims and Allowed Interests are accomplished pursuant to the provisions of the Plan;

4.      Adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

5.      Adjudicate, decide, or resolve any and all matters related to Causes of Action;

6.      Adjudicate, decide, or resolve any and all matters related to section 1141 of the Bankruptcy Code;

7.      Enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan or the Disclosure Statement;

8.      Enter and enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

9.      Resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the Consummation, interpretation, or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

10.     Issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan;

11.     Resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the settlements, compromises, releases, injunctions, exculpations, and other provisions contained in Article IX of the Plan and enter such orders as may be necessary or appropriate to implement or enforce such releases, injunctions, and other provisions;

56

12.     Resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the Holder of a Claim or Interest for amounts not timely repaid pursuant to <u>Article VI.G.1</u> of the Plan;

13.     Enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

14.     Determine any other matters that may arise in connection with or relate to the Plan, the Transaction Agreement, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan or the Disclosure Statement;

15.     Adjudicate any and all disputes arising from or relating to distributions under the Plan or any transactions contemplated therein;

16.     Consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

17.     Determine requests for the payment of Claims and Interests entitled to priority pursuant to section 507 of the Bankruptcy Code;

18.     Hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

19.     Hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, or the Confirmation Order, including disputes arising under agreements, documents, or instruments executed in connection with the Plan;

20.     Hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

21.     Hear and determine matters concerning section 1145 of the Bankruptcy Code;

22.     Hear and determine all disputes involving the existence, nature, or scope of the Debtors' release, including any dispute relating to any liability arising out of the termination of employment or the termination of any employee or retiree benefit program, regardless of whether such termination occurred before or after the Effective Date;

23.     Enforce all orders previously entered by the Bankruptcy Court;

24.     To resolve any disputes arising under the Sale Transaction Documentation or other documents related to the Sale Transaction;

25.     Hear any other matter not inconsistent with the Bankruptcy Code; and

26.     Enter an order concluding or closing the Chapter 11 Cases.

### ARTICLE XIV
### MISCELLANEOUS PROVISIONS

**A.     Immediate Binding Effect.**

Subject to <u>Article VIII</u> of the Plan and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the Plan and the Plan Supplement shall be immediately effective and enforceable and deemed binding upon the Debtors, any and all Holders of Claims or Interests (irrespective of whether the Holders of such Claims or Interests accepted or rejected the Plan), all Entities that are

parties to or are subject to the settlements, compromises, releases, and injunction described in the Plan, each Entity acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.  All Claims and debts shall be as fixed, adjusted, or compromised, as applicable, pursuant to the Plan regardless of whether any Holder of a Claim or debt has voted on the Plan.

**B.**      **Additional Documents.**

On or before the Effective Date, the Debtors may File with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.  The Debtors, all Holders of Claims or Interests receiving distributions pursuant to the Plan, and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

**C.**      **Payment of Statutory Fees.**

All fees payable pursuant to 28 U.S.C. § 1930(a) shall be paid by the Debtors for each quarter (including any fraction thereof) until the Chapter 11 Cases are converted, dismissed, or closed, whichever occurs first.

**D.**      **Dissolution of Statutory Committees.**

Following the Effective Date, the Committee shall remain in place with respect to the Debtors solely for the purpose of addressing (a) all final fee applications for all Professionals, and (b) the resolution of any appeals of the Confirmation Order.  Upon the dissolution of the Committee, the members of the Committee and their respective professionals will cease to have any duty, obligation or role arising from or related to the Debtors' Chapter 11 Cases and shall be released and discharged from all rights and duties from or related to the Debtors' Chapter 11 Cases.

On the Effective Date, any other statutory committee appointed in the Chapter 11 Cases shall dissolve and members thereof shall be released and discharged from all rights and duties from or related to the Chapter 11 Cases.

**E.**      **Reservation of Rights.**

The Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order. Neither the Plan, any statement or provision contained in the Plan, nor any action taken or not taken by the Debtors or any Debtor with respect to the Plan, the Disclosure Statement, the Confirmation Order, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of the Debtors or any Debtor with respect to the Holders of Claims or Interests prior to the Effective Date.

**F.**      **Successors and Assigns.**

The rights, benefits, and obligations of any Entity named or referred to in the Plan or the Confirmation Order shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor, or assign, Affiliate, officer, director, manager, trustee, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

**G.**      **Service of Documents.**

Any pleading, notice, or other document required by the Plan to be served on or delivered to the Debtors shall be served on:

> **the Debtors**
>
> Dura Automotive Systems, LLC
> 1780 Pond Run
> Auburn Hills, Michigan 48326.

Attention: Lynn Tilton
Email address: lynn.tilton@patriarchpartners.com

-and-

Marc Beilinson
Beilinson Advisory Group
11111 Santa Monica Blvd.
Los Angeles, California 90025
Email address: mbeilinson@beilinsonpartners.com

-and-

Jill Frizzley

[●]

Email address: jfrizzley@wildrosepartnersllc.com


with copies to:

Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, Illinois 60654
Attention:  Ryan Blaine Bennett, P.C., Gregory F. Pesce
Email addresses:  ryan.bennett@kirkland.com
                             gregory.pesce@kirkland.com

and

Kirkland & Ellis LLP
601 Lexington Avenue
New York, New York 10022
Attention:  Christopher Marcus, P.C.
Email addresses: christopher.marcus@kirkland.com

**the DIP Lenders:**

Arnold & Porter Kaye Scholer LLP
70 West Madison Street, Suite 4200
Chicago, IL 60602-4321
Attn: Brian J. Lohan (brian.lohan@arnoldporter.com)

**the Term Loan Lenders:**

Young Conaway Stargatt & Taylor, LLP
Rodney Square, 1000 North King Street
Wilmington, DE 19801
Attn: Joseph M. Barry (jbarry@ycst.com)
Michael Nestor (mnestor@ycst.com)

the Committee:

Dentons US LLP
1221 Avenue of the Americas
New York, NY 10020-1089
Attn: Oscar N. Pinkas (oscar.pinkas@dentons.com)
Lauren Macksoud (lauren.macksoud@dentons.com)

After the Effective Date, the Debtors shall have authority to send a notice to Entities that to continue to receive documents pursuant to Bankruptcy Rule 2002, such Entity must file a renewed request to receive documents pursuant to Bankruptcy Rule 2002.  After the Effective Date, the Debtors are authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have Filed such renewed requests.

**H.      Enforcement of Confirmation Order.**

On and after the Effective Date, the Debtors, the Liquidating Trustee, and the Purchaser, as applicable, shall be entitled to enforce the terms of the Confirmation Order and the Plan (which shall include, for the avoidance of doubt, the Plan Supplement and the Sale Transaction Documentation).

**I.      Term of Injunctions or Stays.**

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date.  All injunctions or stays contained in the Plan or the Confirmation Order (including the injunction set forth in Article IX.G shall remain in full force and effect in accordance with their terms).

**J.      Compensation and Benefits Programs.**

On the Effective Date or as soon as practicable thereafter, the Debtors shall pay all compensation and benefit obligations under any present compensation, benefit, or incentive programs, including any programs approved pursuant to an Order of the Bankruptcy Court (including the Key Employee Retention Program Order in accordance with the terms and conditions of such order), other than any compensation, benefit, and incentive obligations assumed by the Purchaser pursuant to the Sale Transaction Documentation.

**K.      Entire Agreement.**

Except as otherwise indicated, the Plan, the Confirmation Order, the Sale Transaction Documentation, and the Plan Supplement supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

**L.      Exhibits.**

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan.  After the exhibits and documents are Filed, copies of such exhibits and documents shall be available upon written request to the Debtors' counsel at the address above or by downloading such exhibits and documents from the Debtors' restructuring website at http://cases.primeclerk.com/DuraAutomotive or the Bankruptcy Court's website at www.deb.uscourts.gov.

**M.      Nonseverability of Plan Provisions.**

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall not alter or interpret such term or provision to make it valid or

enforceable, *provided* that at the request of the Debtors, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such terms or provision shall then be applicable as altered or interpreted, *provided*, *further*, that any such alteration or interpretation shall be acceptable to the Debtors.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without the consent of the Debtors; and (3) nonseverable and mutually dependent.

**N.     Votes Solicited in Good Faith.**

Upon entry of the Confirmation Order, the Debtors will be deemed to have solicited votes on the Plan in good faith and in compliance with the Bankruptcy Code, and pursuant to section 1125(e) of the Bankruptcy Code, the Debtors and each of their respective Affiliates, agents, representatives, members, principals, shareholders, officers, directors, employees, advisors, and attorneys will be deemed to have participated in good faith and in compliance with the Bankruptcy Code, and, therefore, neither any of such parties or individuals will have any liability for the violation of any applicable law, rule, or regulation governing the solicitation of votes on the Plan.

**O.     Waiver.**

Each Holder of a Claim or an Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, Secured or not subordinated by virtue of an agreement made with the Debtors or their counsel, or any other Entity, if such agreement was not disclosed in the Plan, the Disclosure Statement, or papers Filed with the Bankruptcy Court before the Confirmation Date.

Respectfully submitted,

Dated:  January 17, 2020                              Dura Automotive Systems, LLC
                                                     on behalf of itself and all other Debtors


                                                     _____
                                                     Name: [•]
                                                     Title: Independent Manager
                                                     Company: Dura Automotive Systems, LLC