IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| DURA AUTOMOTIVE SYSTEMS, LLC, *et al.*,[1] | ) ) ) | Case No. 19-12378 (KBO) |
| Debtors. | ) ) ) | (Jointly Administered) |
| | ) ) ) | Hearing Date: February 11, 2020, at 10:00 a.m. (ET) |
| | ) ) ) | Objection Deadline: February 4, 2020, at 4:00 p.m. (ET) |

**DEBTORS' MOTION FOR ENTRY OF AN ORDER
AUTHORIZING THE DEBTORS TO ENTER INTO THE DIP AMENDMENT**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") respectfully represent as follows in support of this motion:

**Relief Requested**

1. The Debtors seek entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Order"), authorizing the Debtors to enter into an amendment (the "DIP Amendment") to the DIP Credit Agreement (as defined in the *Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Status, (IV) Granting Adequate Protection to the Prepetition Lenders, and (V) Modifying the Automatic Stay* [Docket

---

[1] The debtor entities in these chapter 11 cases, along with the last four digits of each Debtor entity's federal tax identification number, are: Dura Automotive Systems Cable Operations, LLC (7052); Dura Automotive Systems, LLC (8111); Dura Fremont L.L.C. (1252); Dura G.P. (8092); Dura Mexico Holdings, LLC (4188); Dura Operating, LLC (2304); and NAMP, LLC (3693). Dura Automotive Systems, LLC's service address is: 1780 Pond Run, Auburn Hills, Michigan 48326.

No. 340] (the "Final DIP Order")).[2]  A copy of the DIP Amendment is attached to the Order as **Exhibit 1**.

### Jurisdiction and Venue

2.  The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  The Debtors confirm their consent, pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), to the entry of a final order by the Court in connection with this motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.  The bases for the relief requested herein are sections 105(a) and 364 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code") and rule 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

### Background[3]

5.  Dura Automotive Systems, LLC, together with its Debtor and non-Debtor affiliates (collectively, the "Company"), is a leading independent designer and manufacturer of automotive systems, including mechatronic systems, exterior systems, and lightweight structural

---

[2]  Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Final DIP Order.

[3]  A detailed description of the Debtors and their businesses, and the facts and circumstances supporting the Debtors' chapter 11 cases, are set forth in greater detail in the *Declaration of Kevin Grady, Executive Vice President and Chief Financial Officer of Dura Automotive Systems, LLC, in Support of Debtors' Chapter 11 Petitions and First Day Motions* [Docket No. 20] (the "First Day Declaration").

systems, among others. The Company's main product lines generate approximately $1.1 billion in global sales annually. Headquartered in Auburn Hills, Michigan, the Company employs approximately 7,400 individuals. As of October 17, 2019 (the "Petition Date"), the Debtors' aggregate prepetition funded indebtedness totaled approximately $130 million.

6. On the Petition Date, the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Middle District of Tennessee. The Debtors are operating their businesses and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b) [Docket No. 120]. No request for the appointment of a trustee or examiner has been made in these chapter 11 cases. On November 1, 2019, the United States Trustee for the Middle District of Tennessee appointed the Committee pursuant to section 1102 of the Bankruptcy Code [Docket No. 213].

7. On November 1, 2019, the Court entered an agreed order in the bankruptcy cases captioned *In re Zohar III, Corp., et al.*, Case No. 18-10512 (KBO) (Bankr. D. Del.) (the "Zohar Chapter 11 Cases") transferring the Debtors' chapter 11 cases to this Court, effective as of November 8, 2019 at 12:01 a.m. [Zohar Chapter 11 Cases Docket No. 1060]. These chapter 11 cases are being administered separately from the Zohar Chapter 11 Cases.

8. On the Petition Date, the Debtors filed a motion [Docket No. 19] seeking authority to enter into a postpetition financing agreement. On November 19, 2019, the Court entered the Final DIP Order, approving the $84 million DIP Facility on a final basis. In connection therewith, the Court also entered an order [Docket No. 339] (the "Bidding Procedures

Order") approving bidding procedures for the proposed sale of substantially all of the Debtors' assets and establishing certain key dates and deadlines relating thereto.

9.Since that time, the Debtors have been working with Jefferies LLC, their investment banker and financial adviser, and their other advisers, to market the Debtors' assets. While the Debtors have made significant progress in that regard, the Debtors determined, in consultation with their funded debt stakeholders, that it was prudent to extend the sale timelines and related DIP milestones.  On January 2, 2020, the Court entered an agreed order [Docket No. 514] (the "Milestones Extension Order") extending certain of the dates and deadlines established in the Bidding Procedures Order and milestones for the sale process and plan confirmation established in the Final DIP Order and the DIP Credit Agreement.

10.Following the entry of the Milestones Extension Order, the Debtors' independent managers, in consultation with their advisers, determined that the extended sale process would require the Debtors to obtain additional liquidity and to extend the DIP Facility's March 20, 2020 maturity date.  Thereafter, the Debtors' independent managers directed their advisers to engage with the DIP Lenders and the Zohar funds regarding the Debtors' incremental funding needs, the DIP Lenders' willingness to increase the commitments under the DIP Facility, and the terms of any such amendment in light of the facts and circumstances of these cases.

11.Following extensive discussions between the parties, the Debtors and the DIP Lenders have agreed, subject to Court approval, to enter into the DIP Amendment.  Pursuant to the DIP Amendment, the DIP Lenders have agreed to increase the commitments under the DIP Facility by $12 million and to extend the Maturity Date through April 15, 2020.  The DIP Lenders have also agreed to extend certain of the milestones relating to Court approval of a chapter 11 plan and related disclosure statement to match the currently proposed timeline.  In

connection with the Debtors' entry into the DIP Amendment, the Debtors have developed a revised DIP Budget (as defined in the DIP Amendment) and agreed to comply with a 7.5-percent weekly and cumulative variance in connection therewith.  As set forth in greater detail below, the Debtors believe that the DIP Amendment is in the best interests of their estates, and request that the Court enter an order authorizing the Debtors to enter into and perform their obligations under the DIP Amendment.

### Basis for Relief

12. Section 364 of the Bankruptcy Code governs a debtor's ability to secure postpetition financing.  11 U.S.C. § 364.  Under section 364 of the Bankruptcy Code, a court may authorize a debtor to obtain postpetition secured credit, so long as the debtor demonstrates that its decision to enter into a postpetition secured credit agreement represents a sound exercise of the debtor's business judgment and such agreement does not run afoul of the provisions of, and policies underlying, the Bankruptcy Code.  *See, e.g.*, *In re Farmland Indus., Inc.*, 294 B.R. 855, 886 (Bankr. W.D. Mo. 2003) ("Business judgments should be left to the board room and not to this Court"); *In re Trans World Airlines, Inc.*, 163 B.R. 964, 974 (Bankr. D. Del. 1994) (approving a postpetition loan and receivables facility because such facility "reflect[ed] sound and prudent business judgment").  The business judgment rule is not an onerous standard and may be satisfied "'as long as the proposed action *appears* to enhance the debtor's estate.'" *Crystalin, LLC v. Selma Props. Inc. (In re Crystalin, LLC)*, 293 B.R. 455, 463–64 (B.A.P. 8th Cir. 2003) (citation omitted) (emphasis in original, text modifications removed); *see also In re AbitibiBowater*, 418 B.R. 815, 831 (Bankr. D. Del. 2009) (the business judgment standard is "not a difficult standard to satisfy").

13. The Debtors respectfully submit that their entry into the DIP Amendment is a sound exercise of their business judgment and warrants Court approval.[4] More specifically, approval of the DIP Amendment will provide the Debtors with incremental liquidity of $12 million, which will permit the Debtors to satisfy their obligations to employees, vendors, and customers without interruption, continue their value-maximizing sale process, and seek to confirm a chapter 11 plan. Additionally, the terms of the DIP Amendment are reasonable: the DIP Lenders are not seeking any additional fees or increase in interest rates under the DIP Amendment,[5] nor will the modifications to the variance reporting covenants impose any meaningful burden on the estates. Finally, the Debtors will demonstrate at the hearing (if necessary) that no better incremental financing alternative exists other than the DIP Amendment. Accordingly, the Debtors submit that the entry into the DIP Amendment is a sound exercise of their business judgment, and respectfully request that the Court grant this motion and authorize the Debtors to enter into the DIP Amendment.

## Notice

14. The Debtors have provided notice of this motion to the following parties or their respective counsel: (a) the United States Trustee for the District of Delaware; (b) the Committee; (c) counsel to the agent under the Debtors' prepetition secured term loan credit agreement; (d) counsel to the agent under the Debtors' debtor-in-possession financing facility; (e) the offices of the attorneys general for the states in which the Debtors operate; (f) the United States Attorney's Office for the District of Delaware; (g) the Internal Revenue Service; and (h) any

---

[4] The Final DIP Order requires court approval of any amendment or modification of the DIP Credit Agreement in a manner that is materially different from that approved by the Court. *See* Final DIP Order ¶ 36.

[5] For the avoidance of doubt, the original issue discount applicable to all DIP Loans pursuant to the DIP Credit Agreement will apply to any additional DIP funds that are drawn by the Debtors pursuant to the DIP Amendment.

party that has requested notice pursuant to Bankruptcy Rule 2002. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

[*Remainder of page intentionally left blank.*]

WHEREFORE, the Debtors respectfully request entry of the Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and granting such other relief as is just and proper.

Dated:  January 28, 2020
       Wilmington, Delaware

**BAYARD, P.A.**

*/s/ Justin R. Alberto*
Justin R. Alberto (No. 5126)
Erin R. Fay (No. 5268)
Daniel N. Brogan (No. 5723)
600 N. King Street, Suite 400
Wilmington, Delaware 19801
Telephone: (302) 655-5000
Facsimile: (302) 658-6395
E-mail:   jalberto@bayard.com
         efay@bayardlaw.com
         dbrogan@bayardlaw.com

- and -

James H.M. Sprayregen, P.C.
Ryan Blaine Bennett, P.C. (admitted *pro hac vice*)
Gregory F. Pesce (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:   (312) 862-2000
Facsimile:    (312) 862-2200
Email:         jsprayregen@kirkland.com
          rbennett@kirkland.com
          gregory.pesce@kirkland.com

- and -

Christopher Marcus, P.C. (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:   (212) 446-4800
Facsimile:    (212) 446-4900
Email:         cmarcus@kirkland.com

*Co-Counsel to the Debtors and Debtors in Possession*