**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| DURA AUTOMOTIVE SYSTEMS, LLC, *et al.*,[1] | Case No. 19-12378 (KBO) |
| Debtors. | (Jointly Administered) |

**DECLARATION OF JAMES E. RIEDY,**
**EXECUTIVE VICE PRESIDENT AND CHIEF FINANCIAL**
**OFFICER OF DURA AUTOMOTIVE SYSTEMS, LLC, IN SUPPORT OF**
**PROPOSED EUROPEAN TRANSACTION AND NORTH AMERICAN TRANSACTION**

I, James E. Riedy, hereby declare under penalty of perjury:

1. I am Executive Vice President and Chief Financial Officer of Dura Automotive Systems, LLC. I submit this declaration (the "Declaration") in support of the proposed European Transaction and the North American Transaction.[2]

2. I have served as the Chief Financial Officer of Dura Automotive Systems, LLC since November 2019. I am generally familiar with the day-to-day operations, business, books and records, and financial affairs of the Debtors. The statements in this Declaration are, except where specifically noted, based on my personal knowledge, opinion, information from the Debtors' advisors, or employees working directly with me or under my supervision, direction, or

---

[1] The debtor entities in these chapter 11 cases, along with the last four digits of each Debtor entity's federal tax identification number, are: Dura Automotive Systems Cable Operations, LLC (7052); Dura Automotive Systems, LLC (8111); Dura Fremont L.L.C. (1252); Dura G.P. (8092); Dura Mexico Holdings, LLC (4188); Dura Operating, LLC (2304); and NAMP, LLC (3693). Dura Automotive Systems, LLC's service address is: 1780 Pond Run, Auburn Hills, Michigan 48326.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the forthcoming *Debtors' Reply in Support of the Proposed European Transaction and North American Transaction* or the *Order (I) Approving Bidding Procedures with Respect to Substantially All Assets, (II) Approving Contract Assumption and Assignment Procedures, (III) Scheduling Bid Deadlines, an Auction, and the Hearings and Objection Deadlines Related Thereto, and (IV) Approving the Form and Manner of Notice Thereof* [Docket No. 339] (the "Bid Procedures Order"), as applicable.

control. I am familiar with the development of the Debtors' business plan, the Sale Transactions and the Debtors' sale and marketing process. If I were called upon to testify, I could and would competently testify to the facts set forth herein on that basis. I am authorized to submit this Declaration on behalf of the Debtors.

### Professional Background and Qualifications

3. I have over 30 years of experience in the global automotive industry. This experience includes working with automotive companies experiencing financial distress. Prior to joining Dura, from 2014 to 2017, I was the Chief Financial Officer and Vice President of Delphi Powertrain, a business unit of Delphi Corporation. From 2007 to 2013, I served as Chief Financial Officer and Vice President of Finance and Planning for Delphi Packard Electrical Electronics Architecture. From 2002 to 2006, I was Chief Financial Officer and Vice President of Finance for Delphi Thermal and Interior. In both this role and in my role with Delphi Packard Electrical Electronics Architecture, I assisted these companies in issues related to the larger Delphi corporate restructuring. I received a Bachelor of Science in Mechanical Engineering from GMI Engineering and Management Institute and a Master of Business Administration from University of Chicago, Graduate School of Business. I am also a Fellow of the General Motors Graduate Fellowship Program.

### The Debtors' Business Plan

4. I have reviewed the *Zohar Lenders' Reservation of Rights Regarding the Debtors Entry into the Sale Agreements* [Docket No. 972] (the "Zohar Reservation of Rights"). I believe that the allegations in the Zohar Reservation of Rights regarding the Debtors' business plan are untrue. I submit this Declaration to clarify the record regarding the development of the Debtors' go-forward business plan in late 2019 and to refute the allegations set forth in the Zohar Reservation of Rights.

5.     When I was appointed as the Debtors' Chief Financial Officer in November 2019, I immediately began to work with the Debtors' management team, Portage Point Partners, LLC, and Jefferies LLC to examine the Debtors' existing business and financial projections, including the related assumptions underlying these projections.  The goal of this process was for the Debtors and their advisors to create a credible and thorough go-forward business plan that could be used as the cornerstone of the Debtors' marketing and sale process and discussions with potential bidders.

6.     As part of this review, the Debtors' management team and advisors evaluated each aspect of the Debtors' business model and identified potential strategies to maximize the value of the Debtors' businesses—all in an effort to prepare for conversations with potential purchasers and to, in turn, maximize the value of the Debtors' business.  This review was a thorough effort by the Debtors' management and advisors, which was undertaken using a "bottoms-up" approach that built the Debtors' revenue and cost projections by individual product type.  At all times I directed the Debtors' employees and advisors to work to create a business plan that was the result of a thorough and thoughtful analysis that reflected the Debtors' best thinking at the time, and to ensure all assumptions were based in the reality of the market conditions present at the time.  These assumptions were checked and independently reviewed by the Debtors' advisors and management team.

7.     Critically, during the course of this review, with the assistance of the Debtors' advisors, the Debtors' management team and I identified material concerns regarding some of the key assumptions used by the Debtors' former Chief Financial Officer Kevin Grady in the Debtors' prior business projections and underlying assumptions.  These prior assumptions projected an adjusted 2019 EBITDA of approximately $80 million.  Our team corrected these incorrect

assumptions, took into account changing economic and industry conditions, and made other modifications to make the business plan as detailed and accurate as possible, given the information available at the time. Following this exhaustive work by the Debtors' management team and our advisors, the Debtors' completed go-forward business plan projected an adjusted 2019 EBITDA of approximately $50 million.

8.      As a product of this review, the Debtors finalized their go-forward business plan on or around December 14, 2019, and the Transaction Committee approved the business plan and authorized the Debtors to send it to potential bidders. Following the finalization of this business plan, the Transaction Committee directed the management team, including myself, to work with the Debtors' advisors to take all steps necessary to facilitate the sale process and ensure the highest and best value for the Debtors' assets. These actions included, among other things, scheduling numerous in-person site visits for bidders in the United States and in our overseas facilities, in-person meeting and telephone conferences between management and potential bidders, and facilitating access and population of the Debtors' data rooms.

[*Remainder of page intentionally left blank.*]

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements are true and correct to the best of my knowledge, information, and belief.

Dated: May 9, 2020
      Wilmington, Delaware

*/s/ James E. Riedy*
James E. Riedy
Executive Vice President and Chief Financial Officer
Dura Automotive Systems, LLC