## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| DURA AUTOMOTIVE SYSTEMS, LLC, *et al.*,[1] | ) | Case No. 19-12378 (KBO) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | |

## DECLARATION OF JILL FRIZZLEY, INDEPENDENT MANAGER OF DURA AUTOMOTIVE SYSTEMS, LLC AND DURA OPERATING, LLC, IN SUPPORT OF THE PROPOSED EUROPEAN TRANSACTION AND THE NORTH AMERICAN TRANSACTION

I, Jill Frizzley, hereby declare under penalty of perjury as follows:

1.      I submit this declaration (this "Declaration") in support of the proposed European Transaction and the North American Transaction pursuant to the terms set forth in the European Purchase Agreement and the North American Purchase Agreement, respectively.[2]

2.      I have served as an independent manager of Dura Automotive Systems, LLC and Dura Operating LLC, two of the seven above-captioned debtors and debtors in possession (collectively, the "Debtors") since October 2019.  I am generally familiar with the Debtors' operations, business, and financial affairs.  The statements in this Declaration are, except where specifically noted based on my personal knowledge, views, and/or information from the Debtors'

---

[1]    The debtor entities in these chapter 11 cases, along with the last four digits of each Debtor entity's federal tax identification number, are:  Dura Automotive Systems Cable Operations, LLC (7052); Dura Automotive Systems, LLC (8111); Dura Fremont L.L.C. (1252); Dura G.P. (8092); Dura Mexico Holdings, LLC (4188); Dura Operating, LLC (2304); and NAMP, LLC (3693).  Dura Automotive Systems, LLC's service address is:  1780 Pond Run, Auburn Hills, Michigan 48326.

[2]    Capitalized terms used but not defined herein shall have the meanings ascribed to them in the *Debtors' Reply In Support of the Proposed European Transaction and North American Transaction*, filed contemporaneously herewith, or the *Order (I) Approving Bidding Procedures with Respect to Substantially All Assets, (II) Approving Contract Assumption and Assignment Procedures, (III) Scheduling Bid Deadlines, an Auction, and the Hearings and Objection Deadlines Related Thereto, and (IV) Approving the Form and Manner of Notice Thereof* [Docket No. 339] (the "Bid Procedures Order"), as applicable.

advisors.  I am familiar with the Sale Transactions and the Debtors' sale and marketing process. If I were called upon to testify, I could and would competently testify to the facts set forth herein on that basis.  I am authorized to submit this Declaration on behalf of the Debtors.

### Professional Background and Qualifications

3.      I have over 20 years of experience in corporate governance and assisting companies to overcome the legal and financial complexities of restructuring.  This experience includes working with management teams and boards of directors of large companies facing financial challenges similar to those of the Debtors.  I have provided restructuring leadership guidance for several nationally recognized corporations, including those in the automotive industry. Additionally, I currently serve as a director on several corporate boards.

4.      I served as counsel at Weil Gotshal & Manges LLP and Shearman & Sterling LLP, where I specialized in corporate restructuring, bankruptcy, and insolvency matters for over 19 years.  During that time, I advised corporations on all sides of complex national and global restructuring matters.  I also published articles on turnaround issues and was named an Outstanding Young Restructuring Lawyer by *Turnarounds & Workouts* in 2014.  I graduated from the University of Alberta with a bachelor's degree and from the University of Toronto Law School.

5.      In October 2019, I was appointed as an independent manager of Dura Automotive Systems, LLC and Dura Operating, LLC.  Since that time, I have worked with the Debtors' management and professionals and have become well-acquainted with the Debtors' capital structure and business operations.  In my capacity as an independent manager to the Debtors and a member of the two-person transaction committee (the "Transaction Committee") that has been delegated authority to make strategic decisions on behalf of the Debtors related to the Debtors' restructuring, sale process, and these chapter 11 cases, I have also been actively involved in the

Debtors' marketing and sales process.  The Transaction Committee has been working closely with the Debtors' advisors in evaluating potential bids, making decisions relating to sale negotiations with interested parties, and ultimately selecting the binding bids to pursue, which led to the negotiation and execution of the Purchase Agreements.

### The Postpetition Marketing Process

6.      The Transaction Committee carefully monitored the postpetition marketing process, receiving regular updates from Jefferies and the Debtors' other advisors.  In particular, the Transaction Committee convened weekly status calls with the Debtors' advisors, supplemented with calls when warranted.  Additionally, the Transaction Committee initially convened a weekly standing telephone conference with the Zohars' independent director, Joseph Farnan, and Chief Restructuring Officer, Michael Katzenstein, a senior managing director at FTI Consulting.  During these conversations, the Transaction Committee provided the Zohars' independent director and Chief Restructuring Officer with updates regarding the sale process, answered questions, and generally discussed strategy and next steps for the sale process and these chapter 11 cases.  After several months of these calls, the Zohars' independent director began to cancel most of these weekly scheduled conferences because he indicated that there was no need for continued calls because there was a sufficient flow of information from the Debtors' professionals to the Zohars' professionals.

### The North American Purchase Agreement and the European Purchase Agreement Represent the Highest and Best Offer for the Debtors' Assets

7.      I believe that the terms of the European Purchase Agreement and the North American Purchase Agreement represent the highest and best offers for the Debtors' assets. Specifically, no party submitted a binding offer to purchase the Debtors' assets that would satisfy the DIP Facility in full in cash.  Furthermore, no party (despite the good-faith efforts of the Debtors,

their professionals and various interested parties) reached an agreement with the DIP Lender pursuant to which the DIP Lender would agree to release its liens.  Moreover, the Sale Transactions will provide a host of benefits to the Debtors and their estates, in that such transactions will: (a) preserve over 7,000 jobs in the United States and abroad; (b) avoid a precipitous, uncontrolled liquidation of the Debtors' U.S. operations and the operations of their foreign subsidiaries; (c) fully administer all of the assets of the Debtors' estates; (d) prevent the need for additional postpetition funding of the Debtors' estates other than what is contemplated by the Purchase Agreements; (e) provide for the payment or assumption of certain postpetition trade debt owed to vendors that provide services to the North American Purchaser; and (f) provide for the funding of the Carve Out (as defined in the DIP Order) to pay professional fees and expenses.  Accordingly, the Transaction Committee selected the Sale Transactions as the highest and best bid for the Debtors' assets and directed the Debtors to take all steps necessary to work towards Court approval of such transactions and a prompt closing thereafter.

8.    I understand that the Committee asserts that it is inappropriate for the Debtors to transfer claims and causes of action (including with respect to Ms. Lynn Tilton and her affiliates) to the European Purchaser pursuant to the European Purchase Agreement, and that any such claims and causes of action should be preserved for the benefit of general unsecured creditors.  I believe that it is appropriate for the Debtors to transfer the applicable claims and causes of action for a variety of reasons.  First, the European Purchaser—and not the Debtors—has long conditioned its agreement to enter into the European Purchase Agreement on the Debtors' agreement to transfer all applicable claims and causes of action to the European Purchaser.  The European Purchase Agreement is a package deal, and the Debtors cannot pick and choose which aspects they will comply with.  Additionally, as noted above, approximately $40 million will remain outstanding

4

under the DIP Facility when the Sale Transactions close.  No potentially interested party has offered, nor is reasonably expected to offer, any value, let alone $40 million, to the DIP Lender in exchange for the applicable claims and causes of action.

9.      Overall, I believe that the European Transaction and the North American Transaction provide a superior alternative to a liquidation of the Debtors' business operations because, pursuant to these transactions, over 7,000 jobs will be saved, certain vendors will receive cure payments, professionals will be paid from a $11.25 million escrow account, and certain postpetition claims will be assumed by the Buyers.

10.      I believe that the Debtors adequately marketed the Debtors' assets and conducted the sale process in compliance with the Bid Procedures and the Bid Procedures Order, that the bidding process was conducted in an appropriate manner, and that the Debtors and their advisors have afforded potential purchasers a full and fair opportunity to participate in the bidding process for the Debtors' assets and make higher or better offers.

### Conclusion

11.      Accordingly, for all these reasons, given the exhaustive months-long marketing process that the Debtors and their advisors undertook, as described herein, I believe that the European Transaction and the North American Transaction represent the highest, the best (and indeed, the only) binding offers that would preserve the Debtors' business operations as a going concern, and avoid an otherwise inevitable and value-destructive liquidation.  Accordingly, the Transaction Committee determined that these bids are the highest and best bids available and I believe that approving the European Purchase Agreement and the North American Purchase Agreement is in the best interests of the Debtors' estates.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements are true and correct to the best of my knowledge, information, and belief.

Dated:  May 9, 2020
        Wilmington, Delaware

*/s/ Jill Frizzley*
Jill Frizzley
Independent Manager
Dura Automotive Systems, LLC and Dura Operating, LLC