**Exhibit C**

**Zohar Lenders' Sept. 25, 2019 DIP Proposal**

SUBJECT TO FRE 408/COMMON INTEREST
Highly Confidential

A&P Draft
For Discussion Purposes Only
Not a Commitment

# ZOHAR III, CORP., ZOHAR II 2005-1, CORP., ZOHAR III, LIMITED, AND ZOHAR II 2005-1, LIMITED

## INDICATIVE TERM SHEET FOR A
## SENIOR SECURED SUPERPRIORITY PRIMING
## DEBTOR-IN-POSSESSION CREDIT FACILITY

### September 25, 2019

This term sheet (this "DIP Financing Term Sheet") is being provided to the Borrowers on a confidential basis and is not intended for distribution except to the Borrowers' (as defined below) advisors involved in considering the transaction contemplated herein, the independent director of the Borrowers (the "Independent Director"), and the Trustee (as defined below). This is not a commitment to lend and should not be relied for any purposes. The terms provided herein are for settlement purposes and are subject to FRE 408 and related provisions.

Set forth below is a summary of certain terms and conditions of a potential Senior Secured, Superpriority Debtor-in-Possession Credit Facility to be provided to the Borrowers, as debtors and debtors-in-possession (collectively, the "Debtors") in cases (the "Chapter 11 Cases") pending under Chapter 11 of the U.S. Bankruptcy Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Court")[ and each of the [non-debtors] party to the Indentures (as defined below) (collectively, the "Guarantors")].

**THIS DIP FINANCING TERM SHEET IS NON-BINDING AND SUBJECT TO LENDER APPROVAL IN ALL RESPECTS.**

| | |
|---|---|
| *Borrowers:* | Zohar III, Corp., Zohar II 2005-1, Corp., Zohar III, Limited, and Zohar II 2005-1, Limited (collectively, the "Borrowers").[1] [NTD: If more general purposes, will include ZI] |
| *[Guarantors:* | The Guarantors (and together with the Borrowers, the "DIP Credit Parties").] |
| *Agent:* | A financial institution selected by the Initial DIP Lenders (as defined below) shall be the sole administrative agent and collateral agent (in such capacity, the "DIP Agent"). |
| *DIP Loan Commitment:* | [$40,000,000] (the "DIP Loan Commitment") |
| *DIP Lenders:* | Certain holders (collectively, the "Zohar III Controlling Class") of Class A-1 notes under that certain Indenture, dated as of April 6, 2007, among Zohar III, Limited, Zohar III, Corp., Zohar III, LLC, Natixis Financial Products, Inc., and U.S. Bank National Association (the "Trustee"), as successor in interest to Bank of America, National Association, as successor by merger LaSalle Bank National Association (the "Zohar III Indenture"), MBIA Insurance Corporation ("MBIA" and together with the Zohar III Controlling Class, the "Initial DIP Lenders"), and such other persons who become a party to the DIP |

---

[1] Nothing in this Term Sheet or DIP Loan Facility is intended to have any impact on the allocation of fees, costs and expenses associated with these cases among the Debtors.

62506490

| | |
|---|---|
| | Loan Facility (as defined below) at any time and from time to time (collectively, the "DIP Lenders"). [Bardin Hill and ] (the "Backstop Lenders") shall initially backstop the DIP Loan Commitment. [MBIA] and all holders of Class A-1 notes under the Zohar III Indenture shall have the opportunity to participate as a DIP Lender based on their pro rata holdings. For the avoidance of doubt, MBIA shall be able to participate at any time prior to 30 days after the proceeds from the Oasis transaction are distributed to MBIA. |
| *DIP Loan Facility:* | A super-priority priming term loan credit facility (the "DIP Loan Facility") providing for extensions of credit not to exceed $[60] million in the aggregate (the "DIP Loan Commitments" and the loans made thereunder, the "DIP Loans"). |
| *Existing Indentures:* | The following indentures (collectively, the "Indentures"): (i) that certain Indenture, dated as of November 13, 2003, among Zohar I, Zohar CDO 2003-1 Corp., Zohar CDO 2003-1, LLC, MBIA, as credit enhancer, CDC Financial Products Inc., and the Trustee; (ii) that certain Indenture, dated as of January 12, 2005, among Zohar II, Zohar II 2005-1, Corp., Zohar II 2005-1, LLC, MBIA, as credit enhancer, IXIS Financial Products Inc., and the Trustee, as successor in interest to Bank of America, National Association, as successor by merger LaSalle Bank National Association; and (iii) the Zohar III Indenture (collectively, the "Indentures"). |
| *DIP Loan Facility Availability* | On the business day following the date of the Court's entry of an order, in form and substance satisfactory to the DIP Lenders and the DIP Agent, by the Court granting approval of the DIP Loan Facility (the "Interim DIP Order"), the DIP Loan Commitments shall be available to the Borrowers, subject to (i) an officer's certificate that all conditions to borrowing under any Borrower Financings have been satisfied or waived, if the DIP Loan Commitments are to be used for Rescue Loans or Borrower DIP Loans; (ii) satisfaction of the applicable conditions precedent listed on Annex II attached hereto; and (iii) compliance with the other terms, conditions and covenants described in the DIP Loan Documents. Amounts repaid with respect to the DIP Loans may not be re-borrowed. |
| *Mandatory Prepepayments:* | The DIP Loan Documents and DIP Order shall require all cash received on account of any Borrower Financings be immediately repaid to the DIP Lenders. |
| *Voluntary Prepayments:* | The DIP Loan Facility may be prepaid in whole or in part from time to time without penalty, provided that, upon repayment in full the DIP Lenders shall be entitled to receive the Exit Fee, Termination Fee or Transaction Fee, as applicable. |
| *Use of Proceeds:* | The proceeds of the DIP Loan Facility shall be used by the Borrowers:<br><br>• To provide financing ("Rescue Loans") to any Portfolio Company (in each case, the "PC Borrower") in which the Borrower is a lender or equity holder, provided that, the terms and conditions of such financing shall be acceptable to the DIP Lender and shall contain |

2

|  | |
|---|---|
|  | milestones for the sale of such Portfolio Company in furtherance of the Monetization Process. An initial list of the terms and conditions of the Rescue Loan to [Dura] is set forth on Annex IV.<br><br>No proceeds of the DIP Loan Facility, any Collateral or any cash collateral may be used for any fees or expenses incurred in connection with the investigation, initiation or prosecution of any claims, causes of action, adversary proceedings or other litigation against (i) any of the DIP Agent, the DIP Lenders, the Trustee or Existing Lenders, or (ii) in connection with challenging, invalidating, disallowing, recharacterizing, setting aside, avoiding, subordinating, in whole or in part, or taking or attempting to take any other action to render unenforceable, the liens, claims, interests and adequate protection of the DIP Agent and the DIP Lenders or the Trustee and Existing Lenders, including for the avoidance of doubt, (a) objecting to or contesting the validity, extent, amount, perfection, priority, or enforceability of the obligations under the DIP Loan Facility or the DIP Liens (as defined below), or (b) objecting to or contesting the validity, extent, amount, perfection, priority, or enforceability of the obligations and liens under the Indentures.<br><br>While the Borrower Financings remains outstanding, the PC Borrowers may not pay any fee (including, without limitation, a management, consulting, monitoring, transaction, or advisory fee) to any Patriarch Affiliate, provided however, that the PC Borrowers shall pay Borrowers all amounts due to Borrowers. |
| *Fees and Interest Rates:* | As set forth on Annex III attached hereto. |
| *Term:* | The maturity date of the DIP Loan Facility will be (and all loans and obligations under the DIP Loan Facility shall be repaid in full in cash on) [150 days] (which may be extended with the consent of the majority of the DIP Lenders, the "Maturity Date"). |
| *Collateral:* | All DIP Loans and other obligations of the Borrowers and the Guarantors owed to the DIP Agent and the Lenders under the DIP Loan Facility shall be secured by perfected, first priority liens (collectively, the "DIP Liens") on and security interest in the Rescue Loans (and all proceeds thereof), and all of the assets, including all "collateral" as that term is defined in the applicable Indenture, the Cash Collateral Account, and all other property of the "estate" (within the meaning of the Bankruptcy Code) (including, without limitation, all avoidance and recovery actions arising under the Bankruptcy Code and the proceeds thereof) of the Borrowers and the Guarantors in the Chapter 11 Cases, now owned and hereafter acquired (all such assets, collectively, the "Collateral"). The DIP Liens shall include, without limitation, the following:<br><br>(a) pursuant to Section 364(c)(2) of the Bankruptcy Code, a first priority lien on and security interest in all Collateral that is not subject to a valid and perfected lien existing on the date when the Chapter 11 Cases are filed (the "Petition Date") other than the Collateral on which there are liens and security interests as described in clause (c) below; |

3

| | |
|---|---|
| | (b) pursuant to Section 364(c)(3) of the Bankruptcy Code, a lien on and security interest in all Collateral that is subject to a valid and perfected lien existing on the Petition Date to the extent such lien was on the Petition Date senior to the liens securing the obligations under, and permitted by, the Indentures; and<br><br>(c) pursuant to Section 364(d)(1) of the Bankruptcy Code, a first priority, senior priming lien on and security interest in all Collateral that is or was intended or required to be subject to valid and perfected liens existing on the Petition Date in favor of the Trustee.<br><br>All of the DIP Liens shall be created on terms, and pursuant to documentation, satisfactory in all respects to the DIP Agent and the Initial DIP Lenders in their discretion, and none of the Collateral shall be subject to any other liens or charges except as may be permitted by the DIP Loan Documents. |
| *Adequate Protection for Existing Indentures:*[2] | The Trustee, on behalf of the Existing Lenders, shall receive the [Adequate Protection Obligations][3] (as defined in the Interim Cash Collateral Order or Final Cash Collateral Order, as applicable). |
| *Administrative Expense Priority:* | All DIP Loans and other obligations of the Borrowers and the Guarantors owed to the DIP Agent and the Lenders under the DIP Loan Facility shall have superpriority administrative expense status pursuant to Section 364(c)(1) of the Bankruptcy Code (the "DIP Superpriority Claims"), with priority over all other costs and expenses of the kinds specified in, or ordered pursuant to, sections 105, 326, 328, 330, 331, 363, 364, 503(b), 506(c), 507(a), 507(b), 546, 726, 1113 and 1114 of the Bankruptcy Code.[4] |
| *Relief From Stay and Other Remedies:* | Upon the occurrence and continuation of an Event of Default under the DIP Loan Facility or the Rescue Loan(s), the DIP Agent shall have the right to declare all obligations due and payable and exercise all rights and remedies under the documents evidencing the DIP Loan Facility and the Borrower Financings and applicable law without regard to, and without being required to obtain relief from, the automatic stay imposed by Section 362(a) of the Bankruptcy Code; |
| *Events of Default:* | Events (collectively, the "Events of Default"), shall include without limitation:<br><br>i. a default under the Borrower Financings;<br><br>ii. TBD |

---

[2] [NTD: May change depending on interplay between cash collateral and DIP.]
[3] [NTD: To use whatever defined term is used in the Cash Collateral Order, including the Adequate Protection payments for current interest and fees (as currently contemplated in our proposal), liens and other adequate protection relief, including lifting of the automatic stay to prosecute causes of action]
[4] [NTD: Probably need a carve out for Carve Out under Cash Collateral Order.]

4

CONFIDENTIAL                                                                                                                                           PATRIARCH-0004935

| | |
|---|---|
| *Conditions Precedent to Closing and Initial DIP Loans:* | TBD. |
| *Closing Date:* | TBD |
| *Assignments and Participations:* | Each Lender may assign all or any part of the DIP Loans to one or more banks, financial institutions or other entities [NTD: Discuss]. Upon such assignment, such affiliate, bank, financial institution or entity will become a Lender for all purposes under the Loan Documents. The Lenders will also have the right to sell participations, subject to customary limitations on voting rights, in the DIP Loans. |
| *Governing Law of DIP Loan Documents:* | New York. |
| *Counsel to the DIP Agent:* | [__] |

5

## ANNEX I

**[Initial DIP Lenders' DIP Loan Commitments]**

6

CONFIDENTIAL
PATRIARCH-0004937

## ANNEX II

## Summary of Conditions Precedent to the DIP Loan Facility

*This summary outlines certain of the conditions precedent to the DIP Loan Facility referred to in the DIP Financing Term Sheet.*

A.  CONDITIONS TO INITIAL FUNDING OF DIP LOAN

1.  Financing Orders/Bankruptcy Matters.

    (a) The Court shall have entered the DIP Order, approving and authorizing the DIP Loan Facility, all provisions thereof and the priorities and liens granted under Bankruptcy Code sections 364(c) and (d), as applicable, in form and substance satisfactory to the DIP Agent and the Initial DIP Lenders.

    (b) The Interim DIP Order shall not have been reversed, modified, amended, stayed (including stay pending appeal) or vacated.

    (c) The DIP Credit Parties shall be in compliance with the terms of the Interim DIP Order.

    (d) No trustee or examiner shall have been appointed with respect to the DIP Credit Parties or their respective properties.

    (e) The court shall have entered an amended Cash Collateral Order incorporating the terms hereof and of the DIP Order (the "Modified Cash Collateral Order").

    (f) The Modified Cash Collateral Order shall not have been reversed, modified, amended, stayed (including stay pending appeal) or vacated.

    (g) The DIP Order shall provide that the Court retain jurisdiction over enforcement of the enforcement of the Borrower Financings (and all related documents).

3.  Performance of Obligations.

    (a)  All costs, fees, expenses (including, without limitation, reasonable legal and financial advisory fees) and other compensation contemplated by the DIP Loan Documents to be payable to the Lenders shall have been paid to the extent due and the DIP Credit Parties shall have complied in all material respects with all of their other obligations to the Lenders.

    (b)  No Default or Event of Default shall exist.

    (c)  Representations and warranties shall be true and correct.

4.  Customary Closing Documents.

    (a)  [TBD, but should also include documents satisfactory to evidence the validity and enforceability of the Borrower Financings (and perfection of all security interests related thereto).

7

5. <u>Other Conditions</u>.  Such other conditions as are reasonably requested by the DIP Agent and Lenders shall have been satisfied by the DIP Credit Parties.

8

CONFIDENTIAL PATRIARCH-0004939

## Annex III

### INTEREST AND FEES

| | |
|---|---|
| **Interest Rates:** | DIP Loans will bear interest equal to the sum of: 10.0%. The interest rate shall increase by [200] bps every 30 days beginning on the 91st day]. |
| **Interest Payments:** | Interest shall PIK until the earlier of (i) the Debtors' receive proceeds from a Monetization of Dura or (ii) the Rescue Loan is repaid (in full or in part). |
| | During the continuance of an Event of Default under the DIP Loan Facility, DIP Loans will bear interest at the applicable rate plus an additional [2.0]% *per annum*. |
| **Closing Fees:** | 2.0% of the DIP Loan Commitments payable to the Initial DIP Lenders in accordance with their share of the DIP Loan Commitments, payable in cash on the Closing Date. |
| | Reasonable fees and expenses of the DIP Loan Agent |
| **Backstop Fee:** | 3.00% to be paid in cash to the Backstop Lenders on the Closing Date. |
| **Other Fees:** | The DIP Lenders shall be entitled to one of the following: |
| | To the extent the PC Borrower is sold pursuant to a 363 sale (or otherwise) (a "Sale"), the DIP Lenders shall be entitled to a fee of 5% of the proceeds received in such sale (the "Transaction Fee") |
| | To the extent there is no Sale, and the a Rescue Loan is repaid in full the DIP Lenders shall be entitled to a fee of 5% (the "Termination Fee"); or |
| | To the extent there is no sale and the Rescue Loan is "rolled" into an exit (or similar type of) facility, the DIP Lenders shall be entitled to a fee of 5% (the "Transaction Fee") |

9

Annex IV

Terms for Rescue Loan for New Dura Facility

- $[70] million Facility. Zohar Funds and Tilton shall lend up to $[40] million to OpCo senior to Zohar Funds existing debt (the "New Dura Facility"). Tilton to roll her $[30] million ABL into New Dura Facility. Allocation of $[40] million between Zohar Funds and Tilton TBD.
- Terms:
    - Interest Rate: [10%]. Interest Rate escalates by [200 bps every 30 days beginning on the 91st day]
    - Maturity: [150] days
    - Collateral: Same security as ABL plus lien on all unencumbered collateral, including battery tray business and any future unencumbered collateral
    - Exit Fee: Upon repayment of the New Dura Facility, Zohar Funds shall be entitled to a 5% exit fee
    - Standard EOD plus EODs for failure to comply with Monetization Process approved by court.
    - EOD if no Monetization within 150 days; such EOD shall allow for immediate exercise of remedies (no blocking right by Patriarch Lender). [NTD: flip the intercreditor/during an EOD, Zohar Funds' new money becomes first out]
    - A "Monetization" is defined as the closing of a sale or refinancing that meets or exceeds the Proceed Threshold
    - Proceed Threshold - TBD/To be agreed upon as a condition to funding - this represents a net number to the Zohar Funds
    - Intercreditor shall provide that Zohar Funds' consent is required for any financing with "primes" collateral, or which takes liens on unencumbered collateral
    - New Dura Facility shall contain hard call protection and shall not be prepaid prior to a Monetization.
    - Excess Cash provision requiring pay down of New Dura Facility (excess cash includes proceeds from capital leases)

- Monetization Process:
    - Within 10 business days of the closing of the New Dura Facility, the Debtors shall seek approval of a [120] day sale process for Dura with standard sale milestones (bid deadline, auction, sale hearing, sale approval order, etc.)
    - Independent Director and CRO of Zohar Funds to retain [banker] to conduct sales process
    - Farnan and Katzenstein to provide independent oversight of the sale process which shall be open, transparent and foster competitive bidding to maximize the value of Dura - process to be approved by Judge Sontchi (bankruptcy court shall have jurisdiction to resolve any disputes)
    - Tilton may be a bidder so long as her bid meets the Proceed Threshold.
    - To the extent Tilton is a bidder, an independent director shall be appointed to Dura and have exclusive decision making regarding the sale, including, but not limited to, determining the winning bidder

10

- o Dataroom shall be established and access granted to potential purchasers who executed an agreed upon standard, market, NDA
- o Cooperation from all management (Kevin Grady)

- Other:
    - o FTI required to conduct market standard lender due diligence
    - o Transaction to receive court approval in the Zohar bankruptcy
    - o Tilton responsible for all tax liabilities
    - o All tax information, and structure to be implemented in a tax efficient manner
    - o Reps and warranties from existing management related to [INSERT], but including confirmation from Daimler that there has been no loss of business
    - o Confirmation that no claims at Dura Buyer & current debt/capital structure of Dura Buyer and OpCp is accurate
    - o Dura to remain current on payment of all interest due to Zohar Lenders
    - o Resolution of all Preferred Equity disputes prior to funding
    - o Jefferies to release Dura from all claims, including from any transaction fees (and tail fees)
    - o Subject to additional diligence/disclosures of the current financing and collateral at various non-domestic Dura subsidiaries

CONFIDENTIAL                                                                                           PATRIARCH-0004942