## Exhibit D

**Bardin Hill's Oct. 14, 2019 DIP Proposal (and Debtors October 15, 2019 Response)**

K&E DRAFT 10/13/19
SUBJECT TO FRE 408
FOR DISCUSSION PURPOSES ONLY

SUMMARY OF TERMS AND CONDITIONS

This term sheet (the "*Term Sheet*") sets forth certain key terms and conditions of the proposed LIFO Facility referred to below. No legally binding obligation of any party will be established unless and until definitive documents are executed and delivered by all parties thereto and all necessary approvals/consents are obtained.

| | |
|---|---|
| **Borrower:** | Dura Automotive Systems, LLC, a Delaware limited liability company (the "*Borrower*"). |
| **Guarantors:** | Each of the entities that is a guarantor (collectively, the "*Guarantors*", and together with the Borrower, the "*Loan Parties*") under the Existing ABL Credit Agreement.[1] |
| **Lenders:** | [Ark II CLO 2001-1, Ltd. and/or other entities owned or controlled by Lynn Tilton and/or her affiliated entities to be determined] ("*Patriarch*") and [●] ("*Bardin Hill*", and together with Patriarch, the "*Lenders*"), which Lenders shall be reasonably acceptable to the Borrower.[2] |
| **Administrative Agent:** | Patriarch Partners Agency Services, LLC (the "*Administrative Agent*", and together with the Lenders, the "*Secured Parties*"). |
| **Existing ABL Credit Agreement:** | That certain Loan and Security Agreement (as amended, modified or supplemented prior to the date hereof, the "*Existing ABL Credit Agreement*"), dated as of January 21, 2010 (as later modified or amended), among the Borrower, the other borrowers and guarantors party thereto, the lenders party thereto (the "*Existing ABL Lenders*"), and Patriarch Partners Agency Services, LLC (as successor by assignment to Wells Fargo Capital Finance, LLC, successor by merger to Wachovia Capital Finance Corporation (Central)), as agent (the "*Existing ABL Administrative Agent*" and collectively with the Existing ABL Lenders, the "*Existing ABL Secured Parties*"). |
| **Existing Term Loan Credit Agreement:** | That certain Credit Agreement, dated as of January 10, 2010 (as amended, modified or supplemented prior to the date hereof, the "*Existing Term Loan Credit Agreement*"), among Dura Operating, LLC, the guarantors party thereto, the lenders party thereto (the "*Existing Term Loan Lenders*"), and Patriarch Partners Agency Services, LLC, as administrative and collateral agent (in such capacity, the "*Existing Team Loan Agent*", and, together with the Existing Term Loan Lenders, the "*Existing Term Loan Secured Parties*", and the Existing Term Loan Secured Parties, together with the Existing ABL Secured Parties, the |

---

[1] NTD: Additional credit support from other Dura entities subject to tax and local law considerations. We do not anticipate providing foreign collateral at closing. Borrower is willing to discuss foreign collateral to the extent loan proceeds are funded to any applicable entities.

[2] NTD: Bardin Hill commitment could be structured as Bardin Hill backstopping one or more lenders such as Zohar, subject to timing considerations related to the Zohar bankruptcy and requisite approvals. Discuss providing the funds in two tranches such that Patriarch's piece of the loan is made immediately while we await any necessary court approvals for the Bardin Hill commitment.

K&E DRAFT 10/13/19
SUBJECT TO FRE 408
FOR DISCUSSION PURPOSES ONLY

| | |
|---|---|
| | "*Existing Secured Parties*"). |
| **LIFO Facility:** | A "last-in first-out" [term] loan facility denominated in U.S. dollars in an aggregate principal amount of $[70] million (the "*LIFO Facility*"), with Patriarch providing [50%] of the LIFO Facility (the "*Patriarch Commitment*") and Bardin Hill providing [50%] of the LIFO Facility (the "*Bardin Hill Commitment*"). Loans incurred under the LIFO Facility shall be the "*LIFO Loans*." |
| **Interest Rate:** | LIBOR + [____]% per annum (subject to a 1.50% LIBOR floor), payable monthly, on the first business day of each month, in arrears. |
| **Term Loan Closing Fee:** | [●]. |
| **Maturity:** | 120 days. |
| **Amortization:** | None. |
| **Use of Proceeds:** | The proceeds of the LIFO Loans shall be available to finance (a) working capital and general corporate purposes, including capital expenditures related to the Daimler battery tray contract, (b) the pursuit of an Acceptable Sale (as defined below) and (c) fees, expenses and premiums incurred in connection with the transactions contemplated by this Term Sheet. |
| **Acceptable Sale:** | As used herein, the term "*Acceptable Sale*" means a sale of all or substantially all of the [Borrower's and its subsidiaries'] assets not later than [120 days] following the date the initial loans under the LIFO Facility are funded pursuant to a process led and approved by the independent directors of the Borrower.[3] |
| **Credit Bidding:** | In connection with an Acceptable Sale that provides for a sale of the Collateral, (i) Patriarch shall have the right to credit bid up to and including the full amount of the obligations of the Loan Parties owed to the Secured Parties for the benefit of Patriarch under the LIFO Facility plus the full amount of any obligations owed to the Existing ABL Secured Parties under the Existing ABL Credit Agreement and (ii) the Existing Term Loan Agent shall have the right to credit bit up to and including the full amount of the obligations of the Loan Parties owed to the Existing Term Loan Lenders under the Existing Term Loan Credit Agreement. Any such credit bid may provide for the assignment of the right to purchase the acquired assets to a newly formed acquisition vehicle. To the extent Patriarch credit bids its position in connection with an Acceptable Sale, the aggregate amount of LIFO Loans outstanding in respect of the Bardin Hill Commitment shall be reinstated and/or refinanced with a maturity of one year following the closing of such Acceptable Sale. |

---

[3] NTD: To discuss whether the LIFO Facility and the Existing ABL Facility should be paid out in full as a condition here vs. LIFO.

CONFIDENTIAL

DURA_00006907

K&E DRAFT 10/13/19
SUBJECT TO FRE 408
FOR DISCUSSION PURPOSES ONLY

| Equity/Warrants: | None. |
|---|---|
| Documentation: | The LIFO Loans shall be documented through an amendment to the Existing ABL Credit Agreement (the "*Amendment*"), which amendment shall be reasonably satisfactory in form and substance to the Secured Parties and the Borrower. |
| Security: | All or substantially all of the "collateral" provided as security under the Existing ABL Facility and the Existing Term Loan Facility, and certain other unencumbered assets of the Borrower and its subsidiaries, including unencumbered domestic assets of the Loan Parties (the "*Collateral*").[4] |
| Priority: | Subject to and in accordance with the terms of the Amended Intercreditor Agreement, the LIFO Loans will be senior secured obligations of the Loan Parties (i) secured by first priority perfected liens on the Collateral and (ii) [entitled to receive payment in full prior to all other obligations secured under the Existing ABL Credit Agreement pursuant to the waterfall set forth therein].[5] |
| Intercreditor Agreement: | That certain Intercreditor Agreement (as amended, modified or supplemented prior to the date hereof, the "*Intercreditor Agreement*"), dated as of January 21, 2010 (as later modified or amended), among the Existing ABL Administrative Agent, the Existing Term Loan Agent and the other agents named therein shall be amended to set forth the lien priority, relative rights and other creditors' rights issues in respect of the LIFO Facility and other outstanding indebtedness of the Loan Parties in a manner consistent with this Term Sheet shall be amended to reflect the terms herein (as so amended, the "*Amended Intercreditor Agreement*"). |
| Conditions Precedent to Funding: | The initial availability of, and initial funding under, the LIFO Facility shall be subject solely to the satisfaction or waiver of the following conditions precedent:<br><br>(a)   the Amendment and all documents or instruments required to perfect the Administrative Agent's security interests in the Collateral shall have been executed and delivered by the Loan Parties and, if applicable, be in proper form for filing, subject to customary "certain funds";<br><br>(b)   the delivery of customary legal opinions from counsel to the Loan Parties, customary evidence of due authorization, customary secretary's certificates (with certification only of organizational authorization and organizational documents), customary organizational |

---

[4] NTD: See earlier footnote regarding the Guarantors. To discuss opportunities to provide unencumbered assets in foreign jurisdictions post-funding subject to legal and tax considerations.

[5] NTD: The LIFO Loans will be given priority in the waterfall of the Existing ABL Credit Agreement and will be given lien priority through an amendment to the Intercreditor Agreement. Discuss whether the intercreditor issues between the LIFO and the existing ABL can be documented via the Amendment.

CONFIDENTIAL

| | |
|---|---|
| | good standing certificates of the Borrower and the other material Loan Parties (to the extent such concept exists) and a customary borrowing request; |
| | (c) all reasonable and documented out-of-pocket costs, fees and expenses (including, without limitation, reasonable and documented out-of-pocket legal fees and expenses of one primary counsel to the Secured Parties taken as a whole and, to the extent reasonably necessary, one local counsel for all Secured Parties taken as a whole in each relevant material jurisdiction) (in each case, excluding costs of in-house counsel and other third-party advisors without prior written consent of the Borrower) required to be paid to the Secured Parties pursuant to this Term Sheet or the Amendment shall have been paid; |
| | (d) the delivery of the Borrower's audited consolidated balance sheet, statement of operations, statement of income, statement of members' equity and statement of cash flows for the fiscal year ended December 31, 2018; |
| | (e) (i) the Borrower shall have obtained the consent of each Existing Term Loan Lender to subordinate the loans outstanding under the Existing Term Loan Facility as contemplated under "Intercreditor" (including an acknowledgement that it is not subject to challenge in the equitable proceeding) and (ii) to the extent necessary, the Bardin Hill shall obtain court approval of the contemplated transaction;[6] |
| | (f) no default or event of default shall have occurred or be continuing under the Existing ABL Credit Agreement, after giving effect to the Amendment and incurrence of the LIFO Loans; and |
| | (g) the representations and warranties of the Loan Parties under the Existing ABL Credit Agreement shall be true and correct in all material respects, after giving effect to the Amendment and incurrence of the LIFO Loans. |
| **Prepayments:** | Mandatory prepayment (without premium or penalty) of the LIFO Loans shall be required: (i) with 100% of the net cash proceeds from the incurrence of indebtedness not permitted by the Existing ABL Credit Agreement (after giving effect to the Amendment) and (ii) with 100% of the net cash proceeds from certain sales or other dispositions (including casualty events) of any assets with a fair market value in excess of $[●] (excluding dispositions in the ordinary course of business), subject to reinvestment rights to be mutually agreed.<br><br>Voluntary prepayments of borrowings under the LIFO Facility shall be permitted at any time, in minimum principal amounts to be mutually agreed upon between the Borrower and the Administrative Agent, without premium or penalty. |

---

[6] NTD: 100% consent of the Existing Term Loan Lenders to be required.

CONFIDENTIAL
DURA_00006909

| | |
|---|---|
| **Prepayment Premium:** | None. |
| **Representations and Warranties:** | As set forth in the Existing ABL Credit Agreement.[7]<br><br>"***Material Adverse Effect***" shall be defined as a material adverse effect (other than as a result of events and conditions previously disclosed to Lenders or as otherwise contemplated in the Borrower's business plan delivered to the Administrative Agent) on the business, results of operations or financial condition of the Borrower and its subsidiaries, taken as a whole. |
| **Affirmative and Negative Covenants:** | As set forth in the Existing ABL Credit Agreement; <u>provided</u> that (i) there shall be an affirmative covenant to cause the Borrower's management and financial advisors to provide the Secured Parties with detailed [weekly] status reports (which may be via teleconference) regarding marketing efforts for an Acceptable Sale[8] and (ii) there shall be no affirmative covenant requiring delivery of audited financial statements.[9] |
| **Events of Default:** | As set forth in the Existing ABL Credit Agreement; <u>provided</u> that no event of default shall be deemed to have occurred as a result of the Zohar Litigation.[10] |
| **Required Lenders:** | "***Required Lenders***" shall mean the Lenders holding more than 50% of the aggregate principal amount of loans under the Existing ABL Credit Agreement as amended by the Amendment. |
| **Governing Law and Forum:** | New York. |

---

[7] NTD Representations and Warranties in Existing ABL Credit Agreement under review.
[8] NTD: To discuss involvement of independent directors.
[9] NTD Affirmative and Negative Covenants in Existing ABL Credit Agreement under review.
[10] NTD Events of Default in Existing ABL Credit Agreement under review.