**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>DURA AUTOMOTIVE SYSTEMS, LLC, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 19-12378-KBO<br><br>Jointly Administered<br><br>**Hearing Date: May 20, 2020 at 10:00 a.m. (ET)**<br>**Objection Deadline: May 13, 2020 at 4:00 p.m. (ET)**<br><br>**Re: Docket No. 930** |

**OBJECTION OF THE OFFICIAL
COMMITTEE OF UNSECURED CREDITORS TO THE
DEBTORS' MOTION TO FURTHER EXTEND THE EXCLUSIVITY
PERIODS TO FILE A CHAPTER 11 PLAN AND SOLICIT ACCEPTANCES THEREOF**

The Official Committee of Unsecured Creditors (the "Committee") of Dura Automotive Systems, LLC, *et al.* (collectively, the "Debtors") submits this objection (the "Objection") to the *Debtors' Motion to Further Extend the Exclusivity Periods to File a Chapter 11 Plan and Solicit Acceptances Thereof* [Docket No. 930] (the "Second Exclusivity Motion"). In support hereof, the Committee respectfully states as follows:

**PRELIMINARY STATEMENT**

1.      A second extension of the Exclusivity Periods[2] to preserve the Debtors' exclusive right to file a liquidating plan is unwarranted. The Court has held a hearing and granted the Debtors' proposed sales of their businesses, and it is anticipated that the orders approving the sales will require the Debtors to ultimately convert the Chapter 11 Cases to proceedings under chapter

---

[1]     The debtor entities in these chapter 11 cases, along with the last four digits of each Debtor entity's federal tax identification number, are: Dura Automotive Systems Cable Operations, LLC (7052); Dura Automotive Systems, LLC (8111); Dura Fremont L.L.C. (1252); Dura G.P. (8092); Dura Mexico Holdings, LLC (4188); Dura Operating, LLC (2304); and NAMP, LLC (3693).

[2]     Capitalized terms used herein but not otherwise defined have the meanings ascribed to them in the Second Exclusivity Motion.

21059575.2
13447667

7 of the Bankruptcy Code. What is more, by their own admission the Debtors do not have sufficient funds to satisfy all administrative and priority claims, a requirement to confirm a plan under section 1129 of the Bankruptcy Code. Accordingly, the Debtors have failed to demonstrate that "cause" exists for any further extension of the Exclusivity Periods.

2. The Debtors contend that their second requested extension of the Exclusivity Periods is necessary to "finalize their sale process and ensure that there are no further interruptions caused by a competing chapter 11 plan during that critical period." Second Exclusivity Motion, ¶ 5. However, with the sales approved and quick closings of those sales anticipated, the Debtors do not explain how allowing another party in interest to file a liquidating plan which accommodates such Sales might somehow "interrupt" their closing.

3. The Committee has been supportive of the Debtors' Sale process and has continuously negotiated with the Debtors in good faith concerning the Debtors' DIP financing, the Debtors' efforts to obtain additional liquidity through customer accommodations, the Debtors' Sale efforts, and other matters throughout these Chapter 11 Cases. It is unlikely that another party in interest will propose a plan prior to the closing of the North American and European Sale Transactions, and some hypothetical disruption does not justify a further extension of the Exclusivity Periods under. Fairness and the current practicalities of these Chapter 11 Cases demand an end to the Debtors' Exclusivity Periods.

4. Finally, the Committee takes issues with the Debtors' criticism in paragraph 4 of the Second Exclusivity Motion of the Committee's standing motion and pursuit of certain claims and causes of action. As the Debtors themselves have subsequently acknowledged in connection with the Sales, the Committee has been a zealous advocate for their constitutents. What is more, because of the Committee's efforts, the claims and causes of action referenced in the Second

Exclusivity Motion have been carved-out of the Sales, and will remain in the Debtors' bankruptcy estates. The Committee is hopeful that the prosecution of these claims and causes of action will provide for a distribution to the Debtors' creditors.

## BACKGROUND

5.     On October 17, 2019 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Middle District of Tennessee (the "Tennessee Court"). Pursuant to sections 1107 and 1108 of the Bankruptcy Code, the Debtors continue to operate their businesses and properties as debtors-in-possession. No trustee or examiner has been appointed in these cases (the "Chapter 11 Cases"). On November 1, 2019, the United States Trustee for the Middle District of Tennessee appointed the Committee pursuant to section 1102 of the Bankruptcy Code.

6.     On November 1, 2019, the Tennessee Court entered an agreed order in the related bankruptcy cases captioned *In re Zohar III, Corp., et al.*, Case No. 18-10512 (KB) (Bankr. D. Del.) transferring these Chapter 11 Cases to this Court, effective as of November 8, 2019.

7.     On November 19, 2020, the Court entered its Bidding Procedures Order [Docket No. 339] establishing procedures for the Debtors' sale of substantially all of their assets.

8.     On February 13, 2020, the Debtors filed the *Debtors' Motion to Extend the Exclusivity Periods to File a Chapter 11 Plan and Solicit Acceptances Thereof* [Docket No. 654]. On March 18, 2020, the Court entered the *Order Extending the Exclusivity Periods to File a Chapter 11 Plan and Solicit Acceptances Thereof* [Docket No. 774], by which the Court granted an extension of the Debtors' exclusive period to file a chapter 11 plan from February 14, 2020 to

April 29, 2020, and an extension of the Debtors' exclusive period to solicit acceptances of a chapter 11 plan from April 14, 2020 to June 29, 2020.

9. On April 17, 2020, the Debtors filed *Notice of Debtors' Entry into Stock and Asset Purchase Agreement for Sale of Debtors' European Business Filed by Dura Automotive Systems, LLC* [Docket No. 894] (the "European Sale"). On April 30, 2020, the Debtors filed the *Notice of Debtors' Entry into Stock And Asset Purchase Agreement for Sale Of Debtors North American Business* [Docket No. 931] (the "North American Sale," together, with the European Sale, the "Sales").

10. On April 29, 2020, the Debtors filed the Second Exclusivity Motion, by which the Debtors seek a further 30-day extension of the Exclusivity Periods to finalize their sale process.

11. On May 12, 2020, the Court held a hearing to consider approval of the Sales. The Court approved the Sales at that hearing, and the Committee anticipates that orders approving the Sales will be entered very soon. Those sales orders will likely include language directing the Debtors to convert the Chapter 11 Cases to proceedings under chapter 7 of the Bankruptcy Code shortly after the closing of the Sales. The Debtors anticipate that the North American Sale is set to close within days and the European Sale is set to close by the end of May. The Debtors do not anticipate having sufficient funds after closing to pay all administrative and priority claims immediately, rather, the Debtors' bankruptcy estates will hold valuable causes of action to be pursued by a chapter 7 trustee, or with the agreement of the Committee, Zohar and Bardin Hill a liquidating trust.

## **OBJECTION**

12. On request of any party in interest, a bankruptcy court may extend or reduce the exclusive periods for "cause." 11 U.S.C. § 1121(d)(1). As the Bankruptcy Code does not define

4

"cause," a bankruptcy court has broad discretion to decide if exclusivity should be terminated or continued. *See First Am. Bank of New York v. Sw. Gloves & Safety Equip., Inc.*, 64 B.R. 963, 965 (D. Del. 1986). The burden of proving "cause" to reduce or increase exclusivity is on the moving party. *In re Borders Grp., Inc.*, 460 B.R. 818, 821 (Bankr. S.D.N.Y. 2011).

13. Bankruptcy courts often weigh a number of common factors as guidance in determining whether "cause" exists to extend a debtor's exclusivity periods. These factors include, but are not limited, to:

> (1) the size and complexity of the case; (2) the necessity for sufficient time to permit the debtor to negotiate a plan of reorganization and prepare adequate information; (3) the existence of good faith progress toward reorganization; (4) the fact that the debtor is paying its *601 bills as they become due; (5) whether the debtor has demonstrated reasonable prospects for filing a viable plan; (6) whether the debtor has made progress in negotiations with its creditors; (7) the amount of time which has elapsed in the case; (8) whether the debtor is seeking an extension of exclusivity in order to pressure creditors to submit to the debtor's reorganization demands; and (9) whether an unresolved contingency exists.

*In re GMG Capital Partners III, L.P.*, 503 B.R. 596, 600 (Bankr. S.D.N.Y. 2014) (citations omitted).

14. However, these common law factors are not necessarily, by themselves, determinative. *Id*. (quoting *In re Adelphia Commc'ns Corp*., 352 B.R. 578, 590 (Bankr. S.D.N.Y. 2006), *clarified on denial of reconsideration*, No. 02-41729, 2006 WL 2927222 (Bankr. S.D.N.Y. Oct. 10, 2006)). A court's decision to extend a debtor's exclusive periods is a serious matter; extensions are not [to be] granted routinely or cavalierly. *In re Borders Grp., Inc.*, 460 B.R. 818, 821 (Bankr. S.D.N.Y. 2011) (quoting *In re McLean Indus., Inc*., 87 B.R. 830, 834 (Bankr. S.D.N.Y. 1987)). Ultimately, "the primary consideration should be whether or not [extending or terminating exclusivity] would facilitate moving the case forward. And that is a practical call that can override a mere toting up of the factors." *In re Dow Corning Corp*., 208 B.R. 661, 670 (Bankr. E.D. Mich. 1997).

15. Here, denying the Debtors' second extension of the Exclusivity Periods would best facilitate moving the Chapter 11 Cases forward. While the Debtors contend that certain of the factors weigh in favor of a further extension, they primarily assert that the extension is necessary to "finalize their sale process and ensure that there are no further interruptions caused by a competing chapter 11 plan during that critical period." Second Exclusivity Motion, ¶ 5. However, at the May 12, 2020 hearing and in the anticipated orders the Court will have approved the Debtors' Sale Process, the North American Sale, and the European Sale on a final basis. All that remains to occur is the closing of the Sale transactions. The Debtors anticipate that the North American Sale will close within days of the filing of this Objection, and the European Sale will close by the end of the month. Based on the representations of the Debtors and the Purchaser, the Committee is unaware of any issues which may complicate the timely closing of the Sales. With the Sales approved, however, much of the asserted basis for a second extension of the Exclusivity Periods is now moot.

16. Further, the Debtors do not explain how a competing plan proposed by another party in interest might cause an "interruption" to the closing process between the Debtors and the purchaser. Any plan proposed by the Debtors or other party in interest between now and the closing of the Sales must accommodate, and cannot impact or change, the sale of substantially all of the Debtors' assets through the North American Sale and the European Sale. Allowing other parties in interest therefore cannot cause any real interruption as the Debtors contend.

17. The sole purpose of the Chapter 11 Cases going forward will be the liquidation of the remaining assets within the bankruptcy estates, causes of action, and potentially claims administration. Courts have often recognized that the deference given to a chapter 11 debtor in a liquidating case is less than that given to a debtor in a reorganization case. *See, e.g., in re*

*Commercial Mortgage and Fin. Co.*, 2009 WL 589673, at *4 (Bankr. N.D. Ill. March 6, 2009) ("[I]n context of break-up fees, courts previously rejected a debtor's business judgment in favor of best interest of the estate when a Chapter 11 case involved liquidation, rather than reorganization."). With the focus having turned toward liquidation, the underlying bankruptcy principals that provide for an exclusivity period and the ability to seek an extension – to allow the Debtors to rehabilitate their business and negotiate a consensual plan of reorganization – are no longer present here. *See In re Burns and Roe Enters., Inc.*, No. 00-41610 RG, 2005 WL 6289213, at *4 (D.N.J. Nov. 2, 2005) (quoting H.R. Rep. No. 103-835, at 36 (1994), *as reprinted in* 1994 U.S.C.C.A.N. 3340, 3344).

18. The Debtors' conclusory assertions that certain of the common law factors – most of which are no longer applicable in the post-Sale liquidation context – strike in favor of an extension are insufficient to establish the requisite "cause" for extension of the Exclusivity Periods. Rather, as contemplated by court in *Dow Corning*, the current practicalities of the Chapter 11 Cases call for the Exclusivity Periods to end. 208 B.R. at 670 (noting that the primary consideration concerning exclusivity – what would facilitate moving the case forward – "is a practical call that can override a mere toting up of the factors.")

19. The Committee is optimistic that the Sale transactions will timely close and good faith progress toward a consensual liquidating plan can occur during the coming weeks. As such, it appears unlikely that a competing plan would quickly result upon a termination of exclusivity. In any event, however, fairness demands that creditors, as the primary stakeholders, and other parties in interest, be treated in good faith and with equal bargaining power in the consensual liquidating plan formulation process. The continuation of exclusivity for the Debtors would be harmful to a consensual process at this stage, and would create a tactical advantage for the Debtors

which would allow them to hold the primary stakeholders "hostage" to the Debtors' own plan process. *See, e.g., Matter of All Seasons Indus., Inc.*, 121 B.R. 1002, 1006 (Bankr. N.D. Ind. 1990) (noting that extending the debtor's exclusivity would have unintended consequence "of continuing to hold creditors hostage to the Chapter 11 process and pressuring them into accepting a plan they believe to be unsatisfactory."). Creditors should, at a minimum, have the right to prepare and file a plan without further delay or litigation in the event that it becomes necessary in the near future.

20.     The Committee submits that this case will benefit from termination of exclusivity, helping to move the cases forward. Competing plans, or at least the possibility of the filing of competing plans, will spark negotiations placing the main issues in the spotlight and forcing them to the forefront sooner rather than later. *See, e.g., In re Eua Power Corporation*, 130 B.R. 118 (Bankr. D. N.H. 1991) (it is essential to open up the plan process to competing plans to achieve results that will hopefully foster a consensual reorganization or force movement towards a reorganization that might be confirmed by the court). Terminating exclusivity will also avoid potential for unnecessary delay by the Debtors, avoid further disputes and litigation concerning exclusivity, and eliminate any waste of estate resources therefrom. Finally, terminating exclusivity will not unduly prejudice or harm the Debtors or their continuing right to file a plan of liquidation, as they will nonetheless retain the right to do so under section 1121 of the Bankruptcy Code.

21.     Accordingly, the Committee respectfully requests that the Court deny the Second Exclusivity Motion, allow the Debtors' Exclusivity Periods to expire, and allow other parties in interest to prepare and propose a chapter 11 plan of liquidation as the need arises.

**CONCLUSION**

WHEREFORE, the Committee requests that the Court (i) deny the Second Exclusivity Motion and (ii) grant such other and further relief to the Committee as the Court may deem just and proper.

Dated: May 13, 2020                                                          Respectfully submitted,

    */s/ Jennifer R. Hoover*                                        Oscar N. Pinkas (admitted *pro hac vice*)
Jennifer R. Hoover (DE No. 5111)                              Lauren Macksoud (admitted *pro hac vice)*
Kevin M. Capuzzi (DE No. 5462)                                DENTONS US LLP
BENESCH, FRIEDLANDER, COPLAN &                      1221 Avenue of the Americas
ARONOFF LLP                                                                New York, NY  10020
222 Delaware Avenue, Suite 801                                Telephone:  (212) 768-6700
Wilmington, DE 19801                                                  Facsimile:  (212) 768-6800
Telephone:  (302) 442-7010                                          Email: oscar.pinkas@dentons.com
Facsimile:  (302) 442-7012                                                       lauren.macksoud@dentons.com
E-mail: jhoover@beneschlaw.com
        kcapuzzi@beneschlaw.com                              *-and-*

*Counsel to the Official Committee of Unsecured*          James R. Irving (admitted *pro hac vice*)
*Creditors*                                                                       April A. Wimberg (admitted *pro hac vice*)
                                                                           DENTONS BINGHAM GREENEBAUM LLP
                                                                            3500 PNC Tower
                                                                            101 South Fifth Street
                                                                            Louisville, Kentucky 40202
                                                                            Telephone:  (502) 587-3606
                                                                            Facsimile:  (502) 540-2215
                                                                            Email:  james.irving@dentons.com
                                                                                      april.wimberg@dentons.com

                                                              *Counsel to the Official Committee of*
                                                              *Unsecured Creditors*