<u>**EXHIBIT B**</u>

**Blackline**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re: | Chapter 11 |
| DURA AUTOMOTIVE SYSTEMS, LLC, *et al.*,[1] | Case No. 19-12378 (KBO) |
| Debtors. | (Jointly Administered) |

**ORDER (I) APPROVING THE NORTH AMERICAN**
**STOCK AND ASSET PURCHASE AGREEMENT, (II) AUTHORIZING THE SALE**
**OF SUBSTANTIALLY ALL OF THE DEBTORS' NORTH AMERICAN ASSETS**
**FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS,**
**AND (III) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN**
**EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

Upon the motion [Docket No. 154] (the "Bid Procedures Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an order (this "North American Sale Order"): (a) approving the stock and asset purchase agreement for the Debtors' North American assets and certain related assets and stock (the "North American Purchase Agreement"),[3] attached to this North American Sale Order as **Exhibit 1**, as it may be amended, modified, or supplemented in accordance with the terms thereof; (b) authorizing and

---

[1]    The debtor entities in these chapter 11 cases, along with the last four digits of each Debtor entity's federal tax identification number, are:  Dura Automotive Systems Cable Operations, LLC (7052); Dura Automotive Systems, LLC (8111); Dura Fremont L.L.C. (1252); Dura G.P. (8092); Dura Mexico Holdings, LLC (4188); Dura Operating, LLC (2304); and NAMP, LLC (3693).  Dura Automotive Systems, LLC's service address is: 1780 Pond Run, Auburn Hills, Michigan 48326.

[2]    Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Bid Procedures Motion, the Bid Procedures Order, or the North American Purchase Agreement, as applicable; provided, that "Prepetition Term Loan Agent", "Prepetition Term Loan Lenders", "Prepetition Term Loan Secured Parties", "Prepetition Term Loan Obligations" and "DIP Lenders" have the meanings ascribed to them in the Final DIP Order.  To the extent there is a conflict between a capitalized term in the Bid Procedures Order and a capitalized term in the North American Purchase Agreement, the meaning ascribed to such term in the North American Purchase Agreement shall control and govern.

[3]    In addition to the North American Purchase Agreement, as defined herein, the Debtors have entered into the European Purchase Agreement and have sought Court approval of the European Sale (each as defined in the European Sale Order).

approving the sale of the Transferred Assets pursuant to the terms of the North American Purchase Agreement (the "North American Sale") free and clear of liens, claims, encumbrances, and other interests to the extent set forth in the North American Purchase Agreement; (c) authorizing the assumption and assignment of the Transferred Contracts as set forth in the North American Purchase Agreement; and this Court having entered an order on November 19, 2019 [Docket No. 339] (the "Bid Procedures Order") approving the bid procedures in connection with the sale of all or substantially all of the Debtors' assets, attached as Exhibit 1 to the Bid Procedures Order (the "Bid Procedures"); and the Debtors having determined after an extensive marketing and sale process, that DNA Buyer LLC (together with those permitted assignees of DNA Buyer LLC pursuant to the North American Purchase Agreement, the "North American Purchaser"), has submitted the highest or otherwise best bid with respect to the Transferred Assets; and upon due, adequate, and sufficient notice of the North American Sale, the North American Purchase Agreement, and all other related transactions contemplated thereunder and in this North American Sale Order; and all interested parties having been afforded an opportunity to be heard with respect to the North American Sale, and all relief related thereto; and the Court having reviewed and considered the North American Purchase Agreement, the North American Sale, and all relief related thereto and any objections and other responses thereto, and the arguments of counsel made, and the uncontroverted evidence adduced, including the declarations of Jill Frizzley [Docket No. 980], Richard W. Morgner [Docket No. 977], James E. Riedy [Docket No. 978], and Mark Berger [Docket No. 979] (collectively, the "Declarations"), at the Sale Hearing and the entire record of the Sale Hearing; and this Court having conducted the Sale Hearing to consider entry of this North American Sale Order on May 12, 2020; and upon the full record in support of the relief requested by the Debtors in the Bid Procedures Motion; and this

Court having core jurisdiction over this matter; and that this Court may enter a final order on the North American Sale consistent with Article III of the United States Constitution; and this Court having found that venue of the chapter 11 cases in this district is proper; and it further appearing that the legal and factual bases set forth at the Sale Hearing establish just cause for the relief granted herein; and it appearing that the relief requested in this North American Sale Order is in the best interests of the Debtors, their estates, their creditors, and all other parties in interest; and upon the full record of these chapter 11 cases and all other pleadings and proceedings; and after due deliberation thereon, and good and sufficient cause appearing therefor,

**THE COURT HEREBY FINDS THAT:**[4]

## I.      Jurisdiction, Final Order, and Statutory Predicates.

A.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(b)(l) and 1334(a) and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  This is a core proceeding under 28 U.S.C. § 157(b).  This Court may enter a final order with respect to the North American Sale and all related relief, in each case, consistent with Article III of the United States Constitution.  Venue is proper in this District and in the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

B.      The statutory predicates for the relief requested with respect to the North American Sale are sections 363 and 365 of the Bankruptcy Code and Bankruptcy Rules 2002(a)(2), 6004, 6006, 9007, and 9014.

C.      This North American Sale Order constitutes a final order within the meaning of 28 U.S.C. § 158(a).  Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure,

---

[4]      All findings of fact and conclusions of law announced by the Court at the Sale Hearing in relation to the North American Sale are hereby incorporated herein ~~to the extent not inconsistent herewith~~.

3

as made applicable by Bankruptcy Rule 7054, the Court expressly finds that there is no just reason for delay in the implementation of this North American Sale Order, waives any stay, and expressly directs entry of judgment as set forth herein.

## II.    Notice.

D.    Actual written notice of this proposed North American Sale, the assumption and assignment of the Initial Transferred Contracts, and the Sale Hearing, and a reasonable opportunity to object or be heard with respect to the North American Sale and the relief requested therein and to the entry of this North American Sale Order under the circumstances of these cases, has been afforded to interested persons and entities, including, but not limited to, the following parties (the "Notice Parties"):  (i) the U.S. Trustee; (ii) the Committee; (iii) counsel to the Prepetition Term Loan Secured Parties; (iv) counsel to the agent under the Debtors' debtor-in-possession financing facility; (v) the offices of the attorneys general for the states in which the Debtors operate; (vi) the United States Attorney's Office for the District of Delaware; (vii) the Internal Revenue Service; (viii) all parties to the Initial Transferred Contracts; (ix) all parties who have expressed a written interest in some or all of the Transferred Assets; (x) all known holders of liens, encumbrances, and other claims secured by the Transferred Assets; (xi) all applicable state and local taxing authorities; (xii) each governmental agency that is an interested party with respect to the North American Sale and transactions proposed thereunder; and (xiii) all parties that have requested or that are required to receive notice pursuant to Bankruptcy Rule 2002, as evidenced by the affidavits of service filed with the Court [Docket Nos. 350, 352 417, 605, 638, 714, 744, 753, 765, 964, 967, and 975].

E.    With respect to persons or entities whose identities are not reasonably ascertainable by the Debtors, publication of the *Notice of Auction for the Sale of Substantially*

4

*All Assets of the Debtors Free and Clear of Any and All Claims, Interest, and Encumbrances* in *The New York Times (National Edition)*, *The Detroit Free Press,* and the *Tennessean* on November 26, 2019, as evidenced by the affidavit of publication previously filed with the Court [Docket No. 398], was sufficient and reasonably calculated under the circumstances to reach all such persons or entities.

F.      As further evidenced by the affidavits of service previously filed with the Court [Docket Nos. 350, 352, 417, 605, 638, 714, 744, 753, 765, 964, 967, and 975], and based on the representations of counsel at the Sale Hearing, notice of the Sale Hearing, the North American Sale, and the assumption and assignment of those Transferred Contracts that are identified in the North American Purchase Agreement attached hereto as <u>Exhibit 1</u> (the "<u>Initial Transferred Contracts</u>")[5] as being assumed and assigned to the North American Purchaser at Closing pursuant to this North American Sale Order was due, proper,  timely, adequate, fair, equitable and sufficient under the circumstances.

G.      Notice of the Sale Hearing, the North American Sale, and the assumption and assignment of the Initial Transferred Contracts to be assumed and assigned to the North American Purchaser at Closing pursuant to this North American Sale Order was reasonably calculated to provide the Notice Parties and all other interested parties with timely and proper notice under the circumstances of these chapter 11 cases, and no other or further notice with respect to such matters is, or shall be, required.

H.      A reasonable opportunity to object and be heard with respect to the North American Sale, and the relief requested therein, including but not limited to the assumption and assignment of the Initial Transferred Contracts and the Cure Claims, has been afforded to all

---

[5]    For the avoidance of doubt, no executory contract or unexpired lease between a Debtor and QAD Inc. is an Initial Transferred Contract.

interested Persons (as defined in the North American Purchase Agreement), including the Notice Parties.

### III.    Compliance with the Bid Procedures and the Bid Procedures Order.

I.    As demonstrated by the uncontroverted testimony and other evidence proffered or adduced at the Sale Hearing, including the Declarations, and the representations of counsel made on the record at the Sale Hearing, the Debtors have adequately marketed the Transferred Assets and conducted the sale process in compliance with the Bid Procedures and the Bid Procedures Order, and the bidding process was conducted in aan appropriate, noncollusive, fair, and good-faith manner.  The Debtors and their professionals conducted the sale process in compliance with the Bid Procedures and the Bid Procedures Order and have afforded potential purchasers a full and fair opportunity to participate in the bidding process for the Transferred Assets and make higher or better offers.  The North American Purchaser acted in compliance with the Bid Procedures and the Bid Procedures Order and conducted itself in a noncollusive, fair, and good-faith manner, as evidenced by, among other things, the extensive marketing process and the Debtors' efforts during arm's-length negotiations with all interested parties.  In accordance with the Bid Procedures and the Bid Procedures Order, the Debtors determined that the bid submitted by the North American Purchaser and memorialized by the North American Purchase Agreement is the Successful Bid for the Transferred Assets.

### IV.    Good Faith of North American Purchaser.

J.    The North American Purchase Agreement was negotiated, proposed, and entered into by the Debtors and the North American Purchaser without collusion, in good faith, and from arm's-length bargaining positions.

6

K.      The Debtors and the North American Purchaser have not engaged in any conduct in connection with the North American Sale that would cause or permit the North American Purchase Agreement or the consummation of the North American Sale to be avoided, or costs or damages to be imposed, under section 363(n) of the Bankruptcy Code.  The North American Purchaser has not acted in a collusive manner with any Person, and the purchase price was not controlled by any agreement among bidders, all of whom acted in good-faith, at arm's length, and in a noncollusive manner.   Among other things: (i) the North American Purchaser recognized that the Debtors were free to deal with any other party interested in acquiring the Transferred Assets; (ii) the North American Purchaser complied with the provisions of the Bid Procedures Order; (iii) the North American Purchaser agreed to subject its bid to the competitive bidding procedures set forth in the Bid Procedures Order; and (iv) all payments to be made by the North American Purchaser and other agreements or arrangements entered into by the North American Purchaser in connection with the North American Sale have been disclosed.  The North American Purchaser is purchasing the Transferred Assets in good-faith and for value, and the North American Purchaser is a good-faith purchaser within the meaning of section 363(m) of the Bankruptcy Code.  The North American Purchaser is therefore entitled to the full rights, benefits, privileges, and protections afforded under section 363(m) of the Bankruptcy Code and any other applicable or similar bankruptcy and nonbankruptcy law.

**V.      Highest and Best Offer.**

L.      The Bid Procedures are reasonable and appropriate and represent the best available method for conducting the sale process in a manner that maximizes value for the benefit of the Debtors' estates.

7

M.      The Debtors' marketing and sales process with respect to the Transferred Assets in accordance with the Bid Procedures afforded a full, fair, and reasonable opportunity for any Person to make a higher or otherwise better offer to purchase the Transferred Assets.   The Debtors conducted a marketing process in accordance with, and have otherwise complied in all respects with, the Bid Procedures and the Bid Procedures Order.   A reasonable opportunity has been given to any interested party to make a higher or otherwise better offer for the Transferred Assets.

N.      The North American Purchase Agreement constitutes the highest and best offer for the Transferred Assets, and the Debtors' determination that the North American Purchase Agreement maximizes value for the benefit of the Debtors' estates and constitutes the highest and best offer for the Transferred Assets each constitutes a valid and sound exercise of the Debtors' business judgment and is in accordance and compliance with the Bid Procedures and the Bid Procedures Order.   The North American Purchase Agreement represents fair and reasonable terms for the purchase of the Transferred Assets.

O.      Approval of the North American Sale and the North American Purchase Agreement and the prompt consummation of the transactions contemplated thereby will maximize the value of each Debtor's estate and are in the best interests of the Debtors, their chapter 11 estates, their creditors, and other parties in interest.

**VI.    No Merger, No Successorship or Transferee Liability.**

P.      The North American Purchaser shall not be deemed, as a result of the North American Sale,  to be a successor to or a mere continuation of the Debtors or their estates, and there is no continuity of enterprise or common identity between the North American Purchaser and the Debtors as a result of the North American Sale.  The North American Purchaser shall not

be deemed to be holding itself out to the public as a successor to or a continuation of the Debtors or their estates based on the North American Sale.   The North American Purchaser is not a successor to any of the Debtors or their estates by reason of any theory of law or equity, and the North American Sale does not amount to a consolidation, succession, merger, or *de facto* merger of North American Purchaser and the Debtors.   The transfer of the Transferred Assets to the North American Purchaser, and the assumption of the Assumed Liabilities by the North American Purchaser, except as otherwise explicitly set forth in the North American Purchase Agreement, does not, and will not, subject the North American Purchaser to any liability whatsoever, with respect to the Debtors or the operation of the Debtors' businesses prior to the Closing or by reason of such transfer, including under the laws of the United States, any state, territory, or possession thereof, or the District of Columbia, or any foreign jurisdiction, based, in whole or in part, directly or indirectly, on any, or any theory of, successor, vicarious, antitrust, environmental (to the greatest extent allowed by applicable law), revenue, pension, ERISA, tax, labor (including any WARN Act), employment or benefits, de facto merger, business continuation, substantial continuity, alter ego, derivative, transferee, veil piercing, escheat, continuity of enterprise, mere continuation, product line, or products liability or law, or other applicable law, rule, or regulation (including filing requirements under any such law, rule, or regulation), or theory of liability, whether legal, equitable, or otherwise (collectively, the "Successor or Other Liabilities").   Pursuant to the North American Purchase Agreement, the North American Purchaser is not purchasing all of the Debtors' assets in that the North American Purchaser is not purchasing any of the Excluded Assets or assuming any Liabilities other than the Assumed Liabilities.

**VII.     Validity of Transfer.**

9

Q.      The North American Sale to the North American Purchaser will be a legal, valid, enforceable, and effective sale and transfer of all of the Debtors' right, title, and interest in the Transferred Assets and the Assumed Liabilities and will vest the North American Purchaser with all legal, equitable, and beneficial right, title, and interest of the Debtors to the Transferred Assets free and clear of all Interests (as defined below) (other than Assumed Liabilities and Permitted Obligations (as defined below)) of any kind or nature whatsoever, including rights or claims based on any Successor or Other Liabilities.

R.      The North American Purchase Agreement is a valid and binding contract between the Debtors and the North American Purchaser and shall be enforceable pursuant to its terms. The North American Purchase Agreement, the North American Sale, and the consummation thereof shall be specifically enforceable against and binding upon (without posting any bond) the Debtors and any chapter 7 or chapter 11 trustee appointed in these chapter 11 cases (or subsequently converted cases), and shall not be subject to rejection or avoidance by the foregoing parties or any other Person.  The North American Purchase Agreement was not entered into for the purpose of hindering, delaying, or defrauding creditors under the Bankruptcy Code or under the laws of the United States, any state, territory, possession, or the District of Columbia, or foreign jurisdiction.  The consideration provided by the North American Purchaser for the Transferred Assets pursuant to the North American Purchase Agreement (i) is fair and reasonable, (ii) is the highest and best offer for the Transferred Assets, (iii) will provide a greater recovery for the Debtors' creditors than would be provided by any other practical available alternative, and (iv) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, or the District of Columbia, and any foreign jurisdiction (including the Uniform Fraudulent

10

Conveyance Act, the Uniform Fraudulent Transfer Act, and similar laws and acts).  Neither the Debtors nor the North American Purchaser is entering into the transactions contemplated by the North American Purchase Agreement fraudulently for the purpose of statutory and common-law fraudulent conveyance and fraudulent transfer claims.

S.      The transfer of each of the Transferred Assets to the North American Purchaser will be, as of the Closing Date, a legal, valid, and effective transfer of all of the Debtors' right, title, and interest in the Transferred Assets, which transfer vests or will vest the North American Purchaser with all right, title, and interest of the Debtors to the Transferred Assets free and clear of (i) all liens (including any liens as that term is defined in section 101(37) of the Bankruptcy Code) and Encumbrances (as defined in the North American Purchase Agreement) relating to, accruing, or arising any time prior to the Closing Date (collectively, the "Liens"), and (ii) all debts (as defined in section 101(12) of the Bankruptcy Code) arising under, relating to, or in connection with any act of the Debtors or claims (as that term is defined in section 101(5) of the Bankruptcy Code), liabilities, obligations, demands, guaranties, options in favor of third parties, rights, contractual commitments, restrictions, interests, mortgages, hypothecations, charges, indentures, loan agreements, instruments, leases, licenses, deeds of trust, security interests or similar interests, conditional sale or other title retention agreements and other similar impositions, imperfections or defects of title or restrictions on transfer or use, pledges, judgments, claims for reimbursement, contribution, indemnity, exoneration, infringement, products liability, alter ego liability, suits, credits, allowances, options, limitations, causes of action, choses in action, rights of first refusal or first offer, rebate, chargeback, credit, or return, proxy, voting trust or agreement or transfer restriction under any shareholder or similar agreement or encumbrance, title defects, easements, rights of way, encroachments, Liabilities (as

11

defined in the North American Purchase Agreement), and matters of any kind and nature, whether arising prior to or subsequent to the Petition Date, whether known or unknown, legal or equitable, matured or unmatured, contingent or noncontingent, liquidated or unliquidated, asserted or unasserted, whether imposed by agreement, understanding, law, equity, or otherwise (including rights with respect to Claims (as defined below) and Liens (A) that purport to give to any party a right or option to effect a setoff (except for setoffs exercised prior to the Petition Date) against, or a right or option to effect any forfeiture, modification, profit sharing interest, right of first refusal, purchase or repurchase right or option, or termination of, any of the Debtors' or the North American Purchaser's interests in the Transferred Assets, or any similar rights, if any, or (B) in respect of taxes, restrictions, rights of first refusal, charges of interests of any kind or nature, if any, including any restriction of use, voting, transfer, receipt of income, or other exercise of any attribute of ownership) collectively, as defined in this clause (ii), the "Claims," and together with the Liens and other interests of any kind or nature whatsoever, the "Interests"; provided that for the avoidance of doubt, any sale free and clear of Interests shall not affect the Liabilities of the Transferred Subsidiaries, which shall remain Liabilities of the Transferred Subsidiaries after the Closing), relating to, accruing, or arising any time prior to entry of this North American Sale Order, with the exception of any such Interests that are expressly assumed by the North American Purchaser under the North American Purchase Agreement, including, for the avoidance of any doubt, the Assumed Liabilities, the Permitted Encumbrances, Cure Claims or any other obligations arising under the Transferred Contracts to the extent set forth in the North American Purchase Agreement (collectively, the "Permitted Obligations").  Any and all valid and perfected Interests in the Transferred Assets shall attach to the proceeds (if any) of the North American Sale with the same validity, force, and effect, if any,

and in the same order of priority, that they have now as against the Transferred Assets, subject to any rights, claims, and defenses with respect thereto, provided, however, that nothing set forth herein is intended to, nor shall it, affect, modify, impair or alter in any manner any rights, protections or claims granted to the DIP Lenders or any other party in (or any stipulations or waivers by the Debtors set forth in) the Final DIP Order or any rights, claims or defenses of any other party in interest with respect to any of the foregoing in this proviso; provided, further that notwithstanding the foregoing, the sale of the Transferred Assets is free and clear of any liens, rights, protections or claims granted to the DIP Lenders or any other party in the Final DIP Order against the Transferred Assets.

## VIII.    Section 363(f) Is Satisfied.

T.        The conditions of section 363(f) of the Bankruptcy Code have been satisfied; therefore, the Debtors may sell the Transferred Assets free and clear of all Interests (other than the Permitted Obligations).

U.        The North American Purchaser would not have entered into the North American Purchase Agreement and would not consummate the transactions contemplated thereby if (i) the sale of the Transferred Assets to the North American Purchaser were not free and clear of all Interests (other than Permitted Obligations) of any kind or nature whatsoever, or (ii) if the North American Purchaser would, or in the future could, be liable for any of the Interests (other than the Permitted Obligations).  The North American Purchaser will not consummate the transactions contemplated by the North American Purchase Agreement unless this Court expressly orders that none of the North American Purchaser its Affiliates, its present or contemplated members or shareholders, or the Transferred Assets (as to each, solely with respect to its role as the North American Purchaser and not in any other capacity or respect, including as

13

a debt or equity holder of the Debtors, if applicable), will have any liability whatsoever with respect to, or be required to satisfy in any manner, whether at law or in equity, or by payment, setoff (except for setoffs exercised prior to the Petition Date) or otherwise, directly or indirectly, any Interests (other than Permitted Obligations), including rights or claims based on any Successor or Other Liabilities.  The total consideration to be provided under the North American Purchase Agreement reflects the North American Purchaser's reliance on this North American Sale Order to provide it, pursuant to section 363 of the Bankruptcy Code, with title to and possession of the Transferred Assets free and clear of all Interests (other than Permitted Obligations) of any kind or nature whatsoever (including any potential Successor or Other Liabilities).

V.      Not transferring the Transferred Assets free and clear of all Interests (other than Permitted Obligations) of any kind or nature whatsoever, including rights or claims based on any successor, transferee, derivative, or vicarious liability or any similar theory and/or applicable state, federal, or foreign law or otherwise, would adversely impact the Debtors' efforts to maximize the value of their estates, and the transfer of the Transferred Assets other than pursuant to a transfer that is free and clear of all Interests (other than Permitted Obligations) of any kind or nature whatsoever would be of substantially less benefit to the Debtors' estates.

W.      The Debtors may sell the Transferred Assets free and clear of all Interests (other than Permitted Obligations) because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied.  Those holders of Interests who did not timely object to the North American Sale or withdrew objections to the North American Sale are deemed to have consented to the North American Sale pursuant to section 363(f)(2) of the Bankruptcy Code.  All other holders of Interests (except to the extent that such Interests are

14

Permitted Obligations) fall within one or more of the other subsections of section 363(f) of the Bankruptcy Code. Because any and all valid and perfected Interests in the Transferred Assets shall attach to the proceeds (if any) of the North American Sale with the same validity, force, and effect, if any, and in the same order of priority, that they have now as against the Transferred Assets, subject to any rights, claims, and defenses with respect thereto, all holders of Interests are adequately protected; provided, however, that nothing set forth herein is intended to, nor shall it, affect, modify, impair or alter in any manner any rights, protections or claims granted to the DIP Lenders or any other party in (or any stipulations or waivers by the Debtors set forth in) the Final DIP Order, or any rights, claims or defense of any other party in interest with respect to any of the foregoing in this proviso; provided, further that notwithstanding the foregoing, the sale of the Transferred Assets is free and clear of any liens, rights, protections or claims granted to the DIP Lenders or any other party in the Final DIP Order against the Transferred Assets.

IX.    **Cure Claims and Adequate Assurance of Future Performance.**

X.    The assumption and assignment of the Transferred Contracts pursuant to the terms of this North American Sale Order is integral to the North American Purchase Agreement and is in the best interests of the Debtors and their estates, their creditors, and other parties in interest, and represents the reasonable exercise of sound and prudent business judgment by the Debtors.  The assumption and assignment of the Transferred Contracts (i) is necessary to sell the Transferred Assets to the North American Purchaser, (ii) allows the Debtors to maximize the value of the Transferred Assets, including the Transferred Contracts, (iii) limits the losses suffered by counterparties to the Transferred Contracts, and (iv) maximizes the recoveries to other creditors of the Debtors by limiting the amount of claims against the Debtors' estates by avoiding the rejection of the Transferred Contracts.  For these reasons, the Debtors have exercised sound business judgment in assuming and assigning the Transferred Contracts and such assumption and assignment is in the best interests of the Debtors' estates.

Y.    Pursuant to section 365(f) of the Bankruptcy Code, each Transferred Contract required to be assumed and assigned under the North American Purchase Agreement shall be assigned and transferred to, and remain in full force and effect for the benefit of, the North American Purchaser, notwithstanding any provision in such contract or other restrictions prohibiting its assignment or transfer.  No section of any of the Transferred Contracts that would prohibit, restrict, or condition, whether directly or indirectly, the use, assumption, or assignment of any of the Transferred Contracts in connection with the North American Sale shall have any force or effect.

Z.    Except as expressly assumed by the North American Purchaser under the North American Purchase Agreement, the transfer of the Transferred Assets to the North American

16

Purchaser and the assignment to the North American Purchaser of the Transferred Contracts will not subject the North American Purchaser to any liability whatsoever which may become due or owing under the Transferred Contracts prior to the Closing Date (other than Cure Claims), or by reason of such transfer under the laws of the United States, any state, territory, or possession thereof, or the District of Columbia, or foreign jurisdiction, based, in whole or in part, directly or indirectly, on any theory of law or equity, including any Successor or Other Liabilities.

AA.    Upon the Closing, the North American Purchaser shall have:  (i) to the extent necessary, cured or provided adequate assurance of cure of, any default existing prior to the date hereof under the Transferred Contracts, within the meaning of sections 365(b)(1)(A) and 365(f)(2)(A) of the Bankruptcy Code by paying the Cure Claims set forth in the cure notices filed with the Court [Docket Nos. 407, 748] or such other amount that has been agreed to by the North American Purchaser and the counterparty to the Transferred Contract or is ordered by the Court; and (ii) to the extent necessary, provided compensation or adequate assurance of compensation to any party for any actual pecuniary loss to such party resulting from a default prior to the date hereof under the Transferred Contracts, within the meaning of sections 365(b)(1)(B) and 365(f)(2)(B) of the Bankruptcy Code.  The North American Purchaser's obligation to pay the Cure Claims and to perform the obligations under the Transferred Contracts in accordance with the terms of the North American Purchase Agreement shall constitute adequate assurance of future performance within the meaning of sections 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy Code to the extent that any such assurance is required and not waived expressly in writing by the counterparties to the respective Transferred Contracts.

17

## X.    Not a Sub Rosa Plan.

BB.    The North American Sale does not constitute a sub rosa chapter 11 plan for which approval has been sought without the protection that a disclosure statement would afford.  The North American Sale neither impermissibly restructures the rights of the Debtors' creditors nor impermissibly dictates a liquidating plan for the Debtors.

## XI.    Compelling Circumstances for an Immediate Sale.

CC.    Good and sufficient reasons for approval of the North American Purchase Agreement, all documents related to the North American Sale that are contemplated by, or executed in connection with, the North American Purchase Agreement, and consummate ion of the transactions contemplated thereby (including the North American Sale) (collectively, the "Transaction Documents"), and the North American Sale have been articulated, and the Debtors' decision to enter into the North American Purchase Agreement, the Transaction Documents, and the transactions contemplated thereby represents an exercise of sound business judgment.  The evidence provided at the Sale Hearing demonstrates that the sale of the Transferred Assets must be approved and consummated promptly in order to preserve the value of the Transferred Assets. The relief requested with respect to the North American Sale is in the best interests of the Debtors, their estates, their creditors, and other parties in interest.  The Debtors' evidence at the Sale Hearing has demonstrated both (i) good, sufficient, and sound business purposes and justifications for approving the North American Purchase Agreement and (ii) compelling circumstances for the immediate approval and consummation of the transactions contemplated by the North American Purchase Agreement and the Transaction Documents outside the ordinary course of business, pursuant to section 363(b) of the Bankruptcy Code before, and outside of, a plan of reorganization, in that the prompt consummation of the North American

18

Sale to the North American Purchaser is necessary and appropriate to maximize the value of the Debtors' estates and the North American Sale will provide the means for the Debtors to maximize distributions to creditors.  Accordingly, there is cause to lift the stay contemplated by Bankruptcy Rules 6004 and 6006 with respect to the transactions contemplated by this North American Sale Order.

<strong>THE COURT HEREBY ORDERS THAT:</strong>

**I.      General Provisions.**

1.      The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to these chapter 11 cases pursuant to Bankruptcy Rule 9014.  To the extent that any of the findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the conclusions of law constitute findings of fact, they are adopted as such.  The findings of fact and conclusions of law set forth herein shall be the Court's determinations or rulings, as applicable, to the maximum extent permitted by or available under applicable law.

2.      The North American Sale and the transactions contemplated by the North American Purchase Agreement and the Transaction Documents are approved, in each case as set forth herein and on the record of the Sale Hearing, which is incorporated herein as if fully set forth in this North American Sale Order.

3.      All objections to, reservations of rights regarding, or other responses to the North American Purchase Agreement, the Transaction Documents, the North American Sale, the entry of this North American Sale Order, or the relief granted herein, including any objections to Cure Claims to the extent relating to Initial Transferred Contracts or relating to the cure of any defaults under any of such Initial Transferred Contracts or to the assumption and assignment of

any of such Initial Transferred Contracts to the North American Purchaser by the Debtors, that have not been withdrawn, waived, or settled, or that have not otherwise been resolved pursuant to the terms hereof, as announced to the Court at the Sale Hearing, or by stipulation filed with the Court, are hereby denied and overruled on the merits with prejudice.  Those parties who did not timely object to the North American Sale or the entry of this North American Sale Order, or who withdrew their objections thereto, are deemed to have consented to the relief granted herein for all purposes, including pursuant to section 363(f)(2) of the Bankruptcy Code.

**II.      Approval of the North American Purchase Agreement.**

4.      The North American Purchase Agreement and the Transaction Documents, including, in each case, any amendments, supplements, and modifications thereto disclosed as of the date of this North American Sale Order, and all of the terms and conditions thereof, are hereby approved.

5.      Pursuant to sections 363(b) and (f) and 365 of the Bankruptcy Code, the Debtors are authorized and empowered to take any and all actions necessary or appropriate to, and the North American Purchaser is directed to, (a) consummate the North American Sale pursuant to and in accordance with the terms and conditions of the North American Purchase Agreement and the Transaction Documents, (b) close the North American Sale as contemplated in the North American Purchase Agreement and this North American Sale Order, and (c) execute and deliver, perform under, consummate, implement, and take any and all other acts or actions as may be reasonably necessary or appropriate to the performance of their obligations as contemplated by the North American Purchase Agreement or the Transaction Documents, in each case without further notice to or order of this Court, including documenting the assumption and assignment to the North American Purchaser of the Transferred Contracts.  The North American Purchase

Agreement and the Transaction Documents shall be binding in all respects upon the Debtors, their estates, the North American Purchaser, and all successors and assigns of each of the foregoing, including any trustee subsequently appointed in these chapter 11 cases or upon conversion to chapter 7 under the Bankruptcy Code.  This North American Sale Order shall be binding in all respects upon the Debtors, their estates, all creditors, all holders of equity interests in any Debtor, all holders of Claims (whether known or unknown) against the Debtors, any holders of Liens or other Interests against, in, or on all or any portion of the Transferred Assets, all counterparties to any executory contract or unexpired lease of the Debtors (including all non-Debtor parties to the Transferred Contracts), the North American Purchaser, and all successors and assigns of each of the foregoing, including any trustee subsequently appointed in these chapter 11 cases or upon a conversion to chapter 7 under the Bankruptcy Code of any of the Debtors' chapter 11 cases or any purchaser.  This North American Sale Order and the North American Purchase Agreement shall inure to the benefit of the Debtors, their estates and creditors, the North American Purchaser, and the respective successors and assigns of each of the foregoing, including any trustee subsequently appointed in these chapter 11 cases or upon conversion to chapter 7 under the Bankruptcy Code, and any Person seeking to assert rights on behalf of any of the foregoing or that belong to the Debtors' estates.

## III.    **Transfer of the Transferred Assets.**

6.      Pursuant to sections 363(b), 363(f), 365(b), and 365(f) of the Bankruptcy Code, the Debtors shall transfer the Transferred Assets, including the Transferred Contracts, to the North American Purchaser on the Closing Date (or such later date as the Court may order) in accordance with the terms of the North American Purchase Agreement and the Transaction Documents; such transfer shall constitute a legal, valid, binding, and effective transfer of all of

21

the Debtors' right, title, and interest in such Transferred Assets; and the North American Purchaser shall take title to and possession of such Transferred Assets free and clear of all Interests of any kind or nature whatsoever (except as expressly set forth in the North American Purchase Agreement with respect to Permitted Obligations).  Any and all valid and perfected Interests in the Transferred Assets shall attach to the proceeds (if any) of the North American Sale with the same validity, force, and effect, if any, and in the same order of priority, that they have now as against the Transferred Assets, subject to any rights, claims, and defenses with respect thereto; provided, however, that nothing set forth herein is intended to, nor shall it, affect, modify, impair or alter in any manner any rights, protections or claims granted to the DIP Lenders or any other party in (or any stipulations or waivers by the Debtors set forth in) the Final DIP Order, or any rights, claims or defenses of any other party in interest with respect to any of the foregoing in this proviso; provided, further that notwithstanding the foregoing, the sale of the Transferred Assets is free and clear of any liens, rights, protections or claims granted to the DIP Lenders or any other party in the Final DIP Order against the Transferred Assets.  Upon and as of the Closing, the North American Purchaser shall be deemed to be substituted for the applicable Debtor as the sole obligor for the Permitted Obligations and the Debtors and their estates shall be relieved from any liability or obligation with respect to the Permitted Obligations.

7.     The Debtors are hereby authorized to take any and all actions necessary to consummate the North American Purchase Agreement and the Transaction Documents, including any actions that otherwise would require further approval by shareholders, members, or its board of managers, as the case may be, without the need of obtaining such approvals.

8.      Each and every federal, state, local, and other governmental agency or department is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the North American Purchase Agreement and the Transaction Documents.  The North American Purchaser may, but shall not be required to, file a certified copy of this North American Sale Order in any filing or recording office in any federal, state, county, or other territory or jurisdiction in which any of the Debtors is incorporated or has real or personal property, or with any other appropriate clerk or recorded with any other appropriate recorder, and such filing or recording shall be accepted and shall be sufficient to unconditionally release, discharge, and terminate any of the Interests as set forth in this North American Sale Order as of the Closing Date.

9.      If any Person that has filed a financing statement, mortgage, mechanic's lien, lis pendens, or other statement, document, or agreement evidencing an Interest against or in any portion of the Transferred Assets (other than statements or documents with respect to Permitted Obligations) shall not have delivered to the Debtors prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases, and/or other similar documents necessary for the purpose of documenting the release of all Interests that such Person has against or in the Transferred Assets, then (i) the North American Purchaser or the Debtors (at the request of the North American Purchaser) are hereby authorized to file, register, or otherwise record a certified copy of this North American Sale Order that, once filed, registered, or otherwise recorded, shall constitute conclusive evidence of the release of all Interests of any kind or nature against or in the Transferred Assets and (ii) the North American Purchaser or the Debtors (at the request of the North American Purchaser) may seek in this Court, or any other court of appropriate jurisdiction, to compel the appropriate

23

parties to execute termination statements, instruments of satisfaction, releases, and/or other similar documents with respect to all Interests that such Person has against or in the Transferred Assets. This North American Sale Order is deemed to be in recordable form sufficient to be placed in the filing or recording system of each and every federal, state, or local government agency, department, or office.

10. Notwithstanding the foregoing, the provisions of this North American Sale Order authorizing the sale and assignment of the Transferred Assets free and clear of Interests shall be self-executing, and neither the Debtors nor the North American Purchaser shall be required to execute or file releases, termination statements, assignments, consents, or other instruments or documents in order to effectuate, consummate, and implement the provisions of this North American Sale Order.

11. All Persons that are in or come into possession of any portion of the Transferred Assets, at any time, are hereby directed to surrender possession of such Transferred Assets to the North American Purchaser on the Closing Date or such later date as requested by the North American Purchaser. Subject to the terms, conditions, and provisions of this North American Sale Order, all Persons are hereby forever prohibited and enjoined from taking any action that would adversely affect or interfere with the ability of the Debtors to sell and transfer the Transferred Assets to the North American Purchaser in accordance with the terms of the North American Purchase Agreement, the Transaction Documents, and this North American Sale Order.

12. This North American Sale Order is and shall be binding upon and govern the acts of all Persons (including all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental

departments, secretaries of state, federal, state, and local officials, and all other persons or entities) who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease; and each of the foregoing Persons shall accept for filing any and all of the documents and instruments necessary and appropriate to release, discharge, and terminate any of the Interests or to otherwise consummate the transactions contemplated by the North American Purchase Agreement, the Transaction Documents, and this North American Sale Order.

13.     To the extent permitted under applicable law, the North American Purchaser shall be authorized, as of the Closing Date, to operate under any license, permit, registration, and governmental authorization or approval of the Debtors with respect to the Transferred Assets, and all such licenses, permits, registrations, and governmental authorizations or approvals are deemed to have been, and hereby are, directed to be transferred to the North American Purchaser as of the Closing Date.  To the extent provided by section 525 of the Bankruptcy Code, no governmental unit may deny, revoke, suspend, or refuse to renew any permit, license, or similar grant relating to the operation of the Transferred Assets on account of the filing or pendency of these chapter 11 cases or the consummation of the transactions contemplated by the North American Purchase Agreement, including the North American Sale and the assumption and assignment of the Transferred Contracts.

## IV.     Assumption and Assignment of Transferred Contracts.

14.     Pursuant to section 365 of the Bankruptcy Code, and subject to and conditioned upon the Closing of the North American Sale, the Debtors' assumption and assignment to the North American Purchaser, and the North American Purchaser's assumption of the Transferred

Contracts, on the terms set forth in the North American Purchase Agreement, is hereby approved, and the requirements of section 365(b)(1) with respect thereto are hereby found and deemed to be satisfied.

15.     The Debtors are hereby authorized and, unless the Debtors and the North American Purchaser otherwise agree, directed in accordance with sections 363 and 365 of the Bankruptcy Code to (a) assume and assign to the North American Purchaser, effective upon the Closing Date (or such later date as the Court may order), the Transferred Contracts free and clear of all Interests of any kind or nature whatsoever (other than the Permitted Obligations) and (b) execute and deliver to the North American Purchaser such documents or other instruments as North American Purchaser deems may be necessary to assign and transfer the Transferred Contracts to the North American Purchaser.

16.     With respect to the Transferred Contracts:  (a) the Debtors may assume each of the Transferred Contracts in accordance with section 365 of the Bankruptcy Code; (b) the Debtors may assign each Transferred Contract in accordance with sections 363 and 365 of the Bankruptcy Code, and any provisions in any Transferred Contract that prohibit or condition the assignment of such Transferred Contract or allow the party to such Transferred Contract to terminate, recapture, impose any penalty, condition renewal or extension, or modify any term or condition upon the assignment of such Transferred Contract, constitute unenforceable anti-assignment provisions which are void and of no force and effect; (c) all other requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Debtors and assignment to the North American Purchaser of each Transferred Contract have been satisfied; and (d) effective upon the Closing, the Transferred Contracts shall be transferred and assigned to, and from and following the Closing remain in full force and effect for the

26

benefit of, the North American Purchaser, notwithstanding any provision in any Transferred Contract (including those of the type described in sections 365(b)(2) and (f) of the Bankruptcy Code) that prohibits, restricts, or conditions such assignment or transfer and, pursuant to section 365(k) of the Bankruptcy Code, the Debtors shall be relieved from any further liability or obligation with respect to the Transferred Contracts after such assumption and assignment to the North American Purchaser, except as provided in the North American Purchase Agreement.  To the extent any provision in any Transferred Contract assumed and assigned pursuant to this North American Sale Order (i) prohibits, restricts, or conditions, or purports to prohibit, restrict, or condition, such assumption and assignment (including any "change of control" provision), or (ii) is modified, breached, or terminated, or deemed modified, breached, or terminated by any of the following:  (A) the commencement of these chapter 11 cases, (B) the insolvency or financial condition of any of the Debtors at any time before the closing of these chapter 11 cases, (C) the Debtors' assumption and assignment of such Transferred Contract, (D) a change of control or similar occurrence, or (E) the consummation of the North American Sale, then such provision shall be deemed modified so as not to entitle the non-Debtor party thereto to prohibit, restrict, or condition such assumption and assignment, to modify, terminate, or declare a breach or default under such Transferred Contract, or to exercise any other default-related rights or remedies with respect thereto, including any such provision that purports to allow the non-Debtor party thereto to terminate or recapture such Transferred Contract, impose any penalty thereunder, condition any renewal or extension thereof, impose any rent acceleration or assignment fee, or increase or otherwise impose any other fees or other charges in connection therewith.  All such provisions constitute unenforceable anti-assignment provisions that are void and of no force and effect pursuant to sections 365(b), 365(e), and 365(f) of the Bankruptcy Code.

27

17.    All defaults or other obligations of the Debtors under the Transferred Contracts arising or accruing prior to the Closing of the North American Sale, or required to be paid pursuant to section 365 of the Bankruptcy Code in connection with the assumption and assignment of the Transferred Contracts shall be cured by the North American Purchaser.

18.    All requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Debtors and assignment to the North American Purchaser of the Transferred Contracts have been satisfied.  Upon the Closing, in accordance with sections 363 and 365 of the Bankruptcy Code, the North American Purchaser shall be fully and irrevocably vested with all right, title, and interest of the Debtors in and under the Transferred Contracts, and each Transferred Contract shall be fully enforceable by the North American Purchaser in accordance with its respective terms and conditions, except as limited or modified by this North American Sale Order.  To the extent provided in the North American Purchase Agreement, the Debtors shall cooperate with, and take all actions reasonably requested by, the North American Purchaser to effectuate the foregoing.

19.    Upon the Debtors' assignment of the Transferred Contracts to the North American Purchaser under the provisions of this North American Sale Order and North American Purchaser's payment of the Cure Claims pursuant to the terms hereof or the North American Purchase Agreement, no default or other obligations arising prior to the Closing shall exist under any Transferred Contract, and each non-Debtor party to a Transferred Contract is forever barred, estopped, and permanently enjoined from (a) declaring a default by the Debtors or the North American Purchaser under such Transferred Contract for acts or omissions occurring prior to the Closing Date, (b) raising or asserting against the Debtors or the North American Purchaser, or the property of either of them, any assignment fee, default, breach, or

claim of pecuniary loss, or condition to assignment, arising under or related to the Transferred Contracts that occurred prior to the Closing Date, or (c) taking any other action against the North American Purchaser as a result of any Debtor's financial condition, bankruptcy, or failure to perform any of its obligations under the relevant Transferred Contract.  Each non-Debtor party to a Transferred Contract hereby is also forever barred, estopped, and permanently enjoined from (i) asserting against the Debtors or the North American Purchaser, or the property of any of them, any default or Claim arising out of any indemnity or other obligation or warranties for acts or occurrences arising prior to or existing as of the Closing of the North American Sale, or, against North American Purchaser, any counterclaim, setoff (except for setoffs exercised prior to the Petition Date), or any other Claim asserted or assertable against the Debtors and (ii) imposing or charging against North American Purchaser or its affiliates any rent accelerations, assignment fees, increases, or any other fees as a result of the Debtors' assumption and assignment to North American Purchaser of the Transferred Contracts.

20.     Any party that may have had the right to consent to the assumption or assignment of a Transferred Contract is deemed to have consented to such assumption and assignment for purposes of section 365(e)(2)(A)(ii) of the Bankruptcy Code if such party failed to object timely to the assumption or assignment of such Transferred Contract in accordance with the Bid Procedures Order, and the North American Purchaser shall be deemed to have demonstrated adequate assurance of future performance with respect to such Transferred Contract pursuant to sections 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy Code.

21.     To the extent a counterparty to a Transferred Contract failed to timely object to the Cure Claims for such Transferred Contract in accordance with the Bid Procedures Order, such Cure Claims shall be deemed to be finally determined and any such counterparty shall be

prohibited from challenging, objecting to, or denying the validity and finality of the Cure Claims at any time; provided, however, that notwithstanding anything to the contrary in this North American Sale Order, on the Closing Date the Debtors shall file a notice of assumption of the Transferred Contracts to be assumed as of the Closing Date and serve such notice on the counterparties to such Transferred Contracts, and any applicable counterparty to a Transferred Contract on such notice shall have fourteen (14) days from the date such notice is served to seek additional amounts on account of any defaults occurring between the deadline to object to the Cure Claims set forth in the prior notice of proposed assumption and assignment and the assumption of the Transferred Contract, and to the extent an agreement is not reached, the Court shall resolve the dispute.

22.     Upon and as of the Closing (except for any Transferred Contracts that are designated for assignment after the Closing pursuant to the procedures set forth herein, which shall be effective as of the date of such assignment), the North American Purchaser shall be deemed to be substituted for the applicable Debtor as a party to the applicable Transferred Contracts and the Debtors shall be relieved, pursuant to section 365(k) of the Bankruptcy Code, from any further liability under the Transferred Contracts.

23.     All counterparties to the Transferred Contracts shall cooperate and expeditiously execute and deliver, upon the reasonable requests of the North American Purchaser, and shall not charge the Debtors or the North American Purchaser for any instruments, applications, consents, or other documents that may be required or requested by any public authority or other party or entity to effectuate the applicable transfers in connection with the North American Sale of the Transferred Assets.

24.     Notwithstanding anything in this North American Sale Order, the Debtors may, pursuant to Section 6.13 of the North American Purchase Agreement, assume and assign a Contract to the North American Purchaser after the date of this North American Sale Order (including after the Closing) by filing a notice on the Court's docket designating such Contract a Transferred Contract with the applicable Cure Claim the Debtors are proposing and serving the same on the counterparty to such Contract.  If no objections are received with respect to the proposed Cure Claim or the assumption and assignment within fourteen (14) days from the date such notice is served, the Debtors may submit an order to the Court, under certification of counsel, authorizing the assumption and assignment of such Contract to the North American Purchaser, with the applicable Cure Claim to be paid by the North American Purchaser at the time of such assignment (and upon such assumption and assignment, such Contract shall be deemed a "Transferred Contract" for purposes of this North American Sale Order).  If an objection is received within fourteen (14) days from the date such notice is served and the parties are not able to resolve the dispute, the Court shall resolve the dispute at a hearing upon notice.

25.     Notwithstanding anything to the contrary in the Bid Procedures, the Bid Procedures Order, the North American Purchase Agreement, the Assumption and Assignment Procedures, any Assigned Contracts Schedule or cure notice, or this North American Sale Order: (a) all insurance policies that have been issued at any time to any of the Debtors providing directors', members', trustees', officers', or managers' liability coverage, and all agreements, documents or instruments relating thereto (the "Chubb D&O Policies") by ACE American Insurance Company, Westchester Fire Insurance Company, Federal Insurance Company, Great Northern Insurance Company and any of their U.S.-based affiliates and successors (collectively, the "Chubb Companies") are hereby assumed in their entirety by the Debtors, and the Debtors

31

shall remain liable in full for any and all now existing or hereinafter arising obligations, liabilities, terms, provisions and covenants of any of the Debtors under such Chubb D&O Policies; and (b) nothing shall permit or otherwise effect a sale, an assignment or any other transfer at this time of (i) any other insurance policies that have been issued by the Chubb Companies, and all agreements, documents or instruments relating thereto (collectively, and exclusive of the Chubb D&O Policies, the "Chubb Insurance Contracts"), and/or (ii) any rights, benefits, claims, rights to payments and/or recoveries under such Chubb Insurance Contracts, unless and until a further order is entered by this Court, at a subsequent hearing, or as submitted under certification of counsel by agreement of the Debtors, the North American Purchaser and the Chubb Companies, with the rights of the parties fully preserved pending entry of such further order. Such further order, upon such certification of counsel, may provide, among other things, that (x) subject to the execution of an assumption agreement by the Debtors, the North American Purchaser and the Chubb Companies, in form and substance satisfactory to each of the parties (the "Chubb Assumption Agreement"), the Debtors are authorized to assume and assign the Chubb Insurance Contracts to the North American Purchaser and the North American Purchaser shall assume and shall be liable for any and all now existing or hereinafter arising obligations, liabilities, terms, provisions and covenants of any of the Debtors under the Chubb Insurance Contracts; (y) the Debtors are authorized to enter into the Chubb Assumption Agreement; and/or (z) such other and further relief as may be requested by the Chubb Companies, the Debtors and/or the North American Purchaser.

26.     Notwithstanding any other provision of this North American Sale Order, the North American Purchase Agreement or the Transaction Documents, no agreement between the Debtors on the one hand, and Oracle America, Inc. ("Oracle") on the other hand (the "Debtor

32

Oracle Documents"), will be assumed, assigned, or transferred, and no shared or concurrent use of Oracle's products and services by the Transferred Subsidiaries or the North American Purchaser or their affiliates on account of the Debtor Oracle Documents will be authorized, absent further Court order or Oracle's prior written consent, it being understood that to the extent any Transferred Subsidiary has an agreement with Oracle, the foregoing shall not prevent such Transferred Subsidiary from using Oracle's products and services pursuant to such agreement and applicable law.

## V.    Customer Contracts and Obligations.

27.    Notwithstanding anything to the contrary (including anything that purports to be supervening) in this North American Sale Order or any related Transaction Documents between any of the Debtors and the North American Purchaser, the Debtors and the North American Purchaser agree as follows with respect to the original equipment manufacturers and their affiliated North American entities (collectively, "OEMs") and each OEM's tiered suppliers that use or incorporate goods or services supplied by any of the Debtors to provide production to any of the OEMs (collectively, "Customers" and each individually a "Customer"):

(i)    Pursuant to various award letters, purchase agreements, release agreements, purchase orders, development agreements, and/or other related documents (each with and subject to the applicable Customers' general terms and conditions, as amended from time to time) (collectively, "Contract Documents"), the Debtors and/or one or more Transferred Subsidiary of the Debtors are obligated to supply goods and services (collectively, "Items") to each Customer. Pursuant to 11 U.S.C. §§ 363(f) and 365, the Debtors are deemed to assume all of the Contract Documents to which a Debtor is a counterparty, other than those Contract

33

Documents that relate primarily to the operations of the Debtors' non-Debtor subsidiaries in Europe, Brazil, or India (the "North American Contract Documents"), in their entirety without modification of any kind, and further shall be deemed to assign the North American Contract Documents, in their entirety without modification of any kind, to the North American Purchaser as of the Closing Date; provided that notwithstanding the foregoing, (a) upon the Debtors' assumption and assignment to the North American Purchaser of the North American Contract Documents between the applicable Debtors and FCA US LLC and certain of its subsidiaries and affiliates (collectively, the "FCA Contracts"), the relevant FCA Contracts shall be deemed cured pursuant to 11 U.S.C. § 365(b)(1) so that the North American Purchaser shall have no liability or Obligations (as defined below) related to the FCA Excluded Warranty Claims,[6] and (b) the Debtors shall neither assume nor assign any North American Contract Documents relating to the GM Excluded Warranty Claims.[7]

(ii)    The North American Purchaser hereby agrees and accepts said assignment as of the Closing Date, and assumes and agrees to pay, perform and discharge, regardless of when due, any and all of the liabilities, responsibilities, and obligations under the North American Contract Documents including, but not limited to, warranty, recall and product liability for all Items (collectively,

---

[6]    "FCA Excluded Warranty Claims" means claims, whether arising prior to or after the Closing Date, pursuant to the warranty provided by certain of the Debtors and/or their subsidiaries to FCA US LLC and certain of its subsidiaries and affiliates with respect to the parts identified in Case 3278 Dura Recall v34 on account of the Dodge Dart.

[7]    "GM Excluded Warranty Claims" means the warranty provided by certain of the Debtors and/or their subsidiaries to General Motors Company and certain of its subsidiaries and affiliates on account of the K2XX heated power slider for the following part numbers: 84641171/2, 84641173, 84819602/3, 23490454, and 84819605.

34

"Obligations"); provided that notwithstanding the foregoing the North American Purchaser shall not assume nor have any Obligations relating to the GM Excluded Warranty Claims or the FCA Excluded Warranty Claims.

(iii) The assumption and assignment of North American Contract Documents and sale of the Debtors' right, title and interest in substantially all of its assets pursuant to this North American Sale Order shall in all cases be subject to (and not free and clear of) each applicable Customer's claims, defenses, rights, and interests as set forth in the North American Contract Documents or existing under applicable law, including, without limitation, Customer's tooling, returnable dunnage, intellectual property rights, rights of setoff and recoupment, warranty rights and claims, and confidential information.

(iv) For the avoidance of doubt, and notwithstanding any contrary designation in the North American Asset Purchase Agreement or otherwise, it is hereby acknowledged and agreed that, due to the nature of the sale transaction as a stock sale with respect to Transferred Subsidiaries: (a) references to "Transferred Contracts" shall not include any North American Contract Documents between any Customer and a Transferred Subsidiary ("Subsidiary Contracts"); and (b) all rights, claims, encumbrances, interest and Obligations of the counterparties to Subsidiary Contracts shall not be impacted, impaired or otherwise altered in any manner.

## VI.    No Successor Liability; Prohibition of Actions Against the North American Purchaser.

28.    Except as provided in the North American Purchase Agreement and without limiting other applicable provisions of this North American Sale Order, the North American

35

Purchaser is not, by virtue of the consummation of the North American Sale, assuming, nor shall it be liable or responsible for, as a successor or otherwise (including with respect to successor or vicarious liabilities of any kind or character), under any theory of law or equity, including the Successor or Other Liabilities, whether known or unknown as of the Closing Date, now existing or hereafter raised, which may be asserted or unasserted, fixed or contingent, liquidated or unliquidated with respect to the Debtors, or any of their predecessors or Affiliates or any obligations of the Debtors or their predecessors or Affiliates prior to the Closing Date, for any liabilities, debts, commitments, or obligations (whether known or unknown, disclosed or undisclosed, absolute, contingent, inchoate, fixed, or otherwise) in any way whatsoever relating to or arising from the Debtors, the Transferred Assets, or the Debtors' operation of their businesses or use of the Transferred Assets on or prior to the Closing Date or any such liabilities, debts, commitments, or obligations that in any way whatsoever relate to periods on or prior to the Closing Date or are to be observed, paid, discharged, or performed on or prior to the Closing Date (in each case, including any liabilities that result from, relate to, or arise out of tort or product liability claims), or any liabilities calculable by reference to the Debtors or their assets or operations (including by reference to the Debtors' experience or similar ratings), or relating to continuing conditions existing on or prior to the Closing Date, including with respect to any of the Debtors' predecessors or Affiliates, which liabilities, debts, commitments, and obligations are hereby extinguished insofar as they may give rise to successor liability, without regard to whether the claimant asserting any such liabilities, debts, commitments, or obligations has delivered to the North American Purchaser a release thereof.  The North American Purchaser has given substantial consideration under the North American Purchase Agreement.  Upon consummation of the North American Sale, the North American Purchaser shall not be deemed

36

to (i) be the successor to the Debtors or their estates, (ii) have, de facto or otherwise, merged with or into the Debtors, or (iii) be a mere continuation, alter ego, or substantial continuation of the Debtors.

29.     Following the Closing Date, no holder of an Interest in the Debtors shall interfere with the North American Purchaser's title to or use and enjoyment of the Transferred Assets and the Transferred Contracts based on or related to such Interest or any actions that the Debtors may take in these chapter 11 cases.

**VII.    Pension Matters.**

30.     Notwithstanding any provision to the contrary except for the last sentence of this paragraph, no provision contained in the North American Purchase Agreement or this North American Sale Order shall be construed as altering any rights or obligations with respect to the Dura Combined Pension Plan ("<u>Defined Benefit Pension Plan</u>") under applicable law, government policy, or regulatory provision, including discharging, releasing, exculpating or relieving any Person, from any <u>L</u>iability with respect to the Defined Benefit Pension Plan under any law, government policy, or regulatory provision.  The Pension Benefit Guaranty Corporation ("<u>PBGC</u>") and the Defined Benefit Pension Plan shall not be enjoined or precluded from enforcing such <u>L</u>iability or responsibility against any Person.  Notwithstanding the foregoing, neither the North American Purchaser nor its officers, directors, agents (as to the officers, directors and agents, solely in such capacity), affiliates, subsidiaries, nor the Transferred Assets shall have any <u>L</u>iability on account of the Defined Benefit Pension Plan or the Defined Benefit Pension Plan's treatment pursuant to the North American Sale or European Sale; provided, however, that notwithstanding the foregoing, solely with respect to the Transferred Subsidiaries, nothing shall be construed as altering any rights or obligations with respect to the Defined

37

Benefit Pension Plan under applicable law, government policy, or regulatory provision, including discharging, releasing, exculpating or relieving any Transferred Subsidiary from any Liability with respect to the Defined Benefit Pension Plan under any law, government policy, or regulatory provision; provided further that, any Transferred Subsidiary reserves all rights with respect to the foregoing.

31.     To the extent the Transferred Assets contain records of the Defined Benefit Pension Plan or employment records of Defined Benefit Pension Plan participants, the North American Purchaser shall store, and preserve any such records until the PBGC has completed its investigation regarding the Defined Benefit Pension Plan and shall make such documents available to PBGC for inspection and copying.  Such records include, but are not limited to, any Defined Benefit Pension Plan governing documents, actuarial documents, and employment records (collectively, the "Defined Benefit Pension Plan Documents").  The Debtors shall retain and not abandon any Defined Pension Plan Documents that are not Transferred Assets and shall make such documents available to the PBGC for inspection and copying.

**VIII.    Global Automotive Systems Matters.**

32.     Debtor Dura Automotive Systems, LLC ("Dura") shall assume and assign as soon as practicable (the date of such assignment, the "Assignment Date") that certain lease agreement, dated January 30, 2017, by and between Dura and Catalyst Development Company 8, LLC (the "Landlord"), for the lease of an apartment located at 34977 Woodward Avenue, Birmingham, Michigan 48009 (such lease agreement, collectively with all amendments, exhibits, modifications, renewals, schedules, and supplements thereto, the "Michigan Lease") to Global Automotive Systems, LLC ("GAS").  GAS shall be responsible for all of Dura's obligations (and the Debtors shall have no further obligations) arising and/or coming due under the Michigan

Lease after the Assignment Date, including any indemnity obligations, and the payment of any and all accruing but unbilled obligations with respect to any year-end adjustments or reconciliations when billed in accordance with the terms of the Michigan Lease (including for rents, utilities, taxes, insurance, fees, common area or other maintenance charges, promotional funds, and percentage rent) that become due and owing after the Assignment Date. The Michigan Lease has no value to the Debtors' estates following the Closing Date. No defaults exist under the Michigan Lease as of the Assignment Date that would need to be cured pursuant to section 365(b) of the Bankruptcy Code in order for Dura to assume and assign the Michigan Lease. The Landlord consents to the assumption and assignment of the Michigan Lease by Dura to GAS as set forth in this North American Sale Order, and consents to a Cure Claim of $0.00 for the Michigan Lease. Following the Assignment Date, any proof of claim or scheduled claim filed by or on behalf of the Landlord with respect to the Michigan Lease shall be deemed withdrawn with prejudice and of no further force or effect.

33.     The Debtors are authorized to sell and shall as soon as practicable (the "Vehicle Sale"), pursuant to section 363(b) of the Bankruptcy Code, that certain Tesla 2013 Model S Signature Performance Sedan owned by the Debtors (the "Vehicle") to GAS for a purchase price of $30,360 (the "Vehicle Purchase Price"), which is the applicable Kelley Blue Book Private Party Value. The Debtors are authorized to sign over the title of the Vehicle and deliver the Vehicle to GAS in exchange for the Vehicle Purchase Price, and take any and all other acts or actions as may be reasonably necessary or appropriate with respect to the Vehicle Sale, in each case without further notice to or order of this Court. The Vehicle Sale shall constitute a legal, valid, binding, and effective transfer of the Vehicle, and pursuant to section 363(f) of the Bankruptcy Code, GAS shall take title to and possession of the Vehicle free and clear of all

Interests of any kind or nature whatsoever; provided that any and all valid and perfected Interests in the Vehicle shall attach to the Vehicle Purchase Price with the same validity, force, and effect, if any, and in the same order of priority, that they have now as against the Vehicle, subject to any rights, claims, and defenses with respect thereto.  The Vehicle Purchase Price shall be paid to the North American Purchaser upon the closing of the Vehicle Sale, pursuant to a credit bid by the DIP Lenders of postpetition financing obligations in the amount of $30,360.  The Debtors may sell the Vehicle free and clear of all Interests because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied.  Those holders of Interests who did not timely object to the entry of this North American Sale Order are deemed to have consented to the Vehicle Sale pursuant to section 363(f)(2) of the Bankruptcy Code.  All other holders of Interests fall within one or more of the other subsections of section 363(f) of the Bankruptcy Code.  Because any and all valid and perfected Interests in the Vehicle shall attach to the Purchase Price with the same validity, force, and effect, if any, and in the same order of priority, that they have now as against the Vehicle, subject to any rights, claims, and defenses with respect thereto, all holders of Interests are adequately protected.  The Vehicle Sale is entered into without collusion and in good faith, as that term is defined in section 363(m) of the Bankruptcy Code, and, accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Vehicle Sale shall not affect the validity of the Vehicle Sale, unless such authorization and consummation of the Vehicle Sale are duly stayed pending such appeal.  GAS is a good-faith purchaser within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to, and hereby granted, the full rights, benefits, privileges, and protections of section 363(m) of the Bankruptcy Code.  As a good-faith purchaser of the Vehicle, GAS has not entered into an agreement with any other potential bidders and has not colluded

with any potential or actual bidders, and therefore, neither the Debtors nor any successor in interest to the Debtors' estates shall be entitled to bring an action against GAS with respect to the Vehicle Sale, and the Vehicle Sale may not be avoided pursuant to section 363(n) of the Bankruptcy Code.  The consideration provided by GAS to the Debtors for the Vehicle is fair and reasonable and shall be deemed for all purposes to constitute reasonably equivalent value, fair value, and fair consideration, including under the Bankruptcy Code, Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, and under the laws of the United States, any state, territory, possession, the District of Columbia, or any foreign jurisdiction.

**IX.    Other Provisions.**

34.    The Committee's objections to the North American Sale and European Sale are resolved as follows and with the insertion of ~~p~~Paragraph 32 in the European Sale Order,[8] which are hereby ordered by the Court.  Notwithstanding anything, including but not limited to, the other provisions of this North American Sale Order or the European Sale Order:

a.    <u>Claims and Causes of Action</u>.~~Notwithstanding anything to the contrary in the North American Purchase Agreement or the North American Sale Order, the following shall apply with respect to claims and causes of action:~~

~~(1)~~Subject to ~~[X], chapter 5~~Paragraph 34(a)(3), causes of action under chapter 5 of the Bankruptcy Code and similar causes of action under state or other applicable law (including related defenses, the "Avoidance Actions") against trade vendors shall be Transferred Assets pursuant to the North American Purchase Agreement.

---

[8]    "<u>European Sale Order</u>" means the Court's *Order (I) Approving the European Stock and Asset Purchase Agreement, (II) Authorizing the Sale of Substantially All of the Debtors' European Assets Free and Clear of Liens, Claims, Encumbrances, and Interests, and (III) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases* entered in these cases.

(1)    (2)  The North American Purchaser agrees it shall not initiate, and shall cause its Affiliates or any Transferred Subsidiary not to initiate, any civil or administrative proceeding related to aAvoidance aActions under chapter 5 of the Bankruptcy Code against any non-Seller party to any Transferred Contract or other party whose claims are assumed by the North American Purchaser pursuant to Section 2.3(c) of the North American Purchase Agreement (the "Released Vendor Claims").

(2)    (3) Transferred Assets shall also include:

(i)    Claims and causes of action first arising and accruing after the execution of the North American Purchase Agreement or the European Purchase Agreement against any party, including a Patriarch Party,[9] the Zohar Debtors or the Prepetition Term Loan Agent, related to either purchase agreement, the transactions contemplated thereunder or the closing of the transactions; (and for the avoidance of doubt, other than any claims or causes of action arising out of or related to any breach, default (whether monetary or non-monetary), act or omission that occurred on or prior to execution of the North American Purchase Agreement or the European Purchase Agreement);

---

[9] "Patriarch Parties" means Patriarch Partners, LLC, Dura Buyer, LLC, Patriarch Partners Management Group, LLC, Patriarch Partners Agency Services, LLC, Ark II CLO 2001-1 Ltd, Dura Automotive Angels, LLC, Lynn Tilton (in any capacity, personal or otherwise), any and all non-Debtor entities that are Affiliates of or controlled either directly or indirectly by any of the foregoing (other than the Zohar Debtors and any Transferred Subsidiary), as well as the current and former directors, officers, managers, employees, representatives, and agents of any of the foregoing, as to each such current or former role of an individual, in such capacity (each, a "Patriarch Party"); provided, however, that the "Patriarch Parties" shall not include Marc Beilinson, Jill Frizzley, James Riedy, Michael Beckett, Dave Pettyes, Sanjay Singh, Jamie Zinser, Charles Clevenger, Kirkland & Ellis LLP, Portage Point Partners, LLC, Jefferies LLC, and Prime Clerk LLC, each, in any capacity.

(ii)     Claims and causes of action against (A) any current officer, manager (including, without limitation, the members of the Transaction Committee, who for the avoidance of doubt are not a Patriarch Party), director or employee of any Asset Seller (other than any ~~Specified Person (as defined in the Purchase Agreements)~~Patriarch Party); (B) current or former officer, manager, director or employee of a Transferred Subsidiary (other than any ~~Specified Person (as defined in the Purchase Agreements)~~Patriarch Party); (C) the Debtors' ~~retained~~estate-retained restructuring professionals (including, for the avoidance of doubt, Kirkland & Ellis LLP, Portage Point Partners, LLC, Jefferies LLC, and Prime Clerk LLC); (D) the DIP Agent (and its affiliates and representatives)~~ and~~; (E) the DIP Lenders and its Affiliates and representatives; and, subject to the provisions of Paragraph 34(e), (F) the Zohar Debtors, the Prepetition Term Loan Agent, and their respective representatives,[10] which, as to each of (A) through (F) in this Paragraph 34(a)(2)(ii), shall be acquired by the North American Purchaser or the European Purchaser and shall be treated in accordance with Section 2.1(b) of the North American Purchase Agreement and 2.1(g) of the European Purchase Agreement;

(iii)     Any rights, claims and causes of action (for the avoidance of doubt, other than Excluded Actions) directly concerning the operations of the respective Business, or which may be necessary to defend against

---

[10]   For the avoidance of doubt, in all circumstances, the representatives of the Zohar Debtors and the Prepetition Term Loan Agent shall not include the Patriarch Parties.

any action brought against DIP Lenders, the DIP Agent, the Transferred Subsidiaries or the applicable Purchaser. By way of example, and not (or their respective post-closing affiliates and representatives), including without limitation, warranty claims, claims for refunds, rebates, and intercompany claims; and

(iv)     Any rights, defenses, claims and causes of action which may give rise to a claim for indemnity (or the like) against the North American Purchaser or European Purchaser (collectively, the "Purchasers") or Transferred Subsidiaries shall be Transferred Assets unless (i) any such claim for indemnity is fully covered by one or more of the insurance policies that are Transferred Assets (ii) the Person bringing such right, claim or cause of action holds Purchaser and the Transferred Subsidiaries harmless with security to backstop any liability on the indemnity for exposure outside of insurance coverage that is reasonably acceptable to Purchaser, and (iii) any Person bringing such right, claim or cause of action limits its remedy in such a way to eliminate all or a portion of the ability to claim indemnity for exposure outside of insurance coverage.  Any rights, defenses, claims and causes of action that are not Transferred Assets under this subsection (iv) because they meet the requirements above shall constitute Excluded Assets (collectively, the "Excluded Cover Actions").  The applicable Purchaser shall provide such Person copies of all insurance policies that are Transferred Assets, as well as all other reasonably requested information that concerns such Person's

compliance with this subsection (iv).  The applicable Purchaser and such Person shall confer in good faith prior to such Person bringing any such claim or cause of action concerning compliance with this subsection (iv).  Nothing in the North American Sale Order or European Sale Order is intended to alter or affect, and nothing shall be interpreted as in any way altering or affecting, any indemnification obligations the Transferred Subsidiaries have to their past and present directors, managers, officers and employees (as to each, solely in such capacity), or the rights of such directors, managers, officers and employees (as to each, solely in such capacity) to bring or pursue claims under applicable insurance policies.  All such indemnification rights and rights related to insurance of the Transferred Subsidiaries' past and present directors, managers, officers and employees (as to each, solely in such capacity), as well as all Transferred Subsidiaries' rights and defenses with respect to any such claims for indemnification, shall be unaffected by the North American Sale Order or European Sale Order.

(3)    (4)  Transferred Assets shall not include aAvoidance aActions against partiesany Person that no longer provides goods or services to Sellers or the Business as of the eClosing (i.e. not Acquired Trade Claims, instead such Avoidance Actions shall constitute Excluded Assets (collectively, the "Excluded Avoidance Actions").  The North American Purchaser shall work in good faith with the Zohar FundsDebtors and the Committee (or a chapter 7 trustee) to identify such partiesPersons within 60 days after eClosing, provided however, no;

45

provided that with respect to the foregoing in this sentence, the Committee shall recuse itself from any discussion or decision relating to a member of the Committee; provided further, no Excluded ~~a~~Avoidance ~~a~~Action may be brought or continued against any ~~party~~Person that the North American Purchaser deems important to the ~~post closing~~post-Closing Business (or that would put the Business at material risk as a consequence of the prosecution or continued prosecution of such Excluded ~~a~~Avoidance ~~a~~Action) as it reasonably determines (such determination not to be unreasonably made, delayed or conditioned).

(4)    Reserved.

(5)    Transferred Assets shall not include rights, defenses, claims and causes of action against ~~Specified Persons~~Patriarch Parties (except to the extent such claims are Transferred Assets pursuant to Paragraphs 34(a)(2)(i) or 34(a)(2)(iv) of this North American Sale Order~~.~~), instead such rights, defenses, claims and causes of action shall constitute Excluded Assets (collectively, the "Excluded Patriarch Actions" and, together with the Excluded Avoidance Actions and the Excluded Cover Actions, the "Excluded Actions").

(6)    The DIP Lenders ~~agrees to~~and the DIP Agent hereby subordinate their liens, claims and rights to recovery to the Debtors' pre-Conversion Date general unsecured creditors ~~its right to recovery~~ in the amount of and as to 10% ~~from the~~of each $1 of net proceeds, on a first dollar basis, available for distribution ~~to pre chapter 7 conversion creditors~~ from any recovery ~~of such claims and causes of action that are not Transferred Assets~~ on Excluded Actions

or any other post-Closing assets of the Debtors or their estates (including chapter 7 estates).

b.      Modification to Section 2.3(c) of the North American Purchase Agreement.    Section 2.3(c) of the North American Purchase Agreement is hereby modified to read as follows:  "[Assumed Liabilities include …]: (c) trade and vendor accounts payable incurred in the operation of the Business in the ordinary and usual course consistent with past practice of the Sellers and Transferred Subsidiaries, as such practice and custom is, or may have been, modified as a result of the Bankruptcy Case, between October 17, 2019 and the Closing for vendors willing to provide goods and services to the Business from and after the Closing (i) on terms consistent with past practice and (ii) that are not resourced on or before the date of the sale hearingMay 12, 2020."

c.      Modification of the Purchase Consideration.    The DIP Lenders agrees toshall (and shall direct the DIP Agent to the extent necessary) increase itstheir aggregate cCredit bBid Amount under the North American Purchase Agreement and European Purchase Agreement by $10 million.  The DIP Lenders toshall allocate such increase in itstheir discretion.; provided, however, that in the event a Closing (in this instance, as defined in the North American Purchase Agreement or the European Purchase Agreement, as applicable) occurs on only one of the North American Purchase Agreement or European Purchase Agreement, the $10 million increase in the Credit Bid Amount shall apply and be allocated to such purchase agreement.

d.      Chapter 7 Motion.  As soon as practicable following the entry of the North American Sale Order and the European Sale Order, the Debtors shall fileconvert their

47

cases to chapter 7, and to do so shall as soon as practicable file and use reasonable commercial efforts to prosecute a motion and proposed order, each in form and substance reasonably acceptable to the Committee, the Prepetition Term Loan Agent and the Prepetition Term Loan Secured Parties (as defined in the Final DIP Order), to convert the Debtors' chapter 11 cases to cases under chapter 7 of the Bankruptcy Code (the "Conversion Motion").  The ~~order granting the Conversion Motion shall provide that the entry of an order granting the Conversion Motion shall be subject to:  (a) consummation of all transactions contemplated by the North~~ Debtors, the Committee, the Prepetition Term Loan Agent, the Zohar Debtors and the Purchasers each agree that the date the Chapter 11 Cases are converted to cases under chapter 7 of the Bankruptcy Code (the "Conversion Date") shall not occur until after each of the following (absent their collective consent prior to the Conversion Date), that they shall not request any relief to the contrary, and that they shall use commercially reasonable efforts to object to and have the Bankruptcy Court overrule any objection, request for relief or assertion to the contrary:  (a) the occurrence of a Closing (in this instance, as defined in the North American Purchase Agreement or the European Purchase Agreement, as applicable) on the North American Purchase Agreement and European Purchase Agreement (as modified pursuant to the North American Sale Order and the European Sale Order, as applicable); (b) approval on a final basis of all final fee applications filed by the Debtors and the Committee's respective professionals retained pursuant to sections 327, 328, and/or 1103 of the Bankruptcy Code; ~~and~~ (c) entry of one or more orders (which may include the order approving the Conversion Motion) authorizing the Debtors to reject all executory contracts or unexpired leases that were not designated as a Transferred

Contract (in this instance, as defined in the North American Purchase Agreement or the European Purchase Agreement, as applicable) by the North American Purchaser or European Purchaser following the applicable Closing Date as set forth in the North American Sale Order ~~and~~or the European Sale Order. ~~The Debtors and the Committee shall be deemed to agree that, following the date the Chapter 11 Cases are converted to cases under chapter 7 (the "Conversion Date"), the chapter 7 trustee shall succeed to~~; and (d) prior entry of one or more orders adjudicating fully and on a final basis the Committee's (and a chapter 7 trustee's post-Conversion Date) standing to bring a Prepetition ABL Challenge (as defined below) (for the avoidance of doubt, all parties' rights are reserved with respect to such requested standing).  The Debtors, the Committee, the Prepetition Term Loan Agent, the Zohar Debtors and the Purchasers each agree that they shall use commercially reasonable efforts to propose and have the Bankruptcy Court enter an order approving the Conversion Motion that is in form and substance reasonably acceptable to each of them and provides, at a minimum, for each of the following (absent their collective consent prior to the Conversion Date), that they shall not request any relief to the contrary of the terms of the agreed order proposed to approve the Conversion Motion, and that they shall use commercially reasonable efforts to object to and have the Bankruptcy Court overrule any objection, request for relief or assertion to the contrary: (a) confirmation of the chapter 7 trustee's standing and right to prosecute all Estate Actions, and that the chapter 7 trustee shall succeed to all privileges, as well as rights concerning confidentiality, of Debtors, the estates and the Committee; (b) confirmation of the chapter 7 trustee's standing and right to file any claims objections regardless of anything in Paragraph (e) below or whether a claim or cause of action

49

against a creditor of the estates constitutes a Transferred Asset; and (c) rejection of all executory contracts and unexpired leases not previously rejected, with rejection effective on the date set forth in Paragraph 34(h).

e.    the Debtors' Estate Actions.  The Debtors, the Committee, the Prepetition Term Loan Agent, the Zohar Debtors and the Purchasers each agree, and the Debtors stipulate, that the Estate Actions (as defined below) are the property of the Debtors' estates.  No Challenge Period (as defined in the Final DIP Order) or Challenge deadline applies to the Estate Actions (for the avoidance of doubt, the Challenge Period shall apply to any Challenge against the Prepetition ABL Secured Parties (solely in such capacities, and in no other capacity) or the Prepetition ABL Obligations (as each is defined in the Final DIP Order)).  The "Estate Actions" means the Excluded Actions, the Debtors' and their estates' right, title, and interest with respect to any eChallenge (as defined in the Final DIP Order), right, defense, claim, and/or cause of action held by the Debtors or their estates as of the date of this North American Sale Order, as well as those that arise or accrue prior to the Conversion Date to the extent that any such eChallenge, right, defense, claim, or cause of action is not a Transferred Asset pursuant to the North American Purchase Agreement or European Purchase Agreement (as each may be modified by the North American Sale Order and the European Sale Order, as applicable), including, but not limited to, any eChallenge, right, defense, claim, or cause of action identified in or concerning the subject matter of the *Agreed Order Regarding the Motion of the Official Committee of Unsecured Creditors for Entry of an Order Extending the Challenge Period and Granting Related Relief* [Docket No. 852] as well as the *Motion of the Official Committee of Unsecured Creditors for Entry of an Order Granting*

50

*Derivative Standing and Authority to Prosecute and Settle Claims on Behalf of the Estate* [Docket No. 853] (the "Standing Motion")~~, other than the Debtors' stipulations, admissions, agreements, and releases with respects to~~ and the proposed complaint attached thereto [Docket No. 853, Exhibit B], other than a Challenge against the Prepetition ABL ~~Obligations~~Secured Parties (solely in such capacities, and in no other capacity) or the Prepetition ABL ~~Secured Parties~~Obligations (as each is defined in the Final DIP Order)~~, as each is set forth~~ in the Final DIP Order ~~(collectively,~~(the "Prepetition ABL ~~Matters")~~Challenge") absent the entry of a subsequent order of the Court prior to the Conversion Date that the Committee has standing to prosecute a Prepetition ABL Challenge, at which point the Prepetition ABL Challenge shall become an Estate Action; provided that the rights of the Debtors, the Prepetition ABL Secured Parties ~~(as defined in the Final DIP Order)~~, the Committee, the Zohar ~~Funds~~Debtors, and other parties in interest with respect to the Prepetition ABL Challenge pursuant to the Standing Motion ~~with respect to the Prepetition ABL matters~~ are fully reserved and preserved ~~pending a hearing on such matter.~~, including under the Final DIP Order (for the avoidance of doubt, and notwithstanding anything to the contrary herein, nothing in this North American Sale Order amends or modifies Paragraph 7 of the Final DIP Order or the Payoff Letter (as defined in and attached to the Final DIP Order)).  For the avoidance of doubt, each of the Debtors, the Committee, the Prepetition Term Loan Agent, the Zohar Debtors and the Purchasers agree that a chapter 7 trustee may file any claims objections regardless of the foregoing in this paragraph (e) or whether a claim or cause of action against a creditor of the estates constitutes a Transferred Asset.

f.    Standstill.  The Debtors shall maintain the Estate Actions in their estates and use commercially reasonable efforts preserve their value until the Conversion Date. Absent the consent of the Committee, the DIP Lenders, the Prepetition Term Loan Agent and the Zohar Debtors, the Excluded Actions shall not be commenced, continued, impaired, or modified prior to the Conversion Date.

g.    [Reserved]

h.    Rejection of Executory Contracts and Unexpired Leases.  The Debtors shall file as soon as practicable and prosecute on a reasonable commercial efforts basis a motion to reject all executory contracts and unexpired leases that the Purchaser indicates it may or does not want to take assignment of as Transferred Contracts.  Such agreements for which such determination has already been made by the Purchaser shall be rejected as of the effective date of the filing of such motion, and for those agreements that the Purchaser needs more time to evaluate, rejection shall be effective as of the date of the Purchaser's decisions not to take assignment of such agreement as a Transferred Contract.

i.    No Liability Creation.  To the extent the Purchaser designates a Transferred Asset as an Excluded Asset pursuant to the North American Purchase Agreement or European Purchase Agreement, the Debtors shall not take any action that would cause the Debtors' estates to incur a Liability that is not a Liability of the Debtors' estates prior to such exclusion.  Purchaser shall not take an action with respect to a Transferred Asset prior to designating it as an Excluded Asset that causes the Debtors' estates to incur a Liability that is not a Liability of the Debtors' estates prior to such

designation, provided that, the designation of a Transferred Asset as an Excluded Asset shall not be deemed to cause the Debtors' estates to incur a Liability.

j.      Preservation of Defenses.  Nothing in this North American Sale Order shall preclude any valid defenses held by applicable parties with respect to the Transferred Assets, including recoupment, but for the avoidance of doubt such defenses do not include setoffs except for setoffs exercised prior to the Petition Date.

35.     Notwithstanding anything to the contrary in this North American Sale Order or the North American Purchase Agreement, the statutory tax liens held by Cameron County to secure payment of the 2020 taxes to be assessed against the Debtors shall continue on the applicable assets following the Closing until such time as such 2020 taxes are paid by the North American Purchaser.

36.     Notwithstanding anything to the contrary in the DIP Credit Agreement or the Orders (as defined in the DIP Credit Agreement), no Event of Default (as defined in the DIP Credit Agreement) shall occur due to the entry of this North American Sale Order or the consummation of the North American Sale.

37.     Pursuant to the terms of the North American Purchase Agreement, the amendment to the DIP Facility[911] attached hereto as <u>Exhibit 2</u>, which provides for the further upsize of the DIP Facility by up to $5 million on the terms set forth therein, is hereby approved (the "<u>Second DIP Amendment</u>"), and the Debtors are authorized to enter into the Second DIP Amendment on or after the date of this North American Sale Order without further notice or order of the Court.  Except as modified by the Second DIP Amendment and this North American Sale Order, the Credit Documents shall remain in full force and effect.  Subject in all respects to

---

[911]  Capitalized terms used in this paragraph that are not defined in this North American Sale Order have the meanings ascribed to such terms in the Final DIP Order.

the Carve-Out, the obligation to repay the amount drawn on account of the Second DIP Amendment shall be senior in right of payment to all other DIP Obligations outstanding as of the date of this North American Sale Order (other than any DIP Obligations payable to the DIP Agent in respect of fees and expenses of the professionals retained by any of the DIP Agent or DIP Lenders).  The findings of fact and conclusions of law in the Final DIP Order shall apply to the Second DIP Amendment, *mutatis mutandis*.  The Debtors are authorized and empowered to take all actions necessary to implement the Second DIP Amendment without further notice or order of the Court.

38.    Notwithstanding anything to the contrary in this North American Sale Order or the North American Purchase Agreement, the bank accounts of the Asset Sellers shall be Excluded Assets and Cash and Cash Equivalents shall be Transferred Assets.

39.    38.  The consideration provided by the North American Purchaser to the Debtors pursuant to the North American Purchase Agreement for the Transferred Assets is fair and reasonable and shall be deemed for all purposes to constitute reasonably equivalent value, fair value, and fair consideration, including under the Bankruptcy Code, Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, and under the laws of the United States, any state, territory, possession, the District of Columbia, or any foreign jurisdiction.

40.    39.  The transactions contemplated by the North American Purchase Agreement and this North American Sale Order are undertaken by the North American Purchaser without collusion and in good faith, as that term is defined in section 363(m) of the Bankruptcy Code, and, accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the North American Sale shall not affect the validity of the North American Sale (including the assumption, assignment, and/or transfer of the Transferred Contracts), unless such

authorization and consummation of the North American Sale are duly stayed pending such appeal. The North American Purchaser is a good-faith purchaser within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to, and hereby granted, the full rights, benefits, privileges, and protections of section 363(m) of the Bankruptcy Code. As a good-faith purchaser of the Transferred Assets, the North American Purchaser has not entered into an agreement with any other potential bidders and has not colluded with any potential or actual bidders, and therefore, neither the Debtors nor any successor in interest to the Debtors' estates shall be entitled to bring an action against the North American Purchaser, and the North American Sale may not be avoided pursuant to section 363(n) of the Bankruptcy Code.

41. 40. To the extent permitted under applicable law, including section 1146 of the Bankruptcy Code, the North American Sale of the Transferred Assets and the transactions contemplated thereby shall be exempt from any sales, use, purchase, transfer, franchise, deed, fixed asset, stamp, documentary stamp, use, or similar fees for Taxes, governmental charges, and recording charges (including any interest and penalty thereon), which may be payable by reason of the North American Sale of the Transferred Assets or the transactions contemplated thereby. No bulk sales law or any similar law of any state or other jurisdiction applies in any way to the North American Sale of the Transferred Assets.

42. 41. Nothing in this North American Sale Order or the North American Purchase Agreement releases, nullifies, precludes or enjoins the enforcement of any valid police or regulatory liability, including but not limited to, environmental liability to a governmental unit that the purchaser or any other entity would be subject to as the post-Closing owner or operator of property after the Closing Date. Nothing in this North American Sale Order or the North American Purchase Agreement authorizes the transfer or assignment of any governmental (a)

license, (b) permit, (c) registration, (d) authorization, or (e) approval, or the discontinuation of any obligation thereunder, without compliance with all applicable legal requirements and approvals under police or regulatory law, including but not limited to, environmental law. Nothing in this North American Sale Order divests any tribunal of any jurisdiction it may have under police or regulatory law, including but not limited to environmental law, to interpret this North American Sale Order or to adjudicate any defense asserted under this North American Sale Order. Notwithstanding the foregoing, nothing in this North American Sale Order shall: (i) be interpreted to deem the North American Purchaser the successor to the Debtors under any state or federal law successor liability doctrine with respect to any liabilities under environmental statutes, laws, or regulations for penalties for days of violation prior to the Closing Date or for liabilities relating to off-site disposal of wastes by the Debtors prior to the date of the Closing Date; (ii) deem the North American Purchaser to have assumed or be liable for any liability or obligation of the Debtors not expressly assumed other than any valid police or regulatory liability, including but not limited to, environmental liability, to a governmental unit that the purchaser or any other entity would be subject to as the post-Closing owner or operator of property after the Closing Date; (iii) be construed as a waiver by any party, including the North American Purchaser, of any applicable rights or defenses under non-bankruptcy law; or (iv) be construed to create for any governmental unit any substantive right that does not already exist under law.

43.  42. The Carve Out Reserves (as defined in the Final DIP Order) shall be funded in cash by the DIP Lender on or prior to the Closing (in this instance, as defined in the North American Purchase Agreement or the European Purchase Agreement, as applicable) of the first to occur of the North American Sale or the European Sale through the deposit by DIP Lenders or

an affiliate thereof (including the North American Purchaser or European Purchaser), of $11.25 million into an account to be maintained in trust by an escrow agent solely for the benefit of the professionals to the Debtors and the professionals to the Committee, in each case, retained under section 327, 328 and/or 1102 of the Bankruptcy Code (the "Carve Out Account"), which shall satisfy (a) the obligation of the North American Purchaser pursuant to the North American Purchase Agreement to deposit the same amount into the Professional Fee Escrow Account (as defined in the North American Purchase Agreement) and (b) the condition precedent in the European Purchase Agreement for the same amount to be funded into the Professional Fee Escrow Account (as defined in the European Purchase Agreement) prior to closing.  The DIP Agent and DIP Lenders shall be deemed to have satisfied their obligations with respect to the Carve Out (as defined in the Final DIP Order) and the Carve Out Reserves as set forth in the Final DIP Order upon such funding.  Except as set forth in this paragraph, nothing in this Order shall impair, modify, or otherwise affect the Carve Out.  The creation and funding of the Carve Out Account is approved pursuant to section 363(b) of the Bankruptcy Code.  The Debtors are authorized, without further notice or relief from this Court, to enter into an escrow agreement acceptable to counsel to the Debtors and counsel to the Committee, which shall govern the distributions from the Carve Out Account (the "Carve-Out Agreement,") take any and all actions that are necessary or appropriate in the exercise of their business judgment to implement the Carve-Out Agreement, including engaging applicable escrow agents and to make or authorize the payments contemplated in connection therewith.  Such funds (including any residual funds) may be released and applied in accordance with the terms of the Carve-Out Agreement, upon Court order approving the payment of any fees and expenses of any professional retained by the Debtors or the Committee (including pursuant to the Interim Compensation Order or any order

of the Court allowing professional fees and expenses on an interim basis or a final basis); *provided*, *that*, prior to the date on which the DIP Obligations (as defined in the Final DIP Order) are paid in full, in cash, the DIP Agent shall retain its liens on the Carve-Out Account and shall have a claim on the proceeds of the Carve-Out Account, which liens and claim shall be junior to, and subordinated to, the claims of professionals retained by the Debtors and the Committee (as well as any Committee member expenses reimbursable pursuant to the Carve Out). Except as expressly set forth in this North American Sale Order, nothing herein shall otherwise impair, modify, or affect the Final DIP Order.

44.    43.   Notwithstanding anything to the contrary in the European Purchase Agreement or the North American Purchase Agreement, but subject to Paragraph 34 of this North American Sale Order in all respects, to the extent that the closing of the North American Sale occurs prior to the closing of the European Transaction, upon the closing of the North American Sale, (a) the European Purchase Agreement shall be deemed amended to revise Section 2.1(g) thereof to read in its entirety as follows:

> subject to Section 6.6, all of the rights, claims or causes of action of the Asset Sellers of any kind, including those available under the U.S. Bankruptcy Code, against any party, including any officer, director or Affiliate of, or lender to, any Asset Seller (and the proceeds of any insurance policies related to any such rights, claims or causes of action) arising at any time prior to the Closing solely to the extent arising in the ordinary course of the business of the Sellers utilizing the Purchased Assets; provided that any rights, claims or causes of action included in this Section 2.1(g) shall not include any such rights or claims arising in the ordinary course of the operation of the business of the Sellers utilizing the Excluded Assets; provided further that neither Buyer nor any Person claiming by, through or on behalf of the Buyer (including by operation of law, sale, assignment, conveyance or otherwise) shall pursue, prosecute, litigate, institute or commence an Action based on, assert, sell, convey, assign or file any Claim that relates to any rights, claims or causes of action transferred under this Section 2.1(g) against any other Asset Seller, any Transferred Subsidiary (except for amounts owing under Section 2.1(d)), or any officer, director, employee, manager, adviser, or other Representative of any Asset Seller or Transferred Subsidiary (in each case, other than Lynn Tilton, or any other director or officer of an Asset Seller or Transferred Subsidiary who is or has been a director, officer, equityholder, manager, Affiliate, member or Representative of Patriarch

Partners, LLC or any of its Affiliates (Dura Automotive Systems, LLC and its Subsidiaries shall not be included in the definition of Affiliates of Patriarch Partners, LLC for purposes of this Section 2.1(g) and Section 6.6 only) (the "Specified Persons") and nothing herein shall limit the right of the Buyer (or any assignee or transferee thereof) to bring any claims or causes of action against a Specified Person);

and (b) the North American Purchase Agreement shall be deemed amended to revise Section 2.1(b) thereof to read in its entirety as follows:

subject to Section 6.6, all of the rights, claims or causes of action of the Asset Sellers of any kind, including those available under the Bankruptcy Code, against any party, including any officer, director, employee, manager or Affiliate of, or lender to, any Asset Seller or Transferred Subsidiary or any of their respective Affiliates (and the proceeds of any insurance policies related to any such rights, claims or causes of action) arising at any time prior to the Closing; provided that any rights, claims or causes of action included in this Section 2.1(b) shall not include any such rights or claims arising in the ordinary course of the operation of the DE Business or that constitute "Transferred Assets" pursuant to the DE Purchase Agreement; provided further that neither the Buyer nor any Person claiming by, through or on behalf of the Buyer (including by operation of law, sale, assignment, conveyance or otherwise) shall pursue, prosecute, litigate, institute or commence an Action based on, assert, sell, convey, assign or file any Claim that relates to any rights, claims or causes of action transferred under this Section 2.1(b) against any Asset Seller, or any officer, director, employee, manager, adviser, or other Representative of any Asset Seller or Transferred Subsidiary (in each case, other than Lynn Tilton, or any other director or officer of an Asset Seller or Transferred Subsidiary who is or has been a director, officer, equityholder, manager, Affiliate, member or Representative of Patriarch Partners, LLC or any of its Affiliates (Dura Automotive

59

Systems, LLC and its Subsidiaries shall not be included in the definition of Affiliates of Patriarch Partners, LLC for purposes of this Section 2.1(b) and Section 6.6 only) (the "Specified Persons") and nothing herein shall limit the right of the Buyer (or any assignee or transferee thereof) to bring any claims or causes of action against a Specified Person);

45.    44. Notwithstanding anything in the North American Sale Agreement, in addition to the Purchaser's assumption of liability therefor, every one of the Debtors shall remain obligated to pay quarterly fees arising under 28 U.S.C. § 1930 (a)(6) to the Office of the U.S. Trustee until the earliest of that particular Debtor's case being closed, dismissed or converted to a case under chapter 7 of the Bankruptcy Code.

46.    45. For cause shown, pursuant to Bankruptcy Rules 6004(h), 6006(d), 7062, and 9014, this North American Sale Order shall not be stayed after the entry hereof, but shall be effective and enforceable immediately upon entry, and the stays provided in Bankruptcy Rules 6004(h) and 6004(d) are hereby expressly waived and shall not apply.  Accordingly, the Debtors and North American Purchaser are authorized and empowered to close the North American Sale immediately upon entry of this North American Sale Order.

47.    46. The failure to include or specifically reference any particular provision of the North American Purchase Agreement or the other Transaction Documents in this North American Sale Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the North American Purchase Agreement and the other Transaction Documents be authorized and approved in their entirety.

48.    47. To the extent that there are any inconsistencies between the terms of this North American Sale Order, on the one hand, and the North American Purchase Agreement or

any Transaction Documents, on the other hand, the terms of this North American Sale Order shall control and govern.

49.    48. The North American Purchase Agreement and the Transaction Documents may be modified, amended, or supplemented in a writing signed by the parties thereto and in accordance with the terms thereof, without further notice to or order of the Court; *provided that* notice of any such modification, amendment, or supplement to the North American Purchase Agreement or the Transaction Documents shall be provided to counsel to the Committee, counsel to the Zohar Funds Debtors, counsel to the Prepetition Term Loan aAgent to the term loan lenders, counsel to the Patriarch Parties, counsel to the U.S. Trustee, counsel to the agent for the DIP Lenders and counsel to the DIP Lenders, each of whom shall have five business days from the date of such notice within which to object in writing to material modifications, amendments, or supplements, and in the event of an unresolved objection, such material modifications, amendments, or supplements may only be entered into upon a further order of the Court, it being understood that non-material authorizations, amendments, waivers, consents, or other modifications will not be subject to the foregoing notice period of five business days; *provided, further*, that the foregoing notice period of five business days may be waived so long as counsel to each of the parties referenced in the immediately preceding proviso consents in writing to such waiver (which writing may be via e-mail); provided further that any modification, amendment or supplement to the North American Purchase Agreement or the Transaction Documents that is materially adverse to the Debtors shall not be made except pursuant to further order of the Court, by motion on notice to all parties entitled to notice under Local Rule 2002-1(b).

50. 49. The Court shall retain exclusive jurisdiction to, among other things, (i) interpret, implement, and enforce the terms and provisions of this North American Sale Order, the North American Purchase Agreement, the Transaction Documents, and any amendments thereto and any waivers and consents given thereunder, and to adjudicate, if necessary, any and all disputes concerning or in any way relating to the North American Sale, including, but not limited to, retaining jurisdiction to (a) compel delivery of the Transferred Assets to the North American Purchaser, (b) interpret, implement, and enforce the provisions of this North American Sale Order, including but not limited to the injunctions and limitations of liability set forth in this North American Sale Order, (c) protect the North American Purchaser against any Interests in or against the Debtors or the Transferred Assets of any kind or nature whatsoever, attaching to the proceeds of the North American Sale, and (d) enter any orders under sections 363 and 365 of the Bankruptcy Code with respect to the Transferred Assets and the Transferred Contracts.

51. 50. From time to time, as and when requested by any party to the North American Purchase Agreement, each party shall execute and deliver, or cause to be executed and delivered, all such documents and instruments and shall take, or cause to be taken, all such further or other actions as may reasonably be necessary or desirable to consummate the North American Sale in accordance with this North American Sale Order, including, such actions as may be necessary to vest, perfect or confirm, or record or otherwise, in the North American Purchaser its right, title, and interest in and to the Transferred Assets and the Transferred Contracts.

52. 51. To the extent that this North American Sale Order is inconsistent with any prior order or pleading with respect to the North American Sale in these chapter 11 cases, the terms of this North American Sale Order shall govern.

# EXHIBIT 1

## North American Purchase Agreement

# **EXHIBIT 2**

## **Second DIP Amendment**

| Summary report: Litera® Change-Pro for Word 10.8.2.11 Document comparison done on 5/15/2020 8:59:08 AM | |
|---|---|
| **Style name:** Color (Kirkland Default) | |
| **Intelligent Table Comparison:** Active | |
| **Original DMS:** iw://DMS.KIRKLAND.COM/LEGAL/67949287/19 | |
| **Modified DMS:** iw://DMS.KIRKLAND.COM/LEGAL/67949287/35 | |
| **Changes:** | |
| Add | 185 |
| Delete | 98 |
| Move From | 7 |
| Move To | 7 |
| Table Insert | 0 |
| Table Delete | 0 |
| Table moves to | 0 |
| Table moves from | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 297 |