**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) ) | **Chapter 11** |
| DURA AUTOMOTIVE SYSTEMS, LLC, *et al.*,[1] | ) ) ) ) | **Case No. 19-12378 (KBO)** |
| Debtors. | ) ) ) | **Jointly Administered** |

**REPLY IN SUPPORT OF MOTION OF HAIN CAPITAL
INVESTORS MASTER FUND, LTD. FOR PAYMENT OF CURE AMOUNT**

Hain Capital Investor Master Fund, Ltd. ("Hain Capital"), by its counsel, files this Reply (the "Reply") in support of the *Motion of Hain Capital Investors Fund, Ltd. for Payment of Cure Amount* (Doc. No. 1226)[2] (the "Motion") and in reply to the *Objection of DUS Operating, Inc. Designated Assignee of Dura Buyer DNA, LLC, to Motion of Hain Capital Investors Master Fund, Ltd. for Payment of pay Cure Amount* (Doc. No. 1239) (the "Objection"). In support of this Motion, Hain Capital respectfully states the following:

**REPLY**

1. In the Objection, DUS Operating, Inc. ("DUS") concedes several important facts about the Contract:

    (a) the Contract has been listed as one to be assumed by the Purchaser of the Debtor's North American assets and has never appeared on any rejection list associated with the sale of those assets to date;

    (b) DUS continues to order product from Plasti-Paint's Georgia plant (as provided for in the Contract);

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Dura Automotive Systems Cable Operations, LLC (7052); Dura Automotive Systems, LLC (8111); Dura Fremont L.L.C. (1252); Dura G.P. (8092); Dura Mexico Holdings, LLC (4188); Dura Operating, LLC (2304); and NAMP, LLC (3693). Dura Automotive Systems, LLC's service address is: 1780 Pond Run, Auburn Hills, Michigan 48326.

[2] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Motion.

(c) notwithstanding Plasti-Paint's representations to the contrary, DUS claims to have "replaced" a purchase order associated with the Contract with a so-called New Contract; and

(d) DUS and Plasti-Paint continue to operate under the identical terms and conditions, dated 2018, that govern the Contract they purport to replace (the "Original Terms and Conditions").[3]

2. DUS, in conjunction with the Purchaser and Plasti-Paint, seems to be engaged in a scheme to avoid payment of the Cure Amount (which is one of the largest cures of all assumed contracts in the chapter 11 cases). Specifically, and as detailed in the Motion:

(a) Purchaser refused to engage in discussions with Hain Capital about the Contract and payment of the Cure Amount;

(b) Plasti-Paint represented that it had not entered into any new or replacement contract with the Purchaser or its assignees in an email sent in September, though the purported New Contract was executed in June (Motion, Ex. B, Sept. 2, 2020 Email at 1 ("To make matters simple, Plasti-Paint in this case has continued with Dura or its assigns on the identical terms, whether it be pre-petition, post-petition, or post sale of the assets. Nothing has changed. **Plasti-Paint has never entered into any agreement which would impact in any way the claims that your client purchased in the bankruptcy proceedings.**") (emphasis added));

(c) despite contacting Purchaser and Plasti-Paint multiple times, Hain Capital did not learn of the so-called New Contract until DUS filed the Objection; and

(d) DUS represents that it continues to operate under the Original Terms and Conditions – the same terms and conditions that govern the Contract which the New Contract purports to replace. The Court should not countenance DUS and Purchaser's continuing attempt to game the intention of the rules governing contract assumption and default curing under the Bankruptcy Code; it should order the Cure Amount to be paid.[4]

---

[3] The operative document had been, and continues to be, Terms and Conditions of Purchase, Dura Automotive Systems, LLC, Global Automotive Systems, LLC effective June 1, 2018.

[4] At a minimum, the Court should order that the Cure Amount associated with goods obtained from Plasti-Paint's Georgia facility must be paid.

3. Hain Capital purchased Plasti-Paint's claims, which are primarily based on two proofs of claim Plasti-Paint filed: Proof of Claim No. 533 in the amount of $1,212,716.19 and No. 534 in the amount of $637,280.02. Claim No. 533 is based on invoices in connection with goods to be provided from Plasti-Paint's facilities in Michigan and Claim No. 534 is based on invoices in connection with goods to be provided from Plasti-Paint's facilities in Georgia.

4. In its Objection, DUS asserts (as a so-called defense) that it is still receiving goods and services from the Georgia facility and claims it entered into a so-called New Contract "pursuant to which DUS is supplied product solely from the Georgia Plasti-Paint facility" but that it "did not require products sourced from" the Michigan facility. At ¶ 26. In fact, the purported New Contract – which relies on the Original Terms and Conditions – is simply a re-creation of the contract underlying Claim No. 534 in a naked attempt to avoid paying the Cure associated with the Contract. Notably, the Objection does not offer an explanation as to why – and for what possible reason – the Contract was not rejected when the purported New Contract was executed (other than as a naked hedge for DUS). The Court must not condone DUS and Plasti-Paint's scheme to circumvent the basic statutory framework of section 365.

5. Section 365 of the Bankruptcy Code does not allow for such conduct. Section 365(b)(1)(a) provides that assumption of an executory contract requires the curing of any default.

6. "Congress's intent in imposing these conditions on the ability of the debtor to assume the contract was to insure that the contracting parties receive the full benefit of their bargain if they are forced to continue performance." *In re Ionosphere Clubs, Inc.,* 85 F.3d 992, 999 (2nd Cir. 1996) (citations omitted). "Where a debtor has been permitted by the bankruptcy court to assume a contract pursuant to § 365, equitable estoppel principles may be applied by the

court to deny the debtor permission to escape its obligation to perform the contract it assumed." *Id.* at 1000.

7. As such, Purchaser and DUS should not be permitted to escape paying the Cure. At the very least, the Court should order the portion of the Cure Amount associated with the invoices produced in connection with goods to be provided from Plasti-Paint's Georgia facility. Anything less rewards attempted game-playing to circumvent the requirements set forth by the Bankruptcy Code.

[*Remainder of page intentionally left blank.*]

**CONCLUSION**

8.      **WHEREFORE**, Hain Capital respectfully request entry of an order compelling the Purchaser to immediately pay Hain Capital the Cure Amount; confirming that the Debtors have assumed and assigned such Contract as of the Closing; and affording such other and further relief as is just and proper under the circumstances.

Date:  November 24, 2020
       Wilmington, DE

**FERRY JOSEPH, P.A.**

By:     */s/ John McLaughlin, Jr.*
    John D. McLaughlin, Jr.
    824 North Market Street, Suite 1000
    Wilmington, DE 19801
    Telephone: (302) 575-1555
    Facsimile:  (302) 575-1714
    Email:     jmclaughlin@ferryjoseph.com

**KASOWITZ BENSON TORRES LLP**

By:       */s/ Adam Shiff*
    Adam L. Shiff (*pro hac vice* forthcoming)
    David R. Koch (*pro hac vice* forthcoming)
    1633 Broadway
    New York, New York 10019
    Telephone: (212) 506-1700
    Facsimile:  (212) 506-1800
    Email:     ashiff@kasowitz.com
               dkoch@kasowitz.com