## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| DURA AUTOMOTIVE SYSTEMS, LLC, *et al.*,[1] | ) | Case No. 19-12378 (KBO) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | |

### NOTICE OF FILING OF
### DEBTORS' AMENDED SCHEDULE G & STATEMENTS OF FINANCIAL AFFAIRS

**PLEASE TAKE NOTICE** that, on December 14, 2020, the above-captioned debtors and debtors in possession (the "Debtors") filed their Amended Schedules of Assets and Liabilities and Statements of Financial Affairs (collectively, the "Amended Schedules and Statements") with the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").

**PLEASE TAKE FURTHER NOTICE** that the following changes were made to each of the above-referenced Amended Schedules and Statements:[2]

| Debtor | Schedule | Change |
|---|---|---|
| Dura Automotive Systems Cable Operations, LLC | Statement of Financial Affairs | Added Debtor and Affiliate addresses; revised certain Affiliate names |
| Dura Automotive Systems, LLC | Schedule G; Statement of Financial Affairs | Added certain contracts and removed postpetition contracts from Schedule G; added Debtor and Affiliate addresses |
| Dura Fremont L.L.C. | Schedule G; Statement of Financial Affairs | Removed postpetition contracts from Schedule G; added Debtor and Affiliate addresses |

---

[1]   The debtor entities in these chapter 11 cases, along with the last four digits of each Debtor entity's federal tax identification number, are:  Dura Automotive Systems Cable Operations, LLC (7052); Dura Automotive Systems, LLC (8111); Dura Fremont L.L.C. (1252); Dura G.P. (8092); Dura Mexico Holdings, LLC (4188); Dura Operating, LLC (2304); and NAMP, LLC (3693).  Dura Automotive Systems, LLC's service address is:  1780 Pond Run, Auburn Hills, Michigan 48326.

[2]   Please note that the changes in the Amended Schedules and Statements do not implicate rule 1009-2 of the *Local Rules of Bankruptcy Practice and Procedures of the United States Bankruptcy Court for the District of Delaware.*

| Debtor | Schedule | Change |
|--------|----------|--------|
| Dura G.P. | Statement of Financial Affairs | Added Debtor and Affiliate addresses |
| Dura Mexico Holdings, LLC | Statement of Financial Affairs | Added Debtor and Affiliate addresses |
| Dura Operating, LLC | Statement of Financial Affairs | Added Debtor and Affiliate addresses; revised certain Affiliate names |
| NAMP, LLC | Statement of Financial Affairs | Added Debtor and Affiliate addresses |

**PLEASE TAKE FURTHER NOTICE** that, as stated in the *Global Notes and Statement of Limitations, Methodology, and Disclaimers Regarding the Debtors' Schedules of Assets and Liabilities and Statements of Financial Affairs* attached to each of the Amended Schedules and Statements, the Debtors reserve all rights to further amend or supplement their Amended Schedules and Statements.

*[Remainder of page intentionally left blank.]*

Dated:  December 14, 2020
       Wilmington, Delaware

**BAYARD, P.A.**

*/s/ Erin R. Fay*
_____

Erin R. Fay (No. 5268)
Daniel N. Brogan (No. 5723)
600 N. King Street, Suite 400
Wilmington, Delaware 19801
Telephone:    (302) 655-5000
Facsimile:    (302) 658-6395
E-mail:       efay@bayardlaw.com
              dbrogan@bayardlaw.com

- and -

James H.M. Sprayregen, P.C.
Ryan Blaine Bennett, P.C. (admitted *pro hac vice*)
Gregory F. Pesce (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200
Email:        jsprayregen@kirkland.com
              rbennett@kirkland.com
              gregory.pesce@kirkland.com

- and -

Christopher Marcus, P.C. (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900
Email:        cmarcus@kirkland.com

*Co-Counsel to the Debtors and Debtors in Possession*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | )| |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| DURA AUTOMOTIVE SYSTEMS, LLC, *et al.*,[1] | ) | Case No. 19-12378 (KBO) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## GLOBAL NOTES AND
## STATEMENT OF LIMITATIONS, METHODOLOGY,
## AND DISCLAIMERS REGARDING THE DEBTORS' SCHEDULES
## OF ASSETS AND LIABILITIES AND STATEMENTS OF FINANCIAL AFFAIRS

The above-captioned debtors and debtors in possession (collectively, the "Debtors") have filed their respective Schedules of Assets and Liabilities (the "Schedules") and Statements of Financial Affairs (the "Statements") in the United States Bankruptcy Court for the District of Delaware (the "Court"). The Debtors, with the assistance of their legal and financial advisors, prepared the Schedules and Statements in accordance with section 521 of title 11 of the United States Code (the "Bankruptcy Code") and rule 1007 of the Federal Rules of Bankruptcy Procedure.

James Riedy has signed each set of the Schedules and Statements on behalf of the Debtors. Mr. Riedy serves as the Chief Financial Officer and Executive Vice President of Debtor Dura Automotive Systems, LLC and he is an authorized signatory for each of the Debtors. In reviewing and signing the Schedules and Statements, Mr. Riedy has necessarily relied upon the efforts, statements, advice, and representations of personnel of the Debtors and the Debtors' legal and financial advisors. Given the global scale of the Debtors' businesses, Mr. Riedy has not (and could not have) personally verified the accuracy of each such statement and representation, including statements and representations concerning amounts owed to creditors.

In preparing the Schedules and Statements, the Debtors relied on financial data derived from their books and records that was available at the time of such preparation. Although the Debtors have made every reasonable effort to ensure the accuracy and completeness of the Schedules and Statements, subsequent information or discovery may result in material changes to the Schedules and Statements. As a result, inadvertent errors or omissions may exist. For the avoidance of doubt, the Debtors hereby reserve their rights to amend and supplement the Schedules and Statements as may be necessary or appropriate.

---

[1] The debtor entities in these chapter 11 cases, along with the last four digits of each Debtor entity's federal tax identification number, are: Dura Automotive Systems Cable Operations, LLC (7052); Dura Automotive Systems, LLC (8111); Dura Fremont L.L.C. (1252); Dura G.P. (8092); Dura Mexico Holdings, LLC (4188); Dura Operating, LLC (2304); and NAMP, LLC (3693). Dura Automotive Systems, LLC's service address is: 1780 Pond Run, Auburn Hills, Michigan 48326.

The Debtors and their agents, attorneys, and financial advisors do not guarantee or warrant the accuracy or completeness of the data that is provided herein, and shall not be liable for any loss or injury arising out of or caused in whole or in part by the acts, errors, or omissions, whether negligent or otherwise, in procuring, compiling, collecting, interpreting, reporting, communicating, or delivering the information contained herein. While commercially reasonable efforts have been made to provide accurate and complete information herein, inadvertent errors or omissions may exist. The Debtors and their agents, attorneys, and financial advisors expressly do not undertake any obligation to update, modify, revise, or re-categorize the information provided herein or to notify any third party should the information be updated, modified, revised, or re-categorized, except as required by applicable law. In no event shall the Debtors or their officers, directors, managers, members, employees, agents, attorneys, financial advisors, or other representatives be liable to any third party for any direct, indirect, incidental, consequential, or special damages (including damages arising from the disallowance of a potential claim against the Debtors or damages to business reputation, lost business, or lost profits, or any other matter), whether foreseeable or not and however caused, even if the Debtors or their agents, attorneys, and financial advisors are advised of the possibility of such damages.

## Global Notes and Overview of Methodology

1. **Description of these Chapter 11 Cases.** On October 17, 2019 (the "<u>Petition Date</u>"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the Bankruptcy Court for the Middle District of Tennessee. The Debtors are operating their businesses and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b) [Docket No. 120]. On November 1, 2019, an official committee of unsecured creditors was appointed [Docket No. 213] in the chapter 11 cases. No trustee or examiner has been appointed in the chapter 11 cases.

    On November 1, 2019, the United States Bankruptcy Court for the District of Delaware (the "<u>Court</u>") entered an agreed order in the bankruptcy cases captioned *In re Zohar III, Corp., et al.*, Case No. 18-10512 (KBO) (Bankr. D. Del.) (the "<u>Zohar Chapter 11 Cases</u>") transferring the Debtors' chapter 11 cases to this Court, effective as of November 8, 2019 at 12:01 a.m. [Zohar Chapter 11 Cases Docket No. 1060]. These chapter 11 cases are being administered separately from the Zohar Chapter 11 Cases.

    Additional information about these chapter 11 cases, court filings, and claims information is available at the Debtors' restructuring website: http://cases.primeclerk.com/DuraAutomotive

2. **Global Notes Control.** These *Global Notes and Statement of Limitations, Methodology, and Disclaimers Regarding the Debtors' Schedules of Assets and Liabilities and Statements of Financial Affairs* (the "<u>Global Notes</u>") pertain to and comprise an integral part of each of the Debtors' Schedules and Statements and should be referenced in connection with any review thereof. In the event that the Schedules and Statements conflict with these Global Notes, these Global Notes shall control.

3.   **Reservations and Limitations.**  The Debtors have made reasonable efforts to prepare and file complete and accurate Schedules and Statements; however, as noted above, inadvertent errors or omissions may exist.  The Debtors reserve all rights to amend and supplement the Schedules and Statements as may be necessary or appropriate.  Nothing contained in the Schedules and Statements is intended to be, nor should it be construed as, a waiver of any of the Debtors' rights or an admission of any kind with respect to these chapter 11 cases, including, but not limited to, any rights or claims of the Debtors against any third party or issues involving substantive consolidation, equitable subordination, or defenses or causes of action arising under the provisions of chapter 5 of the Bankruptcy Code or any other relevant applicable bankruptcy or non-bankruptcy laws to recover assets or avoid transfers. Any specific reservation of rights contained elsewhere in the Global Notes does not limit in any respect the general reservation of rights contained in this paragraph.

(a)   **No Admission.**  Nothing contained in the Schedules and Statements is intended or should be construed as an admission or stipulation of the validity of any claim against the Debtors, any assertion made therein or herein, or a waiver of the Debtors' rights to dispute any claim or assert any cause of action or defense against any party.

(b)   **Recharacterization.**  Notwithstanding that the Debtors have made reasonable efforts to correctly characterize, classify, categorize, or designate certain claims, assets, executory contracts, unexpired leases, and other items reported in the Schedules and Statements, the Debtors nonetheless may have improperly characterized, classified, categorized, or designated certain items.  The Debtors thus reserve all rights to recharacterize, reclassify, recategorize, or redesignate items reported in the Schedules and Statements at a later time as is necessary and appropriate.

(c)   **Classifications.**  Listing (i) a claim on Schedule D as "secured," (ii) a claim on Schedule E/F as "priority" or "unsecured," or (iii) a contract on Schedule G as "executory" or "unexpired" does not constitute an admission by the Debtors of the legal rights of the claimant or contract counterparty or a waiver of the Debtors' rights to recharacterize or reclassify such claim or contract.

(d)   **Claims Description.**  Any failure to designate a claim on a given Debtor's Schedules and Statements as "disputed," "contingent," or "unliquidated" does not constitute an admission by the Debtor that such amount is not "disputed," "contingent," or "unliquidated." The Debtors reserve all rights to dispute, or assert offsets or defenses to, any claim reflected on their respective Schedules and Statements on any grounds, including, without limitation, liability or classification, or to otherwise subsequently designate such claims as "disputed," "contingent," or "unliquidated" or object to the extent, validity, enforceability, priority, or avoidability of any claim.  Moreover, listing a claim does not constitute an admission of liability by the Debtor against which the claim is listed or by any of the Debtors.  The Debtors reserve all rights to amend their Schedules and Statements as necessary and appropriate, including, but not limited to, with respect to claim description and designation.

(e) **Estimates and Assumptions.**  The preparation of the Schedules and Statements required the Debtors to make reasonable estimates and assumptions with respect to the reported amounts of assets and liabilities, the amount of contingent assets and contingent liabilities on the date of the Schedules and Statements, and the reported amounts of revenues and expenses during the applicable reporting periods.  Actual results may differ from such estimates.

(f) **Causes of Action.**  Despite reasonable efforts, the Debtors may not have identified all of their causes of action (filed or potential) against third parties as assets in their Schedules and Statements, including, without limitation, avoidance actions arising under chapter 5 of the Bankruptcy Code and actions under other relevant bankruptcy and non-bankruptcy laws to recover assets.  The Debtors reserve all rights with respect to any causes of action, and nothing in these Global Notes or the Schedules and Statements should be construed as a waiver of any such causes of action.

(g) **Intellectual Property Rights.**  Exclusion of certain intellectual property should not be construed to be an admission that such intellectual property rights have been abandoned, have been terminated or otherwise expired by their terms, or have been assigned or otherwise transferred pursuant to a sale, acquisition, or other transaction.  Conversely, inclusion of certain intellectual property should not be construed to be an admission that such intellectual property rights have not been abandoned, have not been terminated or otherwise expired by their terms, or have not been assigned or otherwise transferred pursuant to a sale, acquisition, or other transaction.

(h) **Insiders.**  In the circumstance where the Schedules and Statements require information regarding "insiders," as to each Debtor, an individual is designated as an "insider" if such individual, based on the totality of the circumstances, has at least a controlling interest in, or exercises sufficient authority over, the Debtor so as to unqualifiedly dictate corporate policy and the disposition of corporate assets during the relevant time periods.  Such individuals may no longer serve in such capacities.

The listing of a party as an insider for purposes of the Schedules and Statements is not intended to be, nor should it be, construed as an admission of any fact, right, claim, or defense, and all such rights, claims, and defenses are hereby expressly reserved.  Information regarding the individuals listed as insiders in the Schedules and Statements has been included for informational purposes only and such information may not be used for the purposes of determining control of the Debtors; the extent to which any individual exercised management responsibilities, functions, or corporate decision-making authority over the Debtors; or whether such individual could successfully argue that he or she is not an insider under applicable law, including the Bankruptcy Code and federal securities laws, or with respect to any theories of liability or any other purpose.

4. **Methodology.  Basis of Presentation.**  The Schedules and Statements do not purport to represent financial statements prepared in accordance with Generally Accepted Accounting Principles in the United States ("GAAP"), nor are they intended to be fully reconciled to the financial statements of each Debtor.  The Schedules and Statements contain unaudited information that is subject to further review and potential adjustment.  The Schedules and Statements reflect the Debtors' reasonable efforts to report the assets and liabilities of each Debtor on an unconsolidated basis.

    (a)  **Confidential Information.**  There may be instances in the Schedules and Statements where the Debtors deemed it necessary and appropriate to redact from the public record information such as names, addresses, or amounts.  Typically, the Debtors have used this approach because of an agreement between the Debtors and a third party, concerns of confidentiality and protection of sensitive commercial information, or concerns for the privacy of an individual.  Any redactions are consistent with the relief the Debtors received under the *Expedited Order (I) Authorizing the Debtors to (A) Prepare a List of Creditors in Lieu of Submitting a Formatted Mailing Matrix, (B) File a Consolidated List of the Debtors' Fifty Largest Unsecured Creditors, and (C) Redact Certain Personally Identifiable Information for the Debtors' Employees and (II) Approving the Form and Manner of Notifying Creditors of Commencement of These Chapter 11 Cases* [Docket No. 128].

    (b)  **Master Agreements.**  Contracts and leases listed in the Schedules and Statements may be master agreements that cover relationships with some or all of the Debtors.  Where relevant, such agreements have been listed in the Schedules and Statements only of the Debtor entity that signed the original master agreement.  Other Debtors, however, may be liable together with such Debtor on account of such agreements and the Debtors reserve all rights to amend the Schedules and Statements to reflect changes regarding the liability of the Debtors with respect to such agreements, if applicable.

    (c)  **Executory Contracts**.  Although the Debtors have made diligent attempts to attribute an executory contract to its rightful Debtor, in certain instances, the Debtors may have inadvertently failed to do so due to the complexity and size of the Debtors' businesses.  Accordingly, the Debtors reserve all of their rights with respect to the named parties of any and all executory contracts, including the right to amend Schedule G.

    (d)  **Duplication.**  Certain of the Debtors' assets, liabilities, and prepetition payments may properly be disclosed in response to multiple parts of the Statements and Schedules.  To the extent these disclosures would be duplicative, the Debtors have determined to only list such assets, liabilities, and prepetition payments once.

    (e)  **Net Book Value.**  In certain instances, current market valuations for individual items of property and other assets are neither maintained by, nor readily available to, the Debtors.  Accordingly, unless otherwise indicated, the Debtors' Schedules and Statements reflect net book values.  Market values may vary, at some times

materially, from net book values. The Debtors believe that it would be an inefficient use of estate assets for the Debtors to obtain the current market values of their property. Accordingly, the Debtors have indicated in the Schedules and Statements that the values of certain assets and liabilities are undetermined. Also, assets that have been fully depreciated or that were expensed for accounting purposes either do not appear in these Schedules and Statements or are listed with a zero-dollar value, as such assets have no net book value. The omission of an asset from the Schedules and Statements does not constitute a representation regarding the ownership of such asset, and any such omission does not constitute a waiver of any rights of the Debtors with respect to such asset.

(f)    **Property and Equipment.** Unless otherwise indicated, owned property and equipment are valued at net book value. The Debtors may lease furniture, fixtures, and equipment from certain third-party lessors. To the extent possible, any such leases are listed in the Schedules and Statements. Nothing in the Schedules and Statements is, or should be construed as, an admission as to the determination of the legal status of any lease (including whether any lease is a true lease or a financing arrangement), and the Debtors reserve all rights with respect thereto.

(g)    **Allocation of Liabilities.** The Debtors allocated liabilities between the prepetition and postpetition periods based on the information and research conducted in connection with the preparation of the Schedules and Statements. As additional information becomes available and further research is conducted, the allocation of liabilities between the prepetition and postpetition periods may change.

(h)    **Undetermined Amounts.** The description of an amount as "undetermined" is not intended to reflect upon the materiality of such amount.

(i)    **Unliquidated Amounts.** Amounts that could not be fairly quantified by the Debtors are scheduled as "unliquidated."

(j)    **Totals.** All totals that are included in the Schedules and Statements represent totals of all known amounts. To the extent there are unknown or undetermined amounts, the actual total may be different than the listed total.

(k)    **Inventories; Property and Equipment.** Inventories consist of materials, supplies, and other automotive inventory. These inventories are valued at the lower of cost or market. Property, plant, and equipment are aggregated in the Debtors' books and records and cannot be segregated easily into the categories required by the Schedules and Statements. All inventories, as well as all property and equipment, are presented without consideration of any statutory or consensual liens.

(l)    **Paid Claims.** The Debtors have authority to pay certain outstanding prepetition payables pursuant to certain orders of the Court; as such, outstanding liabilities may have been reduced by any court-approved postpetition payments made on account of prepetition payables. Where and to the extent these liabilities have been satisfied, they are not listed in the Schedules and Statements. To the extent the

Debtors later pay any amount of the claims listed in the Schedules and Statements pursuant to an order of the Court, the Debtors reserve all rights to amend or supplement the Schedules and Statements or to take other action, such as filing claims objections or notices of satisfaction, as is necessary and appropriate to avoid overpayment or duplicate payments for liabilities. Nothing contained herein should be deemed to alter the rights of any party in interest to contest a payment made pursuant to an order of the Court where such order preserves the right to contest.

(m)     **Intercompany Claims.** Receivables and payables among the Debtors and among the Debtors and their non-Debtor affiliates are reported on Schedule A/B and Schedule E/F, respectively, per the Debtors' unaudited books and records. The listing of any amounts with respect to such receivables and payables is not, and should not be construed as, an admission of the characterization of such balances as debt, equity, or otherwise. For the avoidance of doubt, the Debtors reserve all rights, claims, and defenses in connection with any and all intercompany receivables and payables, including with respect to the characterization of intercompany claims, loans, and notes. Due to historical accounting practices, the Debtors may have been unable to ascertain with precision certain intercompany balances among specific Debtors and among Debtors and non-Debtor affiliates. As a result, the intercompany balances listed on Schedules E/F or A/B may vary from the Debtors' audited financial statements. These balances have been calculated consistent with historical practice and the Cash Management Order (as defined below). The Debtors reserve their rights, but are not required, to amend the Schedules and Statements if additional balances are identified. Generally, the intercompany balances relate to inventory, shared services, fixed assets, and equipment. The Debtors take no position in these Schedules and Statements as to whether any such amounts would be allowed as a Claim, an Interest, or not allowed at all.

(n)     **Guarantees and Other Secondary Liability Claims.** The Debtors have exercised reasonable efforts to locate and identify guarantees in their executory contracts, unexpired leases, secured financings, and other such agreements. Where guarantees have been identified, they have been included in the relevant Schedules G and H for the affected Debtor or Debtors. The Debtors may have inadvertently omitted guarantees embedded in their contractual agreements and may identify additional guarantees as they continue their review of their books and records and contractual agreements. The Debtors reserve their rights, but are not required, to amend the Schedules and Statements if additional guarantees are identified.

(o)     **Excluded Assets and Liabilities.** The Debtors have excluded the following categories of assets and liabilities from the Schedules and Statements: certain deferred charges, accounts, or reserves recorded only for purposes of complying with the requirements of GAAP; deferred tax assets and liabilities; deferred revenue accounts; and certain accrued liabilities including, but not limited to, accrued salaries and employee benefits. Other immaterial assets and liabilities may also have been excluded.

(p)     **Liens.** The inventories, property, and equipment listed in the Schedules and Statements are presented without consideration of any liens**.**

(q)     **Currency.** Unless otherwise indicated, all amounts are reflected in U.S. dollars.

(r)     **Setoffs.** The Debtors routinely incur setoffs and net payments in the ordinary course of business. Such setoffs and nettings may occur due to a variety of transactions or disputes including, but not limited to, intercompany transactions, counterparty settlements, pricing discrepancies, rebates, returns, warranties, refunds, and negotiations and/or disputes between Debtors and their customers and/or suppliers. These normal, ordinary course setoffs and nettings are common to the automotive industry. Due to the voluminous nature of setoffs and nettings, it would be unduly burdensome and costly for the Debtors to list each such transaction. Therefore, although such setoffs and other similar rights may have been accounted for when scheduling certain amounts, these ordinary course setoffs are not independently accounted for and, as such, are or may be excluded from the Debtors' Schedules and Statements. In addition, some amounts listed in the Schedules and Statements may have been affected by setoffs or nettings by third parties of which the Debtors are not yet aware. The Debtors reserve all rights to challenge any setoff and/or recoupment rights that may be asserted.

5.     <u>**Specific Schedules Disclosures.**</u>

(a)     **Schedule A/B, Parts 1 and 2 – Cash and Cash Equivalents; Deposits and Prepayments.** Details with respect to the Debtors' cash management system and bank accounts are provided in the *Debtors' Expedited Motion for Entry of Interim and Final Orders Authorizing the Debtors to (I) Continue To Operate Their Cash Management Systems, (II) Honor Certain Prepetition Obligations Related Thereto, (III) Maintain Existing Business Forms, and (IV) Continue To Perform Intercompany Transactions* [Docket No. 14] (the "<u>Cash Management Motion</u>") and the *Final Order Authorizing the Debtors to (I) Continue to Operate Their Cash Management Systems, (II) Honor Certain Prepetition Obligations Related Thereto, (III) Maintain Existing Business Forms, and (IV) Continue to Perform Intercompany Transactions* [Docket No. 335] (the "<u>Cash Management Order</u>"). The balances of the financial accounts listed on Schedule A/B, Part 1, are as of October 16, 2019.

Additionally, the Court, pursuant to the *Order (I) Prohibiting Utility Providers From Altering, Refusing, or Discontinuing Utility Services, (II) Determining Adequate Assurance of Resolving Requests for Payment for Future Utility Services, and (III) Establishing Procedures for Additional Adequate Assurance of Payment* [Docket No. 336], has authorized the Debtors to provide adequate assurance of payment for future utility services. Such deposits are not listed on Schedule A/B, Part 2, which has been prepared as of October 16, 2019.

(b)     **Schedule A/B, Part 4 – Investments; Non-Publicly Traded Stock and Interests in Incorporated and Unincorporated Businesses, including any Interest in an**

8

**LLC, Partnership, or Joint Venture.**  Ownership interests in subsidiaries, partnerships, and joint ventures have been listed on Schedule A/B, Part 4, as undetermined amounts on account of the fact that the fair market value of such ownership is dependent on numerous variables and factors and may differ significantly from their net book value.

(c)     **Schedule A/B, Part 7 – Office Furniture, Fixtures, and Equipment; and Collectibles.**  Dollar amounts are presented net of accumulated depreciation and other adjustments.

(d)     **Schedule A/B, Part 8 – Machinery, Equipment, and Vehicles.**  Dollar amounts are presented net of accumulated depreciation and other adjustments.

(e)     **Schedule A/B, Part 11 – All Other Assets.**  Dollar amounts are presented net of impairments and other adjustments.

***Other Contingent and Unliquidated Claims or Causes of Action of Every Nature, including Counterclaims of the Debtors and Rights to Setoff Claims.***  In the ordinary course of their business, the Debtors may have accrued, or may subsequently accrue, certain rights to counterclaims, crossclaims, setoffs, refunds with their customers and suppliers, or potential warranty claims against their suppliers.  Additionally, certain of the Debtors may be party to pending litigation in which the Debtors have asserted, or may assert, claims as a plaintiff or counterclaims and/or crossclaims as a defendant.  Because certain of these claims are unknown to the Debtors and not quantifiable as of the Petition Date, they may not be listed on Schedule A/B, Part 11.

***Interests in Insurance Policies or Annuities.***  A list of the Debtors' insurance policies and related information is available in the *Debtors' Expedited Motion for Entry of Interim and Final Orders Authorizing the Debtors to (I) Continue Insurance Coverage Entered Into Prepetition and Satisfy Prepetition Obligations Related Thereto, (II) Renew, Amend, Supplement, Extend, or Purchase Insurance Coverage, (III) Honor the Terms of a Premium Financing Agreement and Pay Premiums Thereunder, (IV) Enter Into New Premium Financing Agreements, and (V) Continue to Pay Brokerage Fees* [Docket No. 7].  The Debtors believe that there is little or no cash value to the vast majority of such insurance policies.  Such policies have all been included on Schedule A/B, Part 11, with values listed as "undetermined."

***Executory Contracts and Unexpired Leases.***  Because of the large number of the Debtors' executory contracts and unexpired leases, as well as the size and scope of such documents, the Debtors have not attached such agreements to Schedule A/B. Instead, the Debtors have only listed such agreements on Schedule G.

(f)     **Schedule D – Creditors Who Have Claims Secured by Property.**  Except as otherwise agreed pursuant to a stipulation or order entered by the Court, the Debtors reserve their rights to dispute or challenge the validity, perfection, or immunity

9

from avoidance of any lien purported to be granted or perfected in any specific asset to a secured creditor listed on Schedule D. Moreover, although the Debtors have scheduled claims of various creditors as secured claims, the Debtors reserve all rights to dispute or challenge the secured nature of any such creditor's claim or the characterization of the structure of any such transaction or any document or instrument related to such creditor's claim.

The descriptions provided in Schedule D are intended only to be a summary. Reference to the applicable agreements and other related relevant documents is necessary for a complete description of the collateral and the nature, extent, and priority of any liens. In certain instances, a Debtor may be a co-obligor, co-mortgagor, or guarantor with respect to scheduled claims of other Debtors, and no claim set forth on Schedule D of any Debtor is intended to acknowledge claims of creditors that are otherwise satisfied or discharged by other entities.

The Debtors have included on Schedule D parties who may, to the best of the Debtors' knowledge, believe their claims are secured through setoff rights or inchoate statutory lien rights.

The Debtors are party to a $104 million prepetition secured term loan facility. The Debtors were also party to a $25.8 million prepetition senior secured asset-based revolving credit facility, however, pursuant to the Payoff Letter dated October 25, 2019, attached as <u>Exhibit A</u> to the *Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Status, (IV) Granting Adequate Protection to the Prepetition Lenders, and (V) Modifying the Automatic Stay* [Docket No. 340] (the "<u>Final DIP Order</u>"), the Debtors have repaid all prepetition ABL obligations under the prepetition ABL facility (other than contingent expense reimbursement, indemnification, and other obligations that expressly survive such payment pursuant to the ABL documents) through proceeds of the debtor-in-possession financing facility. Accordingly, the ABL facility is listed on Schedule D for purposes of the surviving contingent expense reimbursement, indemnification, and other obligations.

(g)     **Schedule E/F – Creditors Who Have Unsecured Claims.**

(i)      *Part 1 – Creditors with Priority Unsecured Claims.*

(A)     **Priority Tax Claims:** Pursuant to the *Final Order Authorizing the Payment of Certain Prepetition Taxes and Fees* [Docket No. 233] (the "<u>Taxes Order</u>"), the Debtors have been granted the authority to pay, in their discretion, certain tax liabilities that accrued prepetition. Accordingly, any unsecured priority claims based upon prepetition tax accruals that have been paid pursuant to the Taxes Order are not listed on Schedule E.

(B)    **Employee Claims:** Furthermore, pursuant to the *Final Order Authorizing the Debtors to (I) Pay Prepetition Employee Wages, Salaries, Other Compensation, and Reimbursable Employee Expenses and (II) Continue Employee Benefits Programs* [Docket No. 334] (the "<u>Wages Order</u>") the Debtors received final authority to pay certain prepetition obligations, including to pay employee wages and other employee benefits, in the ordinary course of business. The Debtors believe that any non-insider employee claims for prepetition amounts related to ongoing payroll and benefits, whether allowable as a priority or nonpriority claim, have been or will be satisfied, and such satisfied amounts are not listed on Schedule E.

The listing of a claim on Schedule E/F, Part 1, does not constitute an admission by the Debtors that such claim or any portion thereof is entitled to priority status.

(ii)    ***Part 2 – Creditors with Nonpriority Unsecured Claims.*** The liabilities identified on Schedule E/F, Part 2, are derived from the Debtors' books and records. The Debtors have made a reasonable attempt to verify their unsecured obligations, although the actual amount of claims against the Debtors may vary from those liabilities represented on Schedule E/F, Part 2. The listed liabilities may not reflect the correct amount of any unsecured creditor's allowed claims or the correct amount of all unsecured claims.

The Debtors generally allocate individual liabilities to particular Debtors. However, in certain cases, it would be a time-consuming and inefficient use of estate resources, or impracticable, to assign a given liability to a particular Debtor based on a contractual obligation. Instead, Schedule E/F, Part 2, reflects the liability as recorded in the Debtors' books and records.

Schedule E/F, Part 2, contains information regarding threatened or pending litigation involving the Debtors. The amounts for these potential claims are listed as "undetermined" and are marked as contingent, unliquidated, and disputed in the Schedules and Statements.

Schedule E/F, Part 2, reflects certain prepetition amounts owing to counterparties to executory contracts and unexpired leases. Such prepetition amounts, however, may be paid in connection with the assumption or assumption and assignment of an executory contract or unexpired lease. In addition, Schedule E/F, Part 2, does not include claims that may arise in connection with the rejection of any executory contract or unexpired lease, if any, that may be rejected.

In many cases, the claims listed on Schedule E/F, Part 2, arose, accrued, or were incurred on various dates or on a date or dates that are unknown to the Debtors or are subject to dispute. Where the determination of the date on which a claim arose,

accrued, or was incurred would be unduly burdensome and costly to the Debtors' estates, the Debtors have not listed a specific date or dates for such claim.

As of the date hereof, the Debtors have not received all invoices for payables, expenses, and other liabilities that may have accrued prior to the Petition Date. Accordingly, the information contained in Schedules D and E/F may be incomplete. The Debtors reserve their rights, but undertake no obligation, to amend Schedules D and E/F if and as they receive additional prepetition invoices.

**Prepetition Customer Programs**.  Pursuant to the *Final Order Authorizing the Debtors to Maintain and Administer Their Existing Customer Programs and Honor Certain Prepetition Obligations Related Thereto* [Docket No. 333], the Debtors have the authority to honor certain prepetition customer programs.  Accordingly, certain debts arising from these customer programs have not been included in the Schedules.

(h)  **Schedule G – Executory Contracts and Unexpired Leases.**  While reasonable efforts have been made to ensure the accuracy of Schedule G, inadvertent errors or omissions may have occurred.

Listing a contract or agreement on Schedule G does not constitute an admission that such contract or agreement is an executory contract or unexpired lease, that such contract or agreement was in effect on the Petition Date, or that such contract or agreement is valid or enforceable.  The Debtors hereby reserve all rights to dispute the validity, status, or enforceability of any contracts, agreements, or leases set forth on Schedule G and to amend or supplement such Schedule as necessary.  Certain of the leases and contracts listed on Schedule G may contain renewal options, guarantees of payment, indemnification obligations, options to purchase, rights of first refusal, and other miscellaneous rights.  Such rights, powers, duties, and obligations are not set forth separately on Schedule G.  In addition, the Debtors may have entered into other types of agreements in the ordinary course of their business, such as supplemental agreements and letter agreements, which documents may not be set forth on Schedule G.  In the ordinary course of business, the Debtors have entered into numerous agreements, both written and oral, regarding the provision of certain services on a month-to-month basis, as well as purchase orders and statements of work.  The Debtors believe that such agreements likely do not constitute executory contracts and, therefore, such agreements are not listed individually on Schedule G.  Moreover, to the extent any agreements are governed by a master services agreement, the Debtors have endeavored to list the master services agreement on Schedule G.  The Debtors have made reasonable efforts to identify the Debtor entity for each contract, and, in instances where this could not be determined, the contract is listed on Dura Automotive Systems, LLC's Schedules.

The description of any contract on Schedule G does not constitute an admission by the Debtors as to the characterization of such contract.  The Debtors reserve all

rights to dispute or challenge the characterization of any transaction or any document or instrument related to a creditor's claim.

In some cases, the same supplier or provider may appear multiple times on Schedule G.  Multiple listings, if any, reflect distinct agreements between the applicable Debtor and such supplier or provider.

The listing of any contract on Schedule G does not constitute an admission by the Debtors as to the validity of any such contract.  The Debtors reserve the right to dispute the effectiveness of any such contract listed on Schedule G or to amend Schedule G at any time to remove any contract.

In the ordinary course of business, the Debtors have entered into numerous purchase orders and other agreements with their customers, and the Debtors are working to identify all such agreements that are executory contracts.  The Debtors intend to amend Schedule G to reflect such customer agreements that constitute executory contracts.  Omission of a contract or agreement from Schedule G does not constitute an admission that such omitted contract or agreement is not an executory contract or unexpired lease.  The Debtors' rights under the Bankruptcy Code with respect to any such omitted contracts or agreements are not impaired by the omission.

Certain Debtors are guarantors and parties to guaranty agreements regarding the Debtors' prepetition term loan facility.  The guaranty obligations arising under these agreements are reflected on Schedule D only.

(i)     **Schedule H – Co-Debtors.**  The Debtors have listed their prepetition term loan facility as a co-Debtor obligation on Schedule H.  More information about the Debtors' prepetition term loan facility is contained in the Final DIP Order.  The Debtors reserve all rights to amend Schedule H to the extent that guarantees associated with the Debtors' executory contracts, unexpired leases, secured financings, debt instruments, and other agreements are identified.  The Debtors have not listed any litigation-related co-defendants on Schedule H.  Instead, all cross-claims affirmatively asserted by co-defendants, other than cross-claims that may have been "deemed" asserted against the Debtors and/or asserted solely as a procedural matter, can be found on Schedule E/F.

6.      **Specific Statements Disclosures.**

(a)     **Statements, Part 2, Question 3 – Payments to Certain Creditors.**  Disbursements made on account of multiple invoices may be reflected as a single payment.  For additional detail on the Debtors' cash management system, see the Cash Management Motion.  All transfers in Part 2, Question 3 of the Schedules are listed as of the bank cleared date.

(b)     **Statements, Part 2, Question 4 – Payments or Other Transfers of Property That Benefited Insiders.**  The payroll-related amounts shown in response to this question for any salary, bonus, additional compensation, and/or severance

payments are gross amounts that do not include reductions for amounts relating to employee tax or benefit withholdings. For the sake of completeness and out of an abundance of caution, the Debtors have listed transfers valued at less than $6,825 in their response to Question 4.

As more fully described in the Cash Management Motion, the Debtors recorded numerous intercompany transactions in their books and records periodically, including journal entries. Instead of listing each of these numerous transactions and entries in their Statements and Schedules for each month, the Debtors have included the monthly activity between Debtor entities and between Debtor and non-Debtor entities. Depending on when the transactions were recorded, the monthly balances may include transactions that occurred in prior months and may contain reconciling differences. In addition, the Debtors have separately listed any cash payments between Debtors and between Debtors and non-Debtor affiliates. As a result of the structure of the cash management systems, the cash transactions may appear inflated as the money flows through different Debtor accounts. These cash transactions are also recorded in the monthly activity listing in the Debtors' books and records.

(c)    **Statements, Part 2, Question 6 – Setoffs.**  For a discussion of setoffs and nettings incurred by the Debtors, refer to paragraph 4(r) of these Global Notes.

(d)    **Statements, Part 6, Question 11 – Payments Related to Bankruptcy.**  All payments for services of any entities that provided consultation concerning debt restructuring services, relief under the Bankruptcy Code, or preparation of a petition in bankruptcy within one year immediately preceding the Petition Date were initiated and disbursed by Dura Automotive Systems, LLC on behalf of each Debtor. Therefore, these payments are only listed on Dura Automotive Systems, LLC's Statements. The Debtors have endeavored to list only payments made for debt restructuring services, however, in some instances, these balances may include payments for services not related to restructuring or bankruptcy matters. Additional information regarding the Debtors' retention of professionals is more fully described in the individual retention applications for those professionals.

(e)    **Statements, Part 13, Question 26 – Books, Records, and Financial Statements.**  The Debtors provide certain parties, such as banks, factors, auditors, potential investors, potential purchasers, vendors, and financial advisors, with financial statements. Due to the Debtors' extensive prepetition marketing efforts for financing commitments or a potential sale, disposition, or other business transaction involving all or a material portion of the Debtors' assets, numerous parties reviewed and were in possession of the Debtors' financial statements and books of account and records as of the filing of these chapter 11 cases. The Debtors do not maintain complete lists or other records tracking such disclosures and it would be a time-consuming and inefficient use of estate resources. Therefore, the Debtors have not provided lists of these parties in Part 13, Question 26 of the Statements.

(f)     **Statements, Part 13, Question 30 – Payments, Distributions, or Withdrawals Credited or Given to Insiders.**  For a discussion of payments made to insiders, refer to paragraph 6(b) of these Global Notes and Part 2, Question 4 of the Statements.

*        *        *        *        *

**Fill in this information to identify the case:**

Debtor name    **Dura Automotive Systems, LLC**

United States Bankruptcy Court for the:    DISTRICT OF DELAWARE

Case number (if known)    **19-12378**

■ Check if this is an
amended filing

Official Form 207

# Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy    04/19

The debtor must answer every question. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write the debtor's name and case number (if known).

**Part 1:    Income**

1.  **Gross revenue from business**

    ■ None.

    | Identify the beginning and ending dates of the debtor's fiscal year, which may be a calendar year | Sources of revenue<br>Check all that apply | Gross revenue<br>(before deductions and exclusions) |
    |---|---|---|

2.  **Non-business revenue**
    Include revenue regardless of whether that revenue is taxable. *Non-business income* may include interest, dividends, money collected from lawsuits, and royalties. List each source and the gross revenue for each separately. Do not include revenue listed in line 1.

    ■ None.

    | | Description of sources of revenue | Gross revenue from each source<br>(before deductions and exclusions) |
    |---|---|---|

**Part 2:    List Certain Transfers Made Before Filing for Bankruptcy**

3.  **Certain payments or transfers to creditors within 90 days before filing this case**
    List payments or transfers--including expense reimbursements--to any creditor, other than regular employee compensation, within 90 days before filing this case unless the aggregate value of all property transferred to that creditor is less than $6,825. (This amount may be adjusted on 4/01/22 and every 3 years after that with respect to cases filed on or after the date of adjustment.)

    ■ None.

    | Creditor's Name and Address | Dates | Total amount of value | Reasons for payment or transfer<br>Check all that apply |
    |---|---|---|---|

4.  **Payments or other transfers of property made within 1 year before filing this case that benefited any insider**
    List payments or transfers, including expense reimbursements, made within 1 year before filing this case on debts owed to an insider or guaranteed or cosigned by an insider unless the aggregate value of all property transferred to or for the benefit of the insider is less than $6,825. (This amount may be adjusted on 4/01/22 and every 3 years after that with respect to cases filed on or after the date of adjustment.) Do not include any payments listed in line 3. *Insiders* include officers, directors, and anyone in control of a corporate debtor and their relatives; general partners of a partnership debtor and their relatives; affiliates of the debtor and insiders of such affiliates; and any managing agent of the debtor. 11 U.S.C. § 101(31).

    ☐ None.

    | Insider's name and address<br>Relationship to debtor | Dates | Total amount of value | Reasons for payment or transfer |
    |---|---|---|---|
    | 4.1. **Patriarch Partners Agency Services, LLC, As Agent**<br>**1 Liberty St. 35th Floor**<br>**New York, NY 10006**<br>**Agent** | **9/25/2019** | **$0.00** | **Lien Assignment (ABL Credit Agreement)** |

| Debtor | **Dura Automotive Systems, LLC** | Case number *(if known)* | **19-12378** |
|---|---|---|---|

**5. Repossessions, foreclosures, and returns**

List all property of the debtor that was obtained by a creditor within 1 year before filing this case, including property repossessed by a creditor, sold at a foreclosure sale, transferred by a deed in lieu of foreclosure, or returned to the seller. Do not include property listed in line 6.

■ None

| Creditor's name and address | Describe of the Property | Date | Value of property |
|---|---|---|---|
| | | | |

**6. Setoffs**

List any creditor, including a bank or financial institution, that within 90 days before filing this case set off or otherwise took anything from an account of the debtor without permission or refused to make a payment at the debtor's direction from an account of the debtor because the debtor owed a debt.

■ None

| Creditor's name and address | Description of the action creditor took | Date action was taken | Amount |
|---|---|---|---|
| | | | |

**Part 3:    Legal Actions or Assignments**

**7. Legal actions, administrative proceedings, court actions, executions, attachments, or governmental audits**

List the legal actions, proceedings, investigations, arbitrations, mediations, and audits by federal or state agencies in which the debtor was involved in any capacity—within 1 year before filing this case**.**

☐ None.

| Case title Case number | Nature of case | Court or agency's name and address | Status of case |
|---|---|---|---|
| 7.1.  **See Attached SOFA Part 3, Question 7** | | | ☐ Pending<br>☐ On appeal<br>☐ Concluded |

**8. Assignments and receivership**

List any property in the hands of an assignee for the benefit of creditors during the 120 days before filing this case and any property in the hands of a receiver, custodian, or other court-appointed officer within 1 year before filing this case.

■ None

**Part 4:    Certain Gifts and Charitable Contributions**

**9. List all gifts or charitable contributions the debtor gave to a recipient within 2 years before filing this case unless the aggregate value of the gifts to that recipient is less than $1,000**

■ None

| Recipient's name and address | Description of the gifts or contributions | Dates given | Value |
|---|---|---|---|
| | | | |

**Part 5:    Certain Losses**

**10. All losses from fire, theft, or other casualty within 1 year before filing this case.**

■ None

| Description of the property lost and how the loss occurred | Amount of payments received for the loss<br><br>If you have received payments to cover the loss, for example, from insurance, government compensation, or tort liability, list the total received.<br><br>List unpaid claims on Official Form 106A/B *(Schedule A/B: Assets – Real and Personal Property).* | Dates of loss | Value of property lost |
|---|---|---|---|
| | | | |

**Part 6:    Certain Payments or Transfers**

Official Form 207     **Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy**     page **2**

Debtor    **Dura Automotive Systems, LLC**                                    Case number *(if known)* **19-12378**

**11. Payments related to bankruptcy**

List any payments of money or other transfers of property made by the debtor or person acting on behalf of the debtor within 1 year before the filing of this case to another person or entity, including attorneys, that the debtor consulted about debt consolidation or restructuring, seeking bankruptcy relief, or filing a bankruptcy case.

☐ None.

| | Who was paid or who received the transfer? Address | If not money, describe any property transferred | Dates | Total amount or value |
|---|---|---|---|---|
| 11.1. | See Attached SOFA Part 6, Question 11 | | | |
| | Email or website address | | | |
| | Who made the payment, if not debtor? | | | |

**12. Self-settled trusts of which the debtor is a beneficiary**

List any payments or transfers of property made by the debtor or a person acting on behalf of the debtor within 10 years before the filing of this case to a self-settled trust or similar device.
Do not include transfers already listed on this statement.

■ None.

| Name of trust or device | Describe any property transferred | Dates transfers were made | Total amount or value |
|---|---|---|---|

**13. Transfers not already listed on this statement**

List any transfers of money or other property by sale, trade, or any other means made by the debtor or a person acting on behalf of the debtor within 2 years before the filing of this case to another person, other than property transferred in the ordinary course of business or financial affairs. Include both outright transfers and transfers made as security. Do not include gifts or transfers previously listed on this statement.

■ None.

| Who received transfer? Address | Description of property transferred or payments received or debts paid in exchange | Date transfer was made | Total amount or value |
|---|---|---|---|

| **Part 7:** | Previous Locations |
|---|---|

**14. Previous addresses**

List all previous addresses used by the debtor within 3 years before filing this case and the dates the addresses were used.

■ Does not apply

| Address | Dates of occupancy From-To |
|---|---|

| **Part 8:** | Health Care Bankruptcies |
|---|---|

**15. Health Care bankruptcies**

Is the debtor primarily engaged in offering services and facilities for:
- diagnosing or treating injury, deformity, or disease, or
- providing any surgical, psychiatric, drug treatment, or obstetric care?

■ No. Go to Part 9.
☐ Yes. Fill in the information below.

| Facility name and address | Nature of the business operation, including type of services the debtor provides | If debtor provides meals and housing, number of patients in debtor's care |
|---|---|---|

| Debtor | **Dura Automotive Systems, LLC** | Case number *(if known)* **19-12378** |
|---|---|---|

---

**Part 9:    Personally Identifiable Information**

**16. Does the debtor collect and retain personally identifiable information of customers?**

- ■ No.
- ☐ Yes. State the nature of the information collected and retained.

**17. Within 6 years before filing this case, have any employees of the debtor been participants in any ERISA, 401(k), 403(b), or other pension or profit-sharing plan made available by the debtor as an employee benefit?**

- ■ No. Go to Part 10.
- ☐ Yes. Does the debtor serve as plan administrator?

---

**Part 10:    Certain Financial Accounts, Safe Deposit Boxes, and Storage Units**

**18. Closed financial accounts**
Within 1 year before filing this case, were any financial accounts or instruments held in the debtor's name, or for the debtor's benefit, closed, sold, moved, or transferred?
Include checking, savings, money market, or other financial accounts; certificates of deposit; and shares in banks, credit unions, brokerage houses, cooperatives, associations, and other financial institutions.

■ None

| Financial Institution name and Address | Last 4 digits of account number | Type of account or instrument | Date account was closed, sold, moved, or transferred | Last balance before closing or transfer |
|---|---|---|---|---|
| | | | | |

**19. Safe deposit boxes**
List any safe deposit box or other depository for securities, cash, or other valuables the debtor now has or did have within 1 year before filing this case.

■ None

| Depository institution name and address | Names of anyone with access to it Address | Description of the contents | Do you still have it? |
|---|---|---|---|
| | | | |

**20. Off-premises storage**
List any property kept in storage units or warehouses within 1 year before filing this case. Do not include facilities that are in a part of a building in which the debtor does business.

■ None

| Facility name and address | Names of anyone with access to it | Description of the contents | Do you still have it? |
|---|---|---|---|
| | | | |

---

**Part 11:    Property the Debtor Holds or Controls That the Debtor Does Not Own**

**21. Property held for another**
List any property that the debtor holds or controls that another entity owns. Include any property borrowed from, being stored for, or held in trust. Do not list leased or rented property.

■ None

---

**Part 12:    Details About Environment Information**

For the purpose of Part 12, the following definitions apply:
*Environmental law* means any statute or governmental regulation that concerns pollution, contamination, or hazardous material, regardless of the medium affected (air, land, water, or any other medium).

*Site* means any location, facility, or property, including disposal sites, that the debtor now owns, operates, or utilizes or that the debtor formerly owned, operated, or utilized.

Debtor    **Dura Automotive Systems, LLC**                                    Case number *(if known)* **19-12378**
_____                          _____

*Hazardous material* means anything that an environmental law defines as hazardous or toxic, or describes as a pollutant, contaminant, or a similarly harmful substance.

**Report all notices, releases, and proceedings known, regardless of when they occurred.**

22.  **Has the debtor been a party in any judicial or administrative proceeding under any environmental law? Include settlements and orders.**

■  No.
☐  Yes. Provide details below.

| Case title Case number | Court or agency name and address | Nature of the case | Status of case |
|---|---|---|---|

23. **Has any governmental unit otherwise notified the debtor that the debtor may be liable or potentially liable under or in violation of an environmental law?**

■  No.
☐  Yes. Provide details below.

| Site name and address | Governmental unit name and address | Environmental law, if known | Date of notice |
|---|---|---|---|

24. **Has the debtor notified any governmental unit of any release of hazardous material?**

■  No.
☐  Yes. Provide details below.

| Site name and address | Governmental unit name and address | Environmental law, if known | Date of notice |
|---|---|---|---|

| **Part 13:** | **Details About the Debtor's Business or Connections to Any Business** |
|---|---|

25. **Other businesses in which the debtor has or has had an interest**
List any business for which the debtor was an owner, partner, member, or otherwise a person in control within 6 years before filing this case. Include this information even if already listed in the Schedules.

☐ None

| Business name address | Describe the nature of the business | Employer Identification number Do not include Social Security number or ITIN. Dates business existed |
|---|---|---|
| 25.1.  **Dura Mexico Holdings, LLC** **1780 Pond Run** **Auburn Hills, MI 48326** | **100% Ownership - Related Party** | EIN: From-To  **Ongoing** |
| 25.2.  **Dura Operating, LLC** **1780 Pond Run** **Auburn Hills, MI 48326** | **100% Ownership - Related Party** | EIN: From-To  **Ongoing** |

26. **Books, records, and financial statements**
26a. List all accountants and bookkeepers who maintained the debtor's books and records within 2 years before filing this case.

☐ None

| Name and address | Date of service From-To |
|---|---|
| 26a.1.  **Matt Modrzejewski** **1780 Pond Run Drive** **Auburn Hills, MI 48326** | **Preceding 2 years - Current** |
| 26a.2.  **Pamela McIntyre** **1780 Pond Run Drive** **Auburn Hills, MI 48326** | **Preceding 2 years - Current** |

Debtor    **Dura Automotive Systems, LLC**                                   Case number *(if known)*  **19-12378**

26b. List all firms or individuals who have audited, compiled, or reviewed debtor's books of account and records or prepared a financial statement within 2 years before filing this case.

☐ None

| Name and address | Date of service From-To |
|---|---|
| 26b.1.  **Grant Thornton**<br>**27777 Franklin Road**<br>**Suite 800**<br>**Southfield, MI 48034** | **November 2017 - April 2018;**<br>**November 2018 - Unfinished** |

26c. List all firms or individuals who were in possession of the debtor's books of account and records when this case is filed.

☐ None

| Name and address | If any books of account and records are unavailable, explain why |
|---|---|
| 26c.1.  **Please refer to Global Notes** | |

26d. List all financial institutions, creditors, and other parties, including mercantile and trade agencies, to whom the debtor issued a financial statement within 2 years before filing this case.

☐ None

| Name and address |
|---|
| 26d.1.  **Please refer to Global Notes** |

27. **Inventories**
Have any inventories of the debtor's property been taken within 2 years before filing this case?

☑ No
☐ Yes. Give the details about the two most recent inventories.

| Name of the person who supervised the taking of the inventory | Date of inventory | The dollar amount and basis (cost, market, or other basis) of each inventory |
|---|---|---|

28. List the debtor's officers, directors, managing members, general partners, members in control, controlling shareholders, or other people in control of the debtor at the time of the filing of this case.

| Name | Address | Position and nature of any interest | % of interest, if any |
|---|---|---|---|
| **See Attached SOFA Part 13, Question 28** | | | |

29. **Within 1 year before the filing of this case, did the debtor have officers, directors, managing members, general partners, members in control of the debtor, or shareholders in control of the debtor who no longer hold these positions?**

☐ No
☑ Yes. Identify below.

| Name | Address | Position and nature of any interest | Period during which position or interest was held |
|---|---|---|---|
| **Dennis Richardville** | **Address on File** | **Former Chief Financial Officer & Executive Vice President** | **Left 9/27/19** |

Debtor    **Dura Automotive Systems, LLC**                                    Case number *(if known)*  **19-12378**

| Name | Address | Position and nature of any interest | Period during which position or interest was held |
|---|---|---|---|
| Jonathan Greenberg | Address on File | Former General Counsel & Corporate Secretary | Left 8/2/19 |

| Name | Address | Position and nature of any interest | Period during which position or interest was held |
|---|---|---|---|
| Kevin Grady | Address on File | Former Chief Financial Officer and Executive Vice President | Left 11/3/19 |

| Name | Address | Position and nature of any interest | Period during which position or interest was held |
|---|---|---|---|
| Tyrone Jordan | Address on file | Former Chief Operating Officer & Executive Vice President | Left 3/31/19 |

30. **Payments, distributions, or withdrawals credited or given to insiders**
   Within 1 year before filing this case, did the debtor provide an insider with value in any form, including salary, other compensation, draws, bonuses, loans, credits on loans, stock redemptions, and options exercised?

   ☐ No
   ☑ Yes. Identify below.

| | Name and address of recipient | Amount of money or description and value of property | Dates | Reason for providing the value |
|---|---|---|---|---|
| 30.1. | **Please refer to Statement of Financial Affairs Question 4** | | | |
| | **Relationship to debtor** | | | |

31. **Within 6 years before filing this case, has the debtor been a member of any consolidated group for tax purposes?**

   ☐ No
   ☑ Yes. Identify below.

| Name of the parent corporation | Employer Identification number of the parent corporation |
|---|---|
| **Dura Automotive Systems, LLC** | **EIN:**  27-1758111 |

32. **Within 6 years before filing this case, has the debtor as an employer been responsible for contributing to a pension fund?**

   ☑ No
   ☐ Yes. Identify below.

| Name of the pension fund | Employer Identification number of the parent corporation |
|---|---|

Debtor   **Dura Automotive Systems, LLC**                          Case number *(if known)*   **19-12378**

---

**Part 14:**   Signature and Declaration

> **WARNING** -- Bankruptcy fraud is a serious crime.  Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both.
> 18 U.S.C. §§ 152, 1341, 1519, and 3571.

I have examined the information in this *Statement of Financial Affairs* and any attachments and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on       **December 14, 2020**

*/s/ James Riedy*                                           **James Riedy**
Signature of individual signing on behalf of the debtor       Printed name

Position or relationship to debtor     **Executive Vice President and Chief**
                                      **Financial Officer**

**Are additional pages to *Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy* (Official Form 207) attached?**
☐ No
■ Yes

In re Dura Automotive Systems, LLC
Case No. 19-12378
SOFA Part 3, Question 7  - Legal actions, administrative proceedings, etc.
to which the debtor is or was a party within one year of commencement of this case

| CASE TITLE AND CASE NUMBER | NATURE OF CASE | COURT OR AGENCY AND LOCATION | STATUS OF CASE |
|---|---|---|---|
| CARLEX GLASS AMERICA, LLC V DURA MEXICO HOLDINGS, LLC, D/B/A DURA AUTOMOTIVE SYSTEMS, INC., DURA OPERATING, LLC, D/B/A DURA AUTOMOTIVE SYSTEM, INC., AND DURA AUTOMOTIVE SYSTEMS, LLC | BREACH OF CONTRACT | STATE OF TENNESSEE, DAVIDSON COUNTY, 20TH JUDICIAL DIASTRICT; MICHIGAN COURT OF APPEALS; MICHIGAN SUPREME COURT | CURRENTLY PENDING IN ARBITRATION |
| LUCERNE INTERNATIONAL, INC. V DURA AUTOMOTIVE SYSTEMS, LLC AND MILAN METAL SYSTEMS, LLC (ALSO THIRD PARTY CO-DEFENDANTS ASIA FORGING SUPPLY, CO., LTD AND FAW FORGING AND CASTING USA, INC.) | BREACH OF CONTRACT | WAYNE COUNTY - THIRD CIRCUIT COURT; MICHIGAN COURT OF APPEALS; MICHIGAN SUPREME COURT | APPEAL |
| PAUL BRIAN CSIKOS V DURA AUTOMOTIVE SYSTEMS, LLC AND ARVIS WILLIAMS, INDIVIDUALLY | EMPLOYMENT DISPUTE | UNITED STATES COURT FOR THE EASTERN DISTRICT OF MICHIGAN. | PENDING |
| TOWER METAL WORKING FLUIDS VS DURA AUTOMOTIVE SYSTEMS LLC D/B/A DURA AUTOMOTIVE | TRADE CLAIM | STATE OF ILLINOIS, COOK COUNTY, 1ST MUNICIPAL DISTRICT, CIVIL DIVISION | PENDING |

In re Dura Automotive Systems, LLC

Case No. 19-12378

SOFA Part 6, Question 11 - Payments or transfers related to debtor counseling or
bankruptcy made within 1 year preceding commencement of this case

| NAME OF PAYEE, MAILING ADDRESS, EMAIL OR WEBSITE ADDRESS | DATE OF PAYMENT OR TRANSFER | TOTAL AMOUNT OR VALUE |
|---|---|---|
| BRADLEY ARANT BOULT CUMMINGS LLP<br>1600 DIVISION STREET<br>SUITE 700<br>NASHVILLE TN 37203<br>HTTPS://WWW.BRADLEY.COM/ | 10/16/2019 | $75,000.00 |
| JEFFERIES LLC<br>520 MADISON AVENUE<br>NEW YORK NY 10022<br>HTTPS://WWW.JEFFERIES.COM/ | 10/16/2019 | $150,000.00 |
| KIRKLAND & ELLIS LLP<br>300 NORTH LASALLE<br>CHICAGO IL 60654<br>HTTPS://WWW.KIRKLAND.COM/ | 10/9/2019 | $250,000.00 |
| KIRKLAND & ELLIS LLP<br>300 NORTH LASALLE<br>CHICAGO IL 60654<br>HTTPS://WWW.KIRKLAND.COM/ | 10/15/2019 | $1,000,000.00 |
| PORTAGE POINT PARTNERS, LLC<br>300 NORTH LASALLE<br>SUITE 1420<br>CHICAGO IL 60654<br>HTTP://PORTAGEPOINTPARTNERS.COM/ | 10/11/2019 | $200,000.00 |
| PORTAGE POINT PARTNERS, LLC<br>300 NORTH LASALLE<br>SUITE 1420<br>CHICAGO IL 60654<br>HTTP://PORTAGEPOINTPARTNERS.COM/ | 10/11/2019 | $100,000.00 |
| PRIME CLERK LLC<br>ONE GRAND CENTRAL PLACE<br>60 EAST 42ND STREET<br>SUITE 1440<br>NEW YORK NY 10165<br>HTTPS://WWW.PRIMECLERK.COM/ | 10/10/2019 | $50,000.00 |
| | TOTAL: | $1,825,000.00 |

In re Dura Automotive Systems, LLC

Case No. 19-12378

SOFA Part 13, Question 28 - Officers, Directors, Managing Members, Controlling Shareholders, etc. as of the Petition Date

| NAME | ADDRESS1 | CITY | STATE | ZIP | POSITION AND NATURE OF ANY INTEREST | PERCENTAGE OF INTEREST, IF ANY |
|---|---|---|---|---|---|---|
| DURA BUYER, LLC | 1780 POND RUN | AUBURN HILLS | MI | 48326 | PARENT COMPANY | 73% |
| JAMIE ZINSER | 1780 POND RUN | AUBURN HILLS | MI | 48326 | CHIEF COMMERCIAL OFFICER AND EXECUTIVE VICE PRESIDENT | 0% |
| JILL FRIZZLEY | 1780 POND RUN | AUBURN HILLS | MI | 48326 | INDEPENDENT MANAGER | 0% |
| KEVIN GRADY[1] | 1780 POND RUN | AUBURN HILLS | MI | 48326 | FORMER EXECUTIVE VICE PRESIDENT FOR DURA OPERATING, LLC | 0% |
| LYNN TILTON | 1780 POND RUN | AUBURN HILLS | MI | 48326 | CHIEF EXECUTIVE OFFICER | 0% |
| MARC BEILINSON | 1780 POND RUN | AUBURN HILLS | MI | 48326 | INDEPENDENT MANAGER | 0% |
| MICHAEL BECKETT | 1780 POND RUN | AUBURN HILLS | MI | 48326 | CHIEF OPERATING OFFICE AND EXECUTIVE VICE PRESIDENT | 0% |
| SANJAY SINGH | 1780 POND RUN | AUBURN HILLS | MI | 48326 | CHIEF TECHNOLOGY OFFICER AND EXECUTIVE VICE PRESIDENT | 0% |

1.  Mr. Grady was an officer as of the Petition date, however, he is no longer in that position and James Riedy is the current CFO.