# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>DURA AUTOMOTIVE SYSTEMS, LLC, *et al.*,[1]<br><br>Debtors. | Chapter 7<br><br>Case Nos. 19-12378 (KBO)<br><br>(Jointly Administered)<br><br>**Re: Docket Nos. 1240, 1247, 1263, 1264 and 1289** |

**OBJECTION OF DUS OPERATING, INC. TO QAD INC.'S
MOTION FOR RELIEF FROM AUTOMATIC STAY AND REQUEST FOR HEARING
ON FINAL NOTICE OF ASSUMED AND ASSIGNED EXECUTORY CONTRACTS
AND UNEXPIRED LEASES PURSUANT TO THE NORTH AMERICAN SALE ORDER
AND EUROPEAN SALE ORDER [DOCKET NO. 1240], OBJECTION AND
RESERVATION OF RIGHTS OF QAD INC. TO DEBTORS' FINAL NOTICE
[DOCKET NO. 1247], AND RESPONSE OF DUS OPERATING, INC. TO OBJECTION
AND RESERVATION OF RIGHTS OF QAD INC. [DOCKET NOS. 1263 AND 1264]**

DUS Operating, Inc. ("DUS"), designated assignee of Dura Buyer DNA, LLC ("Purchaser"), by its counsel, respectfully states as follows in support of this objection to *QAD Inc.'s Motion for Relief from Automatic Stay* [Docket No. 1289] (the "Lift Stay Motion") and its request for hearing on *Final Notice of Assumed and Assigned Executory Contracts and Unexpired Leases Pursuant to the North American Sale Order and European Sale Order* [Docket No. 1240] ("Final Notice"), the *Objection and Reservation of Rights of QAD Inc. to Debtors' Final Notice of Assumed and Assigned Executory Contracts and Unexpired Leases Pursuant to the North American Sale Order and European Sale Order* [Docket No. 1247] (the "Final Notice Objection"), and the *Response of DUS Operating, Inc. to Objection and Reservation of Rights of QAD Inc. to*

---

[1] The debtor entities in these chapter 11 cases, along with the last four digits of each Debtor entity's federal tax identification number, are: Dura Automotive Systems Cable Operations, LLC (7052); Dura Automotive Systems, LLC (8111); Dura Fremont L.L.C. (1252); Dura G.P. (8092); Dura Mexico Holdings, LLC (4188); Dura Operating, LLC (2304); and NAMP, LLC (3693). Dura Automotive Systems, LLC's service address is: 1780 Pond Run, Auburn Hills, Michigan 48326.

{9338716:3}
76199901.2

*Debtor's Final Notice of Assumed and Assigned Executory Contracts and Unexpired Leases Pursuant to the North American Sale Order and European Sale Order* [Docket Nos. 1263 and 1264] ("Response to Final Notice Objection"), filed in the above-captioned cases:

I. **INTRODUCTION**

1. This Lift Stay Motion appears to be an attempt to circumvent the still outstanding assumption and assignment issues stemming from the Final Notice, the Final Notice Objection, and the Response to Final Notice Objection.

2. On December 15, 2020, the Court entered the *Order Converting the Debtors' Chapter 11 Cases to Cases under Chapter 7 and Approving Certain Matters Related Thereto, Including Establishing Procedures Related to Final Fee Applications for these Chapter 11 Cases* [Docket No. 1276] (the "Conversion Order").

3. Paragraph 5 of the Conversion Order preserved the assumption and assignment issues relating to the Final Notice, the Final Notice Objection, and the Response to Final Notice Objection for resolution by the Court post-conversion. These matters remain outstanding.

4. The assumption and assignment issues raised in the Final Notice, the Final Notice Objection, and the Response to Final Notice Objection must be decided or resolved prior to the issues raised in the Lift Stay Motion (which may be rendered moot by a decision on or resolution of the issues raised by the Final Notice, the Final Notice Objection, and the Response to the Final Notice Objection).

5. If the relief requested in the Lift Stay Motion is granted and QAD is permitted to terminate the License Agreement (as defined below) prior to a determination of the issues relating to the Final Notice, DUS will suffer significant prejudice.

6. QAD is well aware that the issues relating to the Final Notice, the Final Notice Objection, and the Response to the Final Notice Objection are still outstanding and that all rights related thereto were preserved in the Conversion Order. Instead of requesting a hearing on those pending issues, QAD filed the Lift Stay Motion in order to circumvent the language in the Conversion Order.

7. Because the issues raised in the Lift Stay Motion and related to the Final Notice are essentially the same, DUS requests that the Final Notice Objection and Response to the Final Notice Objection be addressed at the hearing on January 26, 2021, or, in the alternative, that a hearing be set on the Final Notice Objection and Response to the Final Notice Objection prior to any determination of the issues raised in the Lift Stay Motion.

## II. BACKGROUND

### The License Agreement

8. QAD Inc. ("QAD") and Dura Automotive Systems, LLC ("Dura") are parties to a certain Multinational Software Product License Agreement dated February 28, 1997 (the "License Agreement"). See attached **Exhibit A**. On December 4, 2003, QAD and Dura entered into an Amendment to the License Agreement (the "Amendment"). See attached **Exhibit B**.

9. Under the License Agreement, QAD agreed to provide to Dura a non-exclusive license to use certain software programs and related products as specifically identified in the License Agreement, for use by Dura and related entities.

10. Prior to the execution of the Amendment, Article 13.6 of the License Agreement provided, as follows, regarding assignments and transfers:

> Licensed Participant may assign or transfer interest in any license granted under this Agreement to any Participant when the Participant resides in a country where QAD has offices established with written notification and payment of applicable license fees (such as those involving country transfer, increased number of users,

> change of operating system, or multiple concurrent language support) to QAD. In all other cases, Licensed Participant may not assign or transfer interest in a license granted under this Agreement without the prior written consent of QAD. Written consent shall not be unreasonably withheld. Licensed Participant shall not in any manner provide or transfer the licensed software to any third party.

See attached **Exhibit A**, Article 13.6.

11. The Amendment to the License Agreement, among other things, amended Article 13.6 of the License Agreement to permit Dura to assign or transfer its interest in the License Agreement, without prior written consent, "to any entity that is a successor to all, or substantially all, of Dura's business or any business unit or division thereof; provided, (i) such successor is not a competitor of QAD's in the software manufacturing and development business, (ii) Dura gives written notice of such assignment or transfer to QAD, and (iii) Licensed Participate complies with all applicable laws regarding such transfer." See attached **Exhibit B**, Article 13.6.

## Designation of Transferred Contracts

12. On October 23, 2019, the above-captioned debtors (the "Debtors") filed a *Motion for Entry of an Order (I) Authorizing the Debtors to Perform Obligations Related to the Stalking Horse Bid, (II) Approving Bidding Procedures with Respect to Substantially All Assets, (III) Approving Contract Assumption and Assignment Procedures, (IV) Scheduling Bid Deadlines, and Auction, and the Hearings and Objection Deadlines Related Thereto, and (V) Approving the Form and Manner of Notice Thereof* [Docket No. 154].

13. On November 19, 2019, the Court entered the *Order (I) Approving Bidding Procedures with Respect to Substantially all Assets, (II) Approving Contract Assumption and Assignment Procedures, (III) Scheduling Bid Deadlines, and Auction, and the Hearings and Objection Deadlines Related Thereto, and (IV) Approving the Form and Manner of Notice Thereof* [Docket No. 339] (the "Bidding Procedures Order").

14. Paragraphs 15 through 25 of the Bidding Procedures Order address the procedures for designating a contract as an Assigned Contract (as defined in the Bidding Procedures Order) and the procedures for Cure Notice (as defined in the Bidding Procedures Order) and objections thereto.

15. On May 8, 2020, QAD filed a *Limited Objection and Reservation of Rights of QAD Inc. to Debtors' Proposed Sales of Substantially All of the Debtors' Assets* [Docket No. 974].

16. On May 15, 2020, the Court entered an Order [Docket No. 1029] (the "Sale Order") approving the agreement for the sale of the Debtors' North American assets (the "Sale Agreement").

17. Paragraph 24 of the Sale Order provides:

Notwithstanding anything in this North American Sale Order, the Debtors may, pursuant to Section 6.13 of the North American Purchase Agreement, assume and assign a Contract to the North American Purchaser after the date of this North American Sale Order (including after the Closing) by filing a notice on the Court's docket designating such Contract a Transferred Contract with the applicable Cure Claim the Debtors are proposing and serving the same on the counterparty to such Contract. If no objections are received with respect to the proposed Cure Claim or the assumption and assignment within fourteen (14) days from the date such notice is served, the Debtors may submit an order to the Court, under certification of counsel, authorizing the assumption and assignment of such Contract to the North American Purchaser, with the applicable Cure Claim to be paid by the North American Purchaser at the time of such assignment (and upon such assumption and assignment, such Contract shall be deemed a "Transferred Contract" for purposes of this North American Sale Order).

Sale Order, ¶ 24 (emphasis added).

18. The Sale Order includes footnote 5, which provides: "For the avoidance of doubt, no executory contract or unexpired lease between a Debtor and QAD Inc. is an Initial Transferred Contract." However, as noted, the Sale Order included a mechanism for assumption and assignment of contracts post-closing, which applies to the License Agreement and all other

contracts not deemed Initial Transferred Contracts in the Sale Agreement and not previously rejected.

### Final Notice of Assumption and Assignment and Objection Thereto

19. On November 9, 2020, the Debtors filed the Final Notice.

20. The Final Notice states, in pertinent part: "consistent with Section 6.13 of the North American Purchase Agreement, the North American Purchaser has designated the executory contracts and unexpired leases set forth in Exhibit A as Transferred Contracts (as defined in the North American Purchase Agreement)."

21. The Final Notice lists the QAD License Agreement with a cure amount of $0 (net of payments already paid to QAD).

22. On November 23, 2020, QAD filed the Final Notice Objection, alleging that the correct cure amount for the assumption and assignment of the License Agreement is $3,642,068.00, plus $83.93 remaining on the pre-petition default.

23. QAD alleges in the Final Notice Objection that it objects to any assignment of the License Agreement to Purchaser or any other person on the grounds that the License Agreement is not assignable pursuant to Section 365 of the Bankruptcy Code.

24. On September 14, 2020, DUS paid $132,000.00 to QAD on account of amounts owed to QAD for pre-petition default. On January 12, 2021, DUS paid the remaining $83.93 to QAD on account of amounts owed to QAD for pre-petition default. Therefore, all required cure costs related to the License Agreement have been paid. For the reasons set forth below, neither Dura nor DUS is obligated to pay a transfer fee to complete the assumption and assignment under the terms of the License Agreement, as amended.

**Assignment is Expressly Authorized under the License Agreement**

25. Despite QAD's allegation to the contrary, the License Agreement is expressly transferable to the Purchaser without QAD consent under Article 13.6 of the License Agreement, as amended. See attached **Exhibit A** and **Exhibit B**.

26. The "long standing federal rule of law with respect to the assignability of patent license agreements provides that these agreements are personal to the licensee and not assignable unless expressly made so in the agreement." *In re: Access Beyond Technologies, Inc., n/k/a Hayes Corp (Hong Kong) Limited, et al.*, 237 B.R. 32, 45 (Bankr. D. Del. 1999). However, "parties to a license agreement are free to contract around" the default rule that bars assignment of trademark license agreements without consent. *In re Trump Entm't Resorts, Inc.*, 526 B.R. 116, 124 (Bankr. D. Del. 2015).

27. As noted, Article 13.6 of the License Agreement, as amended, provides: "Dura may assign or transfer its interest in this Agreement and any license granted under this Agreement to any entity that is a successor to all, or substantially all, of Dura's business or any business unit or division thereof, provided, (i) such successor is not a competitor of QAD's in the software manufacturing and development business, (ii) Dura gives written notice of such assignment or transfer to QAD, and (iii) Licensed Participant complies with all applicable laws regarding such transfer." See attached **Exhibit A** and **Exhibit B**.

28. Purchaser is the "successor to all, or substantially all, of Dura's business or any business unit or division thereof" and it is not a competitor of QAD. Dura gave written notice of the assignment to QAD in the Final Notice (and at various times throughout the pendency of these cases), and all applicable laws have been complied with regarding the assignment. Accordingly,

all conditions to assignment of the License Agreement without QAD's consent have been met under Article 13.6 of the License Agreement, as amended.

29. Purchaser has paid to QAD the cure claim amount as set forth in the Final Notice. Accordingly, the assumption and assignment of the License Agreement is expressly authorized under the terms of the License Agreement and under Section 365 of the Bankruptcy Code.

### The Cases are Converted to Chapter 7

30. On December 15, 2020, the Court entered the Conversion Order. Paragraph 5 of the Conversion Order preserved the issues relating to the Final Notice, the Final Notice Objection, and the Response to Final Notice Objection for resolution by the Court post-conversion. These matters remain outstanding.

31. On December 16, 2020, the United States Trustee appointed Jeoffrey L. Burtch as Chapter 7 Trustee (the "Trustee") in these cases.

## II. ARGUMENT

32. QAD is seeking relief from the automatic stay to allow QAD to terminate the License Agreement between Dura and QAD, and it alleges that it is entitled to relief from stay under both sections 362(d)(1) and 362(d)(2). DUS will suffer great prejudice if the Lift Stay Motion is granted and the License Agreement is terminated without a determination of the assumption and assignment issues pending under the Final Notice, the Final Notice Objection, and the Response to Final Notice Objection.

33. Section 362(d) of the Bankruptcy Code provides, in pertinent part:

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying or conditioning such stay –
>
> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;

    (2)    with respect to a stay of an act against property under subsection (a) of this section, if –

        (A)    the debtor does not have equity in such property; and

        (B)    such property is not necessary to an effective reorganization[.]

34. "Except for lack of adequate protection, 'cause' is not defined by § 362(d)(1). Cause is a flexible concept and courts often conduct a fact intensive, case-by-case balancing test, examining the totality of the circumstances to determine whether sufficient cause exists to lift the stay." *In re The SCO Group, Inc.,* 395 B.R. 852, 856 (Bankr. D. Del. 2007) (citing cases).

35. While a restriction on assignment may constitute cause for relief from stay in certain circumstances, in this case, the License Agreement explicitly permits assignment without QAD's consent. *See*, *In re Trump Entm't Resorts, Inc.*, 526 B.R. 116, 122 (Bankr. D. Del. 2015).

36. Article 13.6 of the License Agreement, as amended by the Amendment, provides, in pertinent part:

    a) Dura may assign or transfer its interest in this Agreement and any license granted under this Agreement to any entity that is a successor to all, or substantially all, of Dura's business or any business unit or division thereof, provided, (i) such successor is not a competitor of QAD's in the software manufacturing and development business, (ii) Dura gives written notice of such assignment or transfer to QAD, and (iii) Licensed Participant complies with all applicable laws regarding such transfer. QAD reserves the right to require the successor company to sign a new license agreement within thirty (30) days of the effective date of any assignment if, in QAD's commercially reasonable opinion, the successor company is not likely to provide QAD with materially the same revenues that QAD expected from Dura respecting the transferred interest or license(s), or if QAD's pricing methodology changes materially such that most of the provisions of the existing Agreement would need to be renegotiated. Any licenses shall be granted upon payment to QAD of i) a fifteen percent (15%) transfer fee based on the current list price of the Products, and ii) payment of any license and

> Support Services fees associated with changing the license grant (adding additional Concurrent Sessions or Products).
>
> * * *
>
> d) In all other cases, Dura may not assign or transfer its interest in this Agreement or any license granted under this Agreement without the prior written consent of QAD. QAD's written consent shall not be unreasonably withheld.

See attached **Exhibit A** and **Exhibit B**.

37. Here, the Debtors have included the License Agreement in the Final Notice, and Purchaser has paid the required cure costs. Despite QAD's position in the Final Notice Objection, Article 13.6 of the License Agreement, as amended, expressly allows for the assumption and assignment of the License Agreement, without QAD's consent, under the circumstances presented.

38. Furthermore, despite QAD's representations to the contrary, the License Agreement, as amended, does not require payment of a transfer fee as a condition to an assignment. Pursuant to Article 13.6 of the License Agreement, as amended, payment of a transfer fee is required only if, **after the assignment**, QAD makes a determination that the successor must execute a new license agreement because the successor company is "not likely to provide QAD with materially the same revenues that QAD expected from Dura respecting the **transferred** interest or license(s), or if QAD's pricing methodology changes materially such that most of the provisions of the existing Agreement would need to be renegotiated." See attached **Exhibit A** and **Exhibit B**, Article 13.6 (emphasis added).

39. Accordingly, neither the proposed assumption and assignment nor the failure to pay a transfer fee constitutes cause for relief from stay under Section 362(d)(1).

40. QAD further claims that it is entitled for relief under Section 362(d)(2) of the Bankruptcy Code because (i) the Debtors do not want or have the ability to use the QAD software; (ii) the Debtors cannot assume and assign the License Agreement without the written consent of

QAD, and (iii) QAD has given Notice of Post-Petition Breach to the Debtors and the default has not been cured.

41. For the same reasons set forth above, the License Agreement specifically provides for assignment without QAD's consent and does not require payment of a transfer fee under the present circumstances. The Debtors have taken all required steps to assume and assign the License Agreement to QAD by filing the Final Notice, and Purchaser has paid all required cure costs.

42. As noted, QAD's Final Notice Objection and DUS's Response to Final Notice Objection are still outstanding. Granting relief from the automatic stay prior to the determination of those issues would be premature and prejudicial to DUS.

43. DUS therefore requests that the Final Notice Objection and Response to the Final Notice Objection be addressed at the hearing on January 26, 2021, or, in the alternative, that a hearing be set on the Final Notice Objection and Response to the Final Notice Objection prior to any determination of the issues raised in the Lift Stay Motion.

**Reservation of Rights**

44. DUS reserves all rights to amend or supplement this Objection. Further, DUS expressly reserves all rights to submit and present evidence and further argument in any subsequent submission or at any hearing concerning the Lift Stay Motion, this Objection, the Final Notice, the Final Notice Objection, and/or the Response to the Final Objection Notice.

**WHEREFORE**, DUS respectfully requests that this Court deny the Lift Stay Motion in its entirety, or, in the alternative, adjourn the hearing on the Lift Stay Motion pending resolution of the issues raised in the Final Notice, the Final Notice Objection, and the Response to Final Notice Objection.

| | |
|---|---|
| Dated: January 15, 2021<br>Wilmington, Delaware | **POLSINELLI PC**<br><br>/s/ *Shanti M. Katona*<br>Christopher A. Ward (Del. Bar No. 3877)<br>Shanti M. Katona (Del. Bar No. 5352)<br>222 Delaware Avenue, Suite 1191<br>Wilmington, Delaware 19801<br>Telephone:  (302) 252-0920<br>Facsimile:   (302) 252-0921<br>cward@polsinelli.com<br>skatona@polsinelli.com<br><br>– and –<br><br>**MCDONALD HOPKINS PLC**<br>Stephen M. Gross (*pro hac vice* pending)<br>Ashley J. Jericho (*pro hac vice* pending)<br>39533 Woodward Avenue, Suite 318<br>West Bloomfield, Michigan 48304<br>Telephone:  (248) 646-5070<br>Facsimile:   (248) 646-5075<br>sgross@mcdonaldhopkins.com<br>ajericho@mcdonaldhopkins.com<br><br>*Counsel to DUS* |