# EXHIBIT A

# MULTINATIONAL

## SOFTWARE PRODUCT LICENSE AGREEMENT

### BETWEEN

#### QAD Inc.

#### AND

#### Dura Automotive Systems, Inc.

## Multinational Software Product License Agreement

### Table of Contents

**Article 1**        **Definitions**

**Article 2**        **Licenses**
2.1        Grant
2.2        QAD Obligations
2.3        Assignment
2.4        Suitability

**Article 3**        **Prices, Discounts, Payment Terms and Delivery Terms**
3.1        License Fee
3.2        License Fee Exclusions
3.3        Payment
3.4        Late Charge
3.5        Site Location

**Article 4**        **Transfer of Programs on Hardware System - Upgrade of License**
4.1        Temporary Transfer
4.2        Change in Operating System

**Article 5**        **Form of Purchase Order**
5.1        Purchase Orders
5.2        Preprinted Purchase Order Terms and Conditions
5.3        Valid Purchase Orders
5.4        Current Pricing

**Article 6**        **Limited Warranty**
6.1        Warranty
6.2        Warranty Term
6.3        Warranty Limitations

**Article 7**        **Proprietary Information**
7.1        Confidential Information
7.2        Confidentiality Term
7.3        Trade Secret
7.4        Access to Computer Systems

**Article 8**        **Indemnification**
8.1        Patent Indemnification
8.2        Patent Infringement Remedy
8.3        Exclusions
8.4        Entire Liability
8.5        Consequential Damages
8.6        License Fee Limitation
8.7        Personal Injury

*DR*

**Article 9**      **Modification Rights**
    9.1      Modifications
    9.2      Ownership of Modifications
    9.3      License Grant for Modifications
    9.4      Copyright Notices

**Article 10**      **Access to Source Code**
    10.1      Deposit of Escrow Materials
    10.2      Escrow Agent Termination

**Article 11**      **Software Support**
    11.1      Purchasing Support
    11.2      Software Support Services Terms

**Article 12**      **Term and Termination**
    12.1      Term
    12.1      Termination

**Article 13**      **Miscellaneous**
    13.1      Law Applicable to this Agreement
    13.2      Advertising Publications
    13.3      Entire Agreement
    13.4      Legal Construction
    13.5      Waiver
    13.6      Assignments and Transfers
    13.7      Notices
    13.8      Force Majeure
    13.9      Survival
    13.10      International Transactions
    13.11      Compliance with Laws
    13.12      Participant Guarantor

*Multinational Software Product License Agreement*

**Exhibit I**            **Product Pricing Policy**

**Exhibit II**           **Software Support Service Terms**
**Section 1**            **General**
    1.1    Purchasing Software Support Services
    1.2    Software Support Services for all Modules
**Section 2**            **Direct Support Services**
    2.1    QAD Obligations
**Section 3**            **Direct Support Service Fees**
    3.1    Renewal Basis
    3.2    Annual Fee
    3.3    Quarterly Fee
**Section 4**            **Indirect Support Services**
    4.1    Support by QAD Partners
**Section 5**            **Payments**
    5.1    Invoicing
    5.2    Payment
    5.3    Renewing Support Services
**Section 6**            **Limited Warranty**
    6.1    Professionalism
    6.2    Warranty
    6.3    Term
    6.4    Support Services Remedy
    6.5    Program Remedy
    6.6    Warranty Limitations
    6.7    Express and Implied Warranties
    6.8    Consequential Damages
    6.9    Damages Limitation
    6.10   Personal Injury Liability
**Section 7**            **Obligations of Licensed Participant**
    7.1    Primary Contact
    7.2    Request or Updates and Releases
    7.3    Cooperation of Licensed Participant
    7.4    Telephone Assistance
    7.5    Modified Products

**Section 8**            **Term and Termination**
    8.1    Term
    8.2    Automatic Renewal
    8.3    Past Due Payments
    8.4    Effective Date of Termination

**Attachment A**         **MFG/PRO - Progress Update Request**

**Exhibit III**          **Escrow Agent Description**

**Exhibit IV**           **Attachment to Software Product License Agreement**

**Exhibit V**            **Site User Amendment**

An Agreement made effective on the 28th day of February , 1997

between

**Dura Automotive Systems, Inc.**, having its principal place of business at 2791 Research Drive, Rochester Hills, MI, 48309, (hereinafter referred to as "Dura")

and

**QAD Inc.** and its subsidiaries as appropriate, having its principal place of business at Carpinteria, California, United States (hereinafter collectively referred to as "QAD").

**WHEREAS** QAD distributes the MFG/PRO® programs owned and/or licensed by QAD and the PROGRESS® programs owned and/or licensed by Progress Software Corporation and owns and distributes certain other proprietary computer software products;

**WHEREAS** the MFG/PRO® software products referred to herein consist of a set of fully integrated manufacturing, distribution and financial management programs;

**WHEREAS** the PROGRESS® software products referred to herein consist of a fourth-generation language and relational database management system;

**WHEREAS** QAD or its nominated agents have available expertise in the field of software development and are prepared to execute projects related thereto;

**WHEREAS** Dura,  and QAD want to establish the terms and conditions applicable to Purchase Orders issued by Licensed Participants, (as defined hereinafter) for the use of the above mentioned software products and the execution and performance of the projects as referred to above;

Now therefore it has been agreed as follows:

**Article 1  Definitions**

1.1     Agent shall mean any distributor, system integrator, consulting firm or other third party operating under contract with QAD to provide local support services to Licensed Participants.

1.2     This Agreement shall mean this document and all exhibits signed or initialed by the parties and which are attached hereto.

1.3     Hardware System shall mean any CPU/Operating System configuration on which QAD officially supports or shall officially support the Products during the Term of this Agreement and on which the Products are available in a Production Version.  (The current Hardware is specified in "Progress Machine List" which is available from QAD upon request.)

1.4     Licensed Participant shall mean any Participant to which a license for any Program and/or Product has been granted on the basis of the terms and conditions of this Agreement.

1.5     Participant shall mean Dura Automotive Systems, Inc.,. Companies and firms affiliated or associated with Dura in which Dura maintains at least a 50% ownership interest are eligible Licensed Participants. A list of companies and firms shall be provided from time to time.

1.6     Product or Products shall mean the present and future standard proprietary computer software programs of QAD and/or Progress Software Corporation, as well as the related documentation, instructions, user guides and subsequent Updates furnished by QAD pursuant to this Agreement, whether in printed or machine readable form. A listing of the Products currently available from QAD is included in Exhibit I in the MFG/PRO price list. A listing of the Products currently available from Progress Software Corporation distributed by QAD is available upon request. For the purpose of this Agreement, the term Product(s) shall only include items available from QAD in Production Version.

1.7     Production Version shall mean the generally commercially available versions of the specified items.

1.8     Program or Programs shall mean the present and future standard proprietary computer software programs of QAD, as well as the related documentation, instructions, user guides and subsequent Updates furnished by QAD pursuant to this Agreement, whether in printed or machine readable form. A listing of the Programs currently available from QAD is included in Exhibit I in the MFG/PRO price list. For the purpose of this Agreement, the term Program(s) shall only include those software programs available from QAD in Production Version.

1.9     Purchase Order shall mean a purchase order based on the terms and conditions of this Agreement for receiving a license for any Products which may be placed by Participant on QAD during the period of this Agreement or any continuation thereof.

1.10    QAD shall mean QAD Inc. of Carpinteria, California, United States or its subsidiaries as appropriate.

1.11    Release shall mean a Production Version of software which primarily contains new functionality.

1.12    Site shall mean the physical location of any Licensed Participant, at which a Hardware System is located and at which the Products are to be installed, the location or building of which is specified in each Purchase Order and Site Attachment.

1.13    Software Product Description shall mean QAD standard user manuals and Progress Software Corporation's standard user manuals.

1.14    Update shall mean a Production Version of software which primarily contains fixes without containing significant new functionality.

1.15    Upgrade shall mean a change in the license grant for which Licensed Participant shall pay additional fees to QAD or its authorized representative as determined by the then current price policy in effect for the Licensed Participant such as those involving country transfer, increased number of users, change of third party's products license, or multiple concurrent language support.

**Article 2  Licenses**

2.1    <u>Grant</u>.  Upon issuance of a Purchase Order by any Participant to QAD, QAD shall, in consideration of the license fee to be paid, grant to such Participant a non-exclusive, non-transferable license, for perpetual use, to use the Products on one (1) Hardware System at the Site designated in the Purchase Order in accordance with the terms and conditions established in this Agreement.

 <u>Ownership Rights</u>.  Licensed Participants shall not acquire any rights of ownership in the Products.  Licensed Participants acquire only the right to use the Products subject to the terms of this Agreement.

 <u>Backup Copies</u>.  Licensed Participant may copy the Products for safekeeping (archival) or backup purposes, provided that all such copies of Products are subject to the provisions of this Agreement, and also provided that each copy shall include in readable format any and all confidential, proprietary and copyright notices or markings contained in the original.

2.2    <u>QAD Obligations</u>.  Licensing according to Section 2.1 of this Article includes, without limitation, that QAD, subject to the terms and conditions established in this Agreement, shall:

 a.   For each license granted hereunder, deliver to the Licensed Participant the pertinent Products in latest Release on magnetic medium in machine readable object code form;

 b.   For each license granted hereunder, make available to the Licensed Participant one reasonably complete set of documentation for the use of the licensed Products;

2.3    <u>Assignment</u>.  The rights granted herein are restricted for use solely by Licensed Participants and may not be assigned, transferred, or sublicensed, except as noted in Article 13.6..  Each Licensed Participant shall be authorized to make use of the Products in the form in which they are provided to Licensed Participant (machine readable object code) solely for Licensed Participant's own internal data processing operations.  Licensed Participant agrees not to use the Products for timesharing, rental or service bureau.

2.4    <u>Suitability</u>.  Participant alone is responsible for determining which software best suits Participant's needs, for installing and operating the software and for the results obtained.

 Accordingly, each Participant should determine its needs, evaluate the software's capabilities and insist upon a demonstration of the software before making the final decision.

 QAD makes no representation that the software conforms to or satisfies any federal, state or local laws.  Participant is encouraged to engage professional assistance from attorneys and accountants to evaluate the suitability of the software for Participant's use.

 QAD also makes no claims that the software is suitable for Participant's application.

## Article 3  Prices, Discounts, Payment Terms and Delivery Terms

3.1    <u>License Fee</u>.  In consideration for the license and rights herein granted by QAD to Licensed Participant and the other undertakings of QAD contained herein, Licensed Participant agrees to pay to QAD the license fees as defined in Exhibit V.

3.2    <u>License Fee Exclusions</u>.  The license and support fees shall not be construed to include transportation, insurance, and local, state or federal sales, use, excise or other similar governmental taxes or duties and Licensed Participant agrees that any such taxes and duties shall be assumed and paid for by Licensed Participant.  License fees are subject to change at the discretion of QAD unless otherwise noted. The license fee shall not include installation of the Products, consulting, or training services.

3.3    <u>Payment</u>.  Payment of monies by Licensed Participant to QAD shall be in accordance with terms specified in Licensed Participant's Purchase Orders.  The failure of Licensed Participant to pay when payment is due, or the subsequent dishonoring of any check or draft by Licensed Participant, shall constitute a material breach hereunder.

3.4    <u>Late Charge</u>.  Any amounts due QAD hereunder which are not paid within thirty (30) days after they are due under this Agreement shall incur interest at the rate of three percent (3%) over the prime rate of interest on corporate loans in effect in the U.S. at the time the amounts are first due per annum. The interest shall be calculated from the date payment is originally due hereunder until the date payment is made in full. Licensed Participant shall also pay such interest, with all payments first being applied to interest and then to principal.

3.4    <u>Site Location</u>.  Delivery of the Products shall be to the Site as specified by the Participant in its Purchase Order.

## Article 4  Transfer of Programs on Hardware System - Upgrade of License

4.1    <u>Temporary Transfer</u>.  Licensed Participant shall have the right from time to time to transfer use of the Products from the Hardware System specified on Licensed Participant's Purchase Order: (i) on a temporary basis to another Hardware System provided that, if such use continues for more than 60 days, Licensed Participant shall notify QAD in writing; and (ii) to another Hardware System as a replacement for the original equipment noted in any Site Attachment form (Exhibit IV), provided that Licensed Participant notifies QAD of the transfer in writing.

4.2    <u>Change in Operating System</u>.  Products may be transferred by Licensed Participant to a different operating system provided Licensed Participant pays QAD any applicable media, documentation, and transfer fees.. The assistance of QAD to perform the transfer shall be available to Licensed Participant by paying QAD the costs for time and material.  QAD shall submit to Licensed Participant a quotation for these transfer costs. It is explicitly understood that the availability of QAD assistance to perform the transfer on a time and material basis is  applicable only if the Products to be transferred are covered by a Software Support Agreement with QAD at the time of the transfer.

## Article 5  Form of Purchase Order

5.1     <u>Purchase Orders</u>.  Any Purchase Order from Participant shall include:

    a.    The incorporation of this Agreement by reference

    b.    Specification of the Products and related documentation to be delivered, including the license fee due

    c.    Description of the Hardware System type (including the operating system) on which the Products will initially run

    d.    Specification of the media type for each system for each site

    e.    For each license, the date on which the Products have to be delivered (minimum lead time for delivery is three weeks from Purchase Order acceptance)

    f.    Specification of the Site location and full statutory name and address of the pertinent Licensed Participant

    g.    For each License, the applicable deposit check must accompany the Purchase Order

    h.    Any additional terms and conditions agreed upon by the respective parties thereto.

5.2     <u>Preprinted Purchase Order Terms and Conditions</u>.  Notwithstanding any provisions to the contrary that might be set forth in a Purchase Order, the pre-printed terms and conditions on the face and reverse side of a Purchase Order shall not apply to or become part of the Purchase Order.

5.3     <u>Valid Purchase Orders</u>.  Participant's Purchase Order shall, in order to be valid, be signed by Participant and either signed or confirmed in writing by QAD within 5 business days from receipt.

5.4     <u>Current Pricing</u>.  Pricing for Products for a given Site shall be based on the date Licensed Participant signs the Site license attachment (Exhibit IV).

## Article 6  Limited Warranty

6.1     <u>Warranty</u>.  QAD warrants that the Programs will be substantially free from material program errors and defects in material and workmanship and that they will function substantially in accordance with the Software Product Description.

6.2     <u>Warranty Term</u>.  QAD shall, during a period of ninety (90) days from date of delivery of the Programs, under above warranty, endeavor to remedy without delay and at its cost by repair or replacement, any material program errors or defects as aforesaid, of which Licensed Participant has notified QAD in writing.  A warranty plus Software Support Agreement is available at installation date.  A sample of a Software Support Agreement is included as Exhibit II.

If the material errors or defects cannot be remedied by QAD within a period of thirty (30) days from the date they are reported to QAD, Licensed Participant shall be entitled to an equitable extension of the warranty period. After installation of a remedy for such a defect, the Licensed Participant shall have at least a thirty (30) day extension of the warranty to agree it has been remedied. Said extension shall be mutually agreed upon in writing.

If, after reasonable efforts to remedy the same material defect, by correction or replacement, QAD is unable to make the Programs perform as warranted, the Licensed Participant may terminate the license by removing the licensed Programs, returning them to QAD and receiving a refund of the license fees paid for these Programs.

6.3    <u>Warranty Limitations</u>.  There are limits to the limited warranty described above:

a.    Licensed Participant must submit a detailed written description of the software malfunction within the warranty period.

b.    Licensed Participant must install all software Releases and software fixes provided by QAD.

c.    Licensed Participant must install the latest software Updates as furnished by QAD.

d.    If Licensed Participant modifies the software in any way, then the warranty applies only to the unmodified software as distributed by QAD.

e.    Licensed Participant must install the current revision or higher of all prerequisite software noted in any Site Attachment (Exhibit IV). The prerequisite software may be updated periodically.

f.    A Licensed Participant shall have the right to use the Products on plug compatible versions of the Hardware System; however, it is understood that the warranties and technical support covenants assumed by QAD in this Agreement shall be limited to the version of the Product for use on the Hardware System.

THE LIMITED WARRANTY EXPRESSED IN THIS AGREEMENT IS IN LIEU OF ALL OTHER WARRANTIES, EXPRESS OR IMPLIED. TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, NO OTHER WARRANTY IS MADE HEREUNDER BY QAD AND ALL OTHER CONDITIONS, WARRANTIES, AND REPRESENTATIONS, EITHER EXPRESS OR IMPLIED, ARE EXCLUDED, INCLUDING, BUT NOT LIMITED TO, CONDITIONS OR WARRANTIES RELATING TO THE WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE.

## Article 7  Proprietary Information

7.1    <u>Confidential Information</u>.  It is recognized that each party under this Agreement as well as the Licensed Participants may make available to the other confidential information related to the business of such party.

Confidential information may include in any form, but is not limited to, processes, formulae, specifications, programs, instructions, source code for operating system-dependent routines, technical know-how, methods and procedures of operation, benchmark test results, business or technical plans and proposals.

It is agreed that confidential information made available by one party to another party under this Agreement shall: (a) be kept confidential by the receiving party; (b) be treated by the latter in the same way as it treats confidential information generated by itself; (c) not be used by the receiving party otherwise than in connection with the implementation of this Agreement; and (d) be divulged to such of the receiving party's personnel only as have a need to know and have undertaken to keep confidential information secret.

Each party agrees to use all reasonable steps to ensure that the other party's confidential information is not disclosed by its employees or agents in violation of the provisions of this Article.

7.2     <u>Confidentiality Term</u>.  The commitments pursuant to Subclause 1 of this Article shall continue during the Term of this Agreement and survive the termination of this Agreement for ten (10) years.

These commitments shall cease if, but only to the extent that, confidential information:

- Is or becomes generally known or available to the public at large through no act or omission of the receiving party; or

- Can be demonstrated to be available lawfully to the receiving party prior to the disclosure or has thereafter been furnished to the receiving party without restrictions as to disclosure or use; or

- Can be demonstrated, subsequent to disclosure, to be independently developed by the receiving party without use of any confidential information received from the disclosing party.

- Is disclosed by operation of law or court order, provided that the party whose information is to be disclosed is given an opportunity to prevent such disclosure and, if disclosed, the confidential information will only be used for the specified legal purposes.

It is understood that each party is entitled to disclose confidential information to any of its associated companies on condition that such associated companies shall be bound by the same commitments undertaken under this Article.

7.3     <u>Trade Secret</u>.  QAD considers the licensed Products covered by this Agreement to be a trade secret.  QAD does not disclose any information to QAD competitors or potential competitors.  Participant cannot use design, code or documentation gained by access to the software product to develop a competing software product.  If the Participant does so, QAD may sue Participant for development costs and damages resulting from the disclosure of QAD trade secrets.

7.4     <u>Access to Computer Systems</u>.  Periodically, with reasonable notice, during normal business hours, QAD may require Participant to furnish information relating to Participant's efforts to protect QAD's trade secrets. Participant agrees to allow QAD access to Participant's computer systems to verify appropriate protection of such trade secrets and usage of the licensed Products.

## Article 8  Indemnification

8.1     <u>Patent Indemnification</u>.  QAD shall defend, at its expense, any action brought against Licensed Participant to the extent that it is based on a claim that the use of the licensed Programs when used within the scope of this Agreement infringes any patent, trade secret or copyright. QAD shall indemnify Licensed Participant from any costs, damages and fees finally awarded against Licensed Participant which are attributable to such claim, provided that Licensed Participant notifies QAD promptly in writing of the claim. Licensed Participant shall permit QAD, at its sole discretion, to defend, compromise or settle the claim and provide all available information, assistance and authority to enable QAD to do so, provided QAD reimburses Licensed Participant for such activity. Licensed Participant shall have no authority to settle any claim on behalf of QAD.

8.2     <u>Patent Infringement Remedy</u>.  Should the licensed Programs become, or in the opinion of QAD, be likely to become the subject of a claim of infringement of a patent, trade secret or copyright, QAD may, at its sole option, (i) procure for Licensed Participant, at no cost to Licensed Participant, the right to continue to use the licensed Programs, or (ii) replace or modify the licensed Programs and/or documentation, at no cost to Licensed Participant, to make such non-infringing, provided that the same function is performed by the replacement or modified licensed Programs and/or documentation, or (iii) if the right to continue to use cannot reasonably be procured or the licensed Programs cannot reasonably be replaced or modified, terminate the license to use such licensed Programs and/or documentation, remove the licensed Programs, and refund a portion of the license fees paid for the licensed Programs for the specific Site.  Such portion shall be determined based on a five (5) year straight-line depreciation of the license fees paid for the licensed Programs from the date of the license grant for the Site.

8.3     <u>Exclusions</u>.  QAD shall have no liability for any claim of copyright, trade secret or patent infringement based on the (i) use of other than the then latest Release of the licensed Programs from QAD, if such infringement could have been avoided by the use of the latest Release of the licensed Programs and such latest version had been made available to Licensed Participant, or (ii) use or combination of the licensed Programs with software, hardware or other materials not provided by QAD.

8.4     <u>Entire Liability</u>.  THIS ARTICLE STATES THE ENTIRE LIABILITY OF QAD WITH RESPECT TO INFRINGEMENT OF COPYRIGHTS, TRADE SECRETS, PATENTS AND OTHER INTELLECTUAL PROPERTY RIGHTS BY THE LICENSED PRODUCTS, DOCUMENTATION OR ANY PARTS THEREOF AND QAD SHALL HAVE NO ADDITIONAL LIABILITY WITH RESPECT TO ANY ALLEGED OR PROVEN INFRINGEMENT.

8.5     <u>Consequential Damages</u>.  TO THE MAXIMUM EXTENT PERMITTED BY THE
APPLICABLE LAW, IN NO EVENT SHALL QAD BE LIABLE FOR ANY LOST
REVENUES OR PROFITS OR OTHER SPECIAL, INDIRECT, CONSEQUENTIAL
OR PUNITIVE DAMAGES HOWEVER CAUSED AND REGARDLESS OF
THEORY OF LIABILITY, EVEN IF QAD HAS BEEN ADVISED OF THE
POSSIBILITY OF SUCH DAMAGES.

8.6     <u>License Fee Limitation</u>.  Except for the indemnification provisions of Article 8, the
maximum liability of QAD for damages shall be limited to the license fees paid by
Licensed Participant under this Agreement for the particular licensed Products which
caused the damages.

8.7     <u>Personal Injury</u>.  Nothing in this Agreement shall exclude or restrict the liability of QAD
for death or personal injury caused by the negligence of QAD.


## Article 9  Modification Rights

9.1     <u>Modifications</u>.  QAD provides some portions of Products in source code form and other
portions in object code form.  Participant may modify any source code.  Participant may
not modify any portion of the object code.  Participant may not use QAD Products
without object code modules.  The object code contains license number, date of license
and other license information.  This information is placed in the object code portions to
prevent unauthorized and unlicensed distributions of the Products.  Participant may not
subvert or change any of this information.

9.2     <u>Ownership of Modifications</u>.  The parties hereby agree that the ownership of all
intellectual property rights embodied in, or by, any modification to the Programs created
by, or for, Participant under this Agreement, shall vest solely in QAD.  Participant
hereby assigns all right, title and interest in all such modifications to the Products to
QAD.

9.3     <u>License Grant for Modifications</u>.  QAD hereby grants Participant a non-exclusive, non-
transferable, royalty free license to use any modifications of the licensed Programs
created by, or for, Participant under this Agreement on the Hardware System at any Site
of a Licensed Participant in accord with the terms and conditions of this Agreement.
However, a Participant may only use the modifications to a given module of the
Programs if that Participant has a then current license from QAD for that module of the
Programs for the given Hardware System at the Site.

9.4     <u>Copyright Notices</u>.  Participant shall not remove any copyright or proprietary rights
notice or identification which indicates QAD ownership from any part of the licensed
Products, it being expressly understood and agreed that the existence of such copyright
notice should not be construed as an admission or presumption that publication of the
licensed Products has occurred.

## Article 10  Access to Source Code

10.1   Deposit of Escrow Materials.  QAD undertakes to deposit a copy of the latest version of the source code of the Programs (including modifications thereto and new Releases thereof) and all documentation required for the maintenance and modification of the source code with the Escrow Agent.

10.2   Escrow Agent Termination.  If the Escrow Agent as identified in Exhibit III or QAD shall terminate the software deposit agreement for any reason, QAD hereby agrees to appoint another Escrow Agent within a reasonable period of time.

## Article 11  Software Support

11.1   Purchasing Support.  In the event that Licensed Participant chooses to procure support for the licensed Products, Licensed Participant agrees to purchase MFG/PRO® and PROGRESS® software support from QAD or a QAD Agent.

11.2   Software Support Services Terms.  Software Support Services by QAD shall be provided according to the terms noted in Exhibit II-entitled - Software Support Service Terms.

## Article 12  Term and Termination

12.1   Term.  This Agreement shall remain in effect unless terminated earlier by one of the parties.  Either party may terminate this Agreement at any time upon written notice to the other party.  Any licenses granted under this Agreement prior to termination of this Agreement shall be unaffected by the termination of this Agreement.

12.2   Termination.  A license granted under this Agreement shall remain in effect for its full term unless terminated earlier by one of the following actions:

   (a)   If either party fails to perform in accordance with any of the provisions of the license granted under this Agreement and has not remedied such failure within a thirty (30) day period after having been notified by the other party identifying the failure, unless extended by mutual agreement of both parties, or

   (b)   Licensed Participant fails to pay QAD monies owed and has not remedied such failure within a thirty (30) day period after having been notified in writing, or

   (c)   If either party to this Agreement is adjudicated as bankrupt under the United States Bankruptcy Code, as now constituted or hereafter amended, or any other applicable federal or state bankruptcy law or other similar law, or upon assignment of a receiver, liquidator, assignee, trustee, custodian (or similar official) of either party to this Agreement or any substantial part of their properties, or ordering the winding-up of or liquidation of the affairs of either of the parties to this Agreement, the other party shall be entitled at its own discretion to terminate any license granted under this Agreement forthwith by written notification to the party concerned.

   (d)   Licensed Participant may terminate a license granted under this Agreement upon thirty (30) days notice to QAD.  However, Licensed Participant shall still be bound by the non-disclosure portions of the license.

Termination, either voluntary or involuntary, shall not entitle Licensed Participant to any refund for license fees paid. If QAD terminates Licensed Participant's license, Licensed Participant may not continue to use or possess the licensed Products. Licensed Participant must notify QAD of any efforts to destroy the original and all copies of the licensed software within thirty (30) days of termination.

## Article 13  Miscellaneous

13.1  Law applicable to this Agreement. This Agreement shall be subject to and construed in conformity with the laws of the State of California, United States of America. Any dispute arising between the parties shall be settled by arbitration under the rules of the American Arbitration Association in Los Angeles, California, USA before a single arbitrator selected under those rules. The arbitral language shall be English. The arbitral award may be enforced in any court having jurisdiction thereof.

13.2  Advertising Publications. QAD shall not in any way use or apply the Participant's logo, emblem, or workmark in advertisements, sales promotion, publicity, or publications or advertise or publish that QAD does business with Participant, except with prior written consent. It is understood that QAD is allowed to incorporate Participant's name in QAD's customer reference list and to issue a press release that the parties have entered this Agreement.

13.3  Entire Agreement. This Agreement, including Exhibits attached hereto, as incorporated herein by reference, contains the entire agreement between the parties hereto with respect to the subject matter hereof and shall supersede any and all prior communications, representations, agreements, and/or undertakings, either verbal or written, between the parties hereto in respect of the said subject matter. Any amendment or other modification of any of the terms and provisions hereof must be in writing and signed by duly authorized representatives of the parties hereto.

13.4  Legal Construction. To the extent that any law, statute, treaty, or regulation by its terms as determined by a court, tribunal, or other government authority of competent jurisdiction, is in conflict with this Agreement, the conflicting terms of this Agreement shall be superseded only to the extent necessary by the terms required by such law, statute, treaty, or regulation. If any portion of this Agreement shall be otherwise unlawful, void, or for any reason unenforceable, then that provision shall be enforced to the maximum extent permissible so as to effect the intent of the parties. In either case, the remainder of this Agreement shall continue in full force and effect.

13.5  Waiver. The waiver by any party of a breach or default by the other party of any provision of this Agreement shall not be construed as a waiver by such party of any succeeding breach or default by the other party of the same or another provision.

13.6     <u>Assignments and Transfers</u>.  Licensed Participant may assign or transfer interest in any license granted under this Agreement to any Participant when the Participant resides in a country where QAD has offices established with written notification and payment of applicable license fees (such as those involving country transfer, increased number of users, change of operating system, or multiple concurrent language support) to QAD.  In all other cases, Licensed Participant may not assign or transfer interest in a license granted under this Agreement without the prior written consent of QAD.  Written consent shall not be unreasonably withheld.  Licensed Participant shall not in any manner provide or transfer the licensed software to any third party.

In the event of divestiture of a Licensed Participant by Participant, Participant will have the right to assign or transfer the Licensed Participant's license under this Agreement to another Participant, under the terms described above, or alternatively, to permit the Licensed Participant being divested to retain and continue to use the licensed Products as set forth below.  In this latter case, the Participant must terminate the license to the Products retained by the divested entity.

If the Licensed Participant being divested wishes to retain and continue to use the Products licensed to it under this Agreement, it may do so under the terms described above with the written consent of QAD, which shall not be unreasonably withheld.  The divested entity shall enter into a similar separate license agreement with QAD within sixty (60) days after the effective date of divestiture.  The license shall be granted at no additional cost, except for a transfer fee of five percent (5%) of the value paid for the licensed Products and any upgrade charges with respect to the version of the licensed Products such as those involving country transfer, increased number of users, change of operating system, and multiple concurrent language support.

13.7     <u>Notices</u>.  Unless otherwise specified in this Agreement, any notices required or permitted to be given pursuant to this Agreement shall be in writing, addressed as set forth below, and shall be deemed to have been given when received at the respective corporate head-quarters.  These written communications shall be in such a manner that proof of delivery can be verified.

<u>If to QAD Inc.</u>:
QAD Inc.
6450 Via Real
Carpinteria, CA  93013
USA
Attention: Sales Administration
cc:  General Counsel,
        Americas Region

<u>If to any Participant</u>:
Dura Automotive Systems, Inc.
2791 Research Drive
Rochester Hills, MI  48309

13.8    <u>Force Majeure</u>.  Neither party shall be liable for delays or nonperformance of this Agreement occasioned by acts of God, public enemy, civil disobedience, governmental regulations or decrees, labor disputes, unavailability of materials, equipment failure, strikes, fires, accidents or any other causes, whether or not of the kind enumerated herein, which are beyond such party's reasonable control.  If performance by either party to this Agreement is delayed due to any of the foregoing causes, such delay shall not be deemed a breach under this Agreement and this Agreement shall remain in full force and effect. If it shall appear that performance by either party to this Agreement will be delayed due to any of the foregoing causes, such party shall promptly notify the other party in writing stating the cause of the delay and its expected duration and shall use commercially reasonable efforts to carry out such performance as soon as reasonably possible.

13.9    <u>Survival</u>.  The provisions of Article 7 entitled "Proprietary Information," Article 8 entitled "Indemnification," and Article 3.2 entitled "License Fee Exclusions" shall survive the expiration or termination of this Agreement, as well as the termination or expiration of any license granted under this Agreement.

13.10    <u>International Transactions</u>.  The original of this Agreement has been written in the English language.  Participant hereby waives any right Participant may have under the laws of the country in which the Products are licensed to have this Agreement written in the native language.  The parties hereby acknowledge and agree that the U.N. Convention on Contracts for the International Sale of Goods shall not apply to this Agreement.

13.11    <u>Compliance with Laws</u>.  Participant shall be responsible for complying with all applicable governmental regulations of the United States or any foreign countries with respect to the use of the Products by Participant outside of the country in which QAD delivers the Products to Participant, including, but not limited to import and export restrictions, obtaining any necessary consents and licenses and registering or filing any documents.  Participant shall defend, indemnify and hold QAD harmless from and against any and all claims, judgments, costs, awards, expenses (including reasonable attorneys' fees) and liability of any kind arising out of the non-compliance with applicable governmental regulations, statute, decree or other obligation with respect to the use or transfer of the Products by Participant outside of the country in which QAD delivered the Products to Participant.

13.12    <u>Participant Guarantor</u>.  Participant hereby guarantees the performance of each Licensed Participant hereunder including the payment of any fees when due.

*Multinational Software Product License Agreement*

The undersigned hereby acknowledge that they have read and that they fully understand the terms of the above Agreement, the terms and conditions of which are hereby incorporated and acknowledged by this reference.

The undersigned hereby agree that by signing this document, they become parties to said Agreement and agree to be bound by all terms, conditions and obligations contained therein.

**QAD Inc.**                                                     **Dura Automotive Systems, Inc.**

Authorized Signature:                                      Authorized Signature:

Name:                                                                 Name:

CHARLIE EGGERDING                               John J Knappenberger

Title:                                                                  Title:

VP AUTOMOTIVE                                       Vice President

Date:                                                                  Date:

3·5·97                                                            2·28·97

OK WJ 3/5/97

*Exhibits: Multinational Software Product License Agreement*

# EXHIBITS

I.      Product Pricing Policy

II.     Software Support Service Terms

III.    Escrow Agent Description

IV.     Software Product License Attachment Form

V.      Site User Amendment

# EXHIBIT I

# PRODUCT PRICING POLICY

## Modifications

Nothing in this Agreement shall obligate Licensed Participant to provide QAD with a copy of the modifications unless the parties agree upon a reasonable fee. In the event Licensed Participant does provide QAD with a copy of the modifications, QAD agrees not to use them for other than Licensed Participant's benefit without Licensed Participant's written consent.

## Pricing Policy

## Period

The following pricing policy shall remain in effect for Participant for a term commencing on the effective date of this Agreement and ending February 28, 1999 (the "Period").

## Initial Order

Participant agrees to issue a Purchase Order by February 28, 1997 for a 300 user license with license and support fees worth approximately US$950,000 and take delivery of the entire Initial Order by February 28, 1997. The Hannibal, MO Site, as the hardware configuration exists at the time this Agreement is first signed shall be considered one Site for the Initial Order.

## Discounts

During the Period, and in consideration of the Initial Order noted above, QAD agrees to offer a twenty-seven percent (27%) discount from the then applicable Price List for the Programs in effect at the time a Purchase Order is received. QAD also agrees, during the Period, to offer a ten percent (10%) discount from the then applicable Price List for the Progress products in effect at the time a Purchase Order is received.

In the event that Participant does not meet the criteria for the Initial Order, the above discounts may not apply.

The discounts specified herein shall apply only on Products licensed directly from QAD. Products licensed through a distributor, business partner or other source do not qualify for the discounts. Participant agrees to license all Products from QAD when available.

*Exhibit I:  Multinational Software Product License Agreement*

**The price list shown on this page shall be replaced with the pricing shown in Exhibit V.**

| MFG/PRO | | | | | | US Dollars | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Effective April 1, 1995 FINAL | | | | | | | | | | Source |
| Number of Users--> | 16 user | 32 user | 48 user | 64 user | 96 user | 128 user | 192 user | 256 user | 512 user | Code |
| Accounts Payable | 3900 | 5400 | 7300 | 9000 | 12200 | 15000 | 20200 | 24900 | 41300 | 3900 |
| Accounts Receivable | 3900 | 5400 | 7300 | 9000 | 12200 | 15000 | 20200 | 24900 | 41300 | 3900 |
| Capacity Rqmts. Planning | 3900 | 5400 | 7300 | 9000 | | 15000 | 20200 | 24900 | 41300 | 3900 |
| Cash Management | 2100 | 2400 | 2700 | 2900 | 3200 | 3400 | 3800 | 4100 | 5000 | 2100 |
| Client-Server | 9700 | 13600 | 18300 | 22600 | 30400 | 37500 | 50500 | 62300 | 103400 | 9700 |
| Configured Products (F&O) | 5800 | 8200 | 11000 | 13600 | 18200 | 22500 | 30300 | 37400 | 62000 | 5800 |
| Cost Management | 3900 | 5400 | 7300 | 9000 | 12200 | 15000 | 20200 | 24900 | 41300 | 3900 |
| Customer Schedules | 4200 | 4800 | 5300 | 5700 | 6400 | 6900 | 7700 | 8300 | 9900 | 4200 |
| DB Module, Oracle | 19300 | 27200 | 36600 | 45200 | 60800 | 75000 | 100900 | 124500 | 206700 | 19300 |
| DB Module, Progress | 9700 | 13600 | 18300 | 22600 | 30400 | 37500 | 50500 | 62300 | 103400 | 9700 |
| Distribution Rqmts Planning | 10600 | 11900 | 13300 | 14300 | 15900 | 17200 | 19100 | 20600 | 24800 | 10600 |
| EDI | 10600 | 11900 | 13300 | 14300 | 15900 | 17200 | 19100 | 20600 | 24800 | 10600 |
| Field Service Management | 19300 | 27200 | 36600 | 45200 | 60800 | 75000 | 100900 | 124500 | 206700 | 19300 |
| Fixed Assets | 3900 | 5400 | 7300 | 9000 | 12200 | 15000 | 20200 | 24900 | 41300 | 3900 |
| Forecasting | 3900 | 5400 | 7300 | 9090 | 12200 | 15000 | 20200 | 24900 | 41300 | 3900 |
| Formula / Process | 5800 | 8200 | 11000 | 13600 | 18200 | 22500 | 30300 | 37400 | 62000 | 5800 |
| General Ledger | 7700 | 10900 | 14600 | 18100 | 24300 | 30000 | 40400 | 49800 | 82700 | 7700 |
| Inventory Control | 3900 | 5400 | 7300 | 9000 | 12200 | 15000 | 20200 | 24900 | 41300 | 3900 |
| Master Scheduling | 3900 | 5400 | 7300 | 9000 | 12200 | 15000 | 20200 | 24900 | 41300 | 3900 |
| Material Rqmts. Planning | 3900 | 5400 | 7300 | 9000 | 12200 | 15000 | 20200 | 24900 | 41300 | 3900 |
| Multi-Currency | 5800 | 8200 | 11000 | 13600 | 18200 | 22500 | 30300 | 37400 | 62000 | 5800 |
| OS Module,DOS | 9700 | 13600 | 18300 | 22600 | 30400 | 37500 | 50500 | 62300 | 103400 | 9700 |
| OS Module,Novell | 9700 | 13600 | 18300 | 22600 | 30400 | 37500 | 50500 | 62300 | 103400 | 9700 |
| OS Module,OS/2 | 9700 | 13600 | 18300 | 22600 | 30400 | 37500 | 50500 | 62300 | 103400 | 9700 |
| OS Module,UNIX | 9700 | 13600 | 18300 | 22600 | 30400 | 37500 | 50500 | 62300 | 103400 | 9700 |
| OS Module,VMS | 14500 | 20400 | 27500 | 33900 | 45600 | 56300 | 75700 | 93400 | 155100 | 14500 |
| Payroll, US | 6300 | 7200 | 8000 | 8600 | 9600 | 10300 | 11500 | 12400 | 14900 | 6300 |
| Physical Inventory | 1900 | 2700 | 3700 | 4500 | 6100 | 7500 | 10100 | 12500 | 20700 | 1900 |
| Product Change Control | 3900 | 5400 | 7300 | 9000 | 12200 | 15000 | 20200 | 24900 | 41300 | 3900 |
| Product Line Planning | 1900 | 2700 | 3700 | 4500 | 6100 | 7500 | 10100 | 12500 | 20700 | 1900 |
| Product Structures | 3900 | 5400 | 7300 | 9000 | 12200 | 15000 | 20200 | 24900 | 41300 | 3900 |
| Purchasing | 5800 | 8200 | 11000 | 13600 | 18200 | 22500 | 30300 | 37400 | 62000 | 5800 |
| Quality Management | 9700 | 13600 | 18300 | 22600 | 30400 | 37500 | 50500 | 62300 | 103400 | 9700 |
| Repetitive | 7700 | 10900 | 14600 | 18100 | 24300 | 30000 | 40400 | 49800 | 82700 | 7700 |
| Resource Planning | 1900 | 2700 | 3700 | 4500 | 6100 | 7500 | 10100 | 12500 | 20700 | 1900 |
| Routings/Work Centers | 3900 | 5400 | 7300 | 9000 | 12200 | 15000 | 20200 | 24900 | 41300 | 3900 |
| Sales Analysis | 1900 | 2700 | 3700 | 4500 | 6100 | 7500 | 10100 | 12500 | 20700 | 1900 |
| Sales Orders/Invoicing | 7700 | 10900 | 14600 | 18100 | 24300 | 30000 | 40400 | 49800 | 82700 | 7700 |
| Sales Quotations | 3900 | 5400 | 7300 | 9000 | 12200 | 15000 | 20200 | 24900 | 41300 | 3900 |
| Service/Repair Orders | 1900 | 2700 | 3700 | 4500 | 6100 | 7500 | 10100 | 12500 | 20700 | 1900 |
| Shop Floor Control | 3900 | 5400 | 7300 | 9000 | 12200 | 15000 | 20200 | 24900 | 41300 | 3900 |
| Supplier Schedules | 4200 | 4800 | 5300 | 5700 | 6400 | 6900 | 7700 | 8300 | 9900 | 4200 |
| Work Orders | 5800 | 8200 | 11000 | 13600 | 18200 | 22500 | 30300 | 37400 | 62000 | 5800 |
| TOTALS | 275200 | 375800 | 496200 | 604800 | 802600 | 980700 | 1305900 | 1600300 | 2621400 | 275200 |
| Optional Modules: | | | | | | | | | | |
| **Results Files** | 3300 | 4500 | 6000 | 7200 | 9500 | 11600 | 15300 | 18600 | 29700 | |

*Exhibit I:  Multinational Software Product License Agreement*

## Country Price Adders

| Country | Adder | Languages Included | Second Language | Third + Languages (Per Language) | Localization |
|---|---|---|---|---|---|
| Australia | 10% | English | 25% | 10% | None |
| Austria | 25% | German | 25% | 10% | VAT |
| Belgium | 25% | Dutch, French | 25% | 10% | VAT |
| Brazil | 0% | Portuguese | 25% | 10% | None |
| Canada, English | 10% | English | 25% | 10% | GST, PST |
| Canada, French | 25% | English, French | 25% | 10% | GST, PST |
| China | 0% | Chinese | 25% | 10% | None |
| Denmark | 25% | Danish | 25% | 10% | VAT |
| Finland | 25% | Finnish | 25% | 10% | VAT |
| France | 25% | French | 25% | 10% | VAT |
| Germany | 25% | German | 25% | 10% | VAT |
| Greece | 10% | English | 25% | 10% | VAT |
| Holland | 25% | Dutch | 25% | 10% | VAT |
| Hong Kong | 0% | English | 25% | 10% | None |
| India | 0% | English | 25% | 10% | None |
| Indonesia | 0% | English | 25% | 10% | None |
| Ireland | 10% | English | 25% | 10% | VAT |
| Israel | 25% | Hebrew (93Q4) | 25% | 10% | None |
| Italy | 25% | Italian | 25% | 10% | VAT |
| Japan | 100% | Japanese | 25% | 10% | None |
| Korea | 0% | Korean | 25% | 10% | None |
| Mexico | 0% | Latin Spanish | 25% | 10% | None |

| | | | | | |
|---|---|---|---|---|---|
| Norway | 25% | English | 25% | 10% | VAT |
| Philippines | 0% | English | 25% | 10% | None |
| Poland | 25% | English | 25% | 10% | None |
| Portugal | 25% | Portuguese | 25% | 10% | VAT |
| Russia | 50% | Russian ('95) | 25% | 10% | |
| Saudi Arabia | 10% | Arabic ('95) | 25% | 10% | |
| Singapore | 0% | English | 25% | 10% | None |
| Spain | 25% | Castillian Spanish | 25% | 10% | VAT |
| Sweden | 25% | Swedish | 25% | 10% | VAT |
| Switzerland | 25% | French or German | 25% | 10% | VAT |
| Taiwan | 0% | Mandarin Chinese | 25% | 10% | None |
| Thailand | 0% | English | 25% | 10% | None |
| Turkey | 25% | English | 25% | 10% | VAT |
| United Kingdom | 10% | English | 25% | 10% | VAT |
| United States | 0% | English | 25% | 10% | Sales Taxes |

English may be substituted for local language(s) at no additional charge.
Manuals not available in all languages.  Consult Product Directions.

*Exhibit II*:  *Multinational Software Product License Agreement*

**EXHIBIT II**

**SOFTWARE SUPPORT SERVICE TERMS**

# SOFTWARE SUPPORT SERVICE TERMS

## Section 1 - General

1.1     <u>Purchasing Software Support Services</u>.  QAD, or its authorized representative, provides Software Support Services as described in this Exhibit II, Section 2-entitled "Direct Support Services"("Support Services") on an annual basis. Support Services are required for the first year from the initial licensing of the Products.  Thereafter, Licensed Participant may choose to continue or discontinue Support Services as provided herein. Support Services shall begin on the first of the month following delivery of the Software for the first two (2) Sites installed with the Initial Order and shall start upon the first of the month following installation for the other Sites licensed with the Initial Order, but in no event later than January 1, 1998.

1.2     <u>Software Support Services for all Modules</u>.  Licensed Participant shall purchase Support Services for all licensed modules of the Products at each Site for which Support Services are desired.

## Section 2 - Direct Support Services

2.1     <u>QAD Obligations</u>.  QAD shall, for each Site and for each module of the licensed Products for which the fees noted in Section 3 have been paid:

   a.     Provide Sites with the Production Version of the Updates and Releases of the licensed Products for installation and use in accordance with the Agreement.

   b.     Provide Sites with the Production Version of the Programs documentation respecting the Updates and Releases set forth in 2.1.a above.

   c.     Provide telephone assistance on matters pertaining to the Production Version of the licensed Products, Updates, and Releases.  In the continental U.S. and Canada such telephone assistance shall generally be available to Licensed Participant during normal business days from 8 a.m. to 8 p.m. in the Eastern standard time zone , Monday through Friday, excluding holidays. For telephone assistance outside the U.S. and Canada, Licensed Participant shall make such arrangements with QAD's local agent.

   d.     Provide assistance to repair or correct any defect, error or omission in the Products in accordance with the warranty in effect for the given Products.

## Section 3 - Direct Support Service Fees

3.1     <u>Renewal Basis</u>.  In exchange for providing the Support Services mentioned above in Section 2.1 at a Licensed Participant's Site for a period of one (1) year, Licensed Participant shall pay a fee to QAD on either an annual or a quarterly basis.

3.2     <u>Annual Fee.</u>  Licensed Participant shall pay QAD an annual fee of fifteen percent (15%) of the then current list price of the licensed Products for the Site.

3.3     <u>Quarterly Fee</u>.  If Licensed Participant elects to pay on a quarterly basis, Licensed Participant shall pay four equal quarterly installments to QAD which shall total to an annual fee equal to sixteen percent (16%) of the then current list price of the licensed Products for the Site.

## Section 4 - Indirect Support Services

4.1     <u>Support by QAD Partners</u>.  In those countries in which QAD does not make available Support Services furnished directly by QAD, Licensed Participant may arrange for such services through QAD's authorized partners.

## Section 5 - Payments

5.1     <u>Invoicing</u>.  Invoices for Support Services shall be issued by QAD in advance of each renewal period.

5.2     <u>Payment</u>.  Payment of the fees due under this Agreement shall be due and payable on the first day of each renewal period.  Neither QAD nor its authorized partner shall have any obligation to provide Support Services until payment is received.

5.3     <u>Renewing Support Services</u>.  If Licensed Participant cancels any Support Services, or if such Support Services lapse because payment was not received prior to the renewal period, Licensed Participant may reinstate such Support Services by payment of all unpaid fees accrued during the period of lapsed Support Services based on then current QAD policies and the policies of Progress Software Corporation, plus the prepayment of the subsequent one (1) year renewal period which shall be calculated to begin upon the date the Support Services are reinstated.

## Section 6 - Limited Warranty

6.1     <u>Professionalism</u>.  QAD warrants that the Support Services supplied by QAD hereunder shall be performed in a professional and workmanlike manner.

6.2     <u>Warranty</u>.  QAD warrants that, for as long as Licensed Participant procures Support Services, the licensed MFG/PRO Programs shall be free from material program errors and material defects in workmanship and material and that it shall function substantially in accordance with the Software Product Description.

6.3     <u>Term</u>.  QAD shall, for as long as Licensed Participant procures Support Services, under the above warranty, endeavor to remedy without delay, and at its cost, by repair or replacement, any material program errors or material defects as aforesaid, of which Licensed Participant has notified QAD or its authorized representative in writing.

6.4     <u>Support Services Remedy</u>.  If, after reasonable efforts to remedy the same material program error or material defect, by correction or replacement, QAD or its authorized representative is unable to make the licensed MFG/PRO Programs perform as warranted, Licensed Participant may terminate the Support Services by removing the Release or Update of the licensed MFG/PRO Programs from the Hardware System, returning it to QAD or its authorized representative, canceling Support Services and receiving a refund of the Support Fees paid for the licensed MFG/PRO Programs in the year in which the cancellation is effective.

6.5   Program Remedy. In addition to the remedy provided in section 6.4, if, after reasonable efforts to remedy the same material program error or material defect, by correction or replacement, QAD or its authorized representative is unable to make the licensed MFG/PRO Programs perform as warranted, Licensed Participant may terminate the license to the MFG/PRO Programs by removing the licensed MFG/PRO Programs from the Hardware System, returning it to QAD or QAD's authorized representative and receiving a refund of a portion of the license fees paid for the MFG/PRO Programs. Such portion shall be determined based on a three (3) year straight-line depreciation of the license fees paid for the licensed MFG/PRO Programs removed from Licensed Participant's Site where the period of depreciation shall be from the date of the license grant for the Site.

6.6   Warranty Limitations. There are limits to the Limited Warranty described above:

   a.   Licensed Participant must submit a sufficient written description of the software malfunction while the Support Services are in effect.

   b.   Licensed Participant must install all software fixes provided by QAD or its authorized representative. This may involve the installation of Releases or Updates if necessary to remedy the defect.

   c.   If Licensed Participant modifies the licensed MFG/PRO Programs in any way, then the warranty applies only to the unmodified MFG/PRO Programs as distributed by QAD.

   d.   Licensed Participant must install the revision of all prerequisite software then currently recommended by QAD.

   e.   A Licensed Participant shall have the right to use the licensed Products on any licensed Hardware System; however, it is understood that the warranties provided by QAD under Support Services shall be limited to the use of the Products on a Hardware System.

6.7   Express and Implied Warranties. THIS LIMITED WARRANTY IS IN LIEU OF ALL OTHER WARRANTIES, EXPRESS OR IMPLIED. TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, NO OTHER WARRANTY IS MADE HEREUNDER BY QAD AND ALL OTHER CONDITIONS, WARRANTIES, AND REPRESENTATIONS, EITHER EXPRESS OR IMPLIED, ARE EXCLUDED, INCLUDING, BUT NOT LIMITED TO, CONDITIONS OR WARRANTIES RELATING TO THE WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE.

6.8   Consequential Damages. TO THE MAXIMUM EXTENT PERMITTED BY THE APPLICABLE LAW, IN NO EVENT SHALL QAD BE LIABLE FOR ANY LOST REVENUES OR PROFITS OR OTHER SPECIAL, INDIRECT, CONSEQUENTIAL OR PUNITIVE DAMAGES, HOWEVER CAUSED AND REGARDLESS OF THEORY OF LIABILITY, EVEN IF QAD HAS, OR SHOULD HAVE HAD, ANY KNOWLEDGE, ACTUAL OR CONSTRUCTIVE, OF THE POSSIBILITY OF SUCH DAMAGES.

6.9    Damages Limitation. Except for the remedies set forth in section 6.5 herein, the maximum liability of QAD for damages shall be limited to the fees paid by Licensed Participant for Support Services under this Agreement for the Site at which the damages occurred in the particular year in which the damages occurred.

6.10    Personal Injury Liability. Nothing in this Agreement shall exclude or restrict the liability of QAD for death or personal injury caused by the negligence of QAD.

## Section 7 - Obligations of Licensed Participant

7.1    Primary Contact. Each Licensed Participant shall appoint an individual as the primary contact with QAD or the QAD authorized representative for ongoing support and software problem resolution at a Site.

7.2    Request for Updates and Releases. Licensed Participant shall place all requests for Updates and Releases on an Update Request Form (attached hereto as Exhibit A).

7.3    Cooperation of Licensed Participant. Licensed Participant shall provide to QAD or the QAD authorized representative reasonable debugging information (such as memory dumps) and shall cooperate in investigating errors (such as access to the Hardware System at the Site for test and debugging purposes) as reasonably requested by QAD, or the QAD authorized representative to duplicate an error, certify that the error is directly related to the Products, and verify that the error has been corrected.

7.4    Telephone Assistance. Telephone assistance shall be provided by QAD or the QAD authorized representative to Licensed Participant at a reasonable level. Licensed Participant agrees that if Licensed Participant's telephone assistance usage exceeds this reasonable level, Licensed Participant shall undergo, at Licensed Participant's expense, additional training on the use of the licensed Products. The parties understand that the intent of this provision is to avoid the use of phone support as a substitute for proper training. Therefore, QAD shall not require Licensed Participant to pay any additional fees for training without first giving Licensed Participant prior written notice of the excessive phone support usage and a reasonable opportunity to correct the situation to avoid such additional fees.

7.5    Modified Products. QAD, and the QAD authorized representative, shall not be obligated under this Agreement to provide Support Services for any portion of the licensed Products which is modified. If QAD, or the QAD authorized representative provides Licensed Participant with corrections for problems traceable to errors or defects in a portion of the licensed Products which have been modified by Licensed Participant, or by third parties, Licensed Participant shall pay for such corrections at QAD's, or the QAD authorized representative's, then current time and material list prices.

*Exhibit II: Multinational Software Product License Agreement*

## Section 8 - Term and Termination

8.1     Term.  The term of this Agreement shall commence as of the first of the month following the delivery of the Products and shall continue for one (1) year.

8.2     Automatic Renewal.  Support Services shall be automatically renewed for a period of one (1) year upon expiration of the previous one (1) year term unless at least sixty (60) days prior to the effective date of renewal, either party notifies the other party in writing that the Support Services shall not be renewed.

8.3     Past Due Payments.  QAD may terminate Support Services immediately if any payment due QAD, or the QAD authorized representative, hereunder is more than ten (10) days past due and Licensed Participant has not cured such nonpayment within ten (10) days of QAD's notice of nonpayment.

8.4     Effective Date of Termination.  If Licensed Participant fails to provide the proper termination notice, Licensed Participant shall pay any and all support fees (including those of Progress Software Corporation) until such notice is properly given and Licensed Participant's termination properly takes effect. Licensed Participant shall reimburse QAD or the QAD authorized representative for such terminated Support Services within thirty (30) days after being invoiced by QAD, or the QAD authorized representative.

**ADDENDUM A**
**TO**
**SOFTWARE SUPPORT SERVICE TERMS**
**CENTRAL SITE SUPPORT TERMS**

This Addendum A is attached to and made a part of the Software Support Services Terms contained in the Multinational Software Product License Agreement between **QAD Inc.** (hereinafter "QAD") and **Dura Automotive Systems, Inc.** dated the 28th day of February, 1997.

**WHEREAS**, Dura Automotive Systems, Inc. desires to perform certain Support Services for the Products for Licensed Participant Sites under this Addendum (hereinafter "Central Site Support"); and

**WHEREAS**, QAD is willing to grant Dura Automotive Systems, Inc. the right to perform certain Support Services for the Products for Licensed Participant Sites under this Addendum in return for being relieved of the obligation to provide these certain Support Services to Licensed Participant Sites; and

**WHEREAS**, Dura Automotive Systems, Inc. desires to receive, and QAD is willing to grant, a reduction in the Support Services fees Dura Automotive Systems, Inc. owes QAD for Programs under the Software Support Service Terms of the Multinational Software Product License Agreement in return for the change in the obligations of the parties under this Addendum.

**NOW THEREFORE**, notwithstanding any provisions of the Software Support Services Terms or any other agreement relating thereto to the contrary, the parties hereby agree as follows:

**Article 1  Central Site Support**

1.1    Licensed Participant shall designate one (1) Site of a Licensed Participant as the Central Site. Licensed Participant shall appoint an individual as the primary contact with QAD for all matters related to the Central Site and this Addendum.

1.2    Licensed Participant shall designate other Sites of the Licensed Participant which shall receive Support Services from the Central Site as Client Sites under this Addendum.

1.3    Central Site shall provide each of the following services to all Client Sites:

      a.    Provide Updates and Releases of the licensed Products for installation and use in accordance with the Multinational Software Product License Agreement to which the Client Site is a party.

      b.    Provide the documentation for the licensed Products respecting the Updates and Releases set forth in 1.3.a. above.

      c.    Provide telephone assistance on matters pertaining to the licensed Products, Updates, and Releases.

If, after reasonable efforts, Central Site is unable to provide any of these services to a Client Site, Central Site may contact QAD to assist in providing these services to a Client Site.

## Article 2  Internal Distribution License

2.1    QAD hereby grants Central Site, and Central Site accepts, a license to distribute Documentation, Upgrades and Updates of the Products provided to Central Site by QAD to Client Sites in accord with this Addendum.

## Article 3  Obligations of QAD

3.1    At the request and cost of Licensed Participant, QAD shall provide Central Site personnel with suitable training and documentation concerning the delivery of Support Services to assist Central Site to provide Support Services to Client Sites.

3.2    QAD shall provide each of the services set forth in 1.3. above to Central Site only.

## Article 4  Central Site Support Fees

4.1    For a given Central Site and its related Client Sites, the Site with the greatest amount of annual Support Services fee due QAD under this Addendum shall pay QAD this annual Support Services fee without discount.

4.2    For a given Central Site and its related Client Sites other than the Site identified in section 4.1, QAD grants each Site a thirty-five percent (35%) discount in the Support Services fee on the Programs due QAD under this Addendum.

4.3    In the event the Central Site Support is terminated, the terms governing subsequent renewals of Support Services shall be as noted in the Software Support Service Terms of the Multinational Software Product License Agreement except the Support Services fee on the initial renewal of Support Services after the Central Site Support is terminated shall be renewed without regard to any limitations on the annual change in the Support Services fee, if any.

## Article 5  Local QAD Agent Assistance

5.1    Licensed Participant acknowledges that participation by a Site in this Central Site Addendum does not entitle that Site to any services from the local QAD agent in a given country.  In the event that Licensed Participant decides to use the services of the local QAD agent, Licensed Participant shall pay the local QAD agent for such services.

All terms and conditions of the Multinational Software Product License Agreement other than those amended herein shall remain unchanged and in full force and effect.

This Addendum shall constitute an integral part of the Multinational Software Product License Agreement and be effective as of the date of signature by the respective parties and shall remain valid until the date the Multinational Software Product License Agreement expires or otherwise terminates.

The undersigned hereby acknowledge that they have read and that they fully understand the terms of the above Addendum, the terms and conditions of which are hereby incorporated and acknowledged by this reference.

**QAD Inc.**                                        **Dura Automotive Systems, Inc.**

Sign: _____                      Sign: _____

Name: _____                      Name: _____
CHARLIE EGGERDING                                   JOHN J KNAPPENBERGER

Title: _____                      Title: _____
VP AUTOMOTIVE                                        VICE PRESIDENT

Date: _____                       Date: _____
3-5-97                                              2-28-97

cc:    Support
       Sales Administrator
       Installed Base Rep.
       Support Billing

*Exhibit II: Multinational Software Product License Agreement*

## Attachment A

### MFG/PRO - PROGRESS
### Update Request

For prompt service, please fax this completed form to the nearest QAD, Inc. facility

COMPANY: _____    Date: _____

END USER: _____    DELIVER TO: _____
(site of software)    _____

ATTENTION: _____    Phone: _____
Fax: _____

If requesting a PROGRESS Update, please check your program type:

_____ PADS    _____ Run-Time    _____ 4 GL    _____ Results    _____ QUERY/REPORT    _____ Other

| | MFG/PRO* | PROGRESS* | OP SYSTEM | HARDWARE (include Model #) | MEDIA |
|---|---|---|---|---|---|
| Existing | _____ | _____ | _____ | _____ | _____ |
| Requested | _____ | _____ | _____ | _____ | _____ |

* Please include full release version, i.e. MFG/PRO 6.1C, PROGRESS 6.2EI4

Do you have custom written code?    _____ Yes    _____ No    If Yes, was it written by QAD?    _____ Yes    _____ No

SPECIAL INSTRUCTIONS: _____
_____
_____
_____

Shipping Instructions:    Your Carrier: _____    Your Shipping Account Number: _____

PLEASE ALLOW 20 DAYS FOR RECEIPT FOR SOFTWARE SHIPMENT

MFG/PRO MANUFACTURING/DISTRIBUTION MANAGEMENT WORLDWIDE

# EXHIBIT III

# ESCROW AGENT DESCRIPTION

*Exhibit III*: *Multinational Software Product License Agreement*

***National Safe Depository***
***2109 Bering Drive***
***San Jose, CA  95131-2014***
***408-453-2753 / Fax 408-441-6826***

***Information Storage, Protection and Retrieval Since 1982***

SOFTWARE/TECHNOLOGY ESCROW SERVICE

PROTECT YOUR INVESTMENT

Neutral Third Party Storage of Proprietary Software Source Code
Serving Licensors and Licensees Worldwide
365 Days a Year

## BACKGROUND

Dynamic growth has been taking place in the software industry in recent years.  There has been a proliferation of software companies devising new programs which are not only expensive but also dependent upon regular updating and maintenance.

The developer/licensor of these products needs to preserve its copyright and trade secret rights and to prevent unauthorized use.  The user/licensee, on the other hand, must protect a software investment which is vulnerable in case the licensor ceases to support the program, or even goes out of business.

These needs have created a new concept:  the escrowing of software source code with a neutral third party.  The real estate and securities industries have utilized this method successfully for years to protect the parties to a transaction.

By escrowing a current copy of the proprietary source code with an escrow agent - together with related documents and materials - both licensor and licensee are able to protect their respective interests safely, simply, and economically.

*Exhibit III:  Multinational Software Product License Agreement*

## HOW IT WORKS

The escrow process as practiced at NSD is simple and flexible.  There are two basic types of escrows:

1)   3-party escrow (Licensor, Licensee, NSD)
2)   2-party escrow (Licensor, NDS), for unlimited Licensees.  Licensees must execute an Acceptance to participate.

In most cases, NSD will supply a proven escrow agreement which can be adapted to specific requirements.

Written acknowledgments are sent to both Licensor and Licensee upon receipt of all escrow material and updates, thus providing an audit trail over time.

To access the escrow, authorization in writing is required.  All access to the depository and to each escrow is logged, and a permanent record kept.

Other important duties that can be performed by the escrow agent to the degree specified in the agreement include: technical protection and assistance, release condition, distribution/copying of source code and acting as a trustee holding beneficial title.

## THE BANKRUPTCY CODE AMENDMENT OF 1988

The value of escrow arrangements for software source code is significantly enhanced by the Act.  The Act is intended to encourage the practice of technology licensing by ensuring that a Licensee of intellectual property received the benefit of its bargain, even after the Licensor's bankruptcy.

NSD can supply information concerning the Act, as well as other escrow matters.

## THE COST IS VERY AFFORDABLE

Fees consist of a one-time acceptance fee plus an annual storage fee and (if required) special administration charges.  Rates furnished upon request.

*Exhibit III: Multinational Software Product License Agreement*

RE: ESCROW #463-9

## LICENSEE OF RECORD ACCEPTANCE

The undersigned acknowledges receipt of a copy of and agrees to be bound by all applicable terms of that certain software Deposit Agreement (the "Escrow Agreement") dated as of February 24, 1989, by and between QAD, a California corporation ("Licensor"), and Brambles NSD, Inc., a Delaware corporation ("NSD"), as Escrow Agent.

Licensee agrees to defend and indemnify NSD and hold NSD harmless from and against any claim, action, loss, cost, liability or expense (including reasonable counsel fees) arising out of or relating to this Escrow Agreement (collectively, "Claims"), except to the extent such Claim is based on (i) NSD's gross negligence or willful misconduct or (ii) the acts or omissions of Licensor or any other Licensee.

Any notice to the undersigned with respect to the Escrow Agreement or the documentation (as defined therein) may be sent to:

> 2109 Bering Drive
> San Jose, CA  95131-2014
> 408-453-2753

**LICENSEE OF RECORD:**

CO.
NAME: _____        ADDRESS:

SIGN: _____        _____
NAME: _____        _____
TITLE: _____        _____
DATE: _____        _____

1292 Acceptance

# EXHIBIT IV

## ATTACHMENT

## TO SOFTWARE PRODUCT LICENSE AGREEMENT

### BETWEEN QAD Inc. and Dura Automotive Systems, Inc.

### DATED the 28th day of February, 1997

The undersigned hereby acknowledge that they have read and that they fully understand the terms of the referenced Agreement, the terms and conditions of which are hereby incorporated and acknowledged by this reference.

Licensor hereby grants to Participant, and Participant hereby accepts a license subject to the terms, conditions and obligations of the referenced Agreement and subject to the following limitations:

**LICENSED PARTICIPANT,** Dura Automotive Systems, Inc.

**LOCATION:**    2791 Research Drive

Rochester Hills, MI 48309

| | |
|---|---|
| HARDWARE: | PROGRESS RELEASE:  V7/8 |
| OPERATING SYSTEM:  NT | PROGRESS SUPPORT (Y/N):  Y |
| MAX. NUMBER OF MFG/PRO USERS:  30 | MFG/PRO RELEASE: V8.5 |
| | MFG/PRO SUPPORT (Y/N):  Y |

The undersigned hereby agree that by signing this document, they become parties to said Agreement and agree to be bound by all terms, conditions and obligations contained therein.

| QAD Inc. | Dura Automotive Systems, Inc. |
|---|---|
| (Licensor) | (Participant) |
| SIGN: | SIGN: |
| NAME:  CHARLIE LEGGEDING | NAME:  JOHN J KNAPPENBERGER |
| TITLE:  VP AUTOMOTIVE | TITLE:  VICE PRESIDENT |
| DATE:  3·5·97 | DATE:  2-28-97 |

# EXHIBIT IV

## ATTACHMENT

## TO SOFTWARE PRODUCT LICENSE AGREEMENT

### BETWEEN QAD Inc. and Dura Automotive Systems, Inc.

#### DATED the 28th day of February, 1997

The undersigned hereby acknowledge that they have read and that they fully understand the terms of the referenced Agreement, the terms and conditions of which are hereby incorporated and acknowledged by this reference.

Licensor hereby grants to Participant, and Participant hereby accepts a license subject to the terms, conditions and obligations of the referenced Agreement and subject to the following limitations:

**LICENSED PARTICIPANT**, Dura Automotive Systems, Inc.

LOCATION:     Hannibal - South/North

                       #5 Industrial Drive

                       Hannibal, MO   63401

HARDWARE:                                          PROGRESS RELEASE:  V7/8

OPERATING SYSTEM:  NT                     PROGRESS SUPPORT (Y/N):  Y

MAX. NUMBER OF MFG/PRO USERS:  95      MFG/PRO RELEASE: V8.5

                                                               MFG/PRO SUPPORT (Y/N):  Y

The undersigned hereby agree that by signing this document, they become parties to said Agreement and agree to be bound by all terms, conditions and obligations contained therein.

**QAD Inc.**
(Licensor)

SIGN: _____

NAME: CHARLIE EGGERDING

TITLE: VP AUTOMOTIVE

DATE: 3-5-97

**Dura Automotive Systems, Inc.**
(Participant)

SIGN: _____

NAME: JOHN J KNAPPENBERGER

TITLE: VICE PRESIDENT

DATE: 2-28-97

EXHIBIT IV

ATTACHMENT

TO SOFTWARE PRODUCT LICENSE AGREEMENT

BETWEEN QAD Inc. and Dura Automotive Systems, Inc.

DATED the 28th day of February, 1997

The undersigned hereby acknowledge that they have read and that they fully understand the terms of the referenced Agreement, the terms and conditions of which are hereby incorporated and acknowledged by this reference.

Licensor hereby grants to Participant, and Participant hereby accepts a license subject to the terms, conditions and obligations of the referenced Agreement and subject to the following limitations:

LICENSED PARTICIPANT, Dura Automotive Systems, Inc.

LOCATION:        Brookfield

445 East Helm, P.O. Box 322

Brookfield, MO   64628

| | |
|---|---|
| HARDWARE: | PROGRESS RELEASE:  V7/8 |
| OPERATING SYSTEM:  NT | PROGRESS SUPPORT (Y/N):  Y |
| MAX. NUMBER OF MFG/PRO USERS:  40 | MFG/PRO RELEASE: V8.5 |
| | MFG/PRO SUPPORT (Y/N):  Y |

The undersigned hereby agree that by signing this document, they become parties to said Agreement and agree to be bound by all terms, conditions and obligations contained therein.

| QAD Inc. | Dura Automotive Systems, Inc. |
|---|---|
| (Licensor) | (Participant) |
| SIGN: | SIGN: |
| NAME: CHARLIE EGGERDING | NAME: JOHN J KNAPPENBERGER |
| TITLE: VP AUTOMOTIVE | TITLE: VICE PRESIDENT |
| DATE: 3-5-97 | DATE: 2-28-97 |

# EXHIBIT IV

# ATTACHMENT

## TO SOFTWARE PRODUCT LICENSE AGREEMENT

### BETWEEN QAD Inc. and Dura Automotive Systems, Inc.

#### DATED the 28th day of February, 1997

The undersigned hereby acknowledge that they have read and that they fully understand the terms of the referenced Agreement, the terms and conditions of which are hereby incorporated and acknowledged by this reference.

Licensor hereby grants to Participant, and Participant hereby accepts a license subject to the terms, conditions and obligations of the referenced Agreement and subject to the following limitations:

**LICENSED PARTICIPANT,** Dura Automotive Systems, Inc.

**LOCATION:**    Mancelona

310 Palmer Park Road

Mancelona, MI   49659

| | |
|---|---|
| HARDWARE: | PROGRESS RELEASE:  V7/8 |
| OPERATING SYSTEM:  NT | PROGRESS SUPPORT (Y/N):  Y |
| MAX. NUMBER OF MFG/PRO USERS:  55 | MFG/PRO RELEASE: V8.5 |
| | MFG/PRO SUPPORT (Y/N):  Y |

The undersigned hereby agree that by signing this document, they become parties to said Agreement and agree to be bound by all terms, conditions and obligations contained therein.

| **QAD Inc.** (Licensor) | **Dura Automotive Systems, Inc.** (Participant) |
|---|---|
| SIGN: | SIGN: |
| NAME:  CHARLIE EGGERDING | NAME: JOHN J KNAPPENBERGER |
| TITLE:  VP AUTOMOTIVE | TITLE: VICE PRESIDENT |
| DATE:  3-5-97 | DATE: 2-28-97 |

# EXHIBIT IV

## ATTACHMENT

## TO SOFTWARE PRODUCT LICENSE AGREEMENT

## BETWEEN QAD Inc. and Dura Automotive Systems, Inc.

**DATED the** 28th day of February, 1997

The undersigned hereby acknowledge that they have read and that they fully understand the terms of the referenced Agreement, the terms and conditions of which are hereby incorporated and acknowledged by this reference.

Licensor hereby grants to Participant, and Participant hereby accepts a license subject to the terms, conditions and obligations of the referenced Agreement and subject to the following limitations:

**LICENSED PARTICIPANT,** Dura Automotive Systems, Inc.

**LOCATION:**     East Jordan

117 Lake Street

East Jordan, MI   49727

| | |
|---|---|
| HARDWARE: | PROGRESS RELEASE:  V7/8 |
| OPERATING SYSTEM:  NT | PROGRESS SUPPORT (Y/N):  Y |
| MAX. NUMBER OF MFG/PRO USERS:  25 | MFG/PRO RELEASE: V8.5 |
| | MFG/PRO SUPPORT (Y/N):  Y |

The undersigned hereby agree that by signing this document, they become parties to said Agreement and agree to be bound by all terms, conditions and obligations contained therein.

**QAD Inc.**
(Licensor)

SIGN: _____

NAME: CHARLIE EGGERDING

TITLE: VP AUTOMOTIVE

DATE: 3-5-97

**Dura Automotive Systems, Inc.**
(Participant)

SIGN: _____

NAME: JOHN J KNAPPENBERGER

TITLE: VICE PRESIDENT

DATE: 2-28-97

# EXHIBIT IV

## ATTACHMENT

## TO SOFTWARE PRODUCT LICENSE AGREEMENT

### BETWEEN QAD Inc. and Dura Automotive Systems, Inc.

#### DATED the 28th day of February, 1997

The undersigned hereby acknowledge that they have read and that they fully understand the terms of the referenced Agreement, the terms and conditions of which are hereby incorporated and acknowledged by this reference.

Licensor hereby grants to Participant, and Participant hereby accepts a license subject to the terms, conditions and obligations of the referenced Agreement and subject to the following limitations:

**LICENSED PARTICIPANT,** Dura Automotive Systems, Inc.

**LOCATION:**     Moberly - Brake

1855 Robertson Road

Moberly, MO   65270

| | |
|---|---|
| HARDWARE: | PROGRESS RELEASE:  V7/8 |
| OPERATING SYSTEM:  NT | PROGRESS SUPPORT (Y/N):  Y |
| MAX. NUMBER OF MFG/PRO USERS:  45 | MFG/PRO RELEASE: V8.5 |
| | MFG/PRO SUPPORT (Y/N):  Y |

The undersigned hereby agree that by signing this document, they become parties to said Agreement and agree to be bound by all terms, conditions and obligations contained therein.

| **QAD Inc.** (Licensor) | **Dura Automotive Systems, Inc.** (Participant) |
|---|---|
| SIGN: | SIGN: |
| NAME:  CHARLIE EGGERDING | NAME: JOHN J KNAPPENBERGER |
| TITLE:  VP AUTOMOTIVE | TITLE: VICE PRESIDENT |
| DATE:  3-5-97 | DATE: 2-28-97 |

*Exhibit IV: Multinational Software Product License Agreement*

# EXHIBIT IV

## ATTACHMENT

## TO SOFTWARE PRODUCT LICENSE AGREEMENT

## BETWEEN QAD Inc. and Dura Automotive Systems, Inc.

### DATED the 28th day of February, 1997

The undersigned hereby acknowledge that they have read and that they fully understand the terms of the referenced Agreement, the terms and conditions of which are hereby incorporated and acknowledged by this reference.

Licensor hereby grants to Participant, and Participant hereby accepts a license subject to the terms, conditions and obligations of the referenced Agreement and subject to the following limitations:

**LICENSED PARTICIPANT**, Dura Automotive Systems, Inc.

**LOCATION:**     Dura de Mexico

H. Matamoros, Tamaulipas, Mexico

4402 Austin Rd.

Brownsville, TX   78521

| | |
|---|---|
| HARDWARE: | PROGRESS RELEASE:   V7/8 |
| OPERATING SYSTEM:  NT | PROGRESS SUPPORT (Y/N):   Y |
| MAX. NUMBER OF MFG/PRO USERS:   10 | MFG/PRO RELEASE: V8.5 |
| | MFG/PRO SUPPORT (Y/N):  Y |

The undersigned hereby agree that by signing this document, they become parties to said Agreement and agree to be bound by all terms, conditions and obligations contained therein.

**QAD Inc.**
(Licensor)

SIGN: _____

NAME: CHARLIE EGGERDING

TITLE: VP AUTOMOTIVE

DATE: 3-5-97

**Dura Automotive Systems, Inc.**
(Participant)

SIGN: _____

NAME: JOHN J KNAPPENBERGER

TITLE: VICE PRESIDENT

DATE: 2-28-97

*Exhibit V: Multinational Software Product License Agreement*

**EXHIBIT V**

**SITE USER AMENDMENT**

**TO**

**SOFTWARE PRODUCT LICENSE AGREEMENT**

*Exhibit V*: *Multinational Software Product License Agreement*

## SITE USER AMENDMENT

The following terms and conditions shall apply in the event Participant's pricing is based on Site User pricing:

Definitions
Add the following definition to the list of Definitions in the Agreement:

**Module Bundle** shall mean a group of modules which is licensed as an indivisible group.

**Site User** shall mean any person that may access any part of the Software for any reason.

Change the definition of **Site** to read:

**Site** shall mean a physical location whose operations are controlled with MFG/PRO software.

License Grant For Software
In addition to the license grants provided in Article 2 of the Agreement, such grants shall be subject to a Site User limitation of at least the number of Site Users shown in all Site Attachments - Exhibit IV. Such use shall be in accord with the terms of the Agreement.

Assignments and Transfers
Add the following paragraph to the Assignments and Transfers clause:

Participant may reasonably transfer Site Users among Licensed Participants upon written notice to QAD and upon payment of any applicable fees to QAD.

Audits
Upon QAD's request, but no more frequently than each quarter, Participant agrees to provide QAD with a list of the Site Users at each of the licensed Sites and agrees to keep accurate books of account and records covering all transactions relating to this Amendment at its principal offices, and QAD shall have once a year the right during business hours, to examine or to have examined by an independent and qualified auditor said books of accounts and records and all other documents and material in the possession or under the control of Participant with respect to the terms of the Agreement. All books of account and records shall be kept available for at least three (3) years after termination or expiration of the Agreement and Participant agrees to permit inspection thereof during such three (3) year period.

*Exhibit V: Multinational Software Product License Agreement*

This Additional Modules list price shall also be used for purposes of calculating the support fee due hereunder for these additional modules.

Progress Pricing

Progress Pricing shall be based upon the then current standard Progress price list in effect at the time a Purchase Order is received.

Price List Additions/Changes

In the event a new module is made available in Production Version, the price for the new module shall be added to the price list in effect for Participant at the time at the then current standard QAD price for the module.

Minimum Number of Site Users per Purchase Order

Purchase Orders for Site Users shall be for a minimum of ten (10) Site Users.

*Exhibit V:  Multinational Software Product License Agreement*

**Module Bundle – Attachment I**

**MFG/PRO Modules**
Accounts Payable
Accounts Receivable
Capacity Requirements Planning
Cash Management
Client/Server
Cost Management
Customer Schedules
DE Module, Progress
Decision Support
Dist. Requirements Planning
EDI
Fixed Assets
General Ledger
Inventory control
Master Scheduling
Material Requirements Planning
OS Module, UNIX
Physical Inventory
Product Change Control
Product Structures
Purchasing
Repetitive
Resource Planning
Routing/Work Center
Sales Orders/Invoicing
Shop Floor Control
Supplier Schedules
Work Orders
Results

**Progress**
Enterprise Server
Client/Network
Results
~~Provision~~   P R O G R E S S   4 G L

**Site User Pricing - Attachment I**

| | Per Site | Per Site User | Add-on Module |
|---|---|---|---|
| Accounts Payable | 1250 | 60 | 12500 |
| Accounts Receivable | 1250 | 60 | 12500 |
| Capacity Rqmts. Planning | 1250 | 60 | 12500 |
| Cash Management | 320 | 20 | 3200 |
| Client-Server | 3130 | 160 | 31300 |
| Configured Products (F&O) | 1880 | 90 | 18800 |
| Cost Management | 1250 | 60 | 12500 |
| Customer Schedules | 640 | 30 | 6400 |
| DB Module, Oracle | 6260 | 310 | 62600 |
| DB Module, Progress | 3130 | 160 | 31300 |
| Distribution Rqmts. Planning | 1610 | 80 | 16100 |
| EDI | 1610 | 80 | 16100 |
| Field Service Management (7.4/8.4 & below) | 6260 | 310 | 62600 |
| Fixed Assets | 1250 | 60 | 12500 |
| Forecasting | 1250 | 60 | 12500 |
| Formula / Process | 1880 | 90 | 18800 |
| General Ledger | 2510 | 130 | 25100 |
| Inventory Control | 1250 | 60 | 12500 |
| Master Scheduling | 1250 | 60 | 12500 |
| Material Rqmts. Planning | 1250 | 60 | 12500 |
| Multi-Currency | 1880 | 90 | 18800 |
| OS Module, UNIX | 3130 | 160 | 31300 |
| Payroll US | 2050 | 100 | 20500 |
| Physical Inventory | 630 | 30 | 6300 |
| Product Change Control | 1250 | 60 | 12500 |
| Product Line Planning | 630 | 30 | 6300 |
| Product Structures | 1250 | 60 | 12500 |
| Purchasing | 1880 | 90 | 18800 |
| Quality Management | 3130 | 160 | 31300 |
| Repetitive | 2510 | 130 | 25100 |
| Resource Planning | 630 | 30 | 6300 |
| Routings / Work Centers | 1250 | 60 | 12500 |
| Sales Analysis | 630 | 30 | 6300 |
| Sales Orders / Invoicing | 2510 | 130 | 25100 |
| Sales Quotations | 1250 | 60 | 12500 |
| Service / Repair Orders | 630 | 30 | 6300 |
| Service / Support Management (8.5 or higher) | 6260 | 310 | 62600 |
| Shop Floor Control | 1250 | 60 | 12500 |
| Supplier Schedules | 640 | 30 | 6400 |
| Work Orders | 1880 | 90 | 18800 |
| **TOTALS\*** | **69490** | **3430** | **694900** |

| | Per Site | Per Site User | Add-on Module |
|---|---|---|---|
| Optional Module | | | |
| Results Files | 1060 | 50 | 10600 |

\*includes either Field Service Management or Service/Support Management but not both

# EXHIBIT IV

## ATTACHMENT #

### TO SOFTWARE PRODUCT LICENSE AGREEMENT

### BETWEEN QAD Inc. and Dura Automotive

#### AGREEMENT DATED:  February 28, 1997

The undersigned hereby acknowledge that they have read and that they fully understand the terms of the referenced Agreement, the terms and conditions of which are hereby incorporated and acknowledged by this reference.

Licensor hereby grants to Participant, and Participant hereby accepts a license subject to the terms, conditions and obligations of the referenced Agreement and subject to the following limitations:

The undersigned hereby agree that by signing this document, they become parties to said Agreement and agree to be bound by all terms, conditions and obligations contained therein.

**LICENSED PARTICIPANT:** Dura Automotive

**LOCATION:**    2741 Weber Rd.

           Gladwin, MI  48624

| | |
|---|---|
| HARDWARE:  Pentium MS-Windows NT | PROGRESS RELEASE:  V. 8.2 |
| OPERATING SYSTEM:  Windows NT | PROGRESS SUPPORT (Y/N):  Yes |
| MAXIMUM NUMBER OF MFG/PRO USERS:  10 Users | MFG/PRO RELEASE:  8.5E |
| | MFG/PRO SUPPORT (Y/N):  Yes |

**QAD Inc.**
(Licensor)

SIGN: _____

NAME: _CHARLEY EGGERDING_

TITLE: _V.P. Automotive_

DATE: _7/31/97_

**Dura Automotive**
(Participant)

SIGN: _____

NAME: _JOHN J KNAPPENBERGER_

TITLE: _Vice President_

DATE: _7-30-97_

L:\Dura\sieww97.doc