**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: ) | Chapter 7 |
| ) | |
| Dura Automotive Systems, LLC, *et al.*, ) | Case No. 19-12378 (KBO) |
| ) | |
| Debtors.[1] ) | |
| ) | |

**MEMORANDUM OPINION[2]**

   Before the Court is the *Motion of Hain Capital Investors Master Fund, Ltd. for Payment of Cure Amount* (the "Motion"), in which Hain Capital Investor Master Fund, Ltd. ("Hain Capital") seeks entry of an order compelling Dura Buyer DNA, LLC (together with its assignees, including DUS Operating, Inc. ("DUS"), the "Purchaser") to pay it $1,807,273.03 (the "Cure Amount").[3] The Cure Amount represents undisputed amounts owed to Plasti-Paint, Inc. ("Plasti-Paint") arising under executory contracts with the above-captioned debtors (collectively, the "Debtors") that were never assumed or assigned pursuant to this Court's approval during the Debtors' chapter 11 proceedings. Plasti-Paint sold its claims against the Debtors, including the right to the Cure Amount, and continued to provide services to the Debtors during the proceedings and later to the Purchaser after it purchased the Debtors' assets. Hain Capital argues that the executory contracts were impliedly assumed, requiring payment of the Cure Amount. For the reasons that follow, the Court will deny the relief requested in the Motion as the Bankruptcy Code and applicable precedent foreclose the doctrine of implied assumption.

**A. JURISDICTION AND VENUE**

   The Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157(a) and 1334 and the *Amended Standing Order of Reference* entered by the United States District Court for the District of Delaware on February 29, 2012. Consideration of the Motion is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

**B. FACTS**

   On October 17, 2019 (the "Petition Date"), the Debtors sought bankruptcy protection under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States

---

[1] The Debtors in these chapter 7 cases, along with the last four digits of each Debtor's federal tax identification number, are: Dura Automotive Systems Cable Operations, LLC (7052); Dura Automotive Systems, LLC (8111); Dura Fremont L.L.C. (1252); Dura G.P. (8092); Dura Mexico Holdings, LLC (4188); Dura Operating, LLC (2304); and NAMP, LLC (3693). Dura Automotive Systems, LLC's service address is: 1780 Pond Run, Auburn Hills, Michigan 48326.

[2] This Memorandum Opinion constitutes the Court's findings of fact and conclusions of law pursuant to Rules 9014(c) and 7502 of the Federal Rules of Bankruptcy Procedure.

[3] D.I. 1226.

Bankruptcy Court for the Middle District of Tennessee. The cases were transferred to this Court on November 8, 2019[4] and, on December 15, 2020, converted to ones under chapter 7.[5]

At the time of their bankruptcy filing, the Debtors were a global Tier 1 automotive supply company specializing in the design, engineering, and manufacturing of products that support automotive mobility, including mechatronic systems, exterior systems, and lightweight structural systems.[6] Since well prior to the Petition Date, the Debtors contracted with Plasti-Paint to paint roof rails. Two purchase orders governed the parties' relationship in addition to general Terms and Conditions. One purchase order governed products and services related to Plasti-Paint's initial painting of the roof rails at its Michigan facility (the "Michigan Contract"). The second governed products and services related to further painting and other related work on the roof rails by Plasti-Paint at its Georgia facility (the "Georgia Contract" and, together with the Michigan Contract and Terms and Conditions, the "Plasti-Paint Contracts").[7] Rather than issuing a new purchase order every time the Debtors required Plasti-Paint's services, the Plasti-Paint Contracts were blanket purchase orders that allowed for and governed the continual addition of orders on a weekly basis to meet the Debtors' needs. It was agreed by both the Debtors and Plasti-Paint that Plasti-Paint was a critical supplier for the Debtors. As such, it continued to provide services to the Debtors throughout their chapter 11 proceedings.

On June 5, 2020, the Debtors sold substantially all of their North American assets to the Purchaser.[8] In connection with the sale, the Debtors assumed and assigned to the Purchaser designated executory contracts (the "Transferred Contracts") in accordance with certain Court-approved procedures and section 365 of the Bankruptcy Code.[9] The Purchaser was responsible for paying all monetary defaults of the Debtors arising or accruing under the Transferred Contracts prior to the closing of the sale.[10] The Debtors did not seek to assume and assign the Plasti-Paint Contracts to the Purchaser. Following the sale, the Debtors did not seek to assume and assign the Plasti-Paint Contracts to another entity or reject them.[11]

Nonetheless, with the Cure Amount unpaid and the bankruptcy status of the Plasti-Paint Contracts unclear, Plasti-Paint voluntarily[12] continued to provide services to the Purchaser

---

[4] D.I. 252.

[5] D.I. 1279.

[6] D.I. 20 ¶¶ 5, 12.

[7] DUS Exs. 1 & 2; Hain Ex. 3.

[8] D.I. 1029.

[9] *See id.* ¶¶ 14-24 (approving assumption and assignment of Transferred Contracts); *see also* D.I. 339 (establishing assumption and assignment procedures in connection with the Debtors' North American asset sale); D.I. 1029 ¶ 24 (establishing further procedures governing the assumption and assignment of executory contracts following the entry of the sale order).

[10] D.I. 1029 ¶ 17.

[11] *See, e.g.*, D.I. 1098 (establishing rejection procedures) & 1101 (omnibus rejection notice).

[12] *See, e.g.*, DUS Ex. 8 (email from Mr. Bacon confirming that Plasti-Paint will continue to supply services); DUS Ex. 10 (email from Ms. Pistole confirming same).

following the sale in accordance with the existing Plasti-Paint Contracts until the early fall of 2020. At that point, Plasti-Paint began performing a modified technical paint process for the Purchaser that was simpler, more efficient, and produced better quality. Pursuant to this new technical process, Plasti-Paint's services were changed and could be performed solely from its Georgia facility. The parties' agreement to implement the modified process was reflected in a new purchaser order dated June 22, 2020 (the "New Contract").[13] While many terms of the Plasti-Paint Contracts remained unchanged (including the general Terms and Conditions), the New Contract eliminated outdated services and parts, revised the technical process, elongated the Purchaser's payment terms, modified pricing, and replaced the Debtors as contract counterparty with DUS. But for the sale and the substitution of DUS as Plasti-Paint's new contract counterparty, these changes could have been implemented through modifications to the Plasti-Paint Contracts.

While the Debtors and Plasti-Paint began discussing the new process in 2018 and entered into the New Contract in June 2020, Plasti-Paint did not begin performing the process until approximately September 2020 due to lengthy implementation procedures. Until then, it was business as usual under the old Plasti-Paint Contracts.[14] After, the parties transacted under the old and new contracts until December 2020 when the transition to the new process was complete and the parties could operate solely under the New Contract.

On October 26, 2020, Hain Capital filed the Motion. Earlier that year on January 9, 2020, Hain Capital purchased all right, title, and interest in the unsecured claims Plasti-Paint filed in the chapter 11 case against the Debtors arising from the Plasti-Paint Contracts.[15] The purchase entitles Hain to receive all cure amounts that are payable to Plasti-Paint under section 365 to the extent any underlying Plasti-Paint Contract is assumed by the Debtors.[16] An evidentiary hearing on the

---

[13] DUS Ex. 3.

[14] DUS did, however, issue new vendor and purchaser order numbers for the Plasti-Paint Contracts to ensure that the Plasti-Paint claims sold to Hain Capital remained affiliated with the prior numbers issued to the Debtors in connection with the Plasti-Paint Contracts.

[15] Specifically, Plasti-Paint sold, transferred, and assigned to Hain Capital "all of its right, title, interest, claims and causes of action in and to, or arising under or in connection with, its claim . . . scheduled [by the debtor Dura G.P.] scheduled in the amount of $1,671,308.39 and associated with Proof of Claim #533 in the amount of $1,212,716.19 and Proof of Claim #534 in the amount of $637,280.02 and Proof of Claim #535 in the amount of $1,212,716.19 against Dura Automotive Systems, LLC et al . . . and any and all proofs of claim filed by [Plasti-Paint] . . . in respect of the foregoing claim." D.I. 562 at 2 (Evidence of Transfer of Claim); *see also* DUS Exs. 12 (Bid Confirmation) & 13 (Assignment of Claim). A notice of the claim transfer was filed on January 13, 2020. D.I. 562.

[16] DUS Ex. 13 (Assignment of Claim) (preamble).

Motion was held on March 11, 2021.[17]  Post-trial briefing was completed on April 22, 2021,[18] and the matter is ripe for adjudication.

**C.    DISCUSSION**

Hain Capital seeks to compel payment of the Cure Amount from the Purchaser pursuant to sections 365(b)(1)(A) and 105(a) of the Bankruptcy Code under the doctrine of implied assumption.  It argues that the New Contract is so identical, or at the least, so substantially similar in purpose, to the Plasti-Paint Contracts that this Court should find that the Debtors assumed the Plasti-Paint Contracts by conduct.[19]  It is Hain Capital's position that the New Contract is simply a continuation of the Plasti-Paint Contracts and that the parties intentionally structured their dealings to avoid making the Cure Payment to Hain Capital as claims purchaser.  Due to these alleged machinations, Hain Capital contends that DUS is now reaping the benefits of the Plasti-Paint Contracts without shouldering its burdens as required by the Bankruptcy Code.  Accordingly, Hain Capital seeks this Court to compel the Purchaser to make the Cure Payment.

In opposing the relief, DUS characterizes the relief Hain Capital seeks as extreme, requiring the Court to find implied assumption by the Debtors and then the Debtors' implied assignment to the Purchaser.  It contends that these findings cannot be made because formal assumption of the Plasti-Paint Contracts did not occur under the Court-approved procedures and because the doctrine of implied assumption has been rejected in the Third Circuit and beyond.  Moreover, even if the doctrine is an available theory, DUS argues that it is not obligated to pay Hain Capital the Cure Amount because the Plasti-Paint Contracts were not assigned to it as Transferred Contracts under the applicable sale order and asset purchase agreement and because the equities do not support it.

Under section 365 of the Bankruptcy Code, an executory contract may be assumed, assumed and assigned to a third-party, or rejected.  If a debtor wishes to assume an executory contract, section 365(b)(1)(A) requires it to cure, or provide adequate assurance that it will promptly cure, among other things, the monetary defaults thereunder.  Rules 6006 and 9014 of the Federal Rules of Bankruptcy Procedure require any request to assume, reject, or assign an executory contract, other than as part of a plan, to be made by motion, with reasonable notice and

---

[17] *See* D.I. 1352 (Mar. 11, 2021 Hr'g Transcript).  During the hearing, the Court heard credible and persuasive testimony from three witnesses – (1) Ms. Kathleen Pistole, a current DUS and former Debtor representative responsible for the supplier relationship with Plasti-Paint; (2) Mr. David Beacon, a Plasti-Paint representative with knowledge of the supplier relationship with the Debtors and Purchaser; and (3) Mr. Seth Pearson, a representative of Hain Capital with knowledge of the claims purchase and surrounding circumstances.

[18] *See* D.I. 1353 & 1360.

[19] *Stanley Jacobs Production, Ltd. v. 9472541 Canada Inc. (In re Thane Int'l, Inc.)*, 586 B.R. 540, 546 (Bankr. D. Del. 2018) ("A finding of implied assumption hinges on a parties' course of conduct, which is defined as a series of acts over a period of time evidencing a continuity of purpose." (internal quotations omitted)).

opportunity for a hearing afforded to the non-debtor contract counterparty.[20] Ultimately, a court must approve the request.[21]

There is no dispute that neither the Debtors sought Court approval to assume and assign the Plasti-Paint Contracts to the Purchaser nor the Court entered an order providing for an assumption and assignment of the contracts. Accordingly, no assumption occurred, and the Cure Amount need not be paid under section 365(b)(1)(A). While Hain Capital argues that the conduct of Plasti-Paint and the Purchaser gives rise to an implicit assumption, the Court of Appeals for the Third Circuit rejected this doctrine in *University Medical Center v. Sullivan (In re University Medical Center)*, holding that "assumption must be approved. It cannot be presumed."[22] While courts outside the Third Circuit have held otherwise,[23] they are in a small minority.[24]

---

[20] *Thane*, 586 B.R. at 546 (stating "It is hornbook law that assumption and rejection of executory contracts requires filing a motion").

[21] *See, e.g.*, *Univ. Med. Ctr. v. Sullivan (In re Univ. Med. Ctr.)*, 973 F.2d 1065, 1077 (3d Cir. 1992); *Counties Contracting & Constr. Co. v. Constitution Life Ins. Co.*, 855 F.2d 1054, 1060 (3d Cir. 1988).

[22] 973 F.2d at 1077.

[23] *See e.g.*, *In re Clavis Smith Bldg., Inc.*, 112 B.R. 768, 769-70 (Bankr. D. Va. 1990) (holding that "it is well settled law that a debtor in possession cannot assume the benefits of an executory contract without assuming its burdens as well"); *In re The Casual Male Corp.*, 120 B.R. 256, 259-60 (Bankr. D. Mass. 1990) (finding that lease did not expire where debtor evidenced assumption through conduct); *In re Miami Gen. Hosp., Inc.*, 89 B.R. 980, 987 (Bankr. S.D. Fla. 1988) (holding that the acceptance of benefits under contract binds debtor to assumption without motion to assume); *Matter of Reda, Inc.*, 54 B.R. 871, 880 (Bankr. N.D. Ill. 1985) (holding debtors' actions including acceptance of payment constituted an assumption for purposes of section 365); *In re Yonkers Hamilton Sanitarium Inc.*, 22 B.R. 427, 435 (Bankr. S.D.N.Y. 1982) (holding that "As long as the debtor continues to receive benefits under such contract it must also bear the burdens or obligations imposed under the contract"); *In re Shoppers Paradise, Inc.*, 8 B.R. 271, 279 (Bankr. S.D.N.Y. 1980) (determining debtor's failure to assume or reject executory contract constituted rare instance where debtor's actions constituted implied assumption).

[24] *See, e.g.*, *Mason v. Off. Comm. of Unsecured Creditors (In re FBI Distribution Corp.)*, 330 F.3d 36, 45 (1st Cir. 2003) (stating that "[i]t is well settled, however, that an executory contract cannot be assumed by the unilateral acts of the debtor in possession during the reorganization of the business"); *Stumpf v. McGee (In re O'Connor)*, 258 F.3d 392, 401 (5th Cir. 2001) (holding that "because assumption of executory contract requires court approval, executory contract can only be expressly assumed"); *Matter of Whitcomb & Keller Mortg. Co., Inc.*, 715 F.2d 375, 380 (7th Cir. 1983) (holding that the language "subject to the court's approval" in 11 U.S.C. § 365(a) limits assumption to express order of the court); *Komodo Cloud, LLC v. DB Holding Liquidation, Inc. (In re DB Holdings Liquidation, Inc.)*, 592 B.R. 539, 557 (D. Del. 2018) ("A contract cannot be assumed by conduct"); *Thane*, 586 B.R. at 548 (holding that condoning such informal means of assumption will force courts to meddle in the fact-laden intricacies of transactions); *Burtch v. Masiz (In re Vaso Active Pharm., Inc.)*, 500 B.R. 384, 398 (Bankr. D. Del. 2013) (stating that "[i]n order to ensure that a debtor has the opportunity to assess the advantages and disadvantages of assuming a contract, assumption must be approved. It cannot be presumed); *Gray v. W. Envtl. Servs. & Testing, Inc. (In re Dehon, Inc.)*, 352 B.R. 546, 560 (Bankr. D. Mass. 2006) (stating, "implied assumption has little, if any merit"); *In re The IT Group., Inc.*, 322 B.R. 729, 735-36 (Bankr. D. Del. 2005) (holding that "assumption of executory contract cannot occur without final approval of the court"); *Newman Grill Sys., LLC v. Ducane Gas Grills, Inc. (In re Ducane Gas Grills, Inc.)*, 320 B.R. 341, 351-52 (Bankr. D.S.C. 2004) (describing decisions finding assumption through conduct alone as "rare instances" and anomalies); *Houbigant, Inc. v. ACB Mercantile (In re Houbigant, Inc.)*, 188 B.R. 347, 356 (Bankr. S.D.N.Y. 1995)

In *University Medical Center,* the Third Circuit was tasked with deciding whether formal court approval is a prerequisite to assumption of an executory contract pursuant to section 365 of the Bankruptcy Code.[25]  The Secretary of the United States Department of Health and Human Services argued that, due to the unique statutory scheme of the Medicare Act, a provider agreement should be deemed assumed if performance under the agreement is continued after the commencement of a bankruptcy case regardless of whether formal court approval of assumption is sought.[26]  The court, however, rejected the notion that the circumstances presented modified the rule established by the plain and unambiguous language of the Bankruptcy Code requiring court approval for the assumption of an executory contract.[27]  In doing so, the court explained that motion practice and court approval prior to assumption is important so that the advantages and disadvantages to an estate and its parties in interest can be assessed.[28]  It also highlighted that it serves to provide certainty and finality to all parties in interest regarding the status of a particular executory contract vis-à-vis the estate.[29]

Here, Plasti-Paint voluntarily continued to provide services under the Plasti-Paint Contracts following the sale until the New Contract could go into effect.  There was no motivation to require a court-approved assumption of the Plasti-Paint Contracts and payment of the Cure Amount given Hain Capital's claim purchase.  Rather, the focus of the parties was the continuation of Plasti-Paint's critical services and finalization of the New Contract and modified technical process.  While Hain Capital was aware of the continued provision of services, it never sought to compel an assumption of the Plasti-Paint Contracts under section 365(d)(2) of the Bankruptcy Code or otherwise prevent the parties from continuing their relationship or entering into the New Contract.  Without the application of the doctrine of implied assumption, the Court is unable to grant the relief Hain Capital now seeks against the Purchaser in the Motion.[30]  To the extent Hain

---

("[B]ecause the plain language of the Code provides that an executory contract cannot be assumed without court order, the notion of assumption by conduct is almost universally rejected."); *In re A.H. Robins Co., Inc.*, 68 B.R. 705, 708 (Bankr. E.D. Va. 1986) (holding the "assumption-by-conduct argument to be flawed and fraught with potential for the precise type of confusion which Congress sought to prevent with the passage of § 365 of the Bankruptcy Code"); *see also* 10 COLLIER ON BANKRUPTCY P 6006.01(2)(a) ("Despite the fact that Rules 6006(a), 9014 and 9013 require the filing of a motion to assume or reject an executory contract or unexpired lease, the doctrine of tacit, or informal, assumption survives, but only in a small minority of older cases.  However, the overwhelming majority, and better reasoned, view is that, except for assumption or rejection as part of a plan, the trustee can manifest the intention to assume or reject an executory contract or unexpired lease only by formal motion filed in accordance with the requirements of Rules 6006(a), 9014 and 9013.").

[25] 973 F.2d at 1074.

[26] *Id.* at 1076.

[27] *Id.* at 1077 (citing *Counties Contracting*, 855 F.2d at 1060).

[28] *Id.* at 1077-78.

[29] *Id.* at 1078-79; *see also e.g.*, *Thane*, 586 B.R. at 543 (addressing an implied assumption argument brought eight months following a court-approved sale).

[30] Section 105(a) also does not provide any support for the relief Hain Capital seeks in light of the decision of *University Medical Center* and the plain language of the Bankruptcy Code and applicable rules.  *See Law*

Capital believes it has breach of contract or other claims against Plasti-Paint arising from the claims purchase, it is free to pursue those claims outside of these bankruptcy proceedings. In the meantime, Hain Capital possesses its purchased claims and may receive a distribution thereon if appropriate after completion of the claims reconciliation and allowance process.

## IV. CONCLUSION

For the foregoing reasons, the Court will enter an order denying the relief requested in the Motion.

Dated: June 16, 2021

Karen B. Owens
United States Bankruptcy Judge

---

*v. Siegel*, 571 U.S. 415, 421 (2014) (holding that the bankruptcy court cannot use section 105(a) to override explicit mandates of the Bankruptcy Code).